**Matthew Borden**, *pro hac vice* application pending
borden@braunhagey.com
**J. Noah Hagey**, *pro hac vice* application pending
hagey@braunhagey.com
**Athul K. Acharya**, OSB No. 152436
acharya@braunhagey.com
**Gunnar K. Martz**, *pro hac vice* application pending
martz@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, Tenth Floor
San Francisco, CA 94104
Telephone: (415) 599-0210

**Kelly K. Simon**, OSB No. 154213
ksimon@aclu-or.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF OREGON
P.O. Box 40585
Portland, OR 97240
Telephone: (503) 227-6928

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **INDEX NEWSPAPERS LLC**, a Washington limited-liability company, dba **PORTLAND MERCURY**; **DOUG BROWN**; **BRIAN CONLEY**; **SAM GEHRKE**; **MATHIEU LEWIS-ROLLAND**; **KAT MAHONEY**; **SERGIO OLMOS**; **JOHN RUDOFF**; **ALEX MILAN TRACY**; **TUCK WOODSTOCK**; **JUSTIN YAU**; and those similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>**CITY OF PORTLAND**, a municipal corporation; and **JOHN DOES 1-60**, officers of Portland Police Bureau and other agencies working in concert,<br><br>　　　　　Defendants. | Case No. 3:20-cv-1035-SI<br><br>**EMERGENCY MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**<br><br>**EXPEDITED HEARING REQUESTED** |

## MOTION

Plaintiffs Index Newspapers LLC ("Portland Mercury"), Doug Brown, Brian Conley, Sam Gehrke, Mathieu Lewis-Rolland, Kat Mahoney, Sergio Olmos, John Rudoff, Alex Milan Tracy, Tuck Woodstock, and Justin Yau, on behalf of themselves and those similarly situated, seek emergency leave to file a second amended complaint. A copy of the Proposed Second Amended Complaint ("Proposed SAC") is attached to this motion as Exhibit 1, and a copy of the Proposed SAC with changes from the First Amended Complaint marked in redline is attached as Exhibit 2.

In accordance with Local Rule 7-1(a), Plaintiffs conferred with Defendant City of Portland about this motion, and although the City did not consent to amendment, the City did not oppose Plaintiffs' request for expedited relief. Plaintiffs and the City agreed to the following briefing schedule: The City's response brief will be due by the close of business on Wednesday, July 15, 2020, with any reply from Plaintiffs due by 8:00 a.m. on Thursday, July 16. Plaintiffs and the City are both prepared to argue this motion on Thursday, July 16.

## INTRODUCTION

Plaintiffs respectfully seek emergency leave to amend their complaint to include the U.S. Department of Homeland Security ("DHS") and the U.S. Marshals Service ("USMS") (together, the "federal agents") as defendants. Such relief is necessary because the federal agents have been shooting, tear-gassing, and threatening journalists and legal observers, and Plaintiffs intend immediately to seek a TRO against the federal agents that is identical to the one the Court issued on July 2, 2020 (Dkt. 33), which prohibits the Portland police from attacking media and legal observers.

After the Court issued the TRO, journalists and legal observers enjoyed a brief respite from the violence and intimidation that gave rise to this lawsuit. Unfortunately, in the days that followed, President Trump sent federal forces to Portland to suppress protests, and to subject Portland to the same type of indiscriminate violence that he used to clear Lafayette Square of peaceful protesters. This campaign has included attacking media who dared to try to report what

his minions are doing to demonstrators. Specifically, on July 12, 2020, federal agents shot at least two journalists and chased legal observers away from the scene with their batons. (Declaration of Mathieu Lewis-Rolland ("Lewis-Rolland Decl.") ¶¶ 13-16; Declaration of Garrison Davis ("Davis Decl.") ¶¶ 13-14, 17.)

As the Court has already ruled, such conduct raises "a serious threat to [Plaintiffs'] First Amendment rights," and therefore poses "a likelihood of irreparable injury." (Dkt. 33 at 7.) Journalists and legal observers thus need protection from federal agents as much as they need it from local police. Courts freely grant leave to amend, and leave should be expedited here so that Plaintiffs can seek an immediate TRO to prevent further assaults on journalists and legal observers.

## **FACTUAL BASIS FOR SEEKING EMERGENCY RELIEF**

### A.    **Federal Agents Shoot Plaintiff Lewis-Rolland**

In the early hours of July 12, Mr. Lewis-Rolland was at the protests near the federal courthouse documenting the protesters and their interaction with federal officials. (Lewis-Rolland Decl. ¶¶ 4, 6.) He was carrying bulky camera equipment, wearing a t-shirt that said "PRESS" in big block letters, and staying in well-lit areas to make sure officials could see that he was there in a journalistic capacity. (*Id.* ¶¶ 3-4.)

