**Matthew Borden**, admitted *pro hac vice*
borden@braunhagey.com
**J. Noah Hagey**, admitted *pro hac vice*
hagey@braunhagey.com
**Athul K. Acharya**, OSB No. 152436
acharya@braunhagey.com
**Gunnar K. Martz**, admitted *pro hac vice*
martz@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, Tenth Floor
San Francisco, CA 94104
Telephone: (415) 599-0210

**Kelly K. Simon**, OSB No. 154213
ksimon@aclu-or.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF OREGON
P.O. Box 40585
Portland, OR 97240
Telephone: (503) 227-6928

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **INDEX NEWSPAPERS LLC**, a Washington limited-liability company, dba **PORTLAND MERCURY**; **DOUG BROWN**; **BRIAN CONLEY**; **SAM GEHRKE**; **MATHIEU LEWIS-ROLLAND**; **KAT MAHONEY**; **SERGIO OLMOS**; **JOHN RUDOFF**; **ALEX MILAN TRACY**; **TUCK WOODSTOCK**; **JUSTIN YAU**; and those similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>**CITY OF PORTLAND**, a municipal corporation; **JOHN DOES 1-60**, officers of Portland Police Bureau and other agencies working in concert; **U.S. DEPARTMENT OF HOMELAND SECURITY**; and **U.S. MARSHALS SERVICE**,<br><br>                    Defendants. | Case No. 3:20-cv-1035-SI<br><br>**PLAINTIFFS' MOTION FOR FINDING OF CONTEMPT AND FOR SANCTIONS AGAINST DEFENDANTS U.S. DEPARTMENT OF HOMELAND SECURITY AND U.S. MARSHALS SERVICE**<br><br>**EXPEDITED HEARING REQUESTED** |

PAGE 1 -   MOTION FOR CONTEMPT & SANCTIONS AGAINST FEDERAL
                  DEFENDANTS

# TABLE OF CONTENTS

Table of Contents ................................................................................................................. 2

Table of Authorities ............................................................................................................ 4

Local Rule 7-1 Certification ............................................................................................... 5

Motion ................................................................................................................................. 5

Memorandum of Law .......................................................................................................... 7

Introduction ......................................................................................................................... 7

Argument ............................................................................................................................. 8

I.      The Federal Defendants Have Intentionally Violated This Court's TRO ........................... 8

      A.      July 23-24: Federal Agents Shoot Journalist Jonathan Levinson ........................... 9

      B.      July 23-24: Federal Agents Shoot and Intimidate Journalist Rebecca Ellis ................................................................................................................. 10

      C.      July 23-24: Federal Agents Shoot Legal Observers Kat Mahoney and Rachelle Collins ................................................................................................................. 10

      D.      July 23-25: Federal Agents Shoot and Throw Tear Gas Canister at Plaintiff Brian Conley ................................................................................................................. 11

      E.      July 24-25: Federal Agents Shoot Photojournalist Kathryn Elsesser ................... 12

      F.      July 24-25: Federal Agents Shoot Legal Observer Haley Nicholson .................. 12

      G.      July 25-26: Federal Agents Mace Four Legal Observers at Point-Blank Range ................................................................................................................. 14

      H.      July 25-26: Federal Agents Shoot Videographer Daniel Hollis ........................... 15

      I.      July 25-27: Federal Agents Disperse and Target Tear Gas Canisters at Journalist Justin Grinnell ................................................................................................................. 15

      J.      July 27-28: Federal Agents Again Shoot and Throw Tear-Gas Canisters and Flashbangs at Plaintiff Brian Conley ........................... 16

II.     The Court Should Grant Plaintiffs Relief ........................................................ 16

      A.      The Court Should Prohibit the Agents Involved from Participating in Any Armed Operations Within the District of Oregon ................................... 17

    B.    The Court Should Order the Federal Agents' Supervisors to Appear and Show Cause as to Why They Are Not in Contempt ................................. 18

    C.    The Court Should Issue Coercive Fines and Award Plaintiffs Their Attorney's Fees ........................................................................................... 19

