ETHAN P. DAVIS
Acting Assistant Attorney General
BILLY J. WILLIAMS
United States Attorney
DAVID M. MORRELL
Deputy Assistant Attorney General
ALEXANDER K. HAAS
Director, Federal Programs Branch
BRIGHAM J. BOWEN
Assistant Director, Federal Programs Branch
ANDREW I. WARDEN (IN #23840-49)
Senior Trial Counsel
JEFFREY A. HALL
KERI L. BERMAN
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20530
Tel.:    (202) 616-5084
Fax:    (202) 616-8470

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| INDEX NEWSPAPERS, LLC, *et al.*, <br><br> Plaintiffs. <br><br> v. <br><br> CITY OF PORTLAND, *et al.*, <br><br> Defendants. | Case No. 3:20-cv-1035-SI <br><br> **FEDERAL DEFENDANTS' MOTION FOR RECONSIDERATION OF TEMPORARY RESTRAINING ORDER ENJOINING FEDERAL DEFENDANTS** |

## DECLARATION OF ANDREW SMITH

1. I am employed by the United States Department of Justice, United States Marshals Service (USMS), as the Assistant Director for the Tactical Operations Division (TOD). I have held this position since December 2019, and I have been employed by the USMS since November 1996.

2. I base this declaration on my personal observations and experience, as well as documents and information provided to me in the ordinary and regular course of business.

3. USMS TOD is committed to leading the way in crisis response, organizational sustainability, and tactical operations in the face of law enforcement and natural disaster challenges that confront the United States. This is accomplished by protecting America through constant readiness, incident management, operations, and training critical to mission success. TOD programs are national in scope and in many cases extend internationally and are designed to preserve the rights of Americans and maintain the fabric of our society. TOD staff protects the Judiciary, responds to national emergencies and crises involving Homeland Security, and supports USMS operations spanning a wide and varied range of federal law enforcement missions ordered by the President and the United States Attorney General.

4. TOD serves as a point of contact between the Office of the Director, Districts, Headquarters Divisions and other Agencies to coordinate and implement operational matters when the USMS Director authorizes a special law enforcement assignment, a crisis arises, or there is a security mission. In these situations, TOD carries out the Director's orders.

5. Within TOD is the USMS's Special Operations Group (SOG). SOG is a specially trained, rapidly deployable law enforcement element of the USMS. SOG is capable of conducting complex and sensitive operations throughout the globe in furtherance of the rule of law. SOG leverages its enhanced capabilities in support of the USMS's mission through the Department of Justice, to protect and defend, the federal judicial system and enforce its orders and mandates. SOG provides a rapid and dynamic response to national emergencies, civil disturbances and acts of terrorism, including theater-level operational security expertise, local government guidance and tactical leadership in civil disturbance/crowd control, Search and Rescue (SAR), Emergency Medicine, and the protection of critical infrastructure, as directed by the Attorney General. SOG's mission includes, among other things, providing impenetrable, immediate and decisive response to active and sustained threats to protected individuals or structures.

6. SOG personnel have been deployed to Portland, Oregon, to assist the local USMS District Office, as well as personnel from the Department of Homeland Security, in safeguarding the court family and the United States Federal Courthouse in response to violent attacks during orchestrated protests. The environment in which this is all developing is extremely chaotic and dynamic. This requires split second decision making in response to violence against law enforcement personnel and federal property. The

crowds involved have ranged from 2,000-8,000 individuals. Law enforcement personnel must wear gas masks, which impede their view. Additionally, because of the nature of the tear gas being deployed, the masks often fog, which further diminishes visibility. Significantly, green lasers have been directed at USMS personnel by criminal elements within the group of protestors, which raise concerns over the health and safety of law enforcement personnel.

7. Ordinarily, USMS personnel work cooperatively and closely with local law enforcement. Local law enforcement are assigned to the USMS tasks forces throughout the country. When there is a crisis, local law enforcement assist the USMS with control of the situation. Generally, local law enforcement would provide support with their civil disturbance units and other specialized tools. Here, the lack of cooperation from local law enforcement in Portland, Oregon - prior to the recent announcements of planned increased involvement - has significantly hampered the ability to quell violent protests surrounding the courthouse. Local law enforcement has not assisted at all to help quell the violence. In fact, the local police have removed the USMS from the command post, removed local officers from our task force, and the City Council has apparently passed a resolution to preclude seeking assistance from the Federal Government. There is a local group providing food and water to the protesters, using multiple propane tanks in the park area near the courthouse without any supervision from the local authorities. Notably, when notified by the USMS recently about a fire set off on nearby public property, USMS personnel watched as the fire department drove by the fire without responding to the fire.

8. I also note that SOG personnel have reported that on or about the night of July 21-22, 2020, an adult male wearing black clothing with white lettering saying "PRESS" was on the periphery, as he walked toward law enforcement. As he walked along the line of law enforcement officers, he held a large, clear shield with what appeared to be a camera phone attached. This individual did not move back when directed by SOG members. Rather, he moved even closer and made contact with those officers. Several SOG members were required to take custody of the individual. It was later discovered that this individual was in possession of a pistol. He was arrested at the scene.

