ETHAN P. DAVIS
Acting Assistant Attorney General
BILLY J. WILLIAMS
United States Attorney
DAVID M. MORRELL
Deputy Assistant Attorney General
ALEXANDER K. HAAS
Director, Federal Programs Branch
BRIGHAM J. BOWEN
Assistant Director, Federal Programs Branch
ANDREW I. WARDEN
Senior Trial Counsel
JEFFREY A. HALL
JORDAN L. VON BOKERN (DC 1032962)
KERI L. BERMAN
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20530
Tel.:    (202) 305-7919
Fax:    (202) 616-8460

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| INDEX NEWSPAPERS, LLC, *et al.*, <br><br> Plaintiffs. <br><br><br> v. <br><br> CITY OF PORTLAND, *et al.*, <br><br> Defendants. | Case No. 3:20-cv-1035-SI <br><br> **FEDERAL DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MEMORANDUM IN SUPPORT OF EXTENDING AND MODIFYING THE TEMPORARY RESTRAINING ORDER** |

## INTRODUCTION

The question before the Court is whether good cause exists to extend the Temporary Restraining Order.  There is none.  The premise of Plaintiffs' request for emergency injunctive relief is that they face irreparable harm as self-identified journalists and legal observers, because they claim they will be targeted by federal law enforcement officers protecting the Hatfield Courthouse.  That is, *if* protests continue, and *if* those protests turn violent, and *if* Plaintiffs are present, and *if* federal, rather than local, police are engaged with the violent opportunists among the protestors, and *if* those officers, at a future moment, engage in riot control actions, such as less-than-lethal force, and *if* Plaintiffs are in the vicinity of the opportunists, and *if* those officers, notwithstanding clear instructions from the chain of command not to target individuals for exercising First Amendment rights when engaging in law enforcement activities, decide to target Plaintiffs, *then* they will be harmed, through injury or impediment to their reporting or observing activities.  This chain of hypotheticals falls well short of the standards for forward-looking injunctive relief set forth in the case law.  To the extent that prospective injunction may ever issue against future law enforcement activities, *see City of Los Angeles v. Lyons*, 461 U.S. 95, 104 (1983), this is not such a case, and even if there was good cause to enter the TRO on July 23, which Federal Defendants continue to dispute, good cause is utterly lacking now.

## ARGUMENT

### I.   PLAINTIFFS' REQUEST FOR FURTHER INJUNCTIVE RELIEF FAILS TO ESTABLISH STANDING OR A LIKELIHOOD OF IRREPARABLE HARM, AND IS MOOT.

Plaintiffs' request for further injunctive relief has numerous deficiencies that make such relief inappropriate: Plaintiffs lack Article III standing to pursue injunctive relief, because they have failed to show that future harm is certainly impending. They also cannot show a likelihood

FEDERAL DEFENDANTS' RESPONSE IN OPPOSITION – 1

of irreparable harm absent injunctive relief. And, relatedly, their claims for injunctive relief are moot.

Plaintiffs' lack of standing and failure to satisfy the emergency-relief standard were present at the outset of the case, but they have been made only more apparent during the past week. The assumption of responsibility for policing the area around the Hatfield Courthouse by Oregon and local police has coincided with a drop in federal law enforcement engagement with protesters nearly to zero, and it has also mooted Plaintiffs' request for injunctive relief. Regardless of whether the TRO was justified when it was first issued, Plaintiffs agree that the appropriateness of extending the TRO must be evaluated on its own merits (ECF No. 112 at 7), and Plaintiffs fail to carry their burden.

Plaintiffs' first problem is that they lack Article III standing to pursue injunctive relief because, setting aside the hypothetical nature of their claims of injury if federal officers were policing the protests outside the Courthouse, the state of Oregon's resumption of its policing responsibility has drastically reduced the chance that Federal Defendants will again need to respond to unchecked violent protests threatening federal property. As the Supreme Court held in *Whitmore v. Arkansas,* 495 U.S. 149 (1990), allegations of possible future injury do not satisfy the requirements of Article III. A threatened injury must be "certainly impending" to constitute injury in fact, which is more than a mere reasonable likelihood based on a chain of probabilities. 495 U.S. at 158 (quoting *Babbitt v. United Farm Workers*, 442 U.S. 289, 298 (1979)); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013). As a result, in order to invoke Article III jurisdiction, a plaintiff in search of prospective equitable relief must show a significant likelihood and immediacy of sustaining some direct injury. *Updike v. Multnomah Cty.*, 870 F.3d 939, 947 (9th Cir. 2017) ("[S]tanding for injunctive relief requires that a plaintiff show a 'real

FEDERAL DEFENDANTS' RESPONSE IN OPPOSITION – 2

and immediate threat of repeated injury.'" (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974))).

