# EXHIBIT 4

ETHAN P. DAVIS
Acting Assistant Attorney General
BILLY J. WILLIAMS
United States Attorney
DAVID M. MORRELL
Deputy Assistant Attorney General
ALEXANDER K. HAAS
Director, Federal Programs Branch
JOSHUA E. GARDNER
Special Counsel
BRIGHAM J. BOWEN
Assistant Director, Federal Programs Branch
ANDREW I. WARDEN (IN #23840-49)
Senior Trial Counsel
JEFFREY A. HALL
KERI L. BERMAN
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20530
Tel.:   (202) 616-5084
Fax:   (202) 616-8470

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| INDEX NEWSPAPERS, LLC, *et al.*, <br><br> Plaintiffs. <br><br> v. <br><br> CITY OF PORTLAND, *et al.*, <br><br> Defendants. | Case No. 3:20-cv-1035-SI <br><br> **DEFENDANT U.S. DEPARTMENT OF HOMELAND SECURITY OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF EXPEDITED REQUESTS FOR ADMISSIONS TO DEFENDANT U.S. DEPARTMENT OF HOMELAND SECURITY** |

Pursuant to Federal Rule of Civil Procedure 36, Defendant United States Department of Homeland Security, by and through undersigned counsel, hereby submit the following objections and responses to Plaintiffs' First Set of Expedited Requests for Admissions.

**REQUEST FOR ADMISSION NO. 1:**

Admit that **you** have not done any investigation into whether **your** officers retaliated against any of the individuals who submitted declarations in support of the **TRO**.

**RESPONSE:**

Admit in part and deny in part. By way of further response, DHS admits that it has not conducted any investigations into our officers retaliating against any individual who submitted declarations in support of the TRO, but denies the remainder of Request for Admission No. 1 because DHS is unaware of any credible allegations that its officers have retaliated against any individual who submitted declarations in support of the TRO, and therefore an investigation is unnecessary.

**REQUEST FOR ADMISSION NO. 2:**

Admit that **your** officers deployed in Portland, Oregon, have not had training **related to** differentiating among (1) protesters, (2) rioters, and (3) people present for other reasons, such as journalists, legal observers, medics, and clergy.

**RESPONSE:**

DHS objects to this request on relevance ground because Plaintiffs' complaint does not concern medics or clergy. DHS's response is limited to journalists and legal observers. With that limitation, Deny. DHS Law Enforcement Officers receive training in the First Amendment and are trained to treat peaceful protestors or peaceful observers, regardless of their roles, differently than individuals who engage in unlawful conduct that threatens persons or property.

**REQUEST FOR ADMISSION NO. 3:**

Admit that **your** officers deployed in Portland, Oregon have not had training **related to** the proportional use of force in crowd control situations.

**RESPONSE:**

Deny. All DHS Law Enforcement Officers are trained in the reasonable use of force

**REQUEST FOR ADMISSION NO. 4:**

Admit that **you** do not have any policies related to differentiating among (1) protesters, (2) rioters, and (3) people present for other reasons, such as journalists, legal observers, medics, and clergy.

**RESPONSE:**

DHS objects to Request for Admission No. 4 on relevance grounds because Plaintiffs' complaint does not concern medics or clergy. DHS's response is limited to journalists and legal observers. With that limitation, DHS admits in part, denies in part. By way of further response, DHS admits that it does not have policies that differentiate between protesters, rioters, and people present for other reasons, such as journalists or legal observers. DHS denies the remainder of Request for Admission No. 4 to the extent that it suggests DHS does not have policies in place that protect the rights of individuals to lawfully protest, regardless of the role those individuals have during a protest, provided they engage in lawful protest and not engage in unlawful conduct that may threaten persons or property. DHS further avers that it does have policies that distinguish between lawful protestors and those that engage in unlawful conduct.

**REQUEST FOR ADMISSION NO. 5:**

Admit that prior to the **TRO**, **you** did not direct **your** officers to exempt journalists and legal observers from dispersal orders, tear gas, munitions, and other crowd control techniques.

**RESPONSE:**

Admit in part and deny in part. By way of further response, DHS admits that before the issuance of the TRO, DHS did not direct its officers to exempt journalists and legal observers from dispersal orders, tear gas, munitions, and other crowd control techniques. DHS denies the remainder of Request for Admission No. 5 to the extent that it suggests that before the issuance of the TRO, DHS directed its officers to direct dispersal orders, tear gas, munitions, and other crowd control techniques at journalists and legal observers. DHS officers are trained to only use force as is reasonable to the situation and does not take into account the role that an individual has at a protest, but rather whether that individual is engaging the lawful freedom of expression or unlawful conduct that may threaten persons or property

**REQUEST FOR ADMISSION NO. 6:**

Admit that prior to the TRO, **you** left how to treat journalists and legal observers at protests and/or situations **you** deemed to be a threat to federal property or a riot to the discretion of the officers deployed in Portland, Oregon.

**RESPONSE:**

Admit in part and deny in part. By way of further response, DHS admits that before the issuance of the TRO, DHS did not direct its officers to treat journalists and legal observers differently than any other individual engaged in lawful protest. DHS denies the remainder of Request for Admission No. 6 to the extent that it suggests that DHS permits its officers to treat journalists and legal observers in an improper manner. DHS officers are trained to only use force as is reasonable to the situation and does not take into account the role that an individual has at a protest, but rather whether that individual is engaging in the lawful freedom of expression or unlawful conduct that may threaten persons or property.

