**Matthew Borden**, admitted *pro hac vice*
borden@braunhagey.com
**J. Noah Hagey**, admitted *pro hac vice*
hagey@braunhagey.com
**Athul K. Acharya**, OSB No. 152436
acharya@braunhagey.com
**Gunnar K. Martz**, admitted *pro hac vice*
martz@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, Tenth Floor
San Francisco, CA 94104
Telephone: (415) 599-0210

**Kelly K. Simon**, OSB No. 154213
ksimon@aclu-or.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF OREGON
P.O. Box 40585
Portland, OR 97240
Telephone: (503) 227-6928

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **INDEX NEWSPAPERS LLC**, a Washington limited-liability company, dba **PORTLAND MERCURY**; **DOUG BROWN; BRIAN CONLEY; SAM GEHRKE; MATHIEU LEWIS-ROLLAND; KAT MAHONEY; SERGIO OLMOS; JOHN RUDOFF; ALEX MILAN TRACY; TUCK WOODSTOCK; JUSTIN YAU**; and those similarly situated, | Case No. 3:20-cv-1035-SI |
| Plaintiffs, | **DECLARATION OF ATHUL K. ACHARYA IN SUPPORT OF PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AGAINST FEDERAL DEFENDANTS** |
| v. | |
| **CITY OF PORTLAND**, a municipal corporation; **JOHN DOES 1-60**, officers of Portland Police Bureau and other agencies working in concert; **U.S. DEPARTMENT OF HOMELAND SECURITY**; and **U.S. MARSHALS SERVICE**, | |
| Defendants. | |

I, Athul K. Acharya, declare:

1.      I am an attorney at BraunHagey & Borden LLP and counsel of record for Plaintiffs.  I base this declaration on facts within my personal knowledge and if called upon to testify, I could and would testify competently thereto.

2.      Attached hereto as **Exhibit 1** is a true and correct copy of Defendant U.S. Marshals Service's Objections and Responses to Plaintiffs' First Set of Expedited Requests for Admissions to Defendant U.S. Marshals Service.

3.      Attached hereto as **Exhibit 2** is a true and correct copy of Defendant U.S. Marshals Service's Objections and Responses to Plaintiffs' Expedited First Set of Interrogatories to Defendant U.S. Marshals Service.

4.      Attached hereto as **Exhibit 3** is a true and correct copy of Defendant U.S. Department of Homeland Security Objections and Responses to Plaintiffs' First Set of Expedited Requests for Admissions to Defendant U.S. Department of Homeland Security.

5.      Attached hereto as **Exhibit 4** is a true and correct copy of Defendant U.S. Department of Homeland Security Objections and Responses to Plaintiffs' Expedited First Set of Interrogatories to Defendant U.S. Department of Homeland Security.

6.      Attached hereto as **Exhibit 5** is a true and correct copy of an email exchange between Acting Secretary of the Department of Homeland Security Chad Wolf, Stephen Miller, John Gountanis, and Chad Mizelle, dated 7/29/2020-7/30/2020, Bates-stamped Portland_00002168.

7.      Attached hereto as **Exhibit 6** is a true and correct copy of an email exchange between Acting Secretary of the Department of Homeland Security Chad Wolf, Chad Mizelle, Mark Morgan, Matthew Albence, Richard Cline, and Randolph Alles, dated 7/23/2020, Bates-stamped Portland_00005070-5071.

8.      Attached hereto as **Exhibit 7** is a true and correct copy of a media memorandum prepared for the Acting Deputy Secretary of the Department of Homeland Security, dated Monday, August 3, 2020, Bates-stamped Portland_00001345-1347.

9.      Attached hereto as **Exhibit 8** is a true and correct copy of an email from Acting Secretary of the Department of Homeland Security Chad Wolf to John Gountanis, dated 7/29/2020, Bates-stamped Portland_00006814.

10.     Plaintiffs served narrow document requests on the federal agents on July 25, two days after the Court authorized expedited discovery on July 23. For the next 13 days, Plaintiffs spent hours on the phone with the federal agents, and hours more emailing back and forth, further narrowing those requests. Finally, on August 7—just three days before Plaintiffs' opening brief was due on August 10—the federal agents produced a first tranche of documents, all of which were heavily and improperly redacted and none of which were custodial files. The federal agents did not produce custodial files until late on August 12, less than 48 hours before Plaintiffs' reply brief was due. Those too were heavily and improperly redacted. And the federal agents refused to produce custodial files from agents on the ground, which are likely to contain the most direct evidence of retaliatory intent, even though Plaintiffs repeatedly and unilaterally offered ways to narrow their requests for those files. A true and correct copy of Plaintiffs' correspondence with the federal agents on these matters is attached hereto as **Exhibit 9**.

11.     Attached hereto as **Exhibit 10** is a true and correct copy of an email exchange between Acting Secretary of the Department of Homeland Security Chad Wolf and Mark Morgan, dated 7/21/2020 to 7/22/2020, Bates-stamped Portland_000006826.

12.     Attached hereto as **Exhibit 11** is a true and correct copy of excerpts of the transcript from the deposition of Federal Protective Services Officer Badge 824, dated August 5, 2020.

13.     Attached hereto as **Exhibit 12** is a true and correct copy of excerpts of the transcript from the deposition of Customs and Border Protection Officer NZ-1, dated August 6, 2020.

14.     Plaintiffs are aware of instances in which Portland police officers have violated the Court's preliminary injunction in recent days. These events are under investigation and do not relate to workability. What is more, in contrast to the federal agents, the City is productively meeting and conferring with Plaintiffs on this issue.

I declare under penalty of perjury under the laws of United States of America that the foregoing is true and correct.

Dated:  August 14, 2020                  _____

                                                                 Athul K. Acharya

# EXHIBIT 1

ETHAN P. DAVIS
Acting Assistant Attorney General
BILLY J. WILLIAMS
United States Attorney
DAVID M. MORRELL
Deputy Assistant Attorney General
ALEXANDER K. HAAS
Director, Federal Programs Branch
JOSHUA E. GARDNER
Special Counsel
BRIGHAM J. BOWEN
Assistant Director, Federal Programs Branch
ANDREW I. WARDEN (IN #23840-49)
Senior Trial Counsel
JEFFREY A. HALL
KERI L. BERMAN
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20530
Tel.:    (202) 616-5084
Fax:     (202) 616-8470

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| INDEX NEWSPAPERS, LLC, *et al.*,<br><br>    Plaintiffs.<br><br>v.<br><br>CITY OF PORTLAND, *et al.*,<br><br>    Defendants. | Case No. 3:20-cv-1035-SI<br><br>**DEFENDANT U.S. MARSHAL SERVICE'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF EXPEDITED REQUESTS FOR ADMISSIONS TO DEFENDANT U.S. MARSHALS SERVICE** |

Pursuant to Federal Rule of Civil Procedure 36, Defendant United States Marshals Service

(USMS), by and through undersigned counsel, hereby submit the following objections and responses

to Plaintiffs' First Set of Expedited Requests for Admissions.

**REQUEST FOR ADMISSION NO. 1:**

Admit that **you** have not done any investigation into whether **your** officers retaliated
against any of the individuals who submitted declarations in support of the **TRO**.

**RESPONSE:**

Admit in part and deny in part.  By way of further response, USMS admits that it has not conducted
any investigations into our officers retaliating against any individual who submitted declarations in
support of the TRO, but denies the remainder of Request for Admission No. 1 because USMS is
unaware of any credible allegations that its officers have retaliated against any individual who
submitted declarations in support of the TRO, and therefore an investigation is unnecessary.

