**Matthew Borden**, admitted *pro hac vice*
borden@braunhagey.com
**J. Noah Hagey**, admitted *pro hac vice*
hagey@braunhagey.com
**Athul K. Acharya**, OSB No. 152436
acharya@braunhagey.com
**Gunnar K. Martz**, admitted *pro hac vice*
martz@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, Tenth Floor
San Francisco, CA 94104
Telephone: (415) 599-0210

**Kelly K. Simon**, OSB No. 154213
ksimon@aclu-or.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF OREGON
P.O. Box 40585
Portland, OR 97240
Telephone: (503) 227-6928

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **INDEX NEWSPAPERS LLC**, a Washington limited-liability company, dba **PORTLAND MERCURY**; **DOUG BROWN**; **BRIAN CONLEY**; **SAM GEHRKE**; **MATHIEU LEWIS-ROLLAND**; **KAT MAHONEY**; **SERGIO OLMOS**; **JOHN RUDOFF**; **ALEX MILAN TRACY**; **TUCK WOODSTOCK**; **JUSTIN YAU**; and those similarly situated,<br><br>             Plaintiffs,<br><br>      v.<br><br>**CITY OF PORTLAND**, a municipal corporation; **JOHN DOES 1-60**, officers of Portland Police Bureau and other agencies working in concert; **U.S. DEPARTMENT OF HOMELAND SECURITY**; and **U.S. MARSHALS SERVICE**,<br><br>             Defendants. | Case No. 3:20-cv-1035-SI<br><br>**PLAINTIFFS' MOTION TO STRIKE DECLARATION OF CHRIS BISHOP** |

PLAINTIFFS' MOTION TO STRIKE DECLARATION OF CHRIS BISHOP

Plaintiffs respectfully submit this motion to strike the declaration of Chris A. Bishop submitted by the federal agents on August 18, 2020.

## **INTRODUCTION**

After the hearing on Plaintiffs' motion for a preliminary injunction, the federal agents submitted a declaration by one of their employees purporting to rebut the expert declaration of Gil Kerlikowske. They made no effort to file this supposed rebuttal with their Opposition. They made no effort to depose Mr. Kerlikowske. They did not ask to extend the TRO and compressed briefing schedule they forced upon Plaintiffs so that they could have more time to prepare a rebuttal report or depose Mr. Kerlikowske. When they filed the declaration, they had been in possession of Mr. Kerlikowske's declaration for nine days, virtually an eternity given the highly compacted scheduling they demanded.

At oral argument yesterday, the federal agents represented that they were making this untimely filing because they did not understand Mr. Kerlikowske's expert declaration to be such. This makes little sense. Mr. Kerlikowske's declaration plainly states the opinions he was asked to render, then lists them as Opinions No. 1 through 4, then details the bases for his opinions. (Dkt. 135 ¶ 4.) The federal agents simply decided that it was more advantageous to submit this declaration—from a party under their control—after the motion for a preliminary injunction was argued and submitted to the Court, so that Plaintiffs would have no ability to depose their witness or prepare a rebuttal report. That tactic is obviously unfair; it violates the Court's Scheduling Order (Dkt. 126), which established the briefing schedule for the motion; and it is part of the federal agents' broader pattern of withholding evidence and trying to run out the discovery clock. For those reasons alone, it should be stricken.

In addition, the federal agents' declaration should be stricken because the declarant, Chris A. Bishop, is not an expert and does not rebut Mr. Kerlikowske's opinions. Unable to find an actual expert to disagree with Mr. Kerlikowske, the federal agents rely on an illegal "Acting

PAGE 1 -   PLAINTIFFS' MOTION TO STRIKE DECLARATION OF CHRIS BISHOP

Director/Deputy Director" of CBP's Law Enforcement Safety and Compliance Directorate,[1] who admittedly knows nothing about most of the topics in Mr. Kerlikowske's expert declaration. (Declaration of Chris Bishop ("Bishop Decl."), Dkt. 152 ¶ 3.) His opinions, such as they are, are mainly lawyer argument unburdened by reliance on the record. At the same time, he relies exclusively on documents that the federal agents did not produce in discovery and still do not attach to the Bishop declaration, preventing Plaintiffs from assessing and responding to them in this brief.

For all of these separate reasons, his declaration should be stricken.

## ARGUMENT

### I.  THE BISHOP DECLARATION VIOLATES THE COURT'S SCHEDULING ORDER AND IS AN UNFAIR EFFORT TO SANDBAG PLAITNIFFS

The Court's August 6 scheduling order states: "(1) Plaintiffs' opening brief is due by August 9, 2020; (2) Defendants' response is due by August 12, 2020; (3) Plaintiffs' reply is due by 5:00 p.m. on August 14, 2020." (Dkt. 126.) Because the federal agents would not stipulate to extend the TRO and agree to a reasonable briefing schedule that enabled Plaintiffs to take the Court-ordered discovery in support of their motion for a preliminary injunction, Plaintiffs had but three days to prepare their briefing. Despite the tight time frame, Plaintiffs adhered to the Court-ordered schedule. The federal agents did not.

District courts have broad discretion to "supervis[e] the pretrial phase of litigation, and [their] decisions regarding the preclusive effect of a pretrial order will not be disturbed unless they evidence a clear abuse of discretion." *United States v. Dang*, 488 F.3d 1135, 1143 (9th Cir. 2007) (quotation marks and alteration omitted). Failure to abide by a scheduling order can expose a party to sanctions, including evidentiary sanctions. *Grove City Veterinary Serv., LLC v.*

---

[1] *See Legality of Service of Acting Secretary of Homeland Security and Service of Senior Official Performing the Duties of Deputy Secretary of Homeland Security*, U.S. Government Accountability Office (Aug. 14, 2020) (concluding that under the Federal Vacancy Reform Act, Chad Wolf and Ken Cuccinelli were illegally appointed to their positions because the official who purported to appoint them lacked power to do so), *available at* https://www.gao.gov/assets/710/708830.pdf.

PAGE 2 -   PLAINTIFFS' MOTION TO STRIKE DECLARATION OF CHRIS BISHOP

*Charter Practices, Int'l LLC*, No. 3:13-CV-2276-AC, 2016 WL 1573830, at *4 (D. Or. Apr. 19, 2016) (citing Fed. R. Civ. P. 16(f)(1)(C)); Fed. R. Civ. P. 37(b)(2)(A)(ii). In particular, a district court may "strike . . . late-submitted evidence for failure to comply with a scheduling order." *Cusano v. Klein*, 264 F.3d 936, 951 (9th Cir. 2001); *see also Xiong v. Veneman*, 2005 WL 3557176, at *4 (E.D. Cal. Dec. 22, 2005) ("If the Court were to allow unlimited filings in the manner apparently sought by [the federal agents], the Court could never be sufficiently certain of the parties' positions to be able to rule on a motion presented to it."). Defendants' abject failure to abide by the scheduling order is by itself sufficient reason to strike Mr. Bishop's declaration from the record.

      The Court should separately strike Mr. Bishop's declaration because it is fundamentally unfair. A party "should not be permitted to 'sandbag' its adversary by raising entirely new but foreseeable points relevant to the motion" on the day of the hearing—and especially *after* the hearing. *Alpine Bank v. Hubbell*, 2007 WL 219121, at *3 (D. Colo. Jan. 26, 2007) (quotation marks and alterations omitted). The federal agents have been aware of Mr. Kerlikowske's declaration since August 9. In the nine days between August 9 and today, the federal agents did not seek to depose Mr. Kerlikowske, even though the Court authorized expedited discovery. Nor did they file Mr. Bishop's declaration with their opposition on August 12. Nor can they have had any good reason for failing to do so, for Mr. Bishop is not some independent expert for whom the federal agents had to hunt and with whom they had to negotiate. He is a DHS employee, just like Allen Scott Jones, Agent CBP SOG-1, Brian Acuna, David Olson, Jeffrey Perry, and Agent CBP SOD-1. The federal agents could have submitted Mr. Bishop's declaration at the same time as their opposition brief, just as they did with the declarations of their other employees. (*Cf.* Dkts. 138-1 to 138-7.) Instead, they chose to sandbag Plaintiffs with a witness whom Plaintiffs cannot depose or rebut, and who, as discussed below, relies on materials the federal agents neither produced in discovery nor filed with the Court. Because it would be unfair to allow the federal agents to lie in the weeds in this manner, this is a separate reason the Bishop declaration should be stricken.

PAGE 3 -   PLAINTIFFS' MOTION TO STRIKE DECLARATION OF CHRIS BISHOP

## II. MR. BISHOP IS NOT AN EXPERT AND DOES NOT REBUT MR. KERLIKOWSKE'S EXPERT TESTIMONY

The Court should strike Mr. Bishop's declaration on the separate grounds that (1) he is not an expert, (2) he exclusively relies on documents that the federal agents refused to produce and still do not attach to the declaration and (3) he does not rebut Mr. Kerlikowske's testimony.

### A.  Mr. Bishop Is Not an Expert

Expert testimony must be both relevant and reliable. *Chong v. STL Int'l, Inc.*, No. 3:14-CV-244-SI, 2016 WL 4253959, at *1 (D. Or. Aug. 10, 2016). An expert's testimony is not reliable if it lacks "a reliable basis in the knowledge and experience of the relevant discipline." *Id.* (quoting *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043-44 (9th Cir. 2014)). Similarly, an opinion based on "unsubstantiated and undocumented information" is the "antithesis" of an admissible expert opinion." *Id.* at *2 (quoting *Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1423 (9th Cir. 1998)). Thus, courts strike expert opinions if they are not "[]adequately supported in the record." *Id.*

Mr. Bishop is not an expert. He purports to be the "Acting Director/Deputy Director" of CBP's "Law Enforcement Safety and Compliance Directorate (LESC)." (Bishop Decl. ¶ 3.) But he does not explain whether he has any training and experience to testify as an expert, as opposed to simply as a lifelong CPB employee who was illegally appointed to his "acting" position after serving in sundry positions under Mr. Kerlikowske and others. (*Compare* Bishop Decl. ¶ 3, *with* Kerlikowske Decl. ¶¶ 1-3, *and* Kerlikowske Reply Decl. ¶¶ 1-5.) He does not claim to have any expertise in civil unrest, much less crowd control in the context of such disturbances, much less that he has the degree of experience in policing demonstrations necessary to criticize his former commanding officer. He does not explain what knowledge or experience he has of police training and use of force in the context of protests and the First Amendment, let alone why his testimony has a "reliable basis" in such knowledge or experience. That alone is sufficient reason to strike his testimony. *Cf. Chong*, 2016 WL 4253959, at *1.

Because he does not claim to have any expertise in crowd control or use of force in the context of civil disturbances, civil unrest, or demonstrations similar to those taking place in

PAGE 4 -   PLAINTIFFS' MOTION TO STRIKE DECLARATION OF CHRIS BISHOP

Portland, Mr. Bishop's views on these topics are not expert opinions. Accordingly, paragraphs 12-18, 22-23 and 25 of the Bishop declaration should be struck because they relate to crowd control and use of force in the context of protests—something Mr. Bishop does not even claim to know anything about.

> **B.      Mr. Bishop Did Not Review Anything Other than Mr. Kerlikowske's Declaration and Documents the Federal Agents Refused to Produce**

In addition to Mr. Bishop's lack of expertise, he did not review any of the evidence in the record and purports to support his opinions entirely with evidence that the federal agents refused to produce during discovery, even though it was responsive to Plaintiffs' document requests. Because Mr. Bishop's opinions rely on information not in the record and ignore information that is in the record, they are not based on "objective, verifiable evidence"; they are "speculative and unreliable." *See Chong*, 2016 WL 4253959, at *10. This is a separate and independent reason why much of the declaration should be struck.

Mr. Bishop did not review any of the journalist and legal observer declarations in the record, the video evidence, the deposition testimony, or the pleadings. (*Compare* Bishop Decl. ¶ 2, *with* Kerlikowske Decl. ¶ 5.) He did not review any of the discovery responses from the federal agents. (Bishop Decl. ¶ 2.) He also did not review any of Plaintiffs' discovery responses. (*Id.*; *cf., e.g.*, Declaration of Matthew Borden ("Borden Decl."), Exs. 1-2.)[2]

At the same time, Mr. Bishop relies on unspecified use-of-force reports from CBP's "E-STAR" tracking system that the federal agents did not produce. (Bishop Decl. ¶¶ 4, 14; *cf.* Borden Decl., Ex. 3 at RFP No. 16 (seeking "[a]ll documents related to any studies or investigations that you have started, conducted, or completed related to any incidents in which journalists or legal observers have been allegedly assaulted or harmed").) Mr. Bishop also refers

---

[2] After waiting 18 days without serving any discovery, the federal agents propounded interrogatories on Plaintiffs just two days before their Opposition was due to try to create a process where they could make a supplemental submission to the Court after the briefing was completed. Plaintiffs expended considerable efforts providing almost instant responses so that the federal agents had them in time to include them in their Opposition. Then the federal agents never used any of the responses anyway. (Borden Decl. ¶ 5.)

to CBP's "Use of Force Policy, Guidelines and Procedures Handbook." (Bishop Decl. ¶ 5.) But the federal agents believed that this document was so irrelevant that they did not produce it either. (*Cf.* Borden Decl., Ex. 3 at RFP No. 13 (requiring the federal defendants to produce "[a]ll documents and communications . . . related to any training, techniques, policies, or procedures related to the use of force in response to threats to federal property").) Mr. Bishop does not even attach any of these materials to his declaration so that Plaintiffs could evaluate them in the context of filing this motion. It is thus doubly unfair for the federal agents to attempt to submit the Bishop declaration, and paragraphs 4-6, 8-16, 20-21, 23, and 25, which rely on materials that the federal agents refused to produce, should be struck for this reason.

        **C.**     **The Bishop Declaration Does Not Rebut Mr. Kerlikowske's Expert Testimony**

Many of the conclusions in the Bishop declaration do not rebut Mr. Kerlikowske's expert opinions and should be struck for this separate and independent reason as well.

For example, Mr. Bishop engages in a lengthy discussion about CBP's use of force policy that Mr. Kerlikowske promulgated when Mr. Bishop was Mr. Kerlikowske's low-level employee. (Bishop Decl. ¶¶ 5-6, 8-13, 15, 20-21, 23, 25.) But he does not explain that this policy is focused on individual Border Patrol and CBP personnel acting in mainly in an individual capacity in the context of preventing border entry. (Kerlikowske Decl. ¶ 26.) The reason why the federal agents apparently withheld this document in discovery is that it has nothing to do with the training and use of force required to effectively—and constitutionally—police a demonstration, where the majority of the participants are exercising their constitutional rights under the First Amendment. (*Id.* ¶ 25.)

Nor does Mr. Bishop rebut Mr. Kerlikowske's extensive expert testimony that the repeated violence that the federal agents inflicted on journalist and legal observers was unnecessary and excessive. (*Id.* ¶¶ 30-41.) Mr. Bishop simply states circumstances where he believes CBP policy allows force. He does not offer any opinion contrary to Mr. Kerlikowske's

PAGE 6 -   PLAINTIFFS' MOTION TO STRIKE DECLARATION OF CHRIS BISHOP

expert opinion that the force federal agents used in virtually all the instances in the record were "undisciplined, unwarranted and unnecessary." (*Id.*)

The Bishop declaration also states that CBP officers must be trained on less-lethal munitions—which, as Mr. Kerlikowske explained, was a policy he initiated to reduce CBP's use of force. (Bishop Decl. ¶ 9; Kerlikowske Supp. Decl., Dkt. 145 ¶ 2.) But the Bishop declaration offers nothing to rebut Mr. Kerlikowske's expert opinion that such training did not cover the use of force in the context of protests and civil disturbances. (*E.g.*, Kerlikowske Decl. ¶¶ 22-26.) Nor does he, or can he, rebut Mr. Kerlikowske's expert opinion that widely distributing less-lethal weapons in a platoon environment, especially when none of the individuals is trained for use of force in the contexts of protests, is dangerous and unwarranted. (*Id.* ¶¶ 25, 28.)

Similarly, Mr. Bishop concludes that "officers/agents may need to make . . . split-second decisions." (Bishop Decl. ¶ 12.) But that does not contradict Mr. Kerlikowski's declaration. Mr. Kerlikowske never opined that officers would not need to make split-second decisions—only that in doing so, they are still capable of distinguishing journalists and legal observers from protesters using the indicia in the TRO. (Kerlikowske Decl. ¶ 9.) Mr. Kerlikowske also offers the related expert opinion that allowing individual decision making in a crowd control or civil unrest environment, rather than policing in a unit under a unitary command, demonstrates poor planning and poor leadership. (*E.g.*, Kerlikowske Decl. ¶¶ 22, 29.) Mr. Bishop does not rebut this point either.

Mr. Bishop also argues against Mr. Kerlikowske's supposed conclusion that federal agents should "trust that criminal activities during the Portland protests will be limited to harmless non-violent activities," but Mr. Bishop cites no paragraph of Mr. Kerlikowske's expert declarations expressing such an opinion because Mr. Kerlikowske has never offered any expert opinion of the sort. (Bishop Decl. ¶ 14.)

For a final example, Mr. Bishop argues about various risk control measures the federal agents may or may not have taken, none of which address the situation of press and legal observers going beyond skirmish lines. (Bishop Decl. ¶ 18.) This does not contradict Mr.

PAGE 7 -   PLAINTIFFS' MOTION TO STRIKE DECLARATION OF CHRIS BISHOP

Kerlikowske's opinion that the federal agents would take risk control measures if they perceived a threat from press and legal observers doing so. (Kerlikowske Decl. ¶ 18.)

## CONCLUSION

For each of the foregoing reasons, the Bishop declaration should be struck.

Dated: August 19, 2020                                  Respectfully Submitted,

By: /s/ Matthew Borden
Matthew Borden, *pro hac vice*
J. Noah Hagey, *pro hac vice*
Athul K. Acharya, OSB No. 152436
Gunnar K. Martz, *pro hac vice*
BRAUNHAGEY & BORDEN LLP

Kelly K. Simon, OSB No. 154213
ACLU FOUNDATION OF OREGON

*Attorneys for Plaintiffs*