**Matthew Borden**, admitted *pro hac vice*
borden@braunhagey.com
**J. Noah Hagey**, admitted *pro hac vice*
hagey@braunhagey.com
**Athul K. Acharya**, OSB No. 152436
acharya@braunhagey.com
**Gunnar K. Martz**, admitted *pro hac vice*
martz@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, Tenth Floor
San Francisco, CA 94104
Telephone: (415) 599-0210

**Kelly K. Simon**, OSB No. 154213
ksimon@aclu-or.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF OREGON
P.O. Box 40585
Portland, OR 97240
Telephone: (503) 227-6928

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **INDEX NEWSPAPERS LLC**, a Washington limited-liability company, dba **PORTLAND MERCURY**; **DOUG BROWN**; **BRIAN CONLEY**; **SAM GEHRKE**; **MATHIEU LEWIS-ROLLAND**; **KAT MAHONEY**; **SERGIO OLMOS**; **JOHN RUDOFF**; **ALEX MILAN TRACY**; **TUCK WOODSTOCK**; **JUSTIN YAU**; and those similarly situated, | Case No. 3:20-cv-1035-SI<br><br>**DECLARATION OF MATTHEW BORDEN IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE DECLARATION OF CHRIS BISHOP** |
| Plaintiffs, | |
| v. | |
| **CITY OF PORTLAND**, a municipal corporation; **JOHN DOES 1-60**, officers of Portland Police Bureau and other agencies working in concert; **U.S. DEPARTMENT OF HOMELAND SECURITY**; and **U.S. MARSHALS SERVICE**, | |
| Defendants. | |

PAGE 1 -  BORDEN DECLARATION IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE
DECLARATION OF CHRIS BISHOP

I, Matthew Borden, declare:

1.      I am an attorney at BraunHagey & Borden LLP and counsel of record for Plaintiffs. I base this declaration on facts within my personal knowledge and if called upon to testify, I could and would testify competently thereto.

2.      Attached hereto as **Exhibit 1** is a true and correct copy of Plaintiff Mathieu Lewis-Rolland's Objections and Responses to Federal Defendants' First Set of Interrogatories.

3.      Attached hereto as **Exhibit 2** is a true and correct copy of Plaintiff Tuck Woodstock's Objections and Responses to Federal Defendants' First Set of Interrogatories.

4.      Attached hereto as **Exhibit 3** is a true and correct copy of Plaintiffs' First Set of Requests for Production to Defendant U.S. Department of Homeland Security.

5.      On July 23, the Court granted a Temporary Restraining Order against the federal defendants and allowed for expedited discovery. Plaintiffs served their first discovery requests two days later, on July 25. Federal defendants did not propound interrogatories until August 10, two days before their opposition to Plaintiffs' Motion for Preliminary Injunction was due. Plaintiffs served responses on August 12. The federal defendants did not cite any of Plaintiffs' discovery responses in their opposition brief or at oral argument.

        I declare under penalty of perjury under the laws of United States of America that the foregoing is true and correct.

Dated:  August 19, 2020                          _____
                                                                         Matthew Borden

PAGE 2 -   BORDEN DECLARATION IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE
                  DECLARATION OF CHRIS BISHOP

# EXHIBIT 1

DocuSign Envelope ID: 24047B1E-8327-47E7-A742-9689EB73558A

**Matthew Borden**, admitted *pro hac vice*
borden@braunhagey.com
**J. Noah Hagey**, admitted *pro hac vice*
hagey@braunhagey.com
**Athul K. Acharya**, OSB No. 152436
acharya@braunhagey.com
**Gunnar K. Martz**, admitted *pro hac vice*
martz@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, Tenth Floor
San Francisco, CA 94104
Telephone: (415) 599-0210

**Kelly K. Simon**, OSB No. 154213
ksimon@aclu-or.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF OREGON
P.O. Box 40585
Portland, OR 97240
Telephone: (503) 227-6928

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **INDEX NEWSPAPERS LLC**, a Washington limited-liability company, dba **PORTLAND MERCURY**; **DOUG BROWN**; **BRIAN CONLEY**; **SAM GEHRKE**; **MATHIEU LEWIS-ROLLAND**; **KAT MAHONEY**; **SERGIO OLMOS**; **JOHN RUDOFF**; **ALEX MILAN TRACY**; **TUCK WOODSTOCK**; **JUSTIN YAU**; and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**CITY OF PORTLAND**, a municipal corporation; **JOHN DOES 1-60**, officers of Portland Police Bureau and other agencies working in concert; **U.S. DEPARTMENT OF HOMELAND SECURITY**; and **U.S. MARSHALS SERVICE**,<br><br>Defendants. | Case No. 3:20-cv-1035-SI<br><br>**PLAINTIFF MATHIEU LEWIS-ROLLAND'S OBJECTIONS AND RESPONSES TO FEDERAL DEFENDANTS' FIRST SET OF INTERROGATORIES** |

PLAINTIFF MATHIEU LEWIS-ROLLAND'S OBJECTIONS AND RESPONSES TO
FEDERAL DEFENDANTS' FIRST SET OF INTERROGATORIES

Plaintiff Mathieu Lewis-Rolland, by and through undersigned counsel, hereby submits the following objections and responses to Defendant U.S. Department of Homeland Security and U.S. Marshals Service's first set of interrogatories to individual plaintiffs.

**INTERROGATORY NO. 1:**

Identify each protest you attended, by date, and the specific times you attended such protest. For each instance of attendance, identify whether you attended in a press capacity or not, and describe what press indicia you wore, if any.

**RESPONSE:**

Plaintiff objects that this interrogatory is unduly burdensome as it was served on August 10, 2020, just over a week before the Court is set to hear Plaintiffs' motion for a preliminary injunction, even though the Court authorized expedited discovery on July 23 and the substance of this interrogatory was known to the federal defendants at that time. Plaintiff responds to the best of his memory and ability at this time, and reserves the right to supplement his responses under Federal Rule of Civil Procedure 26(e) if Plaintiff becomes aware of additional responsive information at a later date.

Notwithstanding this objection, Plaintiff responds as follows:

I attended protests within two blocks of the Hatfield Courthouse on:

1.     May 30, 4:30 p.m. to 10 p.m.

2.     May 31, 9 p.m., to June 1, 1 a.m.

3.     June 5, 9 p.m. to 11:30 p.m.

4.     July 3, 11 p.m., to July 4, 3 a.m.

5.     July 4, 9:30 p.m., to July 5, 12:30 a.m.

6.     July 6, 9 p.m., to July 7, 3 a.m.

7.     July 12, 1 a.m. to 2:30 a.m.

8.     July 16, 12:30 a.m. to 3 a.m.

9.     July 17, 1 a.m. to 3 a.m.

10.    July 18, 12 a.m. to 3 a.m. / 10 p.m. to July 19, 4:30 a.m.

11.    July 20, 10:30 p.m., to July 21, 3:30 a.m.

12.    July 22, 9 p.m., to July 23, 2:30 a.m.

13.    July 23, 10:30 p.m., to July 24, 3 a.m.

14.    July 24, 10:30 p.m., to July 25, 4:30 a.m.

15.    July 25, 10:30 p.m., to July 26, 3 a.m.

16.    July 28, 1 a.m. to 3:30 a.m. / 10 p.m. to July 29, 2 a.m.

17.    July 30, 12 a.m. to 2:30 a.m. / 11:30 p.m. to July 31, 1:30 a.m.

18.    August 3, 7:45 p.m. to 8:15 p.m.

19.    August 9, 9:30 p.m. to 10 p.m.

I have only ever attended the protests for documentary reasons as a member of the press, and I never protested. In May and June, I carried a Nikon D850 with a 70-200mm lens. Starting July 3, I wore a t-shirt marked with PRESS on front and back in big block letters. On July 15, I began wearing a white bicycle helmet marked with PRESS on front and sides. I also began wearing a backpack marked with PRESS in two locations. On July 17, I also began carrying a press pass from the *Portland Mercury*. On July 22, I started wearing a reflective fluorescent yellow vest with a see-through pocket for my press pass to replace my PRESS t-shirt. On July 29, I replaced my white bicycle helmet with a black type 3a helmet marked PRESS on the front and sides.

**INTERROGATORY NO. 2:**

For each protest attendance identified in response to INTERROGATORY NO. 1, describe in detail each interaction you had with any federal law enforcement officer.

**RESPONSE:**

Plaintiff objects that this interrogatory is unduly burdensome as it was served on August 10, 2020, just over a week before the Court is set to hear Plaintiffs' motion for a preliminary injunction, even though the Court authorized expedited discovery on July 23 and the substance

of this interrogatory was known to the federal defendants at that time. Plaintiff further objects to the use of the term "interaction" as vague, and to the extent that the federal defendants seek information about each and every time Plaintiff interacted in any way with any one of the hundreds of federal agents policing the Portland protests, unduly burdensome and not proportional to the needs of the case. Plaintiff responds to the best of his memory and ability at this time, and reserves the right to supplement his responses under Federal Rule of Civil Procedure 26(e) if Plaintiff becomes aware of additional responsive information at a later date.

Notwithstanding these objections, Plaintiff responds that my interactions with federal agents include:

On all of the days above, federal agents exposed me to tear gas, except August 3 and 9.

In the early morning of July 12, a federal agent shoved me from behind with his gun, without warning. Then a federal agent pointed a weapon at me. A minute later I was shot 10 times in the back with impact munitions as I turned to document a tear-gas canister that was deployed into the street. I was left with severe lacerations and bruises all over my back and right elbow.

In the early morning of July 18, federal agents fired a couple of flash-bang grenades in my direction as I approached Lownsdale Square Park.

In the late evening of July 18, federal agents fired tear gas in my direction.

In the early morning of July 21, federal agents directly targeted me with impact munitions, tear gas, and flash-bang grenades, all of which were fired in my direction on multiple occasions. Federal agents also aimed at me with multiple weapons, including weapons that appeared to be loaded with lethal ammunition, and including one instance where a federal agent held his weapon on me for at least 5 seconds at very close range while I had my free hand up in the air and was identifying as press.

In the late evening of July 22, federal agents shot impact munitions at me through the fence in front of the Hatfield Courthouse, while I was standing 6 ft away from the mayor. The munitions hit the fence, and shrapnel hit me and damaged my camera and backpack.

PAGE 3 -   PLAINTIFF MATHIEU LEWIS-ROLLAND'S OBJECTIONS AND RESPONSES
          TO FEDERAL DEFENDANTS' FIRST SET OF INTERROGATORIES

In the early morning of July 23, federal agents directly targeted and hit me in the chest with a tear-gas canister.

In the late evening of July 24, federal agents directly targeted and hit me with impact munitions on the left shoulder, leaving me with a heavy bruise and laceration.

In the late evening of July 25, federal agents targeted a group of legal observers and press, including me, with tear gas.

In the early morning of July 26, federal agents hit me with a tear-gas grenade, and narrowly missed me with other munitions.

In the early morning of July 30, federal agents pushed and shoved me. They also fired at a group of press, including me, with flash-bang grenades, impact munitions, and mace. They narrowly missed me, but other members of the press next to me were directly hit.


As to the responses: I declare under penalty of perjury under the laws of United States of America that the foregoing is true and correct.

Dated: August 11, 2020

> DocuSigned by:
> 7A4B2344D6DD4CD...

Mathieu Lewis-Rolland


As to the objections:

Dated: August 11, 2020

By: /s/ Matthew Borden

Matthew Borden, *pro hac vice*
J. Noah Hagey, *pro hac vice*
Athul K. Acharya, OSB No. 152436
Gunnar K. Martz, *pro hac vice*
BRAUNHAGEY & BORDEN LLP

Kelly K. Simon, OSB No. 154213
ACLU FOUNDATION OF OREGON

*Attorneys for Plaintiffs*

# EXHIBIT 2

**Matthew Borden**, admitted *pro hac vice*
borden@braunhagey.com
**J. Noah Hagey**, admitted *pro hac vice*
hagey@braunhagey.com
**Athul K. Acharya**, OSB No. 152436
acharya@braunhagey.com
**Gunnar K. Martz**, admitted *pro hac vice*
martz@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, Tenth Floor
San Francisco, CA 94104
Telephone: (415) 599-0210

**Kelly K. Simon**, OSB No. 154213
ksimon@aclu-or.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF OREGON
P.O. Box 40585
Portland, OR 97240
Telephone: (503) 227-6928

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **INDEX NEWSPAPERS LLC**, a Washington limited-liability company, dba **PORTLAND MERCURY**; **DOUG BROWN**; **BRIAN CONLEY**; **SAM GEHRKE**; **MATHIEU LEWIS-ROLLAND**; **KAT MAHONEY**; **SERGIO OLMOS**; **JOHN RUDOFF**; **ALEX MILAN TRACY**; **TUCK WOODSTOCK**; **JUSTIN YAU**; and those similarly situated, | Case No. 3:20-cv-1035-SI |
| Plaintiffs, | **PLAINTIFF TUCK WOODSTOCK'S OBJECTIONS AND RESPONSES TO FEDERAL DEFENDANTS' FIRST SET OF INTERROGATORIES** |
| v. | |
| **CITY OF PORTLAND**, a municipal corporation; **JOHN DOES 1-60**, officers of Portland Police Bureau and other agencies working in concert; **U.S. DEPARTMENT OF HOMELAND SECURITY**; and **U.S. MARSHALS SERVICE**, | |
| Defendants. | |

PLAINTIFF TUCK WOODSTOCK'S OBJECTIONS AND RESPONSES TO FEDERAL
DEFENDANTS' FIRST SET OF INTERROGATORIES

Plaintiff Tuck Woodstock, by and through undersigned counsel, hereby submits the following objections and responses to Defendant U.S. Department of Homeland Security and U.S. Marshals Service's first set of interrogatories to individual plaintiffs.

**INTERROGATORY NO. 1:**

Identify each protest you attended, by date, and the specific times you attended such protest. For each instance of attendance, identify whether you attended in a press capacity or not, and describe what press indicia you wore, if any.

**RESPONSE:**

Plaintiff objects that this interrogatory is unduly burdensome as it was served on August 10, 2020, just over a week before the Court is set to hear Plaintiffs' motion for a preliminary injunction, even though the Court authorized expedited discovery on July 23 and the substance of this interrogatory was known to the federal defendants at that time. Plaintiff responds to the best of their memory and ability at this time, and reserves the right to supplement their responses under Federal Rule of Civil Procedure 26(e) if Plaintiff becomes aware of additional responsive information at a later date.

Notwithstanding this objection, Plaintiff responds as follows:

I attended protests within two blocks of the Hatfield Courthouse on June 3-4, 6-8, 10-15, 19-23, 25, and 28; and July 1-3, 5, 6-7, 15-16, 19-22, and 24-25. I generally attended from 9:30 p.m. to midnight or a little after midnight in June, and from 9:30 p.m. until around 2 a.m. in July. Each day I attended, I attended as a member of the press, and I never protested. I wore a press pass every day, and on July 20 I began wearing a helmet that said "PRESS" in large letters on three sides, which I wore on every following day.

**INTERROGATORY NO. 2:**

For each protest attendance identified in response to INTERROGATORY NO. 1, describe in detail each interaction you had with any federal law enforcement officer.

PAGE 1 -   PLAINTIFF TUCK WOODSTOCK'S OBJECTIONS AND RESPONSES TO
            FEDERAL DEFENDANTS' FIRST SET OF INTERROGATORIES

DocuSign Envelope ID: F0428F4B-P1ED-48EV-8621-2AEBCF49729F

**RESPONSE:**

Plaintiff objects that this interrogatory is unduly burdensome as it was served on August 10, 2020, just over a week before the Court is set to hear Plaintiffs' motion for a preliminary injunction, even though the Court authorized expedited discovery on July 23 and the substance of this interrogatory was known to the federal defendants at that time. Plaintiff further objects to the use of the term "interaction" as vague, and to the extent that the federal defendants seek information about each and every time Plaintiff interacted in any way with any one of the hundreds of federal agents policing the Portland protests, unduly burdensome and not proportional to the needs of the case. Plaintiff responds to the best of their memory and ability at this time, and reserves the right to supplement their responses under Federal Rule of Civil Procedure 26(e) if Plaintiff becomes aware of additional responsive information at a later date.

Notwithstanding these objections, Plaintiff responds as follows:

On the night of July 1, officers whom I believe were FPS agents fired pepper balls into the crowd without warning, causing me and the rest of the crowd to cough and sneeze during a pandemic.

On the night of July 5, I had multiple interactions with federal agents:

- USMS agents chased the crowd from the federal courthouse to Lownsdale Square and were pouring through the streets. I approached multiple agents—holding up my press badge and verbally identifying myself as press—and asked what organization they were affiliated with, since I couldn't tell from the uniforms. The officers refused to talk to me or even make eye contact with me, pointedly turning their head away when I spoke to them.

- Later, I approached an FPS agent and asked him to identify his organization. He told me to move away from the line of officers. He appeared to be holding a gun with live rounds.

- Federal agents executed a massed charge against a crowd of nonviolent protesters and press without any warning and without any apparent motivation. I tried to film the

PAGE 2 -   PLAINTIFF TUCK WOODSTOCK'S OBJECTIONS AND RESPONSES TO
          FEDERAL DEFENDANTS' FIRST SET OF INTERROGATORIES

DocuSign Envelope ID: F0128F4B-F1E0-48EF-8E2F-3AEBCF49729F

dispersal as I walked out of the park, as a member of the press, but a federal officer, who I believe was a USMS agent, chased me with a baton and forced me to physically run, which did not allow me to film the dispersal. I visually and verbally identified myself as press, and he acknowledged that he knew I was press.

- Later during the same dispersal, federal agents ordered the crowd to move west on SW Main Street. Another USMS agent approached me holding his baton out and yelling "GET BACK, GET BACK, GET BACK!" I replied that I was already moving backwards, which was true, and he said "GET BACK FASTER!" Again, I had visually and verbally identified myself as press.

- While I was still complying with orders to move west on SW Main Street, a federal officer, who I believe was an FPS agent, pointed a gun loaded with pepper balls straight at my head, even though I was holding up my press pass and complying with orders.

- Once the protest returned to Lownsdale Square, federal agents once again charged towards the crowd without warning. Unidentified agents yelled at me to "MOVE" and I was unable to keep filming.

- During this dispersal maneuver, federal officers sprinted straight towards me; I held up my press pass and yelled "PRESS!" but they still forced me to literally sprint away, preventing me from filming.

On the night of July 16, I had several interactions with federal agents:

- Federal agents fired rounds of pepper balls at a peaceful crowd of protesters and press, creating a cloud of pepper-spray smoke that caused the crowd to cough and sneeze during a pandemic.

- Federal agents then deployed an extremely large quantity of tear gas without warning or apparent provocation. I was completely incapacitated and was left blinded and choking against the wall of the Justice Center for several minutes, unable to document the rest of the protest.

PAGE 3 -  PLAINTIFF TUCK WOODSTOCK'S OBJECTIONS AND RESPONSES TO
FEDERAL DEFENDANTS' FIRST SET OF INTERROGATORIES

- Federal agents continued to deploy smoke, tear gas, flashbangs, and hundreds of rounds of munitions as protesters and press, including me, peacefully retreated.
- Federal agents gathered outside the courthouse and continued gassing the crowd, leaving me once again unable to work. I was forced to ask a medic to give me a thorough eye flush, which then rendered my face mask, which I wear to protect myself and others from the risk of COVID-19, useless. The tear gas also caused severe harm to my reproductive-health system, forcing me to leave early and preventing me from continuing to report. Federal agents' extreme and unwarranted use of tear gas on this night caused so much damage to my lungs that I was unable to return to report on protests for two days.

On the night of July 19, I had two interactions with federal agents:

- Federal agents launched several flash-bang grenades into the crowd directly where I was standing, temporarily damaging my hearing.
- Federal agents fired so much tear gas into the crowd that I was completely unable to see for several minutes. I gave myself an eye flush and then got a second eye flush from a medic but I still was unable to do my job for nearly an hour, and struggled with the effects on my eyes for the rest of the night.

On the night of July 21, I had several interactions with federal agents:

- Federal agents deployed tear gas and flash-bang grenades into Lownsdale Square directly where I was standing. I was enveloped in tear gas and was forced to leave to avoid being shot with pepper balls.
- When I returned to film the front lines of the protest, federal agents used so much tear gas and pepper balls that I was able to continue reporting only because I had brought my own respirator.
- I wanted to film something a block away from the main protests (from SW Main Street to SW Salmon Street) but could not find a safe way to do so because federal agents were firing so many pepper balls into Lownsdale Square.

PAGE 4 -   PLAINTIFF TUCK WOODSTOCK'S OBJECTIONS AND RESPONSES TO
           FEDERAL DEFENDANTS' FIRST SET OF INTERROGATORIES

DocuSign Envelope ID: F0728F4B-P7FD-48EY-86E1-2AEBCF49725F

On the night of July 22, I had several interactions with federal agents. They shot tear gas at me or in my immediate vicinity at least five times, each time preventing me from continuing to do my job for several minutes. Twice the tear gas was so bad I was forced to leave the area. Federal agents also hit me with shrapnel from a flash-bang grenade while I was filming the protest in Lownsdale Square.

On the night of July 24, I had several interactions with federal agents. Again, federal agents shot tear gas and flash-bang grenades directly at me or my immediate vicinity at least five times. At one point, a flash-bang grenade hit the person in front of me, another hit the person next to me, and a third also landed near me. This quick succession of flash-bang grenades damaged my hearing—I hope only temporarily. Ultimately, my respirator filters were so thoroughly clogged by tear gas that I began choking, became unable to see, and was forced to stop filming federal officers and leave for the night.

As to the responses: I declare under penalty of perjury under the laws of United States of America that the foregoing is true and correct.

Dated: August 11, 2020

DocuSigned by:

*Tuck Wood*

1113B90439384DB...

Tuck Woodstock

As to the objections:

Dated: August 11, 2020

By: /s/ Matthew Borden

Matthew Borden, *pro hac vice*
J. Noah Hagey, *pro hac vice*
Athul K. Acharya, OSB No. 152436
Gunnar K. Martz, *pro hac vice*
BRAUNHAGEY & BORDEN LLP

Kelly K. Simon, OSB No. 154213
ACLU FOUNDATION OF OREGON

*Attorneys for Plaintiffs*

# EXHIBIT 3

**Matthew Borden**, admitted *pro hac vice*
borden@braunhagey.com
**J. Noah Hagey**, admitted *pro hac vice*
hagey@braunhagey.com
**Athul K. Acharya**, OSB No. 152436
acharya@braunhagey.com
**Gunnar K. Martz**, admitted *pro hac vice*
martz@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, Tenth Floor
San Francisco, CA 94104
Telephone: (415) 599-0210

**Kelly K. Simon**, OSB No. 154213
ksimon@aclu-or.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF OREGON
P.O. Box 40585
Portland, OR 97240
Telephone: (503) 227-6928

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **INDEX NEWSPAPERS LLC**, a Washington limited-liability company, dba **PORTLAND MERCURY**; **DOUG BROWN**; **BRIAN CONLEY**; **SAM GEHRKE**; **MATHIEU LEWIS-ROLLAND**; **KAT MAHONEY**; **SERGIO OLMOS**; **JOHN RUDOFF**; **ALEX MILAN TRACY**; **TUCK WOODSTOCK**; **JUSTIN YAU**; and those similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>**CITY OF PORTLAND**, a municipal corporation; **JOHN DOES 1-60**, officers of Portland Police Bureau and other agencies working in concert; **U.S. DEPARTMENT OF HOMELAND SECURITY**; and **U.S. MARSHALS SERVICE**,<br><br>                    Defendants. | Case No. 3:20-cv-1035-SI<br><br>**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT U.S. DEPARTMENT OF HOMELAND SECURITY** |

PLAINTIFFS' 1ST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT U.S. DEPARTMENT OF HOMELAND SECURITY

| **Propounding Parties:** | Plaintiffs Index Newspapers LLC dba Portland Mercury, Doug Brown, Brian Conley, Sam Gehrke, Mathieu Lewis-Rolland, Kat Mahoney, Sergio Olmos, John Rudoff, Alex Milan Tracy, Tuck Woodstock, and Justin Yau |
| --- | --- |
| **Responding Party:** | Defendant U.S. Department of Homeland Security |
| **Set Number:** | One |

Pursuant to the Temporary Restraining Order Enjoining Federal Defendants (Dkt. 84) ("TRO") ¶ 9 (authorizing "mutual expedited discovery"), Plaintiffs Index Newspapers LLC dba Portland Mercury, Doug Brown, Brian Conley, Sam Gehrke, Mathieu Lewis-Rolland, Kat Mahoney, Sergio Olmos, John Rudoff, Alex Milan Tracy, Tuck Woodstock, and Justin Yau hereby demand responses to requests for production for inspection, photographing and copying documents and tangible things described in the categories below to be produced at the law offices of BraunHagey & Borden LLP, 351 California Street, 10th Floor, San Francisco, CA 94104 (or as otherwise agreed to by the Parties). Per the Court's instructions, Defendant's responses must be served on Plaintiffs within such time so as to allow Plaintiffs to "be fully prepared to present all relevant facts and legal issues at a preliminary injunction hearing." *Id.*

## I.    DEFINITIONS

As used in these Requests:

1.    The term "**FPS**" refers to the Federal Protective Service and all employees, agents, representatives, consultants, attorneys, contractors, and any other persons acting under its control or behalf, and includes, without limitation, L. Eric Patterson, Richard K. Cline, and any predecessor or successor.

2.    The term "**ICE**" refers to U.S. Immigration and Customs Enforcement and all employees, agents, representatives, consultants, attorneys, contractors, and any other persons acting under its control or behalf, and includes, without limitation, Matthew Albence, Derek Benner, and any predecessor or successor.

3.    The term "**CBP**" refers to U.S. Customs and Border Protection and all employees, agents, representatives, consultants, attorneys, contractors, and any other persons acting under its

PAGE 1 -  PLAINTIFFS' 1ST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT
U.S. DEPARTMENT OF HOMELAND SECURITY

control or behalf, and includes, without limitation, Mark Morgan, Robert Perez, and any predecessor or successor.

4.      The term "**USBP**" refers to the U.S. Border Patrol and all employees, agents, representatives, consultants, attorneys, contractors, and any other persons acting under its control or behalf, and includes, without limitation, Rodney Scott, Raul Ortiz, and any predecessor or successor.

5.      The term "**BORTAC**" refers to the Border Patrol Tactical Unit and all employees, agents, representatives, consultants, attorneys, contractors, and any other persons acting under its control or behalf, and includes, without limitation, any predecessor or successor.

6.      The terms "**you**," "**your**," and "**DHS**" refer, collectively and individually, to the U.S. Department of Homeland Security; **FPS**; **ICE**; **CBP**; **USBP**; **BORTAC**; and all employees, agents, representatives, consultants, attorneys, contractors, and any other persons acting under **your** control or behalf, and includes, without limitation, Chad Wolf, Ken Cuccinelli, and any predecessor or successor.

7.      The term "**complaint**" refers to the operative Second Amended Complaint (Dkt. 53) in this case.

8.      The term "**TRO**" refers to the Temporary Restraining Order Enjoining Federal Defendants (Dkt. 84) in this case.

9.      The term "**Executive Order**" refers to the Executive Order on Protecting American Monuments, Memorials, and Statues and Combating Recent Criminal Violence, issued on June 26, 2020.

10.     The term "**communications**" refers to the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) whether orally, in writing, or otherwise, and whether in the form of emails, messages, text messages, SMS, chat logs, radio transmissions, letters, envelopes, telegrams, or otherwise.

11.     The term "**document**" is used in the broadest possible sense, and means, without limitation, any written, printed, typed, photostatic, photographed, recorded or otherwise

reproduced **communication** or representation, whether comprised of letters, words, numbers, pictures, sounds or symbols, or any notes, records, studies, analyses, contracts, agreements, projections, estimates, working papers, summaries, statistical statements, financial statements or work papers, accounts, analytical records, reports or summaries of investigations, opinions or reports of consultants, opinions or reports of accountants, or other reports, trade letters, press releases, comparisons, books, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, forecasts, drawings, diagrams, instructions, minutes of meetings, questionnaires, and surveys, charts, graphs, photographs, phonographs, films, videotapes, disks, data cells, drums, printouts and all other data compilations from which information can be obtained, any preliminary versions, drafts, or revisions of any kind of the foregoing, and other writings or documents of whatever description or kind, whether produced or authored by **you** or by anyone else, including non-identical copies of any of the foregoing, now in **your** possession, custody, or control.

12.    The term "**person**" refers to natural persons, corporations, firms, proprietorships, partnerships, trusts, joint ventures, groups, associations, institutes, organizations, and any other business, governmental or legal entities, including any divisions, departments, and units thereof.

13.    The term "**identify**" means to set forth in detail a description of those facts, actions, or tangible items, including the dates, location, and any persons or entities necessary to provide detailed information concerning the relevant facts, actions, or tangible items, as well as the name of the person or entity; the person or entity's current business address, including the name of any entity at which a person works; and if no business address is known, state the residential address for any person identified.

14.    The term "**related to**" means making a statement about, mentioning, referring to, discussing, describing, reflecting, evidencing, identifying, dealing with, consisting of, constituting, or in any way pertaining to the subject, in whole or in part.

15.    The term "**containing**" means mentioning, describing, or including, in whole or in part.

PAGE 3 -   PLAINTIFFS' 1ST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT
          U.S. DEPARTMENT OF HOMELAND SECURITY

16.     The singular includes the plural and vice versa, except as the context may require otherwise; reference to any gender includes the other gender; the words "and" and "or" shall be construed as either conjunctive or disjunctive in such manner as will broaden as widely as possible the scope of any topic; the words "any" and "all" mean "any and all"; the words "each" and "every" mean "each and every"; and the word "including" means "including without limitation."

## II.    INSTRUCTIONS

1.     The following inspection demands seek production for inspection and copying of all responsive **documents** in **your** possession, custody, or control, wherever located.

2.     Please identify and produce as a separate **document** any non-identical copy of a **document**, including copies with notes, highlighting, comments, or marginalia of any nature, and drafts.

3.     If there are no **documents** responsive to a category in this inspection demand, please state that in writing.

4.     For each **document** that **you** decline to make available for inspection and copying on the grounds of privilege or the attorney-work-product rule, please provide the following information:

      a.     State the date on which the **document** was created;

      b.     State the title of the **document**;

      c.     Briefly describe the nature and contents of the **document**;

      d.     **Identify** each person or entity that received a copy of the **document** or to whom the **document** or its contents were disclosed;

      e.     **Identify** the privilege or rule that **you** contend protects the **document** from disclosure; and

      f.     **Identify** each fact on which **you** base **your** contention that the privilege or rule identified in **your** response applies.

5.      If any material is redacted from a **document**, please indicate that in the response to the inspection demand and state the basis for each redaction.

6.      If, for any reason, any of the **documents**, objects, or tangible things to be produced pursuant to these inspection demands has been destroyed, lost, or otherwise disposed of, please state for each category the following information:

      a.      A description of the **document**, object, or tangible thing to be produced. If the destroyed, lost or otherwise disposed of item is a **document**, **identify** the **document** by date, drafter, recipient, and subject matter.

      b.      The date the **document**, object or tangible thing was lost, destroyed, or disposed of.

      c.      All witnesses who have knowledge of the loss, destruction, or disposal.

      d.      If the loss, destruction, or disposal related to an object or tangible thing, **identify** all **documents** that relate or refer to the loss, destruction, or disposal.

7.      If a **document** is responsive to a request for production and is in your control, but not in your possession or custody, identify all persons with possession or custody.

8.      Please produce **documents** in their native format where applicable.

9.      Unless otherwise identified, the responsive time period is from January 20, 2017, to the present.

## III.    REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

All **documents** and **communications**, including all text messages, from **you related to** complying with the **TRO**, since July 23, 2020, to the present.

**REQUEST FOR PRODUCTION NO. 2:**

All **documents** and **communications**, including all text messages, from **you containing** the word "press" or "reporter" or "media" or "journalist" or "legal observer," since May 26, 2020, to the present.

PAGE 5 -   PLAINTIFFS' 1ST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT
        U.S. DEPARTMENT OF HOMELAND SECURITY

**REQUEST FOR PRODUCTION NO. 3:**

All **documents containing** or **related to** any **DHS**, **FPS**, **ICE**, **CBP**, **USBP**, or **BORTAC** memorandum **containing** the word "press" or "reporter" or "media" or "journalist" or "legal observer" in the body or title of the memorandum, since May 26, 2020, to the present.

**REQUEST FOR PRODUCTION NO. 4:**

All **documents** and **communications**, including all text messages, from **you related to** the **Executive Order**, since May 26, 2020, to the present.

**REQUEST FOR PRODUCTION NO. 5:**

All **documents** and **communications**, including all text messages, from **you related to** Operation Diligent Valor, Operation Legend, or any equivalent.

**REQUEST FOR PRODUCTION NO. 6:**

All **documents** and **communications**, including all text messages, from **you related to** the deployment or presence of federal agents in Portland, Oregon, since May 26, 2020, to the present.

**REQUEST FOR PRODUCTION NO. 7:**

All **documents** and **communications**, including all text messages, from **you related to** the contracting or deployment of any security personnel, including protective security officers, in Portland, Oregon, since May 26, 2020, to the present.

**REQUEST FOR PRODUCTION NO. 8:**

All **documents** and **communications**, including all text messages, from **you related to** any policies or procedures **related to** how journalists or legal observers are treated at or during protests, riots, or dispersals.

**REQUEST FOR PRODUCTION NO. 9:**

All **documents** and **communications**, including text messages, from **you related to** the May 17, 2019 memorandum for all **DHS** employees entitled: "Information Regarding First Amendment Protected Activities" (Dkt. 67-6), since May 17, 2019, to the present.

**REQUEST FOR PRODUCTION NO. 10:**

All **documents** and **communications**, including text messages, from **you related to** any crowd control training, techniques, policies, or procedures (including all **documents** and **communications containing** reference to a lack of crowd control training).

**REQUEST FOR PRODUCTION NO. 11:**

All **documents** and **communications**, including text messages, from **you related to** any de-escalation training, techniques, policies, or procedures (including all **documents** and **communications containing** reference to a lack of de-escalation training).

**REQUEST FOR PRODUCTION NO. 12:**

All **documents** and **communications**, including text messages, from **you related to** any training, techniques, policies, or procedures **related to** differentiating among (1) protesters, (2) rioters, and (3) people present for other reasons, such as journalists, legal observers, medics, and clergy (including all **documents** and **communications containing** reference to a lack of such training).

**REQUEST FOR PRODUCTION NO. 13:**

All **documents** and **communications**, including text messages, from **you related to** any training, techniques, policies, or procedures **related to** the use of force in response to threats to federal property (including all **documents** and **communications containing** reference to a lack of such training).

**REQUEST FOR PRODUCTION NO. 14:**

All **documents** and **communications**, including text messages, from **you related to** any techniques, policies, or procedures **related to** differentiating among (1) protesters, (2) rioters, and (3) people present for other reasons, such as journalists, legal observers, medics, and clergy.

**REQUEST FOR PRODUCTION NO. 15:**

All **documents** related to any studies or investigations **related to** whether journalists or legal observers in Portland pose any threat to law enforcement or crowd control or **related to** how **you** may treat journalists or legal observers.

**REQUEST FOR PRODUCTION NO. 16:**

All **documents** related to any studies or investigations that **you** have started, conducted, or completed **related to** any incidents in which journalists or legal observers have been allegedly assaulted or harmed.

**REQUEST FOR PRODUCTION NO. 17:**

All **documents** and **communications**, including all radio transmissions, created on or after July 23, 2020, **related to** the defense of any federal property in Portland, Oregon.

**REQUEST FOR PRODUCTION NO. 18:**

All **documents** and **communications**, including all radio transmissions, created on or after May 26, 2020, **related to** the surveillance of any journalists or legal observers, including aerial surveillance and "stingray" or other cellphone-interception surveillance.

**REQUEST FOR PRODUCTION NO. 19:**

All **documents** and **communications**, including text messages, from **you related to** any coordination of operations or agreement to coordinate operations with state or local law enforcement in Portland, Oregon, including the Portland Police Bureau and the Multnomah County Sheriff's Office, including the stationing of personnel in the Multnomah County Justice Center.

**REQUEST FOR PRODUCTION NO. 20:**

All **documents** and **communications**, including all text messages, **related to** the **complaint**.

**REQUEST FOR PRODUCTION NO. 21:**

All **documents** and **communications**, including all text messages, **related to** the **TRO**.

**REQUEST FOR PRODUCTION NO. 22:**

All **documents** and **communications** that support the allegations in **your** opposition memorandum to the **TRO**, filed on July 21, 2020 (Dkt. 67).

Dated: July 25, 2020

BRAUNHAGEY & BORDEN LLP
ACLU FOUNDATION OF OREGON

By: _____
Matthew Borden
J. Noah Hagey
Athul K. Acharya, OSB No. 152436
Gunnar K. Martz

Kelly K. Simon, OSB No. 154213

*Attorneys for Plaintiffs*

PAGE 9 -   PLAINTIFFS' 1ST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT
U.S. DEPARTMENT OF HOMELAND SECURITY