JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
BILLY J. WILLIAMS
United States Attorney
ALEXANDER K. HAAS
Director, Federal Programs Branch
JOSHUA E. GARDNER
Special Counsel
BRIGHAM J. BOWEN
Assistant Director, Federal Programs Branch
ANDREW I. WARDEN
Senior Trial Counsel
JEFFREY A. HALL
JORDAN L. VON BOKERN (DC 1032962)
KERI L. BERMAN
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20530
Tel.:    (202) 305-7919
Fax:    (202) 616-8460

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| INDEX NEWSPAPERS, LLC, *et al.*, | Case No. 3:20-cv-1035-SI |
| Plaintiffs. | **FEDERAL DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT UNDER RULES 12(B)(1) AND 12(B)(6) AND TO STAY DISCOVERY** |
| v. | |
| CITY OF PORTLAND, *et al.*, | |
| Defendants. | |

FEDERAL DEFENDANTS' MOTION TO DISMISS

## FEDERAL DEFENDANTS' MOTION TO DISMISS
## UNDER RULES 12(B)(1) AND 12(B)(6) AND TO STAY DISCOVERY

Federal Defendants respectfully move under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss Plaintiffs' Second Amended Complaint, and to stay discovery. In support of this Motion, Federal Defendants refer the Court to the attached Memorandum. Pursuant to Local Rule 7-1, Federal Defendants certify that their counsel has conferred in good faith with counsel for Plaintiffs but were unable to resolve the issues raised by this motion.

Dated:  September 21, 2020

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

BILLY J. WILLIAMS
United States Attorney

ALEXANDER K. HAAS
Director, Federal Programs Branch

JOSHUA E. GARDNER
Special Counsel

BRIGHAM J. BOWEN
Assistant Director, Federal Programs Branch

ANDREW I. WARDEN
Senior Trial Counsel

JEFFREY A. HALL
*/s/ Jordan L. Von Bokern*
JORDAN L. VON BOKERN (DC 1032962)
KERI L. BERMAN
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20530
Tel.:    (202) 305-7919
Fax:    (202) 616-8460

*Attorneys for Defendants*

FEDERAL DEFENDANTS' MOTION TO DISMISS

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| INDEX NEWSPAPERS, LLC, *et al.*, <br><br> Plaintiffs. <br><br><br> v. <br><br> CITY OF PORTLAND, *et al.*, <br><br> Defendants. | Case No. 3:20-cv-1035-SI |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FEDERAL DEFENDANTS' MOTION TO DISMISS UNDER RULES 12(B)(1) AND 12(B)(6) <u>AND TO STAY DISCOVERY</u>

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................... 1

BACKGROUND ........................................................................................................ 2

LEGAL STANDARD................................................................................................. 4

ARGUMENT ............................................................................................................. 5

   I. PLAINTIFFS' FOURTH AMENDMENT CLAIMS FAIL.................................... 6

     A. Plaintiffs lack standing to pursue prospective relief, the only type of relief they could pursue. ...................................................................................................... 6

     B. Plaintiffs have not adequately pleaded a past Fourth Amendment violation.................... 9

   II. PLAINTIFFS HAVE FAILED TO ALLEGE A CLAIM AGAINST FEDERAL DEFENDANTS UNDER THE OREGON CONSTITUTION............................................. 12

   III. THE DECLARATORY JUDGMENT CLAIM SHOULD BE DISMISSED. ................... 12

   IV. DEFENDANTS REASSERT THEIR DEFENSES AGAINST PLAINTIFFS' FIRST AMENDMENT CLAIMS. ................................................................................. 14

   V. THIS COURT SHOULD STAY DISCOVERY PENDING DISPOSITION OF THIS MOTION.................................................................................................... 16

CONCLUSION....................................................................................................... 18

# TABLE OF AUTHORITIES

## CASES

*Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*,
  No. 2:10-cv-1788, 2020 WL 2216944 (E.D. Cal. May 7, 2020) ............................................ 16

*Al Fayed v. CIA*,
  229 F.3d 272 (D.C. Cir. 2000) ................................................................................................ 17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................................. 4

*Austin v. Univ. of Oregon*,
  925 F.3d 1133 (9th Cir. 2019) .................................................................................................. 4

*Babbitt v. United Farm Workers*,
  442 U.S. 289 (1979) .................................................................................................................. 6

*Bayer v. City of Simi Valley*,
  43 F. App'x 36 (9th Cir. 2002) ............................................................................................... 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................................. 4

*Blackburn v. United States*,
  100 F.3d 1426 (9th Cir. 1996) ................................................................................................ 12

*Blair v. Shanahan*,
  38 F.3d 1514 (9th Cir. 1994) .................................................................................................... 7

*Cervantes v. City of San Diego*,
  5 F.3d 1273 (9th Cir.1993) ....................................................................................................... 5

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ............................................................................................................. passim

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) .................................................................................................................. 6

*Clinton v. Jones*,
  520 U.S. 681 (1997) ................................................................................................................ 16

*Commerce & Indus. Ins. Co. v. Durofix, Inc.*,
   No. CV 16-00111, 2018 WL 8332535 (D. Haw. May 30, 2018) ........................................... 17

*Curtis v. City of New Haven*,
   726 F.2d 65 (2d Cir. 1984) ........................................................................................................ 8

*Driscoll's, Inc. v. California Berry Cultivars, LLC*,
   No. 2:19-CV-493, 2019 WL 4822413 (E.D. Cal. Oct. 1, 2019) .............................................. 17

*Eggar v. City of Livingston*,
   40 F.3d 312 (9th Cir. 1994) ...................................................................................................... 8

*Felarca v. Birgeneau*,
   891 F.3d 809 (9th Cir. 2018) ........................................................................................... 10, 11

*Forrester v. City of San Diego*,
   25 F.3d 804 (9th Cir. 1994) .................................................................................................... 11

*Government Employees Ins. Co. v. Dizol*,
   133 F.3d 1220 (9th Cir. 1998) ................................................................................................ 13

*Graham v. Connor*,
   490 U.S. 386 (1989) ................................................................................................................ 10

*Jackson v. City of Bremerton*,
   268 F.3d 646 (9th Cir. 2001) ........................................................................................... 11, 12

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) .................................................................................................... 5

*Leigh v. Salazar*,
   677 F.3d 892 (9th Cir. 2012) .................................................................................................. 15

*Little v. City of Seattle*,
   863 F.2d 681 (9th Cir. 1988) .................................................................................................. 16

*Marder v. Lopez*,
   450 F.3d 445 (9th Cir. 2006) .................................................................................................... 5

*Mendocino Envtl. Ctr. v. Mendocino County*,
   192 F.3d 1283 (9th Cir. 1999) ................................................................................................ 15

*Murphy v. Kenops*,
   99 F. Supp. 2d 1255 (D. Or. 1999) ........................................................................................... 8

*Nelsen v. King County*,
    895 F.2d 1248 (9th Cir. 1990) ........................................................................ 7, 15

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ................................................................................. 7, 8, 14

*Paulson v. City of San Diego*,
    475 U.S. 1047 (9th Cir. 2007) .......................................................................... 12

*Porteous Capital One Services II, LLC*,
    809 F. App'x 354 (9th Cir. 2020) ....................................................................... 5

*Press-Enterprise Co. v. Superior Court of California*,
    478 U.S. 1 (1986) ............................................................................................. 15

*Quezambra v. United Domestic Workers of Am. AFSCME Local 3930*,
    No. 8:19-CV-927, 2019 WL 8108745 (C.D. Cal. Nov. 14, 2019) ......................... 16

*Rivera v. United States*,
    924 F.2d 948 (9th Cir. 1991) .............................................................................. 9

*Rizzo v. Goode*,
    423 U.S. 362 (1976) ........................................................................................... 8

*Rosenblum v. Does 1–10*,
    2020 WL 4253209 (D. Or. July 24, 2020) ........................................................ 7, 8

*Shell Gulf of Mexico Inc. v. Center for Biological Diversity, Inc.*,
    771 F.3d 632 (9th Cir. 2014) ....................................................................... 12, 13

*Snyder & Assocs. Acquisitions LLC v. United States*,
    859 F.3d 1152 (9th Cir. 2017) ............................................................................ 5

*Steel Co. v. Citizens for a Better Environment*,
    523 U.S. 83 (1998) ............................................................................................. 6

*United States v. Center for Diagnostic Imaging, Inc.*,
    No. C05-0058, 2010 WL 11682231 (W.D. Wash. Dec. 16, 2010) ...................... 17

*United States v. Washington*,
    759 F.2d 1353 (9th Cir. 1985) .......................................................................... 13

*United Steelworkers of Am. v. Milstead*,
    705 F. Supp. 1426 (D. Ariz. 1988) ................................................................... 12

*Updike v. Multnomah Cty.*,
  870 F.3d 939 (9th Cir. 2017) ................................................................................ 7, 14

*Whitmore v. Arkansas*,
  495 U.S. 149 (1990) ................................................................................................ 6

*Wilkinson v. Torres*,
  610 F.3d 546 (9th Cir. 2010) .................................................................................. 10

*Williams v. Birmingham Bd. Of Educ.*,
  904 F.3d 1248 (11th Cir. 2018) ................................................................................ 8

**RULES**

Federal Rules of Civil Procedure 12 ............................................................................ 4, 5

**OTHER AUTHORITIES**

Wright & Miller § 2751 .............................................................................................. 13

## INTRODUCTION

Plaintiffs' Second Amended Complaint, the operative Complaint in this lawsuit, lays out only a handful of threadbare allegations against Federal Defendants relating to past uses of force, none of which plausibly alleges a violation of any Plaintiff's constitutional rights. Nor has any Plaintiff plausibly alleged an imminently certain risk of future harm, which is necessary to pursue prospective relief—the only type of relief they could hope to pursue. This Court should dismiss the Second Amended Complaint for lack of standing and for failure to state a claim.

Plaintiffs' Fourth Amendment claim is factually and legally deficient. They lack standing for prospective relief, which is the only relief they can seek given Federal Defendants' immunity from damages for the alleged constitutional tort. Their conclusory, one-sentence allegation of a past use of force from July is insufficient to raise a plausible inference that Federal Defendants used excessive force. Their claim under the Oregon state constitution, to the extent Plaintiffs intended to assert it against Federal Defendants at all, violates the Supremacy Clause and should be dismissed. And the request for declaratory judgment is inappropriate in light of the lack of an existing controversy between the parties, and because declaratory judgment in this case would not benefit the parties in accordance with the purpose of that relief.

Federal Defendants also renew their objections regarding the inadequacy of Plaintiffs' First Amendment claim. Although this Court found that the post-Complaint preliminary injunction record supported extraordinary injunctive relief—a conclusion with which Federal Defendants still disagree—the allegations in the Complaint are factually and legally insufficient to state a claim. This Court should dismiss those claims for that reason.

Finally, this Court should stay discovery pending resolution of this Motion to Dismiss. Plaintiffs' Second Amended Complaint advances several types of distinct claims, and the facts

FEDERAL DEFENDANTS' MOTION TO DISMISS – 1

pleaded in support of each are inadequate to justify further proceedings. Because this Motion to Dismiss is therefore likely to eliminate the need for discovery or shrink the number or scope of claims on which discovery is appropriate, discovery should be stayed pending resolution of this Motion.

## BACKGROUND

This lawsuit arises from the violent protests that have plagued Portland for months. Plaintiffs, objecting to the City of Portland's law enforcement response to that violence, initially sued a number of municipal defendants in this Court. ECF No. 1. Their Complaint (and their subsequent First Amended Complaint, ECF No. 40) laid out a series of incidents that Plaintiffs alleged showed the City's law enforcement operations were violating their First and Fourth Amendment rights, as well as their rights under the Oregon Constitution. Plaintiffs obtained a temporary restraining order (ECF No. 33), and Plaintiffs and the City stipulated to a preliminary injunction two weeks later. ECF No. 48.

Two days before that stipulated preliminary injunction, Plaintiffs sought to file a Second Amended Complaint (SAC), to add the Federal Defendants. ECF No. 42. The Court ultimately granted that motion and allowed Plaintiffs to file the SAC, which they did on July 17.

Although Plaintiffs added the Federal Defendants, they kept their four claims the same: First, Plaintiffs contend that Defendants violated Plaintiffs' First Amendment rights; although the SAC is not a model of clear draftsmanship, in subsequent proceedings Plaintiffs made clear that they are asserting First Amendment retaliation and a violation of their First Amendment right of access. SAC ¶¶ 202–03. Second, Plaintiffs contend that Defendants have violated their Fourth Amendment rights by using excessive force. SAC ¶ 214. Third, Plaintiffs contend that Defendants violated the Oregon Constitution's protections of free speech and free assembly.

FEDERAL DEFENDANTS' MOTION TO DISMISS – 2

SAC ¶ 221. And fourth, Plaintiffs request declaratory judgment relating to their alleged rights under the First and Fourth Amendments and the Oregon Constitution. SAC ¶¶ 228–34.

As shown in the redline comparison attached to Plaintiffs' motion for leave to file the SAC (ECF No. 42-2), when Plaintiffs added the Federal Defendants to this case, they added two factual allegations to support their claims against Federal Defendants: First, as mentioned twice in the SAC (¶¶ 16, 73), Plaintiff Lewis-Rolland contends that he was hit "with impact munitions 10 times" on the morning of July 12. SAC ¶ 73. The circumstances of that use of force—such as Lewis-Rolland's location, what activities he was engaged in, whether he was among other protesters or people breaking laws or otherwise engaging in violence, and/or whether a riot had been declared—are not stated. Second, Plaintiffs allege that "federal agents have been working together with Portland police to violently disperse demonstrators and neutrals." SAC ¶ 186. The specific instance they allege is that, "in the early hours of July 12, dozens of federal agents emerged from the Justice Center building, headquarters of the Portland Police Bureau, and began a campaign of wholesale violence against protesters and neutrals alike." Plaintiffs allege that federal officers and Portland police then "worked together to push protesters and neutrals all the way to SW Broadway." *Id.*

Beyond that, the only references to Federal Defendants within the SAC are ministerial—such as adding paragraphs that name them as defendants, SAC ¶¶ 37–39—or merely append Federal Defendants to preexisting conclusory paragraphs, such as claims that federal law enforcement officers' alleged actions are the fault of Federal Defendants because of "policy, practice, or custom" or through "failure to supervise and train." SAC ¶¶ 207–08. The Second Amended Complaint contains no other specific factual allegations of wrongdoing by Federal Defendants.

FEDERAL DEFENDANTS' MOTION TO DISMISS – 3

In short, the entirety of Plaintiffs' potentially relevant factual allegations against Federal Defendants in the operative Complaint are that, early in the morning of July 12, Federal Defendants struck Plaintiff Lewis-Rolland with impact munitions and "undertook a campaign of wholesale violence" of unstated means against unidentified individuals in unspecified circumstances.

Plaintiffs sought a temporary restraining order (TRO) against Federal Defendants the same day they filed the SAC, seeking relief only on the basis of their First Amendment claims. ECF No. 54. Plaintiffs subsequently filed numerous declarations in support of their TRO motion. *E.g.*, ECF Nos. 55, 56, 58–64. Plaintiffs' Second Amended Complaint did not reference any of those declarations, and Plaintiffs have not sought to amend their Second Amended Complaint at any time; the Complaint in force today is the same SAC that was filed on July 17. This Court granted the TRO on Plaintiffs' First Amendment claims (ECF No. 84), extended it two weeks later (ECF No. 126), and ultimately entered a preliminary injunction (ECF No. 157), which has been administratively stayed by the Ninth Circuit (ECF No. 161).

## LEGAL STANDARD

Under Rule 12(b)(6), courts must dismiss complaints that do not allege sufficient facts to demonstrate a plausible entitlement to relief. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility showing "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and it "asks for more than a sheer possibility that the defendant has acted unlawfully." *Id.*; *see Austin v. Univ. of Oregon*, 925 F.3d 1133, 1137 (9th Cir. 2019). Likewise, for a facial challenge to subject-matter jurisdiction under Rule 12(b)(1),

FEDERAL DEFENDANTS' MOTION TO DISMISS – 4

this Court must "accept as true all facts alleged in the complaint and construe them in the light most favorable to plaintiffs," and determine "whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1157 (9th Cir. 2017).

Plaintiffs cannot defend against this motion by relying on the declarations they submitted after the SAC. When evaluating a motion to dismiss under Rule 12(b)(6), "[r]eview is limited to the complaint." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (alteration in original) (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir.1993)). The declarations that Plaintiffs have produced throughout the TRO and PI proceedings are not appropriate for consideration as part of this motion, because the Complaint does not "necessarily rel[y]" on those declarations—the Complaint does not refer to any of the declarations, and the declarations are not "central to the [Plaintiffs'] claim." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *see also Porteous Capital One Services II, LLC*, 809 F. App'x 354, 356 (9th Cir. 2020) (holding that a Complaint necessarily cannot reference or rely on declarations that "postdate the complaint"). Nor would those declarations be appropriate for judicial notice. A court can take judicial notice of the *existence* of publicly filed documents, but a court cannot take "judicial notice of *disputed* facts stated in public records." *Lee*, 250 F.3d at 690. So, although this Court must accept as true "all factual allegations set forth in the complaint," *id.* at 679, this Court cannot accept as true—or otherwise rely on—factual allegations made in other public filings.

## ARGUMENT

The Second Amended Complaint fails to make out any claim against Federal Defendants. The threadbare SAC, on the rare occasion that it mentions Federal Defendants at all, sets forth only vague accusations of wrongdoing by Federal Defendants, along with a single specific

FEDERAL DEFENDANTS' MOTION TO DISMISS – 5

incident involving any named Plaintiff. That is insufficient to demonstrate standing or to set forth

a claim for relief under any of Plaintiffs' legal theories. Although Federal Defendants focus this

Motion principally on Plaintiffs' Fourth Amendment and state constitutional claims, which have

not been the subject of the TRO or PI proceedings so far, Federal Defendants also renew their

existing arguments regarding the fatal deficiencies in Plaintiffs' First Amendment theories.

I.    **PLAINTIFFS' FOURTH AMENDMENT CLAIMS FAIL**

    A.    **Plaintiffs lack standing to pursue prospective relief, the only type of relief they could pursue.**

Plaintiffs lack standing to pursue injunctive and declaratory relief, because the Second

Amended Complaint does not plausibly allege that the "threatened injury" of future Fourth

Amendment violations is "*certainly impending*" and not merely "*possible*." *Clapper v. Amnesty

Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

Because Plaintiffs have provided only bare-bones factual descriptions of two isolated past

incidents from July—only one involving a named Plaintiff—they have failed even to attempt to

show that any future Fourth Amendment violation against a Plaintiff is "certainly impending."

Where, as here, a party seeks prospective equitable relief, they must make "allegations of

future injury [that are] particular and concrete." *Steel Co. v. Citizens for a Better Environment*,

523 U.S. 83, 109 (1998). While allegations of past injury might support a remedy at law,

prospective equitable relief requires a claim of imminent future harm. *City of Los Angeles v.

Lyons*, 461 U.S. 95, 105 (1983). As the Supreme Court held in *Whitmore*, allegations of possible

future injury do not satisfy the requirements of Article III. A threatened injury must be "certainly

impending" to constitute injury in fact. 495 U.S. at 158 (quoting *Babbitt v. United Farm

Workers*, 442 U.S. 289, 298 (1979)). For a plaintiff to have standing, an alleged injury must be

"concrete" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lyons*, 461 U.S. at 101–

FEDERAL DEFENDANTS' MOTION TO DISMISS – 6

02. Even if a plaintiff establishes that his rights were violated in past incidents, he nonetheless lacks standing to obtain prospective injunctive relief absent a "real and immediate threat" that he will suffer the same injury in the future. *Id.* at 105.

That a plaintiff lacks standing to obtain prospective injunctive relief for alleged future injuries based on allegations of prior harm, particularly in the law enforcement context, is black-letter Supreme Court and Ninth Circuit law. *Lyons*, 461 U.S. at 101–02; *Nelsen v. King County*, 895 F.2d 1248, 1251 (9th Cir. 1990); *Rosenblum v. Does 1–10*, 2020 WL 4253209, *6 (D. Or. July 24, 2020). As a result, to invoke Article III jurisdiction, a plaintiff in search of prospective equitable relief must show a significant likelihood and immediacy of sustaining some direct injury. *Updike v. Multnomah Cty.*, 870 F.3d 939, 947 (9th Cir. 2017) (denying injunctive relief to a plaintiff challenging the lack of American Sign Language interpreters in pretrial detainment and at arraignment, even though he had been booked at the same correctional facility five times before, because "standing for injunctive relief requires that a plaintiff show a 'real and immediate threat of repeated injury.'" (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)).

Moreover, the plaintiff seeking injunctive relief must show not just that the predicted *injury* will reoccur, but also that the plaintiff himself will suffer it. *See, e.g.*, *Updike*, 870 F.3d at 948 (holding that the plaintiff lacked standing for injunctive relief because his evidence was "insufficient to establish that any such wrongful behavior is likely to recur against him"); *Blair v. Shanahan*, 38 F.3d 1514, 1519 (9th Cir. 1994) (holding that a plaintiff seeking declaratory or injunctive relief must "establish a personal stake" in the relief sought); *Rosenblum*, 2020 WL 4253209 at *6 (plaintiff seeking injunctive relief must show "real or immediate threat that [he] will be wronged again" (alteration in original) (quoting *Lyons*, 461 U.S. at 106)). That other individuals might suffer future harm does nothing for a plaintiff's own standing.

FEDERAL DEFENDANTS' MOTION TO DISMISS – 7

The facts and reasoning of *Lyons* are instructive. At issue in *Lyons* was a civil rights action against the City of Los Angeles and several police officers who allegedly stopped the plaintiff for a routine traffic violation and applied a chokehold without provocation. In addition to seeking damages, the plaintiff sought an injunction against future use of the chokehold unless deadly force was threatened. The Supreme Court held that plaintiff lacked standing to seek prospective relief because he could not show a real or immediate threat of future harm.

> That Lyons may have been illegally choked by the police . . . ,
> while presumably affording Lyons standing to claim damages . . .
> does nothing to establish a real and immediate threat that he would
> again be stopped for a traffic violation, or for any other offense, by
> an officer or officers who would illegally choke him into
> unconsciousness without any provocation or resistance on his part.

*Lyons*, 461 U.S. at 104; *see also O'Shea*, 414 U.S. at 495-96; *Rizzo v. Goode*, 423 U.S. 362, 372 (1976) (holding that plaintiffs' allegations that police had engaged in widespread unconstitutional conduct aimed at minority citizens was based on speculative fears as to what an unknown minority of individual police officers might do in the future).

Courts in this Circuit have applied *Lyons* and *O'Shea* in similar contexts to hold that plaintiffs lack standing to pursue prospective injunctive relief where they were subject to past law enforcement practices but could only speculate as to whether those—and sometimes oft-repeated—practices would recur. *See, e.g.*, *Eggar v. City of Livingston*, 40 F.3d 312, 317 (9th Cir. 1994); *Rosenblum*, 2020 WL 4253209 at *6–7; *Murphy v. Kenops*, 99 F. Supp. 2d 1255, 1259–60 (D. Or. 1999). *See also Curtis v. City of New Haven*, 726 F.2d 65, 68 (2d Cir. 1984) (vacating an injunction that had been entered against police use of mace, because the plaintiffs had not shown a "likelihood that these plaintiffs will again be illegally assaulted with mace"); *Williams v. Birmingham Bd. Of Educ.*, 904 F.3d 1248, 1267 (11th Cir. 2018) (plaintiff alleging that a school resource officer employed by the police unconstitutionally used an incapacitating

FEDERAL DEFENDANTS' MOTION TO DISMISS – 8

chemical spray on her lacked standing to pursue injunctive relief, because she did not show a likelihood that the resource officer would again unconstitutionally spray her).

Plaintiffs here have failed to allege any risk of future harm. The entire factual record in support of their Fourth Amendment claim is the allegation that, on the morning of July 12, Lewis-Rolland was struck with impact munitions, and that federal officers that same morning allegedly undertook a "campaign of wholesale violence" against unidentified individuals in circumstances not described in the SAC. That allegation of past harm from July—insufficient even to retrospectively plead an isolated instance of excessive force—provides no plausible basis to infer that any named Plaintiff is at imminent risk of being subjected to excessive force in the future. To deem those allegations sufficient would require setting aside *Lyons*.

Plaintiffs' lack of standing to pursue injunctive relief disposes of their whole Fourth Amendment claim, because Plaintiffs cannot pursue a damages claim against federal agencies for Fourth Amendment violations. The federal government has sovereign immunity from damages claims for constitutional torts. *Rivera v. United States*, 924 F.2d 948, 951 (9th Cir. 1991) ("The courts lack subject matter jurisdiction to hear constitutional damage claims against the United States, because the United States has not waived sovereign immunity with respect to such claims."). Plaintiffs therefore cannot sustain their Fourth Amendment claim on a damages theory. Because Plaintiffs cannot show an entitlement to non-damages relief, their claim under the Fourth Amendment must therefore be dismissed.

### B.       Plaintiffs have not adequately pleaded a past Fourth Amendment violation.

Even if Plaintiffs could seek relief on a purely prospective Fourth Amendment claim by vaguely alleging past violations from over two months ago, they have failed to do so here. To demonstrate excessive force, Plaintiffs must show that "police use of force" was "objectively

FEDERAL DEFENDANTS' MOTION TO DISMISS – 9

unreasonable under the circumstances." *Felarca v. Birgeneau*, 891 F.3d 809, 816 (9th Cir. 2018) (Section 1983 damages action). That showing requires "balancing 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 388 (1989)). The reasonableness of police use of force must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and the analysis "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010) (quoting *Graham*, 490 U.S. at 396–97). The circumstances here—nightly protests turned into riots—squarely fit this precedent.

Plaintiffs' barebones allegations relating to the morning of July 12 are insufficient to plausibly allege excessive force. If Lewis-Rolland contends that being struck with crowd-control devices on the morning of July 12, as he alleges, was excessive force, he needs to allege more than a mere application of force. He does not describe what he was doing, who was around him, what they were doing, what threats officers were facing, or anything else that might give rise to a plausible inference that any use of force on the part of federal officers was unreasonable—in short, he has not alleged any facts that allow an inference that the use of force was "objectively unreasonable under the circumstances." *Felarca*, 891 F.3d at 816. The only meaningful inference one *can* make is that officers, facing riotous crowds, were "forced to make split-second judgments—in circumstances that [were] tense, uncertain, and rapidly evolving." *Wilkinson*, 610 F.3d at 550.

FEDERAL DEFENDANTS' MOTION TO DISMISS – 10

His allegations as they stand would sufficiently allege excessive force only if application of the force described is *per se* excessive. But the foundation of the Fourth Amendment's protection is that it protects only against excessive force, not against all force. It cannot be disputed, for example, that officers may use force in response to protests that turn violent or refuse to obey lawful commands. For example, when police were dismantling an illegal tent city set up by protesters on the University of California at Berkeley campus, the Ninth Circuit rejected an excessive-force claim (there, for damages under Section 1983) brought by protesters who had been struck with batons and knocked over by hand while trying to block officers from dismantling the tents. *Felarca*, 891 F.3d at 818. The officers were reasonable in using force because the government was not required to permit "organized lawlessness," and the protesters "substantially outnumbered" officers, "refused to obey the officers' commands to disperse," "shouted at the officers," and "engaged the officers in verbal and physical altercations." *Id.* (quoting *Jackson v. City of Bremerton*, 268 F.3d 646, 652 (9th Cir. 2001)). If Plaintiffs want to show that Federal Defendants' use of force against Plaintiffs during the violent Portland protests was unlawful, they need to allege more than the mere use of force itself.

There is no merit to the suggestion that the use of crowd control methods alleged in the SAC inherently violate the Fourth Amendment. As discussed, the linchpin of Fourth Amendment excessive force claims is whether the use of force was reasonable under the totality of the circumstances. Particularly when facing violent and potentially armed individuals, crowd control devices like those used in Portland are reasonable. *See Bayer v. City of Simi Valley*, 43 F. App'x 36, 38 (9th Cir. 2002) (holding use of tear gas was reasonable against armed unstable individual who refused to surrender); *Forrester v. City of San Diego*, 25 F.3d 804, 805–07 (9th Cir. 1994) (holding pain compliance techniques on passive protesters not unreasonable to remove them);

FEDERAL DEFENDANTS' MOTION TO DISMISS – 11

*Jackson*, 268 F.3d at 652 (holding threat and use of chemical irritant to disperse unruly crowd, where they were interfering with arrest, was not unreasonable); *United Steelworkers of Am. v. Milstead*, 705 F. Supp. 1426, 1430, 1437 (D. Ariz. 1988) (holding use of strong tear gas "for outdoor use only" on crowd gathered inside that had been throwing objects was not excessive force, even though innocent people were also inside). The SAC alleges only that force was used in unspecified circumstances, which is insufficient to raise a plausible inference that the force used was unreasonable under the circumstances.

Plaintiffs' prospective Fourth Amendment claim is baseless and must be dismissed.

## II.    PLAINTIFFS HAVE FAILED TO ALLEGE A CLAIM AGAINST FEDERAL DEFENDANTS UNDER THE OREGON CONSTITUTION.

Plaintiffs assert a claim under the Oregon state constitution against all Defendants, without clarifying the defendants against whom they bring that claim. SAC ¶ 227. Any state constitutional claim against the Department of Homeland Security or the U.S. Marshals Service must fail, because "the United States is not subject to state constitutional authority." *Paulson v. City of San Diego*, 475 U.S. 1047, 1048 (9th Cir. 2007); *see also Blackburn v. United States*, 100 F.3d 1426, 1435 (9th Cir. 1996) ("[S]tates may not directly regulate the Federal Government's operations or property."). This Court should dismiss the state constitutional claim against Federal Defendants.

## III.    THE DECLARATORY JUDGMENT CLAIM SHOULD BE DISMISSED.

Plaintiffs' declaratory judgment claim should be dismissed because a request for declaratory judgment does not present a standalone claim, but merely is a remedy—and one that Plaintiffs here are not entitled to seek. *Shell Gulf of Mexico Inc. v. Center for Biological Diversity, Inc.*, 771 F.3d 632, 635 (9th Cir. 2014) (the declaratory judgment statute "does not create new substantive rights, but merely expands the remedies available in federal courts"). And

FEDERAL DEFENDANTS' MOTION TO DISMISS – 12

the statute does not independently grant jurisdiction. For a plaintiff to claim an entitlement to declaratory relief, the plaintiff must "must first present an actual case or controversy within the meaning of Article III." *Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1222 (9th Cir. 1998) (en banc).

Here, Plaintiffs have not shown that a case or controversy exists with respect to their claims for prospective relief. They allege only that, on the morning of July 12, Federal Defendants struck Lewis-Rolland with impact munitions under unspecified circumstances. As discussed *supra*, that allegation is insufficient to show a sufficient likelihood of future harm to give standing. *Lyons*, 461 U.S. at 101–02. That jurisdictional failure makes consideration of declaratory relief inappropriate.

Furthermore, declaratory relief is improper in this case because it will not be useful to the parties. Declaratory relief is improper where it "will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985). As the Ninth Circuit has recognized, the utility of declaratory judgment is fairly narrowly cabined, designed principally to allow a potential defendant "to file preemptive litigation to determine whether they have any legal obligations to their potential adversaries." *Shell Gulf of Mexico*, 771 F.3d at 635. This action has not been filed by a party that faces the "Damoclean threat of impending litigation which a harassing adversary might brandish." *Id.*; *see also* Wright & Miller § 2751 (declaratory judgement "is intended to minimize the danger of avoidable loss and the unnecessary accrual of damages and to afford one threatened with liability an early adjudication without waiting until an adversary should see fit to begin an action after the damage has accrued"). Instead, Plaintiffs claim that they have been harmed by Federal

FEDERAL DEFENDANTS' MOTION TO DISMISS – 13

Defendants in the past and want an injunction against future harm of the same conduct. That does not require an anticipatory settling of the legal relations between the parties, nor would such a declaration at the conclusion of this case reduce any uncertainty between the parties, especially because the underlying legal claims will necessarily be resolved at the same time as Plaintiffs' other claims for relief. In short, Plaintiffs' request for declaratory relief is entirely duplicative of the relief they already seek, and they cannot show how declaratory relief will offer any appropriate benefit.

## IV. DEFENDANTS REASSERT THEIR DEFENSES AGAINST PLAINTIFFS' FIRST AMENDMENT CLAIMS.

This case has already seen extensive proceedings relating to Plaintiffs' First Amendment claims of retaliation and right-of-access. Federal Defendants have argued throughout those proceedings that Plaintiffs' claims are both factually deficient and legally flawed and thus cannot provide a basis for any relief. *See* supra n.1. Although Federal Defendants recognize that this Court has, in postures other than a motion to dismiss, treated Plaintiffs' Complaint and post-Complaint submissions together as adequately supporting certain claims, Federal Defendants now briefly reassert their arguments that Plaintiffs' claims must fail, especially in light of the facial inadequacy of the Second Amended Complaint.

Plaintiffs lack standing to pursue injunctive relief against Federal Defendants for the alleged First Amendment violations. The allegations in the Complaint do not show that any named Plaintiff faces "a 'real and immediate threat of repeated injury.'" *Updike*, 870 F.3d at 947 (quoting *O'Shea*, 414 U.S. at 496); *see also Lyons,* 461 U.S. at 105. That is especially true for Plaintiffs' retaliation claims, whose factual basis in the Complaint is at most a single allegation of a past use of force against a named Plaintiff in July—an allegation which itself does not allege retaliation—without any factual support pleaded for a risk of future retaliation. A plaintiff lacks

FEDERAL DEFENDANTS' MOTION TO DISMISS – 14

standing to obtain prospective injunctive relief for alleged future injuries based on allegations of prior harm. *Lyons*, 461 U.S. at 101–02; *Nelsen*, 895 F.2d at 1251. Even if Plaintiffs had adequately alleged that a federal law enforcement officer retaliated against Lewis-Rolland on July 12, that would be inadequate to show a likelihood of future retaliation.

That same shortcoming shows that Plaintiffs have not adequately alleged a past instance of retaliation. They identify only that single incident, the alleged use of force against Lewis-Rolland, and they do not even claim that he was the target of force because of his speech. To make out a claim of First Amendment retaliation, Plaintiffs must show that their First Amendment activity was a "substantial or motivating factor" in Federal Defendants' conduct. *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300–01 (9th Cir. 1999). The one-sentence allegation relating to Lewis-Rolland, which merely describes the force allegedly used against him, does not raise a plausible inference that officers struck him with crowd-control methods because they wanted to punish him for the First Amendment protected activity of newsgathering.

On their right-of-access claim, the Second Amended Complaint does not allege that Federal Defendants denied any named Plaintiff access to any space, let alone access to a government proceeding, which is the focus of the right-of-access inquiry. Under *Press-Enterprise Co. v. Superior Court of California*, 478 U.S. 1 (1986) and *Leigh v. Salazar*, 677 F.3d 892 (9th Cir. 2012), Plaintiffs must show they have been denied access to a government process to which they have a right of access, which they can show only by establishing that "the place and process have historically been open to the press and general public," and that "public access plays a significant positive role in the functioning of the particular process in question." *Id.* at 898. Plaintiffs' bare assertion that, on July 12, Federal Defendants pushed "protesters and

FEDERAL DEFENDANTS' MOTION TO DISMISS – 15

neutrals" back from the area immediately surrounding federal property, SAC ¶ 186, does not satisfy any of those requirements. And Plaintiffs do not even assert that they themselves were among the people allegedly pushed back.

In short, the deficiencies in the Second Amended Complaint are even more pronounced than those that made preliminary injunctive relief inappropriate. A few sentences of vague allegations regarding government conduct the morning of July 12 are not sufficient to sustain this case. Plaintiffs' own redline of the Second Amended Complaint shows that Federal Defendants were an afterthought in this lawsuit, and that failure of pleading requires dismissal as to Federal Defendants.

## V.    THIS COURT SHOULD STAY DISCOVERY PENDING DISPOSITION OF THIS MOTION.

Because resolution of this Motion to Dismiss may result in dismissal of the Second Amended Complaint or in a reduction of the scope of the claims at issue, this Court should stay discovery to preserve the parties' resources and avoid unnecessary and inefficient proceedings.

The Court has broad discretion to stay discovery while a motion to dismiss is pending. *See Clinton v. Jones*, 520 U.S. 681, 706–07 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."). The Ninth Circuit has expressly blessed the practice of staying discovery while considering a potentially dispositive motion. *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988) (upholding a stay of discovery until after resolving a claim of immunity). Such a stay "furthers the goal of efficiency for the court and litigants." *Id.* It is common practice for district courts within this circuit to stay or otherwise limit discovery while considering a motion that may resolve the issue on which discovery is sought. *See, e.g.*, *Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, No. 2:10-cv-1788, 2020 WL 2216944, at *2–3 (E.D. Cal. May 7, 2020); *Quezambra v. United Domestic*

FEDERAL DEFENDANTS' MOTION TO DISMISS – 16

*Workers of Am. AFSCME Local 3930,* No. 8:19-CV-927, 2019 WL 8108745, at *2 (C.D. Cal.

Nov. 14, 2019); *Driscoll's, Inc. v. California Berry Cultivars, LLC*, No. 2:19-CV-493, 2019 WL

4822413, at *1 (E.D. Cal. Oct. 1, 2019); *Commerce & Indus. Ins. Co. v. Durofix, Inc.*, No. CV

16-00111, 2018 WL 8332535, at *2 (D. Haw. May 30, 2018); *United States v. Center for

Diagnostic Imaging, Inc.*, No. C05-0058, 2010 WL 11682231, at *2 (W.D. Wash. Dec. 16,

2010). The ability of this Court to stay discovery while handling a dispositive motion is thus well

settled.

 Staying discovery here is especially appropriate, because Federal Defendants raise

numerous defenses that are likely to shrink the scope of the case and the relevant discovery. For

example, Plaintiffs' theory of excessive force relies entirely on one alleged use of force against a

named Plaintiff in July. This Motion presents both an immunity defense to any retrospective

remedy and a jurisdictional defense to any prospective remedy, in addition to showing that the

pleadings are insufficient to state a claim on the merits. *See Al Fayed v. CIA*, 229 F.3d 272, 276

(D.C. Cir. 2000) (recognizing that "the district court must have jurisdiction . . . before the

discovery rules become operative"). To the extent that the Second Amended Complaint is held

not to state a claim for excessive force, the scope of relevant discovery would shrink

dramatically. And a stay of discovery is also appropriate with respect to the First Amendment

claim, because the preliminary injunction based on those First Amendment theories is on appeal

before the Ninth Circuit, which has already administratively stayed the injunction after stating

that Federal Defendants had "made a strong showing of likely success on the merits" that the

injunction on those claims was "without adequate legal basis." Order, *Index Newspapers LLC v.

U.S. Marshals Service*, No. 20-35739 (9th Cir. Aug. 27, 2020). Furthermore, discovery in this

case places a substantial burden on federal law enforcement agencies, reducing the resources

FEDERAL DEFENDANTS' MOTION TO DISMISS – 17

available to focus on other issues that implicate public safety and national security. Staying

discovery would reduce needless use of resources and conflict during the pendency of this

Motion to Dismiss, not just for the parties but also for the Court, which may be called upon to

mediate discovery disputes.

## **CONCLUSION**

This Court should dismiss the Second Amended Complaint. Pending resolution of this

Motion, the Court should stay discovery.

Dated:  September 21, 2020

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

BILLY J. WILLIAMS
United States Attorney

ALEXANDER K. HAAS
Director, Federal Programs Branch

JOSHUA E. GARDNER
Special Counsel

BRIGHAM J. BOWEN
Assistant Director, Federal Programs Branch

ANDREW I. WARDEN
Senior Trial Counsel

JEFFREY A. HALL
*/s/ Jordan L. Von Bokern*
JORDAN L. VON BOKERN (DC 1032962)
KERI L. BERMAN
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20530
Tel.:    (202) 305-7919
Fax:    (202) 616-8460

*Attorneys for Defendants*

FEDERAL DEFENDANTS' MOTION TO DISMISS – 19