Around 1:54 a.m., federal agents began rushing out of the Hatfield Courthouse and the Justice Center to eject protesters and neutrals alike from the area with tear gas, impact projectiles, and physical force. (*Id.* ¶¶ 5-8.) The agents were from "more than a half-dozen federal law enforcement agencies and departments" under the purview of DHS, including the Federal Protective Service.[1] Mr. Lewis-Rolland shot the following video that documents much of what ensued: https://www.facebook.com/MathieuLewisRolland/videos/10218671503762415/. (Lewis-Rolland Decl. ¶ 5.)

---

[1] Ben Fox & Gillian Flaccus, *Homeland Security Deploys Officers In Portland Under Trump Monument Order*, OPB (July 10, 2020), https://www.opb.org/news/article/portland-oregon-homeland-security-officers-protests-trump-monument-order/.

PAGE 3 – EMERGENCY MOTION TO FILE SECOND AMENDED COMPLAINT

Soon after the agents emerged from the courthouse, one agent shoved Mr. Lewis-Rolland, shouting "GET BACK! GET BACK!" (*Id.* ¶ 7.) About a minute later, an agent from the Federal Protective Service, Agent Doe, took aim at Mr. Lewis-Rolland but then lowered his weapon. (*Id.* ¶ 9.) Mr. Lewis-Rolland began moving west, complying with the agents' orders. (*Id.* ¶ 10.) About three minutes after the agents began their offensive, Mr. Lewis-Rolland had moved almost all the way to SW 4th Avenue, well past the boundary of federal property. (*Id.* ¶ 11.) Nevertheless, federal agents, including Agent Doe, continued to chase him and the crowd. (*Id.*) A few seconds later, Agent Doe or other agents very near him shot Mr. Lewis-Rolland in the side and back ten times. (*Id.* ¶ 13.)

Mr. Lewis-Rolland posed no threat to federal agents or anyone else. (*Id.* ¶ 13.) He was only documenting what officers and protesters were doing. (*Id.*) He was performing an essential function of the Fourth Estate. For his trouble, federal agents shot him with hard plastic bullets, launched with enough force to rip his "PRESS" t-shirt and leave him with welts, lacerations, and contusions all over his body. (*Id.* ¶¶ 14-18 (with pictures).)

### B.    Federal Agents Shoot Journalist Garrison Davis

Journalist Garrison Davis was also covering the protests on the night of July 11 and the early morning of July 12. (Davis Decl. ¶¶ 1, 3.) Like Mr. Lewis-Rolland, Mr. Davis was clearly there as press: He wore a helmet that said "PRESS" on it in big block letters, held his press pass in one hand and his iPhone in the other, and did not participate in protests. (*Id.* ¶¶ 4-5.)

Shortly after midnight, the federal troops issued what they called a "last warning." (*Id.* ¶ 12.) They then launched a tear-gas offensive, engulfing the entirety of the steps of the courthouse, SW 3rd Avenue, and Lownsdale Square in tear gas. (*Id.*) They also started shooting munitions into the crowd. (*Id.*) As Mr. Davis moved backward, one federal agent shot him in the back with a tear gas canister. (*Id.* ¶ 13.) It fell into Mr. Davis's bag and inundated him with tear gas until people nearby helped him remove it. (*Id.*) Federal agents also shot directly at him with pepper bullets and other munitions, even though he was no threat to them or anyone else. (*Id.*

¶ 14.) Mr. Davis also saw agents chase, batons swinging, after legal observers who were clearly affiliated with the National Lawyers' Guild. (*Id.* ¶ 17.)

<u>**ARGUMENT**</u>

## I.    EMERGENCY RELIEF IS NECESSARY

Plaintiffs seek leave to amend on an emergency basis because they intend immediately to seek a TRO to protect journalists and legal observers from the same violence and intimidation that the Court already addressed in its TRO against the police. The standard for emergency relief is easily met here because federal agents shot Plaintiff Lewis-Rolland in the back and side 10 times—all above the waist—when he was obviously present at protests only in a journalistic capacity to photograph and record what happened. (Lewis-Rolland Decl. ¶¶ 3-4, 13-16.) Federal agents similarly attacked and threatened other journalists and legal observers because they apparently believe they are not bound by the Court's TRO—or the First Amendment. (Davis Decl. ¶¶ 4-5, 13-14, 16.) Thus, the same harms that the Court sought to redress in the TRO are recurring, Plaintiffs and their First Amendment rights are in peril, and emergency relief is necessary for the same reasons that the Court granted the TRO.

## II.    PLAINTIFFS SHOULD BE GIVEN LEAVE TO AMEND THE COMPLAINT

Courts should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded."). A district court has discretion to deny leave only on account of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Ni-Q, LLC v. Prolacta Bioscience, Inc.*, 407 F. Supp. 3d 1153, 1160 (D. Or. 2019) (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009)) (alteration omitted). Of these factors, the most important are prejudice to the opposing party and futility of amendment.

Plaintiffs seek to amend the complaint to add the federal agents as defendants. Because this request comes just two days after a federal agent shot Plaintiff Lewis-Rolland, there is no undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies. (Lewis-Rolland Decl. ¶¶ 2, 13.) Nor would the City suffer any prejudice if Plaintiffs were to add a second wrongdoing party. Nor indeed would amendment be futile: the same First Amendment principles under which the Court enjoined the City's conduct apply to federal officials' substantially similar conduct. (Temporary Restraining Order, Dkt. 33, at 7-8); *Gitlow v. New York*, 268 U. S. 652, 666 (1925).

## III.    PLAINTIFFS MAY JOIN THE FEDERAL AGENTS AS PARTIES TO THIS ACTION

The Federal Rules of Civil Procedure "strongly encourage[]" courts to entertain the "broadest possible scope of action consistent with fairness to the parties," including "joinder of claims, parties and remedies." *Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966). "Permissive joinder is to be liberally construed to promote the expeditious determination of disputes, and to prevent multiple lawsuits." *Cuprite Mine Partners LLC v. Anderson*, 809 F.3d 548, 552 (9th Cir. 2015).

Plaintiffs may join the federal agents as defendants with the City because Plaintiffs' right to relief against them arises out of the same "series of transactions or occurrences" and will involve common questions of law and fact. Fed. R. Civ. P. 20(a)(2). Plaintiffs' claims against the City and the federal agents all arise out the recent protests in Portland in front of the government buildings downtown and the actions of Portland police and federal agents to protect government property and disperse crowds. (*E.g.*, Lewis-Rolland Decl. ¶¶ 6-8; Davis Decl. ¶¶ 7-8, 19-20.) That is a single series of transactions and occurrences. Not only do all three entities—USMS, DHS, and the Portland police—use the same types of force against the same crowds, but they have worked together to disperse them, too. (*E.g.*, Proposed SAC ¶ 186; Lewis-Rolland Decl.

¶ 8; Davis Decl. ¶¶ 21-25.[2]) Thus, the proof in both cases will involve footage and testimony of the same events, where local and federal authorities are working together, in the same area, to address the same protests.

Further, the conduct by local and federal agents gives rise to common questions of law, including whether Plaintiffs have a right of access to record law-enforcement activities and whether local and federal officials may retaliate against Plaintiffs for recording their activities. Joinder is also necessary to effectuate complete relief in this case because without adding the federal agents, Plaintiffs and other journalists and observers will remain unsafe at protests, and the freedom of the press that the Court's TRO protected will be chilled. Thus, there is at least the "logical *relationship*" necessary for permissive joinder of DHS and USMS. *See* Rutter Group, *Federal Civil Procedure Before Trial* ¶ 7:141 (Calif. & 9th Cir. eds. Apr. 2020). Moreover, "separate trials would require duplicative evidence and witness testimony," so joinder would be "more efficient and make[] litigation less expensive for [all] parties." *Ames v. City of Novato*, 2016 WL 6024587, at *3 (N.D. Cal. Oct. 14, 2016).

Generally, district courts must also examine whether permitting joinder would prejudice or be unfair to any party. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000). When a party seeks to join defendants by amendment, however, the Ninth Circuit has explained that courts should show "a strong liberality in allowing parties to amend their pleadings when such amendments have satisfied the explicit requirements of the rules." *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980). That is because consideration of factors like prejudice and fairness is already part of the Rule 15 analysis, and so they need not be

---

[2] *See also, e.g.*, Conrad Wilson & Jonathan Levinson, *President Trump Says Portland Police Are Incapable Of Managing Protests*, OPB (July 10, 2020) (explaining that "local and federal agents . . . have at times operated side-by-side to clear Portland streets" and that a federal agent "works out of Portland's command post during protests to communicate as needed"), https://www.opb.org/news/article/president-trump-portland-police-are-incapable-of-managing-protests/.

considered anew in the Rule 20 context. *Travelers Cas. & Sur. Co. of Am. v. Dunmore*, 2010 WL 2546070, at *5 (E.D. Cal. June 23, 2010) (citing *Desert Empire*, 623 F.2d at 1375-76).

* * *

Thus, there is no reason to deny Plaintiffs' request. And "justice . . . requires" that the Court grant it. Fed. R. Civ. P. 15(a)(2).

## <u>CONCLUSION</u>

For the above reasons, the Court should grant Plaintiffs' request to amend their complaint.

Dated: July 14, 2020                          Respectfully submitted,

By: */s/ Athul K. Acharya*
Athul K. Acharya, OSB No. 152436
Matthew Borden, *pro hac vice* pending
J. Noah Hagey, *pro hac vice* pending
Gunnar K. Martz, *pro hac vice* pending
BRAUNHAGEY & BORDEN LLP

Kelly K. Simon, OSB No. 154213
ACLU FOUNDATION OF OREGON

*Attorneys for Plaintiffs*

PAGE 8 – EMERGENCY MOTION TO FILE SECOND AMENDED COMPLAINT