Conclusion ................................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Baez-Sanchez v. Barr*,
  947 F.3d 1033 (7th Cir. 2020) .................................................................................................. 18
*Century Indem. Co. v. Marine Grp., LLC*, No. 3:08-CV-1375-AC,
  2013 WL 5838991 (D. Or. Oct. 29, 2013) .................................................................................. 9
*Donovan v. Mazzola*,
  716 F.2d 1226 (9th Cir. 1983) ................................................................................................ 8, 9
*Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*,
  774 F.3d 935 (9th Cir. 2014) ..................................................................................................... 9
*Int'l Union v. Bagwell*,
  512 U.S. 821 (1994) ................................................................................................................. 16
*J.L. v. Cuccinelli*,
  2020 WL 2562895 (N.D. Cal. Feb. 20, 2020) .................................................................... 16, 18
*Maness v. Meyers*,
  419 U.S. 449 (1975) ................................................................................................................... 8
*Nat'l Comm'n for Certification of Crane Operators, Inc. v. California Crane Sch., Inc.*,
  470 F. App'x 698 (9th Cir. 2012) .......................................................................................16, 18
*Stone v. City & Cty. of San Francisco*,
  968 F.2d 850 (9th Cir. 1992) ............................................................................................. passim
*Welch v. Frederickson*,
  No. 07-CV-1185-AC, 2008 WL 2185213 (D. Or. May 22, 2008) ...................................... 16, 18

## LOCAL RULE 7-1 CERTIFICATION

Counsel for Plaintiffs hereby certify that they contacted counsel for U.S. Department of Homeland Security ("DHS") and U.S. Marshals Service ("USMS") (together, the "federal defendants") and attempted to resolve this dispute but were unable to do so. Counsel for federal defendants also objected to Plaintiffs' request for an expedited hearing.

## MOTION

Plaintiffs Index Newspapers LLC ("Portland Mercury"), Doug Brown, Brian Conley, Sam Gehrke, Mathieu Lewis-Rolland, Kat Mahoney, Sergio Olmos, John Rudoff, Alex Milan Tracy, Tuck Woodstock, and Justin Yau hereby move for a finding that the federal defendants are in contempt of court and an order imposing sanctions. Plaintiffs support this motion with the accompanying memorandum of law and the declarations of Haley Nicholson, Rebecca Ellis, Jonathan Levinson, Kat Mahoney, Bruce Knivila, Brian Conley, Kathryn Elsesser, and Matthew Borden.

Plaintiffs ask this Court to impose sanctions that are reasonably calculated to prevent future contemptuous conduct by the City. This Court has wide discretion in determining the appropriate sanction. Plaintiffs request at least the following relief:

1. An order that each federal agent in the supporting declarations who violated the Court's temporary restraining order (Dkt. 84) be identified, personally appear, and be prohibited from participating in any armed operations within the District of Oregon.

2. An order that the federal agents' commanders, including L. Eric Patterson, Richard K. Cline, Mark Morgan, Robert Perez, Rodney Scott, Raul Ortiz, Matthew Albence, Derek Benner, Donald W. Washington, Derrick Driscoll, Chad Wolf, and Ken Cuccinelli personally appear and show cause why they should not be sanctioned for failure to comply with paragraph 7 of the Court's TRO.

3. A complete ban on the federal defendants' use of lethal or "less lethal" weapons in the District of Oregon.

   4. Fines of sufficient size to coerce the federal defendants to comply with the Court's TRO, such as $500 for every day a journalist or legal observer is shot, beaten, arrested, or intimidated by a federal agent.

   5. Plaintiffs' attorney's fees for bringing this motion.

   6. All further relief that the Court deems necessary to ensure compliance with its TRO.

## MEMORANDUM OF LAW

Plaintiffs Index Newspapers LLC ("Portland Mercury"), Doug Brown, Brian Conley, Sam Gehrke, Mathieu Lewis-Rolland, Kat Mahoney, Sergio Olmos, John Rudoff, Alex Milan Tracy, Tuck Woodstock, and Justin Yau respectfully submit this memorandum in support of their motion to hold Defendants U.S. Department of Homeland Security ("DHS") and U.S. Marshals Service ("USMS") (together, the "federal defendants") in contempt of court.

## INTRODUCTION

On July 23, 2020, the Court issued a temporary restraining order prohibiting federal agents from assaulting and dispersing journalists and legal observers. Within hours, federal agents began violating the Court's TRO and have continued to do so every night since. These violations are not inadvertent. They are intentional acts by a lawless president, who has sent his paramilitary forces to shoot up the streets of Portland, choke downtown in a haze of toxic chemical fumes, and generate reelection soundbites—in blatant disdain of public safety, the rule of law, and the most fundamental principles of our Constitution.

On July 23, a federal agent shot reporter Jonathan Levinson while he was trying to take a photo. No protesters were near him. A federal agent also shot journalist Brian Conley, when he was trying to video an arrest. Later that night, federal agents tear-gassed Mr. Conley. The same night, federal agents shot reporter Rebecca Ellis and separately prevented her from documenting their dispersal of protesters.

On July 24, federal agents shot legal observer Haley Nicholson in her chest, just above her heart, from four feet away. Impact munitions should not be used at distances of less than 15 feet or above the waist.

On July 25, federal agents deliberately sprayed toxic chemicals into the faces of multiple legal observers, including Bruce Knivlia and Kat Mahoney, at point blank range. They were all clearly identified in blue ACLU vests and green NLG hats. They also shot photojournalist Kathryn Elsesser, who was also clearly marked with "PRESS" on her helmet.

PAGE 7 -  MOTION FOR CONTEMPT & SANCTIONS AGAINST FEDERAL
          DEFENDANTS

On July 26, a federal agent temporarily left an advancing line of agents to kick a flaming tear-gas canister directly at a group of clearly marked journalists.

On July 27, Plaintiffs contacted government counsel to raise these blatant violations. (Declaration of Matthew Borden ("Borden Decl."), Ex. 1.) Instead of investigating and providing information as promised, the federal defendants claimed that they were unaware of what agents and commanders were involved and offered nothing to extenuate their violations of the TRO. That night, the federal agents heaped on more acts of contempt. (Declaration of Brian Conley ("Conley Decl.") ¶¶ 19, 20, 22, 25.)

Every day it has existed, federal agents have intentionally violated the Court's TRO. As a result of the federal agents' defiance of the Court's order, the free press remains unsafe while trying to document and observe the cataclysmic violence that federal authorities are inflicting on Portland. The federal agents—and their commanders, whom the Court ordered to be notified of the TRO—are not above the law.

In light of the foregoing facts, and those detailed further below, the Court should find the federal defendants in contempt and (1) prohibit the offending officers from engaging in armed operations in Portland, (2) order the federal agents' commanders L. Eric Patterson, Richard K. Cline, Mark Morgan, Robert Perez, Rodney Scott, Raul Ortiz, Matthew Albence, Derek Benner, Donald W. Washington, Derrick Driscoll, Chad Wolf, and Ken Cuccinelli to appear and show cause as to why they should not be held in contempt, (3) order additional prophylactic restrictions to ensure that no further violations of Plaintiffs' rights occur, (4) order fines of sufficient size to coerce the federal defendants' compliance, and (5) order that the federal defendants pay Plaintiffs' attorney's fees for bringing this motion.

## ARGUMENT

### I. THE FEDERAL DEFENDANTS HAVE INTENTIONALLY VIOLATED THIS COURT'S TRO

"Absent a stay," parties subject to a court order must comply "promptly." *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983) (quoting *Maness v. Meyers*, 419 U.S. 449, 458

(1975)). Parties that fail to take "all reasonable steps within [their] power" to comply with a "specific and definite" court order are in contempt of court. *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 945 (9th Cir. 2014) (quotation marks omitted).

Initially, the moving party bears the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order; the burden then shifts to the contemnors to demonstrate either that they substantially complied based on a reasonable interpretation of the court's order, or that they took "all reasonable steps" but were unable to comply. *Stone v. City & Cty. of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992), *as amended on denial of reh'g* (Aug. 25, 1992); *Century Indem. Co. v. Marine Grp., LLC*, No. 3:08-CV-1375-AC, 2013 WL 5838991, at *2 (D. Or. Oct. 29, 2013). The contemnors' intent is irrelevant and their good faith or lack thereof is no defense: "The sole question is whether [they] complied with the district court's order." *Stone*, 968 F.2d at 856; *Donovan*, 716 F.2d at 1240. District courts have "wide latitude" in answering that question. *Stone*, 968 F.2d at 856 (quotation marks omitted).

### A.   July 23-24: Federal Agents Shoot Journalist Jonathan Levinson

The very night the Court issued its TRO, federal agents intentionally violated it by shooting OPB reporter Jonathan Levinson. (Declaration of Jonathan Levinson ("Levinson Decl.") ¶¶ 4-5.) Mr. Levinson was wearing an OPB press pass with his name, his photograph, the OPB logo, and the word "MEDIA." (*Id.* ¶ 3.) He was also wearing a helmet that said "PRESS" in large letters on the front and back and carrying two professional cameras with large, bulky lenses. (*Id.*)

Around 1:00 a.m., federal agents had cleared the area next to the courthouse and there were few protesters in the immediate vicinity, so Mr. Levinson decided to take some pictures of the agents inside the fence. (*Id.* ¶ 4.) One agent was standing on a platform near the north side of SW 3rd Avenue. (*Id.* ¶ 5.) As Mr. Levinson looked back and forth between his camera and the agent, trying to focus his lens, he saw the agent raise his weapon, deliberately point it at him, and

fire several rounds. (*Id.*) Mr. Levinson's camera and lens were splattered with paint. (*Id.*) Based on Mr. Levinson's position and the position of people around him, there is almost no chance the agent was aiming at anyone other than Mr. Levinson. (*Id.* ¶ 6.) This was an intentional act of contempt.

### B.   July 23-24: Federal Agents Shoot and Intimidate Journalist Rebecca Ellis

Federal agents also intentionally violated the TRO by shooting OPB reporter Rebecca Ellis and then preventing her and her colleagues from reporting on their enforcement of a dispersal order. Like Mr. Levinson, Ms. Ellis attended the protests on the night the Court issued the TRO. (Declaration of Rebecca Ellis ("Ellis Decl.") ¶ 3.) She too was wearing her OPB press pass. (*Id.* ¶ 2.) Around 1:30 a.m., she was standing with a group of journalists, away from protesters, and filming federal agents as they exited the federal courthouse. (*Id.* ¶ 3.) Suddenly, for no reason, a federal agent fired directly at her, hitting her in the hand and singeing her arm. (*Id.* ¶ 4.)[1]

Around ten minutes later, she was on SW Salmon Street with several other journalists, attempting to film federal agents' enforcement of dispersal orders. (*Id.* ¶ 5.)[2]  Two agents physically forced her to leave; one shouted "MOVE, MOVE," and "WALK FASTER!" in her face, forcing her and her colleagues to walk backward, while another agent kept pace menacingly holding his gun. (*Id.*) These two agents together prevented her and her colleagues from reporting on what was going on behind them. This, too, was an intentional act of contempt.

### C.   July 23-24: Federal Agents Shoot Legal Observers Kat Mahoney and Rachelle Collins

Federal agents also shot ACLU legal observers Kat Mahoney and Rachelle Collins, again violating the TRO the night it was issued. At around 12:45 a.m. on July 24, Ms. Mahoney was on SW 3rd Avenue facing the federal courthouse. (Declaration of Kat Mahoney ("Mahoney Decl.")

---

[1] @Rjaellis, Twitter (July 24, 2020, 1:27 A.M.),
https://twitter.com/Rjaellis/status/1286578718693978113.
[2] @Rjaellis, Twitter (July 24, 2020, 1:39 A.M.),
https://twitter.com/Rjaellis/status/1286581690626748416.

PAGE 10 -  MOTION FOR CONTEMPT & SANCTIONS AGAINST FEDERAL
              DEFENDANTS

¶ 4.) Federal agents began aggressively firing through the fence at protesters on the other side. (*Id.*) As they began approaching her position, Ms. Mahoney moved north on SW 3rd Avenue away from them, and then slightly onto SW Salmon Street to continue filming and observing the events taking place. (*Id.*)

Suddenly, for no reason, a federal agent shot a pink paint bullet directly at Ms. Mahoney's head. (*Id.* ¶ 5.) A paint bullet also hit Ms. Collins on her neck. (*Id.*) There was no discernible reason to shoot in their direction. (*Id.* ¶ 8.) They were near members of the press, but 6 to 10 feet away from protesters. (*Id.*) Nor was there any reason to shoot the protesters, who were not doing anything violent. (*Id.*) Based on their position and the position of people around them, there can be little doubt that this, too, was an intentional act of contempt. (*Id.*)

### D. July 23-25: Federal Agents Shoot and Throw Tear Gas Canister at Plaintiff Brian Conley

On the night the TRO issued, federal agents intentionally shot Plaintiff Brian Conley and threw a tear-gas canister at his head. Mr. Conley was documenting events at 4:00 a.m., when only a few protesters were remaining. (Conley Decl. ¶ 4.) He was using a large Micro Four Thirds camera with a telephoto lens and external 20W LED light mounted on it. (*Id.* ¶ 3.) He was wearing a photographer's vest that said "PRESS" on it as well as a helmet that said "PRESS" in big block letters across the front. (*Id.*) He was plainly a member of the press.

When a female protester holding flowers skipped towards federal agents, they grabbed her. (*Id.* ¶¶ 5-6.) They also grabbed a protester who tried to free her. (*Id.*) Having neutralized this threat, the federal agents inundated the street with tear gas. (*Id.* ¶¶ 6-7.) Mr. Conley yelled that he was press, over and over. (*Id.*) Suddenly, without warning, federal agents shot him multiple times with impact munitions, which were "incredibly painful." (*Id.* ¶ 7.) They shot him in his chest and his foot. (*Id.*) This can only have been intentional, for there was nobody else nearby except press and a few medics. (*Id.* ¶¶ 7-8.) Further confirming that federal agents were targeting press intentionally, an agent threw a tear-gas canister directly at Mr. Conley, where it exploded above his head. (*Id.* ¶¶ 9-10.) Federal agents again threw canisters of tear gas at several members of the

PAGE 11 -   MOTION FOR CONTEMPT & SANCTIONS AGAINST FEDERAL
            DEFENDANTS

press, including Mr. Conley, the following night. (*Id.* ¶¶ 12-14.) These are repeated, intentional violations of this Court's TRO.

### E. July 24-25: Federal Agents Shoot Photojournalist Kathryn Elsesser

Federal agents also shot a photojournalist the following night. Freelance photographer Kathryn Elsesser attended the protests on the night of July 24 on assignment for the world's oldest news agency, the Agence France-Presse (AFP). (Declaration of Kathryn Elsesser ("Elsesser Decl.") ¶¶ 1-2.) Her photos from that night were published around the world by Bloomberg, CBS News, and Yahoo, among others, including many international publications. (*Id.* ¶ 1.) She was wearing a press pass and a helmet with "PRESS" written on it in big letters across the front. (*Id.* ¶ 2.)

At around 2:00 a.m., Ms. Elsesser was standing alone at the edge of the park, across the street from the federal courthouse, when a federal agent shot her in the arm from across the street. (*Id.* ¶¶ 4-6.) She also recounts four additional journalists who, despite being clearly identified as press, federal agents shot—including one in the head—and teargassed. (*Id.* ¶¶ 7-11.)

### F. July 24-25: Federal Agents Shoot Legal Observer Haley Nicholson

Federal agents also shot an NLG legal observer the following night. Law student Haley Nicholson attended the protests on the night of July 24. (Declaration of Haley Nicholson ("Nicholson Decl.") ¶¶ 1-2.) She was wearing a green NLG legal-observer hat, which she believed would protecte her from federal violence under the Court's TRO. (*Id.* ¶ 2.)

At around 11:50 p.m., she was recording and observing events on SW 3rd Avenue, near the intersection with SW Salmon Street. (*Id.* ¶ 3.) A federal agent lined her up in his sights, but she was facing away from him. (*Id.* ¶¶ 4, 7.) He waited for her to turn. (*Id.*) When she was fully facing him, he shot her in the chest, directly above the heart, at nearly point-blank range. (*Id.* ¶ 5.) Videos of this event can be viewed at https://tinyurl.com/FedShootsLO and https://tinyurl.com/FedShootsLO2, and they show that she was not threatening federal property, interfering with law enforcement, or even talking to the agent who shot her. (*Id.* ¶¶ 3, 7.)

PAGE 12 - MOTION FOR CONTEMPT & SANCTIONS AGAINST FEDERAL
                    DEFENDANTS

The federal agent used a 40mm rubber bullet for which the minimum safe distance is 2 meters (approximately 6 feet) and the minimum recommended distance is 5 meters (approximately 15 feet). (*Id.* ¶ 5; *40mm Direct Impact Round*, Defense Technology, https://www.defense-technology.com/wp-content/uploads/2020/06/40mm-Direct-Impact-Round.pdf.) He also fired it at Ms. Nicholson's heart, even though the manufacturer recommends that it be fired "at the large muscle groups of the buttocks, thigh, and knees" in order to "reduc[e] serious or life-threatening injuries." (*Ibid.*) Used in this thoroughly improper manner, it left a massive contusion in Ms. Nicholson's chest (Nicholson Decl. ¶ 6.):



PAGE 13 - MOTION FOR CONTEMPT & SANCTIONS AGAINST FEDERAL DEFENDANTS

Ms. Nicholson returned to downtown to serve as a legal observer on the night of July 25. Several times, federal agents pointed their guns at her and a group of legal observers. Recalling her experience of the previous night, Ms. Nicholson left early. (*Id.* ¶ 10.) Federal agents successfully deterred Ms. Nicholson from performing her vitally necessary role, in contempt of this Court's order.

G. **July 25-26: Federal Agents Mace Four Legal Observers at Point-Blank Range**

Federal agents again brazenly violated the TRO on the night of July 25. On this night, two ACLU legal observers—Ms. Mahoney and Bruce Knivila—were standing with two NLG legal observers and some press at the corner of SW Salmon Street and SW 3rd Avenue, facing the federal courthouse. (Mahoney Decl. ¶¶ 9-10; Declaration of Bruce Knivila ("Knivila Decl.") ¶¶ 3-4, 8.) All four were clearly marked as legal observers affiliated with their respective organizations (Mahoney Decl. ¶ 10; Knivila Decl. ¶ 3.)

To the right of the group were some protesters. (Mahoney Decl. ¶ 11; Knivila Decl. ¶¶ 5-6.) Video evidence[3] clearly shows that the four legal observers were distinguishable from protesters because at least two federal agents *actually distinguished* them and declined to pepper-spray them. (Mahoney Decl. ¶¶ 9, 11; Knivila Decl. ¶¶ 4-6.) Then, one agent chose to walk over, pop open a can of tear gas, and casually drop it right at the feet of the legal observers, in an area where only press and legal observers would suffer its effects. (Knivila Decl. ¶ 8.) A couple of minutes later, another agent (or perhaps the same one) walked directly to the group—exactly to where his collaborators had stopped their pepper-spraying—and maced or pepper-sprayed the legal observers. (Mahoney Decl. ¶ 12; Knivila Decl. ¶ 9.) A minute after that, a federal agent again maced or pepper-sprayed an NLG legal observer. (Knivila Decl. ¶ 10.) There were no protesters behind the legal observers that the agents might have been aiming at. (*Id.* ¶ 9.) The

---

[3] Available at https://tinyurl.com/FedsMaceLOs and https://tinyurl.com/FedsMaceLOs2. (Mahoney Decl. ¶ 9; Knivila Decl. ¶ 4.)

PAGE 14 - MOTION FOR CONTEMPT & SANCTIONS AGAINST FEDERAL
               DEFENDANTS

agents' only possible reason was unlawful and contemptuous retaliation for documenting the agents' actions. (*Id.*)

### H.    July 25-26: Federal Agents Shoot Videographer Daniel Hollis

In the early hours of July 26, federal agents violated the TRO yet again. Daniel Hollis, a videographer for VICE News, was wearing a helmet with the word "PRESS" on it and operating large, professional video-recording equipment. (Declaration of Daniel Hollis ("Hollis Decl.") ¶ 2.) He went to the intersection of SW Salmon Street and SW 3rd Avenue specifically to get away from protesters for a wide angle shot. (*Id.* ¶ 4.) There were very few people near him, and nearly all of them were clearly marked as press. (*Id.* ¶ 7.) The few non-press in the area were not doing anything threatening at all. (*Id.*) Federal agents were coming out of the side door to the federal courthouse, and the mass of protesters were outside their line of sight and line of fire. (*Id.*) Nevertheless, the agents launched a barrage of munitions at Mr. Hollis and the members of the press around him, hitting Mr. Hollis near his groin and in his lower back. (*Id.*) Mr. Hollis was forced to stop reporting for the night. (*Id.* ¶ 8.)

### I.    July 25-27: Federal Agents Disperse and Target Tear Gas Canisters at Journalist Justin Grinnell

Federal agents continued to violate the TRO over the weekend. Justin Grinnell, the Managing Editor of the Portland State Vanguard, covered the protests outside the Hatfield Courthouse on the nights of July 25 and 26, 2020. (Declaration of Justin Grinnell ("Grinnell Decl.") ¶¶ 1-2.) He was wearing a press pass and his hat and backpack were labeled "PRESS" in large letters written on yellow tape. (*Id.* ¶ 2.)

Just before 2:30 a.m. on July 26, Mr. Grinnell documented a federal agent who temporarily left the advancing line to kick a flaming tear-gas canister directly at a group of journalists. (*Id.* ¶¶ 3-4.)[4] The next night, in the early hours of July 27, federal agents dispersed Mr. Grinnell and other journalists, forcing them in the opposite direction from where federal

---

[4] @psuvanguard, Twitter (July 26, 2020, 2:23 A.M.), https://twitter.com/psuvanguard/status/1287317488527486976.

PAGE 15 - MOTION FOR CONTEMPT & SANCTIONS AGAINST FEDERAL
               DEFENDANTS

agents were advancing on protestors. (*Id.* ¶ 5.) But there was no reason to disperse Mr. Grinnell. He was following federal agents' orders. (*Id.*) All the press he was standing with appeared to be properly identified and were clearly just documenting. (*Id.*) They were not posing any danger to the federal agents or the federal courthouse. (*Id.*) A while later, a federal agent launched a tear gas canister at a group of press with whom Mr. Grinnell was standing. (*Id.* ¶ 8.) There were no protestors nearby, just clearly identified members of the press. (*Id.*)

### J. July 27-28: Federal Agents Again Shoot and Throw Tear-Gas Canisters and Flashbangs at Plaintiff Brian Conley

Plaintiff Conley returned to cover the protests on the night of July 27. He was still using a large Micro Four Thirds camera with a telephoto lens and external 20W LED light mounted on it and wearing his photographer's vest and his helmet that said "PRESS" across the front. (Conley Decl. ¶¶ 2, 22) He was, again, plainly a member of the press.

Just before 1:00 a.m. on July 28, federal agents—again—intentionally shot Mr. Conley and threw tear-gas canisters and flashbangs directly at him. (*Id.* ¶ 19.) Even once Mr. Conley moved to the side, and there was nobody else near him, a federal agent threw another flashbang directly at him. (*Id.* ¶ 20.) Mr. Conley was hit multiple times, rearranging the "PRESS" stickers on his helmet, and he is having trouble walking today. (*Id.* ¶¶ 19, 22, 25.)

## II. THE COURT SHOULD GRANT PLAINTIFFS RELIEF

District courts have broad power to enforce their orders. They may issue penalties "designed to compel compliance with [their orders] or to compensate the contemnor's adversary for any damages resulting from the contemptuous behavior." *Welch v. Frederickson*, No. 07-CV-1185-AC, 2008 WL 2185213, at *2 (D. Or. May 22, 2008); *see also Int'l Union v. Bagwell*, 512 U.S. 821, 827 (1994) ("The paradigmatic coercive, civil contempt sanction . . . involves confining a contemnor indefinitely until he complies with an affirmative command"); *J.L. v. Cuccinelli*, 2020 WL 2562895, at *3 (N.D. Cal. Feb. 20, 2020) (holding Defendant DHS, Acting Deputy Secretary of Homeland Security Ken Cuccinelli, and Acting Secretary of Homeland Security Chad Wolf in contempt), *modified on reconsideration*, 2020 WL 2562896 (N.D. Cal.

PAGE 16 - MOTION FOR CONTEMPT & SANCTIONS AGAINST FEDERAL DEFENDANTS

Mar. 27, 2020) (observing that sanctions caused DHS and Cuccinelli to return three removed class members). When less intrusive measures fail, courts may use "more intrusive measures" to enforce the rights of parties before them. *Stone*, 968 F.2d at 861 (collecting cases). Courts also have power to grant attorney's fees as a sanction for civil contempt. *Nat'l Comm'n for Certification of Crane Operators, Inc. v. California Crane Sch., Inc.*, 470 F. App'x 698, 700 (9th Cir. 2012).

### A. The Court Should Prohibit the Agents Involved from Participating in Any Armed Operations Within the District of Oregon

If the agents who shot, pepper-sprayed, and intimidated journalists above have proven one thing, it is that they cannot be trusted to carry firearms of any type. In the five nights since this Court issued its TRO, they have managed to shoot at least eight clearly marked journalists and legal observers, one on multiple occasions.[5] (Levinson Decl. ¶ 5; Ellis Decl. ¶ 4; Mahoney Decl. ¶ 5; Conley Decl. ¶ 7; Nicholson Decl. ¶ 5; Elsesser Decl. ¶¶ 4-6; Hollis Decl. ¶ 7.) Nor can they be trusted with other crowd-control devices like pepper spray and tear gas. (Conley Decl. ¶¶ 9-10, 12-14; Mahoney Decl. ¶ 12; Knivila Decl. ¶¶ 9-10; Grinnell Decl. ¶¶ 3-4, 8.) The Court has tried the lesser remedy of simply ordering them to stop violating Plaintiffs' First Amendment rights; now it is time for stronger medicine. *See Stone*, 968 F.2d at 861. The only remedy that will actually prevent further violations of the Court's TRO is to take these federal agents off the streets. Accordingly, the Court should order that each federal agent in the supporting declarations who violated the Court's TRO be identified, personally appear, and be prohibited from participating in any armed operations within the District of Oregon.

---

[5] They have, in fact, shot many more journalists and legal observers. The shootings discussed in this brief are merely some of the ones that are clearly and convincingly intentional and not supposedly "incidental" to the unnecessary violence perpetrated by the federal agents. *Cf, e.g.*, @GriffinMalone6, Twitter (July 25, 2020, 3:15 A.M.), https://twitter.com/GriffinMalone6/status/1286968297980755968 (showing a federal agent shooting a journalist, apparently in response to a water bottle thrown from almost 180 degrees in the opposite direction).

PAGE 17 - MOTION FOR CONTEMPT & SANCTIONS AGAINST FEDERAL
             DEFENDANTS

Furthermore, the Court is entitled to order "more intrusive measures" to enforce Plaintiffs' rights if the federal defendants do not respond to less restrictive orders. *Stone*, 968 F.2d at 861 (collecting cases). Plaintiffs ask that the Court consider issuing a complete ban on the federal defendants' use of lethal or "less lethal" weapons in the District of Oregon if they remain unwilling to comply with the Court's orders.

> B.  **The Court Should Order the Federal Agents' Supervisors to Appear and Show Cause as to Why They Are Not in Contempt**

The Court should order that the Federal Agents' commanding officers personally appear and show cause why they should not be held in contempt and sanctioned for willfully violating the Court's TRO. The Court specifically ordered that the TRO be distributed to "all employees, officers, and agents of the Federal Defendants with any supervisory or command authority over any" federal agent deployed to Portland, including Attorney General Bill Barr and Acting Secretary of Homeland Security Chad Wolf, and that those supervisory officials could be liable for a willful violation of the TRO. (Dkt. 84 ¶ 7.) As shown above, Plaintiffs have proffered clear and convincing evidence that the federal agents committed acts of contempt—which are still ongoing—after the Court ordered that all the federal agents' supervisors be placed on notice of the TRO. Accordingly, the federal agents' supervisors L. Eric Patterson, Richard K. Cline, Mark Morgan, Robert Perez, Rodney Scott, Raul Ortiz, Matthew Albence, Derek Benner, Donald W. Washington, Derrick Driscoll, Chad Wolf, and Ken Cuccinelli should be ordered to appear and show cause why they should not be sanctioned for contempt. *See, e.g.*, *J.L*, 2020 WL 2562895, at *3 (N.D. Cal. Feb. 20, 2020) (holding Wolf and Cuccinelli in contempt for DHS's removal of juvenile class members in violation of a preliminary injunction); *see also Baez-Sanchez v. Barr*, 947 F.3d 1033, 1035-36 (7th Cir. 2020) (observing that individual members of the Board of Immigration and Appeals who "refused to implement" the Seventh Circuit's decision "must count themselves lucky that Baez-Sanchez has not asked us to hold them in contempt, with all the consequences that possibility entails").

Furthermore, Plaintiffs ask that the Court consider the "more intrusive measure" of holding Attorney General William Barr in contempt if they remain unwilling to comply with the Court's orders. (*See* Dkt. 84 ¶ 7 (providing that both Wolf and Barr are responsible for compliance with the Court's TRO).)

### C. The Court Should Issue Coercive Fines and Award Plaintiffs Their Attorney's Fees

Finally, coercive fines and attorney's fees are standard remedies for contempt of court and the Court should order the federal defendants to pay them in an amount to be determined. *Welch*, 2008 WL 2185213, at *2; *Nat'l Comm'n for Certification of Crane Operators*, 470 F. App'x at 700. For coercive sanctions, Plaintiffs suggest that the federal defendants be ordered to pay $500 for every day a journalist or legal observer is shot, beaten arrested, or intimidated by a federal agent. *See J.L*, 2020 WL 2562896, at *1-*2 (observing that that amount was "warranted to ensure Defendants' compliance posthaste, especially in light of the continuing harm suffered by the class members").

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court find the federal defendants in contempt and issue sanctions against them.

Dated: July 28, 2020

Respectfully Submitted,

By: /s/ Matthew Borden
Matthew Borden, *pro hac vice*
J. Noah Hagey, *pro hac vice*
Athul K. Acharya, OSB No. 152436
Gunnar K. Martz, *pro hac vice*
BRAUNHAGEY & BORDEN LLP

Kelly K. Simon, OSB No. 154213
ACLU FOUNDATION OF OREGON

*Attorneys for Plaintiffs*