9. In my role as AD, I have been advised that, recently, criminal elements have intensified their efforts to dismantle the fence in front of the federal courthouse. Specifically, in a well-coordinated effort, an individual with a battery-operated grinder ran toward the fence and hid behind a jersey barrier. A second team then ran towards that same area with shields to protect the person who wielded the grinder. A third group then came in with umbrellas to help conceal what was happening. At that point, the original individual with the grinder began cutting away the perimeter fence.

10. According to USMS personnel on location in Portland, Oregon, who are assigned to monitor USMS cameras as well as open source intelligence, at approximately 4 a.m. on July 28, 2020, an individual dressed in black with a helmet bearing the word "press" was observed using a grinder to vandalize and compromise the secure perimeter of the courthouse. While unable to act quickly enough to take a photograph or video to record what he observed in real-time, the deputy was able to capture a photograph of the individual vandalizing the courthouse while wearing a helmet with a portion of the word "press" visible. This type of activity facilitates violence against the judiciary, courthouse,

and law enforcement personnel, and hinders the USMS's ability to discern legitimate journalists from imposters bent on engaging in criminal activity.  The photograph is attached hereto as Exhibit A.

11. Attached hereto as Exhibits B and C are screenshots from a live open source feed from approximately 12:30 a.m. on July 29, 2020, of an individual that that reflect an individual dressed in black, wearing "press" identification on his helmet, who breached the security barrier by jumping the perimeter fence.

12. On the morning of July 29, 2020, USMS personnel observed from a live open source, an individual near the perimeter fence confronting federal officers and wearing clothing that appears to be marked with medic identification. https://www.facebook.com/deidrarose.watts.1/videos/192707298876699/?extid=r7I9b4Xo4DJIP8rc

13. On the morning of July 29, 2020, USMS personnel observed from an open source feed video of an individual wearing a backpack marked by a large red cross that appears to be a medic identification hitting an active tear gas canister towards federal officers with a hockey stick. https://twitter.com/MrOlmos/status/1288410503664947205

14. Attached as Exhibit D is a still photograph taken from live stream open sources at approximately 11:20 p.m. on July 29, 2020, showing an individual with "press" identification assisting a protestor in breaching the security perimeter of the courthouse.

15. Our SOG personnel have reported having items thrown at them (including trash ignited by fireworks) while guarding the perimeter of the courthouse.  I have also received a report of at least one staff member who was kicked by someone identified with "press" credentials.

16. The foregoing examples are the types of the incidents that have led to dangerous conditions which compromise the  safety and security of USMS and other law enforcement personnel who are executing the duties of the USMS in furtherance of its mission to protect the Federal Courts and the Judiciary.

17. The USMS received a copy of the temporary restraining order (TRO) on July 23, 2020, the day it was entered.  The same evening, the USMS Director, the Office of General Counsel, and I ensured that the TRO was circulated to USMS supervisors and employees in Portland, Oregon.  Thereafter, the TRO, accompanied by an explanatory cover memorandum, was distributed by the USMS Director and Office of General Counsel to staff stationed in and/or deployed to Portland, Oregon.

18. Additionally, the USMS employees on the ground in Portland received a briefing from the U.S. Attorney's Office regarding implementation of the TRO.  The USMS has confirmed this briefing with US Marshal Russel Burger, the United States Marshal appointed for the District of Oregon and all onsite commanders.  Those are the on-site officials in charge of the USMS mission in Portland protecting the Hatfield Federal Courthouse,.  The on-site SOG commanders under my supervision have ensured delivery and directives to on-site

operational personnel.  All Deputy US Marshals assigned to this protection have been provided a copy of the TRO, have received a detailed written notice of its contents and requirements, and have been instructed as to their requirements under the TRO.  In the course of their protective duties, when an issue arises as to compliance with the TRO, the Deputy's supervisor is informed, and the matter is resolved.  Supervisors are aware of the TRO's requirements and are assisting their employees in compliance.

19. The USMS has received Plaintiffs' seven allegations (a)-(g) of breach of the TRO.  After carefully reviewing the allegations, reviewing all available documented incidents of confrontations with protestors, and discussing the events with commanders on scene, the USMS can confirm that there are no incidents a-f that correlate with any USMS participation.  Further, the USMS notes that USMS operational personnel do not use the specific dispersal tools referenced in those allegations.  While there is a possibility that the allegations in (g) correlate with the USMS's general understanding of documented general interactions with protestors based upon disturbances created by the protestors, because of the volume of incidents incited by protestors and rapidly evolving law enforcement response, the USMS cannot determine with any specificity if they witnessed or participated in the particular allegation.  The USMS continues to review any documented occurrences of disruption caused by the protestors and the USMS response thereto.

I declare under the penalty of perjury pursuant to 28 U.S.C. §1746 that the foregoing is correct and true to the best of my knowledge

Andrew Smith, Assistant Director
Tactical Operations Division
United States Marshals Service

Date:  July 30, 2020