There is no evidence of a "certainly" impending future injury. As documented in Federal Defendants' opposition brief filed yesterday, ECF No. 113, the resumption of ordinary policing by the state and local governments has eliminated federal law enforcement officers' need to interact with protesters outside of the courthouse. Since the afternoon of July 30, federal law enforcement officers have not used force against any protesters, have not deployed crowd-control methods in response to the protests, and have left the building during the nightly protests only to extinguish two small fires. *Id.* at 7. This is not merely happenstance or a consequence of the original TRO; it is the result of state and local police resuming their ordinary policing responsibilities, as part of the plan that DHS and the state of Oregon agreed to. *Id.* at 5–6. As shown by the actions of all involved parties, that plan—publicly announced by both DHS and the state of Oregon—is not "self-contradictory statements emanating from the Trump propaganda machine." ECF No. 112 at 6. The sole evidence of alleged harm that Plaintiffs offer in their new filing concerns events prior to the afternoon of July 30,[1] over *five days* before their filing, and those declarations say nothing to contradict that state and local police, not federal law enforcement officers, are responsible for policing the violent protests that declarants were attending. These allegations of past harm relate to a law enforcement function that Federal Defendants no longer need fulfill, and are insufficient to show an entitlement to prospective relief. *See Lyons*, 461 U.S. at 104 ("That Lyons may have been illegally choked by the

---

[1] ECF 115 ¶ 6 ("Around 12:30 a.m. on July 30"); ECF No. 116 ¶ 5 ("On the night of July 21"); ECF No. 117 ¶ 10 ("In the early morning of July 27"); ECF No. 118 ¶ 5 ("By the early hours of July 27").

FEDERAL DEFENDANTS' RESPONSE IN OPPOSITION – 3

police . . . , while presumably affording Lyons standing to claim damages . . . does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part."); *O'Shea*, 414 U.S. at 495–96. Because Plaintiffs have alleged only that they suffered injury in the past under a materially different set of circumstances, they cannot carry their burden to show standing for purely speculative future harms.

Indeed, by the time the TRO has lapsed, the new arrangement between federal and state law enforcement will have been in effect for a full week, meaning that for *half* of the life of the original TRO, the circumstances on which it was predicated will have been absent. There is no evidence supporting the conclusion that federal officers will "certainly" engage with crowds in the next two weeks as they did prior to the afternoon of July 30, much less that journalists covering such an event would have their First Amendment rights violated. Plaintiffs therefore lack standing to request continuation of the TRO.

Plaintiffs' second problem is that they cannot show a likelihood of irreparable harm, which is necessary to any claim for preliminary injunctive relief, including a TRO. *See Pac. Kidney & Hypertension, LLC v. Kassakian*, 156 F. Supp. 3d 1219, 1222 (D. Or. 2016) (holding that the standard for a temporary restraining order is generally the same as for a preliminary injunction). Plaintiffs' failure to demonstrate Article III standing for injunctive relief prevents any potential showing of irreparable harm; because standing is a prerequisite to the Court's exercise of jurisdiction, *see Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014), Plaintiff's claims on the merits have no likelihood of success if Plaintiffs cannot establish standing. *Id.* at 158 ("The party invoking federal jurisdiction bears the burden of establishing

FEDERAL DEFENDANTS' RESPONSE IN OPPOSITION – 4

standing" and must do so "the same way as any other matter on which the plaintiff bears the

burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of

the litigation.") (internal quotations and citations omitted). Plaintiffs' factually unfounded

speculation about future law enforcement actions is not sufficient to demonstrate that any

Plaintiff will "likely" suffer irreparable harm absent a TRO extension. *Winter v. Nat. Res. Def.*

*Council, Inc.,* 555 U.S. 7, 20 (2008).

    Plaintiffs' third problem is that the changed situation in Portland has mooted any

entitlement they may have previously had to injunctive relief. *See, e.g.*, *Bayer v. Neiman Marcus*

*Grp., Inc.*, 861 F.3d 853, 864 (9th Cir. 2017) ("[A] claim for injunctive relief becomes moot

once subsequent events have made clear the conduct alleged as the basis for the requested relief

'could not reasonably be expected to recur.'"). The uncontroverted factual record produced by

Federal Defendants shows that state and local police, not federal law enforcement officers, are

now responsible for policing the riots that Plaintiffs attend. Their claim for injunctive relief

against Federal Defendants relies on predicting a complete change in the roles of federal, state,

and local law enforcement, which they have not shown is remotely likely.

    Plaintiffs attempt to inflate the standard for showing mootness, demanding an

"unequivocal promise that the federal agents plan to leave Portland and never return." ECF No.

112 at 10. But that assertion regarding mootness gets both the law and Plaintiffs' own case

wrong. On the law, Defendants do not need to show mootness in the first place; Plaintiffs must

show good cause for extending the TRO. In any event, Plaintiffs are wrong that mootness

requires some ironclad guarantee that it is impossible the predicted harm will ever occur under

any circumstances. Instead, Federal Defendants must show that "any alleged future harm … is

'so remote and speculative that there is no tangible prejudice to the *existing interests* of the

FEDERAL DEFENDANTS' RESPONSE IN OPPOSITION – 5

parties.'" *Feldman v. Bomar*, 518 F.3d 637, 643 (9th Cir. 2008) (emphasis in original) (quoting

*Headwaters, Inc. v. Bureau of Land Management*, 893 F.2d 1012, 1015 (9th Cir. 1989)). As

discussed in Federal Defendants' brief yesterday, ECF No. 113, the changed circumstances make

the risk of future harm to any Plaintiff—over the fourteen days after Thursday, August 6, 2020—

a remote and speculative theoretical possibility at the end of a long chain of suppositions and

contingencies. That is enough to moot their claim for injunctive relief.

On the nature of this case, Plaintiffs are also mistaken. They obtained the TRO on the

Nor is this the doctrine of voluntary cessation applicable in this case. Federal Defendants

are not relying on a "voluntary cessation of a challenged practice" to claim mootness. *City of

Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). Instead, because state and local law

enforcement agencies have resumed their traditional duties of responding to criminal activity, it

is highly speculative that Federal Defendants will ever need to reengage with violent protesters

around the federal courthouse in the manner that Plaintiffs challenge. Federal Defendants have

not ceased responding to claims of violent protests *because of* Plaintiffs' legal claims; an

intervening change of policy by state and local police law enforcement means that state and local

police are responding to any protest activities.

On the nature of this case, Plaintiffs are also mistaken. They obtained the TRO on the

basis of allegations that federal law enforcement officers were not sufficiently deferential to

members of the press and legal observers in the violent protests surrounding the federal

courthouse. Yet now that state and local police have resumed policing those violent protests

(with their own policies, including an injunction governing their conduct), and federal law

enforcement officers have ceased doing so, Plaintiffs' new theory of the case is that federal

officers shouldn't even be permitted in the state—or, at least, should be confined to the buildings

that protesters are trying to burn down. That new theory, unsupported by any legal or factual

FEDERAL DEFENDANTS' RESPONSE IN OPPOSITION – 6

basis, is an eleventh hour reimagining of their claims and this litigation that cannot breathe new life into their moot request. Even though Plaintiffs' latest filing shows that they view this case as a means of driving federal law enforcement officers from the state, that was not the asserted basis of their claims, so they cannot now defeat mootness by showing that USMS and DHS are still present in the state of Oregon.

In sum, Plaintiffs seek to extend the TRO on the basis of a harm that, if it ever existed, has now dissipated. They retain nothing more than a generalized concern that federal law enforcement officials might one day be deployed in some manner with which they disagree. But the mere fear of a speculative future harm is not enough to make a failed claim for injunctive relief into a live one. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) (plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending"). Federal law enforcement's engagement with the protests around the federal courthouse has shrunk so much that a claim for injunctive relief for the next two weeks cannot rest upon it.

## II. THE COURT SHOULD REJECT PLAINTIFFS' DEMAND THAT FEDERAL OFFICERS BE CONFINED TO THE COURTHOUSE.

Federal Defendants note that, in their recent filing, Plaintiffs raise the outlandish request that the Court curtail federal officers' ability to leave federal property. ECF No. 112 at 13–14. This incursion into federal officers' movements, and impediment to their ability to perform all aspects of their lawful duties, beyond merely the ability to respond to threats to themselves and to federal property from outside the Courthouse, is grounded in no harms plausibly demonstrated by Plaintiffs, and no law. It would also run directly counter to DHS's statutory authority to "conduct investigations, on and off the property in question, of offenses that may have been committed against property owned or occupied by the Federal Government or persons on the

FEDERAL DEFENDANTS' RESPONSE IN OPPOSITION – 7

property." 40 U.S.C. § 1315(b)(2)(E); *see also* ECF No. 67 at 6–7 (discussing DHS's statutory

authority).  The Court should deny this request.

III.    **FEDERAL DEFENDANTS DIRECT THE COURT TO THEIR PRIOR FILINGS REGARDING THE COURT'S PROPOSED MODIFICATIONS TO THE TRO.**

Finally, Defendants respectfully direct the Court to their prior filings, including

declarations, for their response to the Court's proposed modifications to the TRO.  As noted

therein, the Court's proposal for identifying federal officers via numbering designations is

unnecessary, *see* Part I, *supra*, and unworkable.

## <u>CONCLUSION</u>

To the extent injunctive relief was ever proper in this matter, and Defendants dispute that

it was, the Court should now decline to extend or modify the TRO.

Dated:  August 5, 2020

ETHAN P. DAVIS
Acting Assistant Attorney General

BILLY J. WILLIAMS
United States Attorney

DAVID M. MORRELL
Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

BRIGHAM J. BOWEN
Assistant Director, Federal Programs Branch

ANDREW I. WARDEN
Senior Trial Counsel

JEFFREY A. HALL
Jordan L. Von Bokern
JORDAN L. VON BOKERN (DC 1032962)
KERI L. BERMAN
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20530
Tel.:    (202) 305-7919
Fax:    (202) 616-8460

*Attorneys for Defendants*

FEDERAL DEFENDANTS' RESPONSE IN OPPOSITION – 9