**REQUEST FOR ADMISSION NO. 7:**

Admit that **you** have not done any study or investigation into whether journalists and legal observers pose a threat to **your** officers deployed in Portland, Oregon.

**RESPONSE:**

DHS objects to this request as vague. It is unclear what Plaintiffs mean by "study or investigation." To the extent DHS understands the request, DHS admits in part and denies in part. By way of further response, DHS admits that it has not conducted a study or investigation into whether journalists and legal observers pose a threat to DHS Law Enforcement Officers. DHS denies the remainder of the Request for Admission No. 7 to the extent that it suggests that DHS focuses on the conduct of journalists and legal observers as opposed to other individuals present at a protest. DHS investigates individuals it suspects of engaging in unlawful conduct that may threaten persons or property regardless of the role that an individual has at a protest.

**REQUEST FOR ADMISSION NO. 8:**

Admit that **you** have not started, conducted, or completed a study or investigation about formulating a crowd control policy that would safely allow both **your** officers, on the one hand, and journalists and legal observers, on the other, to do their respective jobs.

**RESPONSE:**

The department objects to this request as vague. It is unclear what Plaintiffs mean by "study or investigation." To the extent that DHS understands the question, DHS admits in part and denies in part. By way of further response, DHS admits that it has not conducted any study or investigation into formulating a crowd control policy focused specifically on journalists and legal observers. But DHS denies the remainder of Request for Admission No. 8 to the extent that it suggests that DHS should focus its policies on the identity of protest participants, such as journalists and legal observers, rather than focus its policies on protestor behavior, such as those engaged in lawful behavior during a protest and those that are violent or not law-abiding. DHS does not base its crowd control policies on the roles that individuals have at a protest. Instead, DHS develops its crowd control policy to allow all individuals who are lawfully exercising their First Amendment rights to do so in a safe and peaceful manner while at the same time preventing those individuals, regardless of their role at the protest, who are attempting to engage in unlawful conduct from doing so.

**REQUEST FOR ADMISSION NO. 9:**

Admit that **you** did not take any actions to comply with the **TRO**, since July 23, 2020, to the present.

**RESPONSE:**

Deny. Since the issuance of the TRO, DHS has taken considerable steps to ensure that its officers were aware of the TRO and that they understood the restrictions and requirements placed on them by the TRO.

**REQUEST FOR ADMISSION NO. 10:**

Admit that **you** have contracted with private security forces, including but not limited to Triple Canopy, Paragon Systems, Inc., and ZTI Solutions, to provide agents deployed to Portland, Oregon.

**RESPONSE:**

Admit in part and deny in part. By way of further response, DHS admits that it has contracted with a private security company, to wit: MaxSent in Portland, Oregon, but denies the remainder of Request for Admission No. 10 to the extent that it suggests that DHS contracted with any private security company to deploy agents to Portland, or that it has contracted with the other entities identified in this Request for Admission. DHS contracts with private security companies, through the Federal Protective Service, for contract security guards who provide day-to-day security in Portland federal building and control access to those buildings. The security guards are not law enforcement officers, do not engage in law enforcement activities, and have not been deployed in any manner suggested by Request for Admission No. 10.

**REQUEST FOR ADMISSION NO. 11:**

Admit that **you** have never disciplined any of **your** employees related to their treatment of a journalist or legal observer in Portland since May 26, 2020.

**RESPONSE:**

Admit in part and deny in part. By way of further response, DHS admits that it has not disciplined any of its employees related to their treatment of a journalist or legal observer in Portland since May 26, 2020, but denies the remainder of Request for Admission No. 11 to the extent it suggests that DHS has reason to discipline any of its employees related to their treatment of a journalist or legal observer in Portland since May 26, 2020. At present, although DHS continues to appropriately monitor and supervise the actions of all its employees, DHS is not aware of any actions related to DHS employee treatment of a journalist or legal observer in Portland since May 26, 2020 which presently warrant disciplinary action.

Dated:  August 4, 2020

          ETHAN P. DAVIS
          Acting Assistant Attorney General

          BILLY J. WILLIAMS
          United States Attorney

          DAVID M. MORRELL
          Deputy Assistant Attorney General

          ALEXANDER K. HAAS
          Director, Federal Programs Branch

JOSHUA E. GARDNER
Special Counsel, Federal Programs Branch

BRIGHAM J. BOWEN
Assistant Director, Federal Programs Branch

*/s/* Jordan L. Von Bokern
JORDAN L. VON BOKERN (DC 1032962)

ANDREW J. WARDNER (IN #23840-49)
Senior Trial Counsel
JEFFERY A. HALL
KERI L. BERMAN
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20530
Tel:   (202) 616-5084
Fax:  (202) 616-8470

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I certify that on this day, I served the foregoing Defendant U.S. Department of Homeland Security's Objections and Responses to Plaintiffs' First Set of Expedited Requests for Admissions via electronic mail on the following attorney of record:

Matthew Borden
Braunhagey & Borden LLP
351 California Street, Tenth Floor
San Francisco, CA 94104

This 4th day of August, 2020.

/s/ Joshua E. Gardner