**REQUEST FOR ADMISSION NO. 2:**

Admit that **your** officers deployed in Portland, Oregon, have not had training **related to**
differentiating among (1) protesters, (2) rioters, and (3) people present for other reasons, such as
journalists, legal observers, medics, and clergy.

**RESPONSE:**

USMS objects to this request on relevance ground because Plaintiffs' complaint does not concern
medics or clergy.  USMS's response is limited to journalists and legal observers.  With that limitation,
Deny.  USMS Law Enforcement Officers receive training in the First Amendment and are trained to
treat peaceful protestors or peaceful observers, regardless of their roles, differently than individuals
who engage in unlawful conduct that threatens persons or property.

**REQUEST FOR ADMISSION NO. 3:**

Admit that **your** officers deployed in Portland, Oregon have not had training **related to**
the proportional use of force in crowd control situations.

**RESPONSE:**

Deny.  All USMS Law Enforcement Officers are trained in the reasonable use of force

**REQUEST FOR ADMISSION NO. 4:**

Admit that **you** do not have any policies related to differentiating among (1) protesters,
(2) rioters, and (3) people present for other reasons, such as journalists, legal observers, medics,
and clergy.

**RESPONSE:**

USMS objects to Request for Admission No. 4 on relevance grounds because Plaintiffs' complaint does not concern medics or clergy.  USMS's response is limited to journalists and legal observers.  With that limitation, USMS admits in part, denies in part.  By way of further response, USMS admits that it does not have policies that differentiate between protesters, rioters, and people present for other reasons, such as journalists or legal observers.  USMS denies the remainder of Request for Admission No. 4 to the extent that it suggests USMS does not have policies in place that protect the rights of individuals to lawfully protest, regardless of the role those individuals have during a protest, provided they engage in lawful protest and not engage in unlawful conduct that may threaten persons or property.  USMS further avers that it does have practices that distinguish between lawful protestors and those that engage in unlawful conduct.

**REQUEST FOR ADMISSION NO. 5:**

Admit that prior to the **TRO**, **you** did not direct **your** officers to exempt journalists and legal observers from dispersal orders, tear gas, munitions, and other crowd control techniques.

**RESPONSE:**

Admit in part and deny in part.  By way of further response, USMS admits that before the issuance of the TRO, USMS did not direct its officers to exempt journalists and legal observers from dispersal orders, tear gas, munitions, and other crowd control techniques.  USMS denies the remainder of Request for Admission No. 5 to the extent that it suggests that before the issuance of the TRO, USMS directed its officers to direct dispersal orders, tear gas, munitions, and other crowd control techniques at journalists and legal observers.  USMS officers are trained to only use force as is reasonable to the situation and does not take into account the role that an individual has at a protest, but rather whether that individual is engaging the lawful freedom of expression or unlawful conduct that may threaten persons or property

**REQUEST FOR ADMISSION NO. 6:**

Admit that prior to the TRO, **you** left how to treat journalists and legal observers at protests and/or situations **you** deemed to be a threat to federal property or a riot to the discretion of the officers deployed in Portland, Oregon.

**RESPONSE:**

Admit in part and deny in part.  By way of further response, USMS admits that before the issuance of the TRO, USMS did not direct its officers to treat journalists and legal observers differently than any other individual engaged in lawful protest.  USMS denies the remainder of Request for Admission No. 6 to the extent that it suggests that USMS permits its officers to treat journalists and legal observers in an improper manner.  USMS officers are trained to only use force as is reasonable to the situation and does not take into account the role that an individual has at a protest, but rather whether that individual is engaging in the lawful freedom of expression or unlawful conduct that may threaten persons or property.

**REQUEST FOR ADMISSION NO. 7:**

Admit that **you** have not done any study or investigation into whether journalists and legal observers pose a threat to **your** officers deployed in Portland, Oregon.

**RESPONSE:**

USMS objects to this request as vague.  It is unclear what Plaintiffs mean by "study or investigation."  To the extent USMS understands the request, USMS admits in part and denies in part.  By way of further response, USMS admits that it has not conducted a study or investigation into whether journalists and legal observers pose a threat to USMS Law Enforcement Officers.  USMS denies the remainder of the Request for Admission No. 7 to the extent that it suggests that USMS focuses on the conduct of journalists and legal observers as opposed to other individuals present at a protest.  USMS investigates individuals it suspects of engaging in unlawful conduct that may threaten persons or property regardless of the role that an individual has at a protest.

**REQUEST FOR ADMISSION NO. 8:**

Admit that **you** have not started, conducted, or completed a study or investigation about formulating a crowd control policy that would safely allow both **your** officers, on the one hand, and journalists and legal observers, on the other, to do their respective jobs.

**RESPONSE:**

USMS objects to this request as vague.  It is unclear what Plaintiffs mean by "study or investigation."  To the extent that USMS understands the question, USMS admits in part and denies in part.  By way of further response, USMS admits that it has not conducted any study or investigation into formulating a crowd control policy focused specifically on journalists and legal observers.  But USMS denies the remainder of Request for Admission No. 8 to the extent that it suggests that USMS should focus its policies on the identity of protest participants, such as journalists and legal observers, rather than focus its policies on protestor behavior, such as those engaged in lawful behavior during a protest and those that are violent or not law-abiding.  USMS does not base its crowd control policies on the roles that individuals have at a protest.  Instead, USMS develops its crowd control policy to allow all individuals who are lawfully exercising their First Amendment rights to do so in a safe and peaceful manner while at the same time preventing those individuals, regardless of their role at the protest, who are attempting to engage in unlawful conduct from doing so.

**REQUEST FOR ADMISSION NO. 9:**

Admit that **you** did not take any actions to comply with the **TRO**, since July 23, 2020, to the present.

**RESPONSE:**

Deny.  See response to Interrogatory No. 3.

**REQUEST FOR ADMISSION NO. 10:**

Admit that **you** have contracted with private security forces, including but not limited to Triple Canopy, Paragon Systems, Inc., and ZTI Solutions, to provide agents deployed to Portland, Oregon.

**RESPONSE:**

Deny.  USMS has not contracted with private security forces to provide agents deployed to Portland, Oregon.

**REQUEST FOR ADMISSION NO. 11:**

Admit that **you** have never disciplined any of **your** employees related to their treatment of a journalist or legal observer in Portland since May 26, 2020.

**RESPONSE:**

Admit in part and deny in part.  By way of further response, USMS admits that it has not disciplined any of its employees related to their treatment of a journalist or legal observer in Portland since May 26, 2020, but denies the remainder of Request for Admission No. 11 to the extent it suggests that USMS has reason to discipline any of its employees related to their treatment of a journalist or legal observer in Portland since May 26, 2020.  At present, although USMS continues to appropriately monitor and supervise the actions of all its employees, USMS is not aware of any actions related to USMS employee treatment of a journalist or legal observer in Portland since May 26, 2020 which presently warrant disciplinary action.


Dated:  August 4, 2020

> ETHAN P. DAVIS
> Acting Assistant Attorney General
>
> BILLY J. WILLIAMS
> United States Attorney
>
> DAVID M. MORRELL
> Deputy Assistant Attorney General
>
> ALEXANDER K. HAAS
> Director, Federal Programs Branch
>
> JOSHUA E. GARDNER
> Special Counsel, Federal Programs Branch
>
> BRIGHAM J. BOWEN
> Assistant Director, Federal Programs Branch

/s/ Jordan L. Von Bokern
JORDAN L. VON BOKERN (DC 1032962)

ANDREW J. WARDNER (IN #23840-49)
Senior Trial Counsel
JEFFERY A. HALL
KERI L. BERMAN
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20530
Tel:   (202) 616-5084
Fax:  (202) 616-8470

*Attorneys for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on this day, I served the foregoing Defendant U.S. Marshal Service's Objections and Responses to Plaintiffs' First Set of Expedited Requests for Admissions via electronic mail on the following attorney of record:

Matthew Borden
Braunhagey & Borden LLP
351 California Street, Tenth Floor
San Francisco, CA 94104

This 4th day of August, 2020.

/s/ Joshua E. Gardner

# EXHIBIT 2

ETHAN P. DAVIS
Acting Assistant Attorney General
BILLY J. WILLIAMS
United States Attorney
DAVID M. MORRELL
Deputy Assistant Attorney General
ALEXANDER K. HAAS
Director, Federal Programs Branch
JOSHUA E. GARDNER
Special Counsel
BRIGHAM J. BOWEN
Assistant Director, Federal Programs Branch
ANDREW I. WARDEN (IN #23840-49)
Senior Trial Counsel
JEFFREY A. HALL
KERI L. BERMAN
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20530
Tel.:    (202) 616-5084
Fax:    (202) 616-8470

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| INDEX NEWSPAPERS, LLC, *et al.*, | Case No. 3:20-cv-1035-SI |
| Plaintiffs. | **DEFENDANT U.S. MARSHALS SERVICE'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' EXPEDITED FIRST SET OF INTERROGATORIES TO DEFENDANT U.S. MARSHALS SERVICE** |
| v. | |
| CITY OF PORTLAND, *et al.*, | |
| Defendants. | |

Pursuant to Federal Rule of Civil Procedure 33, Defendant United States Marshals Service (USMS), by and through undersigned counsel, hereby submit the following objections and responses to Plaintiffs' Expedited First Set of Interrogatories.

## INTERROGATORY NO. 1:

**Identify** all **persons**, including all agents, representatives, consultants, attorneys, contractors, and any other persons acting under **your** control or behalf who were on duty or present at the Hatfield Courthouse between 5:00 p.m. on July 23, 2020, and 5:00 a.m. on July 24, 2020, and between the same times every following night, pursuant to **your** duty to supplement discovery disclosures under Federal Rule of Civil Procedure 26(e).

## RESPONSE:

USMS objects to this request as unduly burdensome, not relevant to the Plaintiffs' claims, and not proportionate to the needs of the case. The names of all individuals on duty or present is not relevant to Plaintiffs' claims that USMS, by policy, targeted journalists and legal observers. In addition, law enforcement officials in Portland have been subject to threats and doxing, a concern expressly recognized by the Court during the July 31, 2020 hearing. The identification of all individuals on duty or present at the Hatfield Courthouse greatly increases the likelihood that these individuals would be subject to harassment. Accordingly, USMS will not provide information in response to Plaintiffs' Interrogatory No. 1.

## INTERROGATORY NO. 2:

If **you** denied any of Plaintiffs' Requests for Admission, explain why.

## RESPONSE:

USMS objects to this request because it contains multiple discrete subparts. *See Jovanovich v. Redden Marine Supply, Inc.*, No. C10-924-RSM, 2011 WL 445917, *2 (W.D. Wash. Sept. 26, 2011) (holding that an interrogatory that asks for explanation as to denials of requests for admissions "should be construed as containing a subpart for each request for admission contained in the set.") (quotation omitted). USMS refers Plaintiffs to USMS's responses to Plaintiffs' Requests for Admissions, which provides USMS's explanations for each request for admission denied in part or in full.

## INTERROGATORY NO. 3:

**Identify** all steps that **you** have taken to comply with the TRO.

## RESPONSE:

USMS refers Plaintiffs to USMS's Filing of Declarations Addressing Compliance with the Court's Temporary Restraining Order, Dkt. No. 105, which describes the steps USMS has taken to comply with the TRO.

**INTERROGATORY NO. 4:**

**Identify** all efforts **you** have made to de-escalate or avoid violence at any protest in Portland since May 26, 2020.

**RESPONSE:**

USMS objects to this request as unduly burdensome.  In order to respond to this interrogatory, USMS would need to interview every single officer on the ground about every single encounter with a protestor to determine what de-escalation techniques he or she used, if any.  Additionally, USMS objects to this interrogatory as irrelevant to the claims raised in Plaintiffs' complaint.  How USMS avoids violence at a protest is not relevant to Plaintiffs' claims that USMS, through policy, targeted journalists and legal observers at the Portland protests.  Accordingly, USMS will not provide information in response to Plaintiffs' Interrogatory No. 4.

As to the interrogatories, see Attachment A.

As to the objections:

Dated:  August 4, 2020

ETHAN P. DAVIS
Acting Assistant Attorney General

BILLY J. WILLIAMS
United States Attorney

DAVID M. MORRELL
Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

JOSHUA E. GARDNER
Special Counsel, Federal Programs Branch

BRIGHAM J. BOWEN
Assistant Director, Federal Programs Branch

*/s/* Jordan L. Von Bokern
JORDAN L. VON BOKERN (DC 1032962)

ANDREW J. WARDNER (IN #23840-49)
Senior Trial Counsel
JEFFERY A. HALL
KERI L. BERMAN
Trial Attorneys

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20530
Tel:  (202) 616-5084
Fax:  (202) 616-8470

*Attorneys for Defendants*

For the responses to Plaintiffs' Interrogatories Nos. 1-4, I declare under penalty of perjury that the foregoing is true and correct as it relates to the United States Marshals Service.

Andrew Smith
United States Marshals Service

## **CERTIFICATE OF SERVICE**

I certify that on this day, I served the foregoing Defendant U.S. Marshal Service's Objections and Responses to Plaintiffs' Expedited First Set of Interrogatories via electronic mail on the following attorney of record:

Matthew Borden
Braunhagey & Borden LLP
351 California Street, Tenth Floor
San Francisco, CA 94104

This 4th day of August, 2020.

/s/ Joshua E. Gardner

# EXHIBIT 3

ETHAN P. DAVIS
Acting Assistant Attorney General
BILLY J. WILLIAMS
United States Attorney
DAVID M. MORRELL
Deputy Assistant Attorney General
ALEXANDER K. HAAS
Director, Federal Programs Branch
JOSHUA E. GARDNER
Special Counsel
BRIGHAM J. BOWEN
Assistant Director, Federal Programs Branch
ANDREW I. WARDEN (IN #23840-49)
Senior Trial Counsel
JEFFREY A. HALL
KERI L. BERMAN
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20530
Tel.:    (202) 616-5084
Fax:    (202) 616-8470

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| INDEX NEWSPAPERS, LLC, *et al.*,<br><br>    Plaintiffs.<br><br>v.<br><br>CITY OF PORTLAND, *et al.*,<br><br>    Defendants. | Case No. 3:20-cv-1035-SI<br><br>**DEFENDANT U.S. DEPARTMENT OF HOMELAND SECURITY OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF EXPEDITED REQUESTS FOR ADMISSIONS TO DEFENDANT U.S. DEPARTMENT OF HOMELAND SECURITY** |

Pursuant to Federal Rule of Civil Procedure 36, Defendant United States Department of

Homeland Security, by and through undersigned counsel, hereby submit the following objections

and responses to Plaintiffs' First Set of Expedited Requests for Admissions.

**REQUEST FOR ADMISSION NO. 1:**

Admit that **you** have not done any investigation into whether **your** officers retaliated
against any of the individuals who submitted declarations in support of the **TRO**.

**RESPONSE:**

Admit in part and deny in part.  By way of further response, DHS admits that it has not conducted
any investigations into our officers retaliating against any individual who submitted declarations in
support of the TRO, but denies the remainder of Request for Admission No. 1 because DHS is
unaware of any credible allegations that its officers have retaliated against any individual who
submitted declarations in support of the TRO, and therefore an investigation is unnecessary.

**REQUEST FOR ADMISSION NO. 2:**

Admit that **your** officers deployed in Portland, Oregon, have not had training **related to**
differentiating among (1) protesters, (2) rioters, and (3) people present for other reasons, such as
journalists, legal observers, medics, and clergy.

**RESPONSE:**

DHS objects to this request on relevance ground because Plaintiffs' complaint does not concern
medics or clergy.  DHS's response is limited to journalists and legal observers.  With that limitation,
Deny.  DHS Law Enforcement Officers receive training in the First Amendment and are trained to
treat peaceful protestors or peaceful observers, regardless of their roles, differently than individuals
who engage in unlawful conduct that threatens persons or property.

**REQUEST FOR ADMISSION NO. 3:**

Admit that **your** officers deployed in Portland, Oregon have not had training **related to**
the proportional use of force in crowd control situations.

**RESPONSE:**

Deny.  All DHS Law Enforcement Officers are trained in the reasonable use of force

**REQUEST FOR ADMISSION NO. 4:**

Admit that **you** do not have any policies related to differentiating among (1) protesters,
(2) rioters, and (3) people present for other reasons, such as journalists, legal observers, medics,
and clergy.

**RESPONSE:**

DHS objects to Request for Admission No. 4 on relevance grounds because Plaintiffs' complaint does not concern medics or clergy. DHS's response is limited to journalists and legal observers. With that limitation, DHS admits in part, denies in part. By way of further response, DHS admits that it does not have policies that differentiate between protesters, rioters, and people present for other reasons, such as journalists or legal observers. DHS denies the remainder of Request for Admission No. 4 to the extent that it suggests DHS does not have policies in place that protect the rights of individuals to lawfully protest, regardless of the role those individuals have during a protest, provided they engage in lawful protest and not engage in unlawful conduct that may threaten persons or property. DHS further avers that it does have policies that distinguish between lawful protestors and those that engage in unlawful conduct.

**REQUEST FOR ADMISSION NO. 5:**

Admit that prior to the **TRO**, **you** did not direct **your** officers to exempt journalists and legal observers from dispersal orders, tear gas, munitions, and other crowd control techniques.

**RESPONSE:**

Admit in part and deny in part. By way of further response, DHS admits that before the issuance of the TRO, DHS did not direct its officers to exempt journalists and legal observers from dispersal orders, tear gas, munitions, and other crowd control techniques. DHS denies the remainder of Request for Admission No. 5 to the extent that it suggests that before the issuance of the TRO, DHS directed its officers to direct dispersal orders, tear gas, munitions, and other crowd control techniques at journalists and legal observers. DHS officers are trained to only use force as is reasonable to the situation and does not take into account the role that an individual has at a protest, but rather whether that individual is engaging the lawful freedom of expression or unlawful conduct that may threaten persons or property

**REQUEST FOR ADMISSION NO. 6:**

Admit that prior to the TRO, **you** left how to treat journalists and legal observers at protests and/or situations **you** deemed to be a threat to federal property or a riot to the discretion of the officers deployed in Portland, Oregon.

**RESPONSE:**

Admit in part and deny in part. By way of further response, DHS admits that before the issuance of the TRO, DHS did not direct its officers to treat journalists and legal observers differently than any other individual engaged in lawful protest. DHS denies the remainder of Request for Admission No. 6 to the extent that it suggests that DHS permits its officers to treat journalists and legal observers in an improper manner. DHS officers are trained to only use force as is reasonable to the situation and does not take into account the role that an individual has at a protest, but rather whether that individual is engaging in the lawful freedom of expression or unlawful conduct that may threaten persons or property.

**REQUEST FOR ADMISSION NO. 7:**

Admit that **you** have not done any study or investigation into whether journalists and legal observers pose a threat to **your** officers deployed in Portland, Oregon.

**RESPONSE:**

DHS objects to this request as vague.  It is unclear what Plaintiffs mean by "study or investigation." To the extent DHS understands the request, DHS admits in part and denies in part.  By way of further response, DHS admits that it has not conducted a study or investigation into whether journalists and legal observers pose a threat to DHS Law Enforcement Officers.  DHS denies the remainder of the Request for Admission No. 7 to the extent that it suggests that DHS focuses on the conduct of journalists and legal observers as opposed to other individuals present at a protest. DHS investigates individuals it suspects of engaging in unlawful conduct that may threaten persons or property regardless of the role that an individual has at a protest.

**REQUEST FOR ADMISSION NO. 8:**

Admit that **you** have not started, conducted, or completed a study or investigation about formulating a crowd control policy that would safely allow both **your** officers, on the one hand, and journalists and legal observers, on the other, to do their respective jobs.

**RESPONSE:**

The department objects to this request as vague.  It is unclear what Plaintiffs mean by "study or investigation."  To the extent that DHS understands the question, DHS admits in part and denies in part.  By way of further response, DHS admits that it has not conducted any study or investigation into formulating a crowd control policy focused specifically on journalists and legal observers.  But DHS denies the remainder of Request for Admission No. 8 to the extent that it suggests that DHS should focus its policies on the identity of protest participants, such as journalists and legal observers, rather than focus its policies on protestor behavior, such as those engaged in lawful behavior during a protest and those that are violent or not law-abiding.  DHS does not base its crowd control policies on the roles that individuals have at a protest.  Instead, DHS develops its crowd control policy to allow all individuals who are lawfully exercising their First Amendment rights to do so in a safe and peaceful manner while at the same time preventing those individuals, regardless of their role at the protest, who are attempting to engage in unlawful conduct from doing so.

**REQUEST FOR ADMISSION NO. 9:**

Admit that **you** did not take any actions to comply with the **TRO**, since July 23, 2020, to the present.

**RESPONSE:**

Deny.  Since the issuance of the TRO, DHS has taken considerable steps to ensure that its officers were aware of the TRO and that they understood the restrictions and requirements placed on them by the TRO.

**REQUEST FOR ADMISSION NO. 10:**

Admit that **you** have contracted with private security forces, including but not limited to
Triple Canopy, Paragon Systems, Inc., and ZTI Solutions, to provide agents deployed to
Portland, Oregon.

**RESPONSE:**

Admit in part and deny in part.  By way of further response, DHS admits that it has contracted with
a private security company, to wit: MaxSent in Portland, Oregon, but denies the remainder of
Request for Admission No. 10 to the extent that it suggests that DHS contracted with any private
security company to deploy agents to Portland, or that it has contracted with the other entities
identified in this Request for Admission.  DHS contracts with private security companies, through
the Federal Protective Service, for contract security guards who provide day-to-day security in
Portland federal building and control access to those buildings.  The security guards are not law
enforcement officers, do not engage in law enforcement activities, and have not been deployed in
any manner suggested by Request for Admission No. 10.

**REQUEST FOR ADMISSION NO. 11:**

Admit that **you** have never disciplined any of **your** employees related to their treatment
of a journalist or legal observer in Portland since May 26, 2020.

**RESPONSE:**

Admit in part and deny in part.  By way of further response, DHS admits that it has not disciplined
any of its employees related to their treatment of a journalist or legal observer in Portland since May
26, 2020, but denies the remainder of Request for Admission No. 11 to the extent it suggests that
DHS has reason to discipline any of its employees related to their treatment of a journalist or legal
observer in Portland since May 26, 2020.  At present, although DHS continues to appropriately
monitor and supervise the actions of all its employees, DHS is not aware of any actions related to
DHS employee treatment of a journalist or legal observer in Portland since May 26, 2020 which
presently warrant disciplinary action.


Dated:  August 4, 2020

ETHAN P. DAVIS
Acting Assistant Attorney General

BILLY J. WILLIAMS
United States Attorney

DAVID M. MORRELL
Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

JOSHUA E. GARDNER
Special Counsel, Federal Programs Branch

BRIGHAM J. BOWEN
Assistant Director, Federal Programs Branch

*/s/* Jordan L. Von Bokern
JORDAN L. VON BOKERN (DC 1032962)

ANDREW J. WARDNER (IN #23840-49)
Senior Trial Counsel
JEFFERY A. HALL
KERI L. BERMAN
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20530
Tel:   (202) 616-5084
Fax:  (202) 616-8470

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this day, I served the foregoing Defendant U.S. Department of Homeland

Security's Objections and Responses to Plaintiffs' First Set of Expedited Requests for Admissions

via electronic mail on the following attorney of record:

Matthew Borden
Braunhagey & Borden LLP
351 California Street, Tenth Floor
San Francisco, CA 94104

This 4th day of August, 2020.

<u>/s/ Joshua E. Gardner</u>

# EXHIBIT 4

ETHAN P. DAVIS
Acting Assistant Attorney General
BILLY J. WILLIAMS
United States Attorney
DAVID M. MORRELL
Deputy Assistant Attorney General
ALEXANDER K. HAAS
Director, Federal Programs Branch
JOSHUA E. GARDNER
Special Counsel
BRIGHAM J. BOWEN
Assistant Director, Federal Programs Branch
ANDREW I. WARDEN (IN #23840-49)
Senior Trial Counsel
JEFFREY A. HALL
KERI L. BERMAN
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20530
Tel.:    (202) 616-5084
Fax:    (202) 616-8470

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| INDEX NEWSPAPERS, LLC, *et al.*, | Case No. 3:20-cv-1035-SI |
| Plaintiffs. | **DEFENDANT U.S. DEPARTMENT OF HOMELAND SECURITY OBJECTIONS AND RESPONSES TO PLAINTIFFS' EXPEDITED FIRST SET OF INTERROGATORIES TO DEFENDANT U.S. DEPARTMENT OF HOMELAND SECURITY** |
| v. | |
| CITY OF PORTLAND, *et al.*, | |
| Defendants. | |

Pursuant to Federal Rule of Civil Procedure 33, Defendant United States Department of Homeland Security, by and through undersigned counsel, hereby submit the following objections and responses to Plaintiffs' Expedited First Set of Interrogatories.

**INTERROGATORY NO. 1:**

**Identify** all **persons**, including all agents, representatives, consultants, attorneys, contractors, and any other persons acting under **your** control or behalf who were on duty or present at the Hatfield Courthouse between 5:00 p.m. on July 23, 2020, and 5:00 a.m. on July 24, 2020, and between the same times every following night, pursuant to **your** duty to supplement discovery disclosures under Federal Rule of Civil Procedure 26(e).

**RESPONSE:**

DHS objects to this request as unduly burdensome, not relevant to the Plaintiffs' claims, and not proportionate to the needs of the case. The names of all individuals on duty or present is not relevant to Plaintiffs' claims that DHS, by policy, targeted journalists and legal observers. In addition, law enforcement officials in Portland have been subject to threats and doxing, a concern expressly recognized by the Court during the July 31, 2020 hearing. The identification of all individuals on duty or present at the Hatfield Courthouse greatly increases the likelihood that these individuals would be subject to harassment. Accordingly, DHS will not provide information in response to Plaintiffs' Interrogatory No. 1.

**INTERROGATORY NO. 2:**

If **you** denied any of Plaintiffs' Requests for Admission, explain why.

**RESPONSE:**

DHS objects to this request because it contains multiple discrete subparts. *See Jovanovich v. Redden Marine Supply, Inc.*, No. C10-924-RSM, 2011 WL 445917, *2 (W.D. Wash. Sept. 26, 2011) (holding that an interrogatory that asks for explanation as to denials of requests for admissions "should be construed as containing a subpart for each request for admission contained in the set.") (quotation omitted). DHS refers Plaintiffs to DHS's responses to Plaintiffs' Requests for Admissions, which provides DHS's explanations for each request for admission denied in part or in full.

**INTERROGATORY NO. 3:**

**Identify** all steps that **you** have taken to comply with the TRO.

**RESPONSE:**

DHS refers Plaintiffs to DHS's Filing of Declarations Addressing Compliance with the Court's Temporary Restraining Order, Dkt. No. 105, which describes the steps DHS has taken to comply with the TRO.

**INTERROGATORY NO. 4:**

**Identify** all efforts **you** have made to de-escalate or avoid violence at any protest in Portland since May 26, 2020.

**RESPONSE:**

DHS objects to this request as unduly burdensome.  In order to respond to this interrogatory, DHS would need to interview every single officer on the ground about every single encounter with a protestor to determine what de-escalation techniques he or she used, if any.  Additionally, DHS objects to this interrogatory as irrelevant to the claims raised in Plaintiffs' complaint.  How DHS avoids violence at a protest is not relevant to Plaintiffs' claims that DHS, through policy, targeted journalists and legal observers at the Portland protests.  Accordingly, DHS will not provide information in response to Plaintiffs' Interrogatory No. 4.


As to the interrogatories, see Attachment A.

As to the objections:

Dated:  August 4, 2020

ETHAN P. DAVIS
Acting Assistant Attorney General

BILLY J. WILLIAMS
United States Attorney

DAVID M. MORRELL
Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

JOSHUA E. GARDNER
Special Counsel, Federal Programs Branch

BRIGHAM J. BOWEN
Assistant Director, Federal Programs Branch

/s/ Jordan L. Von Bokern
JORDAN L. VON BOKERN (DC 1032962)

ANDREW J. WARDNER (IN #23840-49)
Senior Trial Counsel
JEFFERY A. HALL
KERI L. BERMAN
Trial Attorneys

U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20530
Tel:  (202) 616-5084
Fax:  (202) 616-8470

*Attorneys for Defendants*

For the responses to Plaintiffs' Interrogatories Nos. 1-4, I declare under penalty of perjury that the foregoing is true and correct as it relates to the Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement.

Brian S. Acuna
Acting Deputy Assistant Director
Fugitive Operations Division
U.S. Immigration and Customs Enforcement
August 3, 2020

For the responses to Plaintiffs' Interrogatories Nos. 1-4, I declare under penalty of perjury that the foregoing is true and correct as it relates to U.S. Immigration and Customs Enforcement, Homeland Security Investigations.

MATTHEW C ALLEN
Digitally signed by MATTHEW C ALLEN
Date: 2020.08.04 12:19:46 -04'00'

Matthew C. Allen
Acting Deputy Executive Associate Director
Homeland Security Investigations
U.S. Immigration and Customs Enforcement

For the responses to Plaintiffs' Interrogatories Nos. 1-4, I declare under penalty of perjury that the foregoing is true and correct as it relates to U.S. Customs and Border Protection.

ROBERT B DANLEY  Digitally signed by ROBERT B DANLEY
Date: 2020.08.03 10:00:11 -04'00'

Robert Danley
Acting Deputy Directorate Chief – Law
Enforcement Operations Directorate
August 3, 2020

For the responses to Plaintiffs' Interrogatories Nos. 1-4, I declare under penalty of perjury that the foregoing is true and correct as it relates to the U.S. Department of Homeland Security, Management Directorate, Federal Protective Service.

ALLEN S JONES
Digitally signed by
ALLEN S JONES
Date: 2020.08.02
21:31:29 07'00'

Allen "Scott" Jones
Deputy Director Operations
Federal Protective Service
August 2, 2020

## **CERTIFICATE OF SERVICE**

I certify that on this day, I served the foregoing Defendant U.S. Department of Homeland Security's Objections and Responses to Plaintiffs' Expedited First Set of Interrogatories via electronic mail on the following attorney of record:

Matthew Borden
Braunhagey & Borden LLP
351 California Street, Tenth Floor
San Francisco, CA 94104

This 4th day of August, 2020.

*/s/* Joshua E. Gardner

# EXHIBIT 5

**From:**     AS1CFW █████████████
**Sent:**     7/30/2020 1:08:27 PM
**To:**       AS1CFW ███████████████
**Subject:**  FW:

**From:** Miller, Stephen EOP/WHO
**Sent:** Thursday, July 30, 2020 9:04:20 AM (UTC-05:00) Eastern Time (US & Canada)
**To:** Gountanis, John
**Cc:** Mizelle, Chad; AS1CFW
**Subject:** Re:

It's not a phased withdrawal either.

Sent from my iPhone

On Jul 30, 2020, at 6:01 AM, Gountanis, John ███████████████████ wrote:

>https://dailycaller.com/2020/07/29/trump-administration-agreement-oregon-governor-kate-brown-violence-courthouse-portland/<

Brown appeared to alter her original statement shortly after her tweet, saying that U.S. agents will start a "phased withdrawal" from the city, according to the Associated Press.

**From:** Miller, Stephen EOP/WHO ███████████████████
**Sent:** Wednesday, July 29, 2020 11:28 PM
**To:** Wolf, Chad; Gountanis, John; Mizelle, Chad
**Subject:**

>https://www.oregonlive.com/crime/2020/07/oregons-governor-announces-phased-withdrawal-of-federal-officers.html<
"Starting Thursday, all Customs and Border Protection and Immigration and Customs Enforcement officers will leave downtown Portland, Brown said.
'After discussions with the Vice President and administration officials this week, the federal government has agreed to my demand and will withdraw these officers from Portland. They will also clean up the Courthouse, removing the graffiti,' Brown said in a statement."

# EXHIBIT 6

**From**: Albence, Matthew █████████████████████
**Sent**: 7/23/2020 11:35:59 PM
**To**: MORGAN, MARK A ██████████████ Alles, Randolph ████████████████████ Cline,
**CC**: Mizelle, Chad ████████████████ AS2KTC ████████ AS1CFW ██████████████
Richard K █████████████████████████████████████

**Subject**: RE: TRO in Portland re Journalists

Agree

Sent with BlackBerry Work
(www.blackberry.com)

---

**From**: MORGAN, MARK A █████████████████████
**Date**: Thursday, Jul 23, 2020, 7:32 PM
**To**: Alles, Randolph ███████████████████████████
**Cc**: Mizelle, Chad ██████████████ AS2KTC ███████████ AS1CFW ███████████
Albence, Matthew ████████████████ Cline, Richard K ██████████ VANDE BEEK,
████████████████████████████████████████████████████

**Subject**: Re: TRO in Portland re Journalists

I recommend we take this off email and have a call.

Sent from my iPhone

On Jul 23, 2020, at 7:31 PM, Alles, Randolph ████████████████ wrote:

██████████████████████████████████████████████████████████

R D "Tex" Alles
████████████████

---

**From**: Mizelle, Chad ██████████████████████
**Sent**: Thursday, July 23, 2020 7:29:10 PM
**To**: MORGAN, MARK A ██████████████████████; AS2KTC ████████████████
**Cc**: AS1CFW ████████████████ Albence, Matthew ████████████████████; Alles, Randolph
████████████ Cline, Richard K ███████████████████████████████████████

**Subject**: Re: TRO in Portland re Journalists

████████████████████████████████████████████████████████████



Chad Mizelle

**From:** MORGAN, MARK A
**Sent:** Thursday, July 23, 2020 6:40:55 PM
**To:** AS2KTC <as2ktc@hq.dhs.gov>
**Cc:** Mizelle, Chad                                         AS1CFW                              Albence, Matthew
                                    >; Alles, Randolph                              Cline, Richard K


**Subject:** Re: TRO in Portland re Journalists

My thoughts as well.

It will be claimed as an indication we were doing something wrong  - def need TPs to push back.

Sent from my iPhone


On Jul 23, 2020, at 6:37 PM, AS2KTC <                          wrote:


It's offensive, but shouldn't affect anything we're doing.
Thx
Ken

**From:** Mizelle, Chad
**Sent:** Thursday, July 23, 2020 6:23 PM
**To:** AS1CFW                          AS2KTC                              MORGAN, MARK A <
Albence, Matthew <                                    Alles, Randolph <                                    Cline, Richard K


**Subject:** TRO in Portland re Journalists

All,

I just received word that the judge in Portland has decided to GRANT the Temporary Restraining Order regarding
journalists.
                                                                                                We will
keep you updated as the litigation progresses and once we have a final order.  To be clear, we are not under any
injunction until the judge actually issues the TRO (though the judge has indicated he will rule by 5 p.m. PST).

Best,


1. Defendants and their agents and employees, including but not limited to the Portland Police Bureau and all
persons acting under the direction of the Portland Police Bureau ( collectively, "the Police"), are enjoined from
arresting, threatening to arrest, or using physical force directed against any person whom they know or
reasonably should know is a Journalist or Legal Observer (as explained below), unless the Police have

probable cause to believe that such individual has committed a crime. For purposes of this Order, such persons shall not be required to disperse following the issuance of an order to disperse, and such persons shall not be subject to arrest for not dispersing following the issuance of an order to disperse. Such persons shall, however, remain bound by all other laws.

2. Defendants and their agents and employees, including but not limited to the Portland Police Bureau and all persons acting under the direction of the Portland Police Bureau (collectively, "the Police"), are further enjoined from seizing any photographic equipment, audio- or video-recording equipment, or press passes from any person whom they know or reasonably should know is a Journalist or Legal Observer (as explained below), or ordering such person to stop photographing, recording, or observing a protest, unless Defendants are also lawfully seizing that person consistent with this Order. Police must return any seized equipment or press passes immediately upon release of a person from custody.

3. To facilitate the Police's identification of Journalists protected under this Order, the following shall be considered indicia of being a Journalist: visual identification as a member of the press, such as by carrying a professional or authorized press pass or wearing a professional or authorized press badge or distinctive clothing that identifies the wearer as a member of the press. These indicia are not exclusive, and a person need not exhibit every indicium to be considered a Journalist under this Order. The Police shall not be liable for unintentional violations of this Order in the case of an individual who does not carry a press pass or wear a press badge or distinctive clothing that identifies the wearer as a member of the press.

4. To facilitate the Police's identification of Legal Observers protected under this Order, the following shall be considered indicia of being a Legal Observer: wearing a green National Lawyers' Guild issued or authorized Legal Observer hat (typically a green NLG hat) or wearing a blue ACLU issued or authorized Legal Observer vest.

5. The Police may issue otherwise lawful crowd-dispersal orders for a variety of lawful reasons. The Police shall not be liable for violating this Order if a Journalist or Legal Observer is incidentally exposed to crowd-control devices after remaining in the area where such devices were deployed after the issuance by the Police of an otherwise lawful dispersal order.

6. In the interest of justice, Plaintiffs need not provide any security, and all requirements under Rule 65(c) of the Federal Rules of Civil Procedure are waived.

7. This Order shall expire fourteen (14) days after entry, unless otherwise extended by stipulation of the parties or by further order of the Court.

8. The parties shall confer and propose to the Court a schedule for briefing and hearing on whether the Court should issue a preliminary injunction.

Chad Mizelle
U.S. Department of Homeland Security

# EXHIBIT 7

**MEDIA MEMORANDUM FOR THE ACTING DEPUTY SECRETARY**

**PURPOSE**
Discuss the lawlessness in Portland, the action regarding the I&A, and the new EO on TVA and American jobs.

**INTERVIEW DETAILS**

**Monday, August 3, 2020**
**Time:**       **4:25-4:35 pm EDT**
Show:        Your World with Neil Cavuto
Host:         Neil Cavuto
Network:     FOX News Channel
Market:      National
Contact:     ██████████████

**Logistics:**     **3ʳᵈ Floor Studio, 400 N. Capitol Street**

**TVA vs. American Jobs**
**PROTECTING AMERICAN WORKERS: President Donald J. Trump is taking action to prevent Americans from being displaced by foreign workers and offshore labor using Federal dollars.**

- President Trump is signing an Executive Order to create a policy where Federal agencies will focus on U.S. labor in lucrative Federal contracts.
    - It would be unfair for Federal employers to replace perfectly qualified Americans with workers from other countries.
- The Executive Order will require all Federal agencies to complete an internal audit and assess whether they are in compliance with the requirement that only United States citizens and nationals are appointed to the competitive service.
- The Department of Labor will also finalize guidance to prevent H-1B employers from moving H-1B workers to other employers' job sites to displace Americans workers.

**PREVENTING HARMFUL OUTSOURCING: This Executive Order will help prevent Federal agencies from unfairly replacing American workers with low-cost foreign labor.**

- This Executive Order follows the federally-owned Tennessee Valley Authority's (TVA) announcement that it will outsource 20 percent of its technology jobs to companies based in foreign countries.
- TVA's action could cause more than 200 highly-skilled American tech workers in Tennessee to lose their jobs to low-wage, foreign workers hired on temporary work visas.
    - TVA's decision is also expected to cost the local economy tens of millions of dollars over the next 5 years.

- Outsourcing hundreds of workers is especially detrimental in the middle of a pandemic, which has already cost millions of Americans their jobs.
- Given the current climate of rampant intellectual property theft, outsourcing IT jobs that involve sensitive information could pose a national security risk.
- President Trump's actions will help combat employers' misuse of H-1B visas, which were never intended to replace qualified American workers with low-cost foreign labor.

## PRESERVING JOBS FOR THE AMERICAN PEOPLE: Throughout the pandemic, President Trump has followed through on his promise to put American workers first.

- As we recover from the pandemic, President Trump has taken action to ensure that American workers never have to remain on the sidelines while being replaced by new foreign labor.
- To protect jobs for American workers, President Trump has placed a temporary pause on new immigration into the country from multiple visa categories.
    - President Trump extended the suspension to the end of the year and added several job-related nonimmigrant visas.
- The Administration finalized regulations to eliminate the incentive to file an asylum application for the primary purpose of obtaining an Employment Authorization Document.
- President Trump initiated reforms to the H-1B program to prioritize high-wage workers and close loopholes to ensure American workers are not displaced by low cost foreign labor.

## BACKGROUND:

The Tennessee Valley Authority, the nation's largest federally-owned power provider, announced it will outsource 20 percent of its IT workforce to Capgemini, CGI, and Accenture – companies based in France, Canada, and Ireland, respectively. This means that more than 200 high-skilled American tech workers in Knoxville, TN and Chattanooga, TN, will lose their jobs. Replacing them will largely be low-wage, foreign workers. To add insult to injury, these U.S. workers are being asked to train their foreign replacements.

These layoffs of American workers by the TVA comes right in the middle of the Coronavirus pandemic. The Administration is taking the proper steps to rebuild the economy and ensure that America's workers and families prosper. The President cares for the American people and will not allow American workers to be replaced in the federal government en masse by temporary foreign labor.

One of the TVA's central purposes when created was to provide Americans with jobs at a time of severe unemployment. It is contrary to the mission of the TVA to fire American workers at a time of similar economic tribulation.

TVA is not the only federal agency that has outsourced American jobs. A report from Bloomberg Law, found that approximately 2,000 H-1B workers were approved by the U.S. Department of Labor in the first nine months of 2019 to work at federal agencies.

## I & A Situation

For nearly two decades, the Department of Homeland Security has been committed to protect the American people from threats to the nation and in so doing uphold and defend the U.S. Constitution - including the First Amendment right of freedom of the press.

On Thursday, within hours of learning that the DHS Office of Intelligence and Analysis had been collecting information on journalists, Secretary Chad Wolf took action:

- Immediately ordered I&A to discontinue collecting information involving members of the media.
- Ordered a review of the policy and procedures associated with the collection and dissemination of intelligence on presumed U.S. citizens who may be member of the press.
- Requested that the Department develop recommendations on how to prevent violations of this nature.
- Referred the matter the DHS Office of Inspector General to investigate this situation.
- And, removed Brian Murphy as the acting undersecretary of I&A.

DHS is committed to ensuring that all DHS personnel uphold the principles of professionalism, impartiality and respect for civil rights and civil liberties of the American people.

My involvement was simply that I&A was the only component that had to clear documents through another component before sharing with law enforcement. The reality is when law enforcement is dealing in real time, the process had bogged down and wanted it more streamlined.

## Portland Situation

- o DHS is and will always protect federal property. It's our statutory mission.
- • DHS is still in Portland. The additional DHS Officers that deployed to Portland in early July to enhance the protection of federal facilities won't leave until there is no more violence directed at federal facilities.
- • The weekend saw violence and there were arrests. Not to the level as before.
- • The reason that there was a lot less violence is that the State and Local officials did what we have asked for the past 60 days: cleared out the park where the agitators where gathering and patrolled the streets.
- • Local leaders did nothing for 60 days and there were more than 265 injuries to DHS officers.

# EXHIBIT 8

**From:** AS1CFW ██████████████████████████████ ████████████████

**Sent:** 7/29/2020 12:06:27 AM

**To:** Gountanis, John ████████████████████

**BCC:** ██████████████████████

**Subject:** For Governor Brown

John,
Please pass along the following email to Governor Brown's COS.
It memorializes our discussions.

---------

Governor Brown,

I appreciate your willingness to partner with us to help bring an end to the violence in Portland.  This email is intended to put our operational discussions on paper to ensure that we are truly "on the same page."



Recognizing that we have somewhat different perspectives on all of this, we have agreed to inform one another of outgoing communications such as statements and/or press conferences prior to the delivery of such statements or commencement of such press conferences.

I look forward to partnering with you to bring the violence in Portland to an end.

-Chad

Chad F. Wolf
Acting Secretary
Dept of Homeland Security

# EXHIBIT 9

| **From:** | Athul Acharya |
| **To:** | Kirschner, Adam (CIV); Gardner, Joshua E (CIV) |
| **Cc:** | Katie Kushnir; Charles Vallejo-Anderson; Matt Borden; Gunnar Martz |
| **Subject:** | RE: Index Newspapers Production |
| **Date:** | Tuesday, August 11, 2020 8:30:34 PM |

Adam,

We served narrow document requests on July 25, two days after the Court authorized expedited discovery on July 23. We then spent hours on the phone with Josh, and hours more emailing back and forth, further narrowing our requests. The point of expedited discovery was to enable us to present evidence to the Court in support of the preliminary injunction. The federal defendants refused to extend the date of the preliminary injunction hearing to enable a reasonable discovery and briefing schedule, and renewed their demand that Plaintiffs stipulate that the TRO constituted a preliminary injunction—even though the Court had ruled that we were entitled to take discovery. Thereafter, the federal defendants produced only a handful of documents over the last 19 days—all of which are policies, procedures, and training materials that were easily available and could have been produced in one day. Even though we stipulated to a protective order, the federal defendants heavily redacted the entire production to the point that it is of little use. At the few depositions we were able to take, the federal defendants asserted a number of improper objections to further block our access to information. The federal defendants also refused to provide any emails or text messages from their line agents, which are critical to Plaintiffs' retaliation claims. In fact, we have yet to receive a single email, text message, or other custodial file from the federal defendants.

There are nine lawyers on your briefs, and several more have appeared during depositions. The federal government is more than capable of making an expeditious production if it wants. We ask that you produce the outstanding discovery tomorrow so that we can upload it and use it in our reply brief. That is without prejudice to us raising the prejudice the defendants have already caused with the Court.

Regards,

Athul


Athul K. Acharya

**B R A U N H A G E Y & B O R D E N** L L P
Direct: (415) 963-4493

---

**From:** Kirschner, Adam (CIV) <Adam.Kirschner@usdoj.gov>
**Sent:** Monday, August 10, 2020 1:24 PM
**To:** Athul Acharya <acharya@braunhagey.com>; Matt Borden <borden@braunhagey.com>; Gunnar Martz <Martz@braunhagey.com>
**Cc:** Gardner, Joshua E (CIV) <Joshua.E.Gardner@usdoj.gov>; Katie Kushnir <kushnir@braunhagey.com>; Charles Vallejo-Anderson <Vallejo@braunhagey.com>

**Subject:** RE: Index Newspapers Production

Hi Athul,

Could you let me know your questions about the load file?

As for the production on Friday, Defendants were ultimately able to make that production in light of the protective order.  In fact, I believe some of the documents are branded as such.  The redactions and withholdings from the production are for other privileges not covered by the protective order. On Friday, I attached a preliminary privilege log for DHS and we will send one for USMS as soon as possible.

Hope that helps answer your questions.

Thanks,
Adam

---

**From:** Athul Acharya <acharya@braunhagey.com>
**Sent:** Monday, August 10, 2020 4:11 PM
**To:** Kirschner, Adam (CIV) <akirschn@CIV.USDOJ.GOV>; Matt Borden <borden@braunhagey.com>; Gunnar Martz <Martz@braunhagey.com>
**Cc:** Gardner, Joshua E (CIV) <jgardner@CIV.USDOJ.GOV>; Katie Kushnir <kushnir@braunhagey.com>; Charles Vallejo-Anderson <Vallejo@braunhagey.com>
**Subject:** Re: Index Newspapers Production

Adam, thanks. In addition to this, I believe there may have been another supplemental production on Friday that went to Gunnar. To facilitate review, could you please provide a new load file? Katie or Charley, cc'd, can clarify what we need if there's any confusion.

Also, when we spoke on the phone you said that you would be able to produce these documents sans redactions once a protective order was in place. The Court entered a protective order a few days ago, and given the extensive redactions here, we will need the unredacted documents in time to reasonably review it for our briefing. Please confirm that you will be able to produce unredacted documents promptly.

Athul K. Acharya
BraunHagey & Borden LLP
Direct: (415) 963-4493

Sent from phone

---

**From:** Kirschner, Adam (CIV) <Adam.Kirschner@usdoj.gov>
**Sent:** Sunday, August 9, 2020 3:08:23 PM
**To:** Athul Acharya <acharya@braunhagey.com>; Matt Borden <borden@braunhagey.com>; Gunnar Martz <Martz@braunhagey.com>
**Cc:** Gardner, Joshua E (CIV) <Joshua.E.Gardner@usdoj.gov>
**Subject:** RE: Index Newspapers Production

Hi all,

The USMS has identified three additional documents that were potentially responsive for Friday's production.  Two are attached to this email.  The third is being withheld under the attorney-client privilege based on the provision of legal advice concerning various statutory authority related to USMS operations.

Thanks,
Adam

---

**From:** Kirschner, Adam (CIV)
**Sent:** Friday, August 07, 2020 10:10 PM
**To:** Athul Acharya <acharya@braunhagey.com>; Matt Borden <borden@braunhagey.com>; Gunnar Martz <Martz@braunhagey.com>
**Cc:** Gardner, Joshua E (CIV) <jgardner@CIV.USDOJ.GOV>
**Subject:** RE: Index Newspapers Production

Hi all,

The documents have been loaded onto JEFS and Gunnar should have access to them.  There should actually be two productions loaded on JEFS.  One is for the Marshals Service and one is for DHS and its components.  FYI, these production were able to be completed with the protective order in mind so there is now no need to update the productions in light of the protective order.

There was one document that we hadn't had an opportunity to load onto JEFS that we are now attaching to this email.

Finally, DHS and its components withheld a handful of documents that are not loaded onto JEFS as reflected on a preliminary privilege log attached to this email.  This preliminary log also identifies redacted documents.  The Marshals Service has not yet had an opportunity to start putting together a log given that it has prioritized getting information out to you.  Please note there is only one document from the Marshals Service that is being withheld in full that is not reflected in the productions.  That is an opinion from the Office of Legal Counsel for the Deputy Attorney General, dated May 31, 2020, titled "Proposed Deputy Attorney General Order Authorizing the Director, United States Marshals Service to Deploy United States Marshals in Response to Nationwide Violent Unrest."  It is being withheld pursuant to the attorney-client and deliberative process privileges, but we will endeavor to get you a privilege log on the withholdings and redactions as soon as we can.

Thanks,
Adam

# EXHIBIT 10

**From:**        AS1CFW ███████████
**Sent:**        7/22/2020 2:02:28 AM
**To:**          MORGAN, MARK A ███████████████; AS2KTC ████████████
**Subject:**     Re:

Disappointing but not unexpected.
Deep state alive.
Also - he is not a real journalist.

---

**From:** MORGAN, MARK A ███████████████
**Sent:** Tuesday, July 21, 2020 9:32:35 PM
**To:** AS1CFW ██████████████; AS2KTC ████████████
**Subject:**

FYSA

https://www.buzzfeednews.com/article/hamedaleaziz/dhs-employee-anger-over-portland-protest-response

Sent from my iPhone

# EXHIBIT 11

# FILED UNDER SEAL

# EXHIBIT 12

# FILED UNDER SEAL