**Matthew Borden**, admitted *pro hac vice*
borden@braunhagey.com
**J. Noah Hagey**, admitted *pro hac vice*
hagey@braunhagey.com
**Athul K. Acharya**, OSB No. 152436
acharya@braunhagey.com
**Gunnar K. Martz**, admitted *pro hac vice*
martz@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, Tenth Floor
San Francisco, CA 94104
Telephone: (415) 599-0210

**Kelly K. Simon**, OSB No. 154213
ksimon@aclu-or.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF OREGON
P.O. Box 40585
Portland, OR 97240
Telephone: (503) 227-6928

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **INDEX NEWSPAPERS LLC**, a Washington limited-liability company, dba **PORTLAND MERCURY**; **DOUG BROWN; BRIAN CONLEY; SAM GEHRKE; MATHIEU LEWIS-ROLLAND; KAT MAHONEY; SERGIO OLMOS; JOHN RUDOFF; ALEX MILAN TRACY; TUCK WOODSTOCK; JUSTIN YAU**; and those similarly situated, | Case No. 3:20-cv-1035-SI |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO DISMISS AND TO STAY DISCOVERY** |
| v. | |
| **CITY OF PORTLAND**, a municipal corporation; **JOHN DOES 1-60**, officers of Portland Police Bureau and other agencies working in concert; **U.S. DEPARTMENT OF HOMELAND SECURITY**; and **U.S. MARSHALS SERVICE**, | |
| Defendants. | |

PLAINTIFFS' OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

FACTUAL BACKGROUND ................................................................................. 3

      A.    The Parties .................................................................................. 3

      B.    The Federal Agents' Assaults on Journalists and Legal Observers ....................... 3

      C.    Procedural History ..................................................................... 4

      D.    The Claims in the SAC ............................................................... 5

ARGUMENT ........................................................................................................ 6

I.    Plaintiffs have standing to pursue their claims.................................................. 7

II.    Plaintiffs have stated both First and fourth Amendment claims ..................................... 8

III.    Plaintiffs have stated a claim for declaratory relief.........................................10

IV.    The court should reject the federal agents' motion to stay discovery .............................11

V.    If the Court grants the motion to dismiss, it should grant Plaintiffs leave to amend their complaint ................................................................................11

CONCLUSION.......................................................................................................12

## <u>TABLE OF AUTHORITIES</u>

Page(s)

### <u>CASES</u>

*Allstate Ins. Co. v. Herron*,
    634 F.3d 1101 (9th Cir. 2011) .................................................................. 2, 10, 11

*Askins v. U.S. Dep't of Homeland Sec.*,
    899 F.3d 1035 (9th Cir. 2018) ............................................................................1

*Blankenship v. Hearst Corp.*,
    519 F.2d 418 (9th Cir.1975) ............................................................................11

*Brosseau v. Haugen*,
    543 U.S. 194 (2004) ......................................................................................10

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ..........................................................................................7

*Eminence Capital, LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) ........................................................................12

*Gov't Emps. Ins. Co. v. Dizol*,
    133 F.3d 1220 (9th Cir. 1998) ........................................................................10

*Hachette Distribution, Inc. v. Hudson Cty. News Co.*,
    136 F.R.D. 356 (E.D.N.Y. 1991) ....................................................................11

*Hoang v. Bank of Am., N.A.*,
    910 F.3d 1096 (9th Cir. 2018) ........................................................................12

*Index Newspapers LLC v. City of Portland*,
    2020 WL 4883017 (D. Or. Aug. 20, 2020) ......................................................12

*Index Newspapers LLC v. U.S. Marshals Serv.*,
    No. 20-35739, 2020 WL 5988501 (9th Cir. Oct. 9, 2020) ...............................passim

*Jamison v. McClendon*,
    2020 WL 4497723 ........................................................................................3, 5

*Lacano Investments, LLC v. Balash*,
    765 F.3d 1068 (9th Cir. 2014) ........................................................................6, 8

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) ............................................................................6

*Leigh v. Salazar*,
    677 F.3d 892 (9th Cir. 2012) ............................................................................8

*Mendocino Envtl. Ctr. v. Mendocino County*,
    192 F.3d 1283 (9th Cir. 1999) ..........................................................................9

*Morales v. Fry*,
    873 F.3d 817 (9th Cir. 2017) ....................................................................2, 9, 12

*Press-Enterprise Co. v. Superior Court ("Press-Enterprise II")*,
    478 U.S. 1 (1986) ............................................................................................8

*S.F. Tech. v. Kraco Enterprises LLC*,
    2011 WL 2193397 (N.D. Cal. June 6, 2011) ....................................................11

*Skellerup Indus. Ltd. v. City of Los Angeles*,
    163 F.R.D. 598 (C.D. Cal. 1995) ....................................................................11

*Snyder & Assocs. Acquisitions LLC v. United States*,
   859 F.3d 1152 (9th Cir. 2017) .................................................................6

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) .............................................................6, 9

*Thomas v. Cty. of Los Angeles*,
   978 F.2d 504 (9th Cir. 1992) ..................................................................8

*Warren v. Fox Family Worldwide, Inc.*,
   328 F.3d 1136 (9th Cir. 2003) ................................................................6

*Young v. Cty. of Los Angeles*,
   655 F.3d 1156 (9th Cir. 2011) ...........................................................9, 10

## **RULES**

Fed. R. Civ. P. 15(a)(2) ..............................................................................11
Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ...........................6
Rule 12(b)(1) ..............................................................................................6
Rule 12(b)(6) ..............................................................................................6

Plaintiffs respectfully submit this opposition to the federal agents' motion to dismiss the Second Amended Complaint.

## **INTRODUCTION**

Plaintiffs brought this case to protect journalists and legal observers at Portland's Black Lives Matter protests from the federal agents President Trump sent to Portland. On August 20, 2020, the Court issued a preliminary injunction precluding the federal agents from retaliating against and dispersing journalists and legal observers. The Court's injunction was based on substantial findings from a large evidentiary record supporting Plaintiffs' claims. After the Court issued the injunction, the federal agents appealed to the Ninth Circuit, which upheld the Court's injunction pending a ruling on the merits, and in so doing rejected the very legal theories the federal agents assert in their motion to dismiss. The federal agents' motion does nothing to advance any of the issues in this case and in fact is largely foreclosed by the law of the case. *See Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1042-43 (9th Cir. 2018). It should be denied for the same reasons that this Court and the Ninth Circuit have already given.

Further, since the filing of the complaint, additional evidence has come to light. For example, in September 2020, at one of his rallies, the President told his supporters that law enforcement attacking a reporter was "a beautiful sight":

> Trump then mocked an unidentified reporter who has been targeted by police while covering protests. "Sometimes they grab. They grab one guy. 'I'm a reporter. I'm a reporter.' Get out of here. They threw him aside like he was a little bag of popcorn. Honestly, when you watch the crap that we have all had to take so long. When you see it, it is actually a beautiful sight."

Ted Johnson, *Donald Trump Says It's A "Beautiful Sight" To See Police Throw Reporter To The Ground*, Deadline (Sept. 22, 2020), https://deadline.com/2020/09/donald-trump-ali-velshi-1234582504/. Plaintiffs offered to amend the complaint to include such evidence, along with allegations that mirrored the facts that this Court and the Ninth Circuit found sufficient to meet the higher standard of obtaining an injunction. But the federal agents would not stipulate to allow Plaintiffs to do so, which highlights the wasteful nature of this motion.

PAGE 1 -   PLAINTIFFS' OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO
          DISMISS

The federal agents' arguments fail for at least the following reasons:

- **Standing.** The Ninth Circuit held that Plaintiffs' extensive evidence of the federal agents' "ongoing, sustained pattern of [mis]conduct" gave Plaintiffs standing to bring their claims. *Index Newspapers LLC v. U.S. Marshals Serv.*, No. 20-35739, 2020 WL 5988501, *4-5 (9th Cir. Oct. 9, 2020). That decision is dispositive of the federal agents' standing arguments here.

- **Access.** The Ninth Circuit also recognized that a dispersal is a denial of access, disposing of the federal agents' only argument that Plaintiffs' right-of-access claim should be dismissed. *Id.* at *7 ("We agree with plaintiffs that the press is entitled to a right of access at least coextensive with the right enjoyed by the public at large").

- **Retaliation.** The Ninth Circuit also reiterated its longstanding rule that retaliatory intent can be proved with circumstantial evidence, disposing of the federal agents' only argument that Plaintiffs' retaliation claim should be dismissed. *Id.* at *6 ("The district court's extensive and thorough factual findings provide robust support for its conclusion that plaintiffs' exercise of their First Amendment rights was a substantial or motivating factor in the Federal Defendants' conduct.").

- **Excessive force.** Individuals have a "clearly established right not to have [violent force] used 'to intimidate or retaliate against' [them]." *Morales v. Fry*, 873 F.3d 817, 826 (9th Cir. 2017) (quotation marks omitted). Thus, because Plaintiffs have stated a claim for retaliation under the First Amendment, they have also stated a claim for excessive force under the Fourth Amendment.

- **Declaratory relief.** Because the Ninth Circuit has held that Plaintiffs have standing to seek relief, Plaintiffs also have standing to seek declaratory relief. In addition, none of the prudential factors for denying declaratory relief obtain here. *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1107 (9th Cir. 2011) (setting forth potential prudential considerations).

- **Discovery.** The federal agents' motion to stay discovery fails because their motion to dismiss lacks merit. It doubly fails because district courts generally decline to grant a stay unless the motion would dispose of the whole case; here, even the federal agents admit that their motion would only "shrink" the scope of the case. (Mot. at 17.) And it triply fails because they have been appearing at depositions and asking questions and making objections. Motions to stay discovery are generally disfavored, but it is especially unfair for a party to take discovery and seek to stay it at the same time.

For all these reasons, and those explained below, the Court should deny the federal agents' motion.

## FACTUAL BACKGROUND

The following facts come from the Second Amended Complaint ("SAC") (Dkt. 53), which are deemed to be true for purposes of this motion.

### A.    The Parties

Plaintiffs are journalists, legal observers, and a newspaper, all of whom are covering the Black Lives Matter protests in Portland that arose from Minneapolis Police Department's murder of George Floyd. (SAC ¶¶ 1-2.)

Defendants U.S. Department of Homeland Security and U.S. Marshals Service are federal agents that President Donald Trump sent to Portland to "dominate" the protestors and "quell" the protests.[1] (SAC ¶¶ 37-38.)

### B.    The Federal Agents' Assaults on Journalists and Legal Observers

On May 25, 2020, Minneapolis police killed George Floyd. (SAC ¶ 42.) He was but one of many Black people unjustly killed by the police in recent years. *See, e.g.*, *Jamison v. McClendon*, 2020 WL 4497723, at *1-2 & nn.1-19 (S.D. Miss. Aug. 4, 2020) (listing 19 such killings in the last five years). His murder prompted protests nationwide. (SAC ¶ 44.)

---

[1] Demitri Sevastopulo, *Trump vows to deploy US military to quell protests*, Financial Times (June 1, 2020), https://www.ft.com/content/ed7dc274-f9d7-4377-b9f8-015dfc972aa4.

PAGE 3 -   PLAINTIFFS' OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO
                 DISMISS

Nearly every night since May 28, Portlanders have gathered around the city to protest against police brutality and insist that Black lives matter. These protests have often been met with even more police violence. (SAC ¶¶ 46-49.) Plaintiffs filed this lawsuit to stop the Portland police from targeting and dispersing press and legal observers. (SAC ¶ 1.) Plaintiffs obtained a temporary restraining order ("TRO") to that effect, and the City then stipulated to a preliminary injunction containing the same terms. (Dkts. 33, 48.)

In the meantime, the federal agents arrived, and they too began targeting and dispersing press and legal observers. On July 12, for example, federal agents "shot Plaintiff Lewis-Rolland with impact munitions 10 times as he was filming and photographing them," and then dispersed protesters, journalists, legal observers for several city blocks in a "campaign of wholesale violence." (SAC ¶¶ 16, 73, 186.) Plaintiffs accordingly joined them as defendants in this case. (SAC ¶ 186; Dkts. 42, 52.)

## C.    Procedural History

After adding the federal agents to the case, Plaintiffs moved for a TRO against them, documenting dozens of assaults on the media and legal observers. (Dkt. 54; *e.g.*, Dkts. 43-44, 55-56, 58-64, 71-75, 77-78, 80-82.) On July 23, the Court granted a TRO that brought the federal agents under the same restrictions as the Portland police. (Dkt. 84.) Almost immediately, the federal agents violated it, so Plaintiffs moved to hold them in contempt, adding more evidence to the record. (Dkts. 85-95.) Simultaneously, the federal agents moved to vacate the TRO. The Court did not rule immediately on either motion. (Dkt. 108.) Submitting even more evidence, Plaintiffs sought to extend the TRO. (Dkts. 112, 115-119.) On August 6, the Court denied the federal agents' motion to vacate the TRO and instead extended it for 14 more days. (Dkt. 126.) Plaintiffs' motion for contempt remains held in abeyance. (Dkt. 108.) Plaintiffs then moved for a preliminary injunction. (Dkt. 134.) A full account of the documented instances of federal agents' violence against journalists and legal observers can be found in that motion at pages 7-11.

On August 20, after briefing and extensive argument, the Court issued a 61-page opinion and order granting a preliminary injunction with materially similar terms as the TRO. (Dkt. 157.)

PAGE 4 -   PLAINTIFFS' OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO
          DISMISS

The federal agents immediately took an interlocutory appeal to the Ninth Circuit. (Dkt. 158.) They also moved for a stay pending appeal and an immediate emergency stay pending decision on that motion. (*See* Dkt. 161.) The Ninth Circuit initially granted the administrative stay (*id.*), but denied the federal agents' motion on the merits after full briefing, consideration, and argument. *Index Newspapers*, 2020 WL 5988501. In denying the federal agents' motion for stay, the court held that the federal agents had failed to show a likelihood of success on the merits or of irreparable injury without a stay, that both the City and Plaintiffs faced substantial injury if a stay was granted, and that the public interest in protecting federal property and personnel could be served without dispersing journalists and legal observers. *Id.* at *3-15.

Meanwhile, confrontations between protesters and federal agents have continued apace.[2] And evidence that the federal agents' violence against reporters was motivated by retaliatory intent has continued to accumulate. *See* Johnson, *Donald Trump Says It's A "Beautiful Sight" To See Police Throw Reporter To The Ground*, *supra*.

## D.    The Claims in the SAC

Plaintiffs bring claims against the federal agents under the First and Fourth Amendments.[3] Under the First Amendment, Plaintiffs assert a right to access, observe, and report on protests and dispersals, as well as a right against retaliation for such activity. (SAC ¶¶ 201-210.) Under the Fourth Amendment, Plaintiffs assert that the federal agents have used unconstitutionally excessive force against them. (SAC ¶¶ 211-219.) On behalf of the class of journalists and legal observers covering the Portland protests, Plaintiffs seek declaratory and injunctive relief that the federal agents may not threaten them with arrest, arrest them, or target them for uses of force while they are engaged in constitutionally protected acts of speech and

---

[2] *See, e.g.*, Mark Graves, *Portland, federal police break up downtown protest of Breonna Taylor grand jury decision; 'riot' declared*, OregonLive (Sept. 24, 2020), https://www.oregonlive.com/portland/2020/09/portland-protest-grows-downtown-on-eve-of-breonna-taylor-grand-jury-decision.html.

[3] Plaintiffs do not assert a claim under the Oregon Constitution against the federal agents. (*Cf.* Mot. at 12.)

expressive conduct during protests, including newsgathering, reporting, and documenting police interaction with protesters. (SAC 51-52.)

## ARGUMENT

The legal standards under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) are similar: Courts accept as true well-pleaded allegations of fact and construe them in the light most favorable to the plaintiff. *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1157 (9th Cir. 2017); *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Under Rule 12(b)(1), if the allegations, so construed, are sufficient to invoke the court's jurisdiction, the motion to dismiss must be denied. *Snyder*, 859 F.3d at 1157. Similarly, under Rule 12(b)(6), if the allegations give the opposing party fair notice of the claim and plausibly suggest an entitlement to relief, the motion must be denied. *Starr*, 652 F.3d at 1216-17. A complaint susceptible to multiple interpretations survives a motion to dismiss so long as at least one interpretation plausibly suggests that the plaintiff is entitled to relief. *Id.*

Under Rule 12(b)(6), the Court's review is limited to the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Under Rule 12(b)(1), however, a court may "look beyond the complaint and consider extrinsic evidence," such as declarations and affidavits. *Lacano Investments, LLC v. Balash*, 765 F.3d 1068, 1071 (9th Cir. 2014) (quoting *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 n.5 (9th Cir. 2003)).

The Ninth Circuit's decision in this case disposes of most of the federal agents' arguments. Plaintiffs have standing to pursue their claims because of the "powerful evidence of the Federal Defendants' ongoing, sustained pattern of conduct that resulted in numerous injuries to members of the press" and legal observers. *Index Newspapers*, 2020 WL 5988501, at *4-5. Plaintiffs have stated an access claim because a dispersal is a denial of access. *Id.* at *7. Plaintiffs have stated a retaliation claim because retaliation may be proved with circumstantial evidence, like shooting a well-labeled member of the press as he is taking photographs. *See id.* at *6. Plaintiffs have stated a claim for excessive force because retaliatory force is always excessive force. Plaintiffs are entitled to declaratory relief because there is an actual controversy between

PAGE 6 -   PLAINTIFFS' OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO
            DISMISS

the parties. Even if the Court determines that Plaintiffs have failed to state any of these claims, Plaintiffs are entitled to amend their complaint to add facts already present in the voluminous record. Plaintiffs asked the federal agents to stipulate to allow such amendment, but the federal agents refused. Finally, the federal agents are not entitled to a stay of discovery because, as they themselves admit, their motion would not dispose of the entire case.

## I.    PLAINTIFFS HAVE STANDING TO PURSUE THEIR CLAIMS

The Ninth Circuit has already held that Plaintiffs have standing to bring their claims. The federal agents argued in the Ninth Circuit, just as they do here, that Plaintiffs were not threatened with any injury that was "certainly impending." *Index Newspapers*, 2020 WL 5988501, at *4 (quotation marks omitted); (Mot. at 6 (quotation marks omitted)). There, as here, the federal agents "relie[d] primarily on [*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)]" to make this argument. *Index Newspapers*, 2020 WL 5988501, at *4; (Mot. at 6-9).

The Ninth Circuit rejected this argument and affirmed this Court's finding that Plaintiffs have standing. Like this Court, the Ninth Circuit held that "plaintiffs' injuries are different [from those in *Lyons*] for several reasons." *Id.* at *4-5. Although only Plaintiffs' First Amendment claim was before that court, its reasoning applies equally to Plaintiffs' Fourth Amendment claim:

> First, [Plaintiffs'] risk of future injury is not speculative. Plaintiffs introduced powerful evidence of the Federal Defendants' ongoing, sustained pattern of conduct that resulted in numerous injuries to members of the press between the date the complaint was filed and the date the district court entered its preliminary injunction. The district court's preliminary injunction included twelve pages solely dedicated to factual findings that describe in detail dozens of instances in which the Federal Defendants beat plaintiffs with batons, shot them with impact munitions, and pepper sprayed them. The court's findings were supported by nineteen declarations and video and photographic evidence. The Federal Defendants do not argue that any of the district court's findings are clearly erroneous, and we conclude the findings are amply supported.
>
> As of the time the preliminary injunction was entered, the district court found that the Federal Defendants had engaged in a pattern of conduct that had persisted for weeks and was ongoing. After reviewing plaintiffs' declarations, photos, and video clips, the district court found that many victims had been standing on public streets, sidewalks, and parks, well away from protestors, and were not engaged in unlawful activity when they were shot, tear gassed, shoved, or pepper sprayed by the Federal Defendants. Unlike *Lyons*, the district court found that some journalists and legal observers monitoring the protests had been injured by the Federal Defendants more than once. The district court's findings are compelling

PAGE 7 -   PLAINTIFFS' OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO
              DISMISS

> because "the possibility of recurring injury ceases to be speculative when actual
> repeated incidents are documented."

*Id.* (quoting *Thomas v. Cty. of Los Angeles*, 978 F.2d 504, 507 (9th Cir. 1992)). In addition, the

Ninth Circuit observed that as to Plaintiffs' First Amendment claim, "[a] chilling of First

Amendment rights can constitute a cognizable injury." *Id.* at *5.

The Ninth Circuit's decision is dispositive here. The federal agents limit their discussion

to facts alleged in the SAC (Mot. at 6, 9, 14-15), but the Court may consider the full record on a

motion to dismiss for lack of subject-matter jurisdiction. *Lacano Investments*, 765 F.3d at 1071.

Just as the Ninth Circuit did, the Court should reject the federal agents' argument that Plaintiffs

lack standing to pursue their claims.

## II.    PLAINTIFFS HAVE STATED BOTH FIRST AND FOURTH AMENDMENT CLAIMS

Plaintiffs have stated a claim both for denial of access and for retaliation under the First

Amendment. Because Plaintiffs have stated a claim for retaliation under the First Amendment,

Plaintiffs have also stated a claim for excessive force under the Fourth Amendment.

First, Plaintiffs assert the right to observe, record, and report on how the federal agents

police protests, interact with protesters, and enforce their dispersal orders. To vindicate that right,

Plaintiffs must show (1) that the place and process to which they seek access have historically

been open to the press and general public and (2) that public access plays a significant positive

role in the functioning of the particular process in question. *Press-Enterprise Co. v. Superior

Court* ("*Press-Enterprise II*"), 478 U.S. 1, 8-9 (1986); *Index Newspapers*, 2020 WL 5988501, at

*7; *Leigh v. Salazar*, 677 F.3d 892, 900 (9th Cir. 2012).

The only challenge the federal agents raise to Plaintiffs' right-of-access claim is that, in

their view, the SAC does not allege that they "denied any named Plaintiff access to any space."

(Mot. at 15.) In fact, however, Plaintiffs alleged that the federal agents "push[ed] protesters and

neutrals," including journalists, "all the way [from the Hatfield Courthouse] to SW Broadway," a

distance of over a thousand feet. (SAC ¶ 186.) In the process, federal agents shot photojournalist

Plaintiff Lewis-Rolland 10 times all over his upper body while he was filming and

photographing them. (*Id.* ¶¶ 16, 73.) Thus, they denied at least Plaintiff Lewis-Rolland access to the site of the protests and the dispersal action against protesters. The federal agents do not contest the remaining elements of the right-of-access test. (Mot. at 15-16.) Thus, the Court should reject the federal agents' motion to dismiss Plaintiffs' right-of-access claim.

Second, the Court should also deny federal agents' motion to dismiss Plaintiffs' retaliation claim. They argue that Plaintiffs have failed to show that Mr. Lewis-Rolland's First Amendment activity was a "substantial or motivating factor" in their conduct. (Mot. at 15 (quoting *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300-01 (9th Cir. 1999)).) They made the same argument on appeal. *Index Newspapers*, 2020 WL 5988501, at *5-7. As the Ninth Circuit observed, however, "[t]his element of a First Amendment retaliation claim may be met with either direct or circumstantial evidence." *Id.* at *6. Plaintiffs alleged that Mr. Lewis-Rolland was doing nothing but "filming and photographing [the federal agents]" when they "shot [him] with impact munitions 10 times, leaving severe lacerations, welts, and bruises all over his upper body." (SAC ¶¶ 16, 73.) The severity of the federal agents' response, especially given that what Mr. Lewis-Rolland was documenting was their own "campaign of wholesale violence," raises at least the reasonable inference that they shot him with retaliatory intent. (SAC ¶ 186.) On a motion to dismiss, that is enough to "plausibly suggest an entitlement to relief." *Starr*, 652 F.3d at 1216-17 (quotation marks omitted).

Third, the federal agents' motion to dismiss Plaintiffs' Fourth Amendment claim fails because using force to retaliate against First Amendment activity is excessive force. Even when law enforcement faces what the federal agents call "riotous crowds"—a factual allegation not found in the SAC—individuals have a "clearly established right not to have [violent force] used 'to intimidate or retaliate against' [them]." *Morales v. Fry*, 873 F.3d 817, 826 (9th Cir. 2017) (quoting *Young v. Cty. of Los Angeles*, 655 F.3d 1156, 1162 (9th Cir. 2011)) (alteration omitted). Because Plaintiffs have stated a claim for retaliation under the First Amendment, they have stated a claim for excessive force under the Fourth Amendment.

Moreover, using force "for no legitimate law-enforcement reason" is also "likely . . . an 'obvious case' of excessive force." *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam)). Here, Mr. Lewis-Rolland was doing nothing but "filming and photographing [the federal agents]" when they shot him. (SAC ¶¶ 16, 73.) No case has ever held that shooting someone ten times while they were neither engaging in violent conduct nor fleeing from lawful custody, but simply taking photographs, is a permissible use of force. The purpose of a complaint is "to give the defendant fair notice of the factual basis of the claim and of the basis for the court's jurisdiction." *Skaff v. Meriden N. Am. Beverly Hills, LLC*, 586 F.3d 832, 841 (9th Cir. 2007). At the pleading stage, the facts alleged give the federal agents precise notice of why they are being sued and raise at least the plausible inference that the federal agents' use of force lacked any legitimate law-enforcement reason and was therefore excessive for a second reason. The Court should deny the federal agents' motion to dismiss Plaintiffs' Fourth Amendment claim.

## III.    PLAINTIFFS HAVE STATED A CLAIM FOR DECLARATORY RELIEF

The federal agents argue that Plaintiffs lack standing to seek declaratory relief. (Mot. at 12-13.) But because the Ninth Circuit has held that Plaintiffs have standing to seek substantive relief, Plaintiffs also have standing to seek declaratory relief. *Index Newspapers*, 2020 WL 5988501, at *4-5; *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1222-23 (9th Cir. 1998) (en banc). The federal agents also argue that the Court should deny declaratory relief for prudential reasons (Mot. at 13-14), but none of the prudential factors the Ninth Circuit has set forth counsel against granting declaratory relief. Maintaining the declaratory judgment action would not "involve the needless determination of state law issues"; it would not "encourage the filing of declaratory actions as a means of forum shopping"; it would not "risk duplicative litigation"; it would not "permit one party to obtain an unjust res judicata advantage"; it would not "risk entangling federal and state court systems"; and it would not "jeopardize the convenience of the parties." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1107 (9th Cir. 2011). On the other hand, it

would "serve a useful purpose in clarifying the legal relations at issue." *Id.* The Court should thus deny this portion of the federal agents' motion to dismiss.

## IV.    THE COURT SHOULD REJECT THE FEDERAL AGENTS' MOTION TO STAY DISCOVERY

The federal agents' argument that the Court should stay discovery rises and falls with those addressed above. The Federal Rules "do not provide for automatic or blanket stays of discovery" upon the filing a dispositive motion. *S.F. Tech. v. Kraco Enterprises LLC*, 2011 WL 2193397, at *2 (N.D. Cal. June 6, 2011). "In fact, such a notion is directly at odds with the need for expeditious resolution of litigation." *Skellerup Indus. Ltd. v. City of Los Angeles*, 163 F.R.D. 598, 601 (C.D. Cal. 1995) (quotation marks omitted). For that reason, such motions are disfavored and district courts require defendants to make a "strong showing" of entitlement before granting them. *S.F. Tech.*, 2011 WL 2193397, at *2 (quoting *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir.1975)).

Here, none of the factors that might counsel a stay are present. District courts often will grant a stay only if the pending motion would dispose of the entire case, *id.*, but even the federal agents concede that their motion would only "shrink" the scope of the case. (Mot. at 17.) Nor has the City "join[ed] in the request for a stay." *Skellerup Indus.*, 163 F.R.D. at 601 (quoting *Hachette Distribution, Inc. v. Hudson Cty. News Co.*, 136 F.R.D. 356, 358 (E.D.N.Y. 1991)). Meanwhile, the federal agents' best argument for a stay of discovery—that the Ninth Circuit temporarily stayed the preliminary injunction (Mot. at 17)—now cuts the other way. *See generally Index Newspapers*, 2020 WL 5988501. And finally, the federal agents have been appearing at depositions and asking questions, so their request is in effect a request for a one-way stay. (Acharya Decl. ¶ 3.) Plaintiffs are aware of no case or rule authorizing such an obviously unfair request. Thus, the Court should deny the federal agents' request for a stay of discovery.

## V.    IF THE COURT GRANTS THE MOTION TO DISMISS, IT SHOULD GRANT PLAINTIFFS LEAVE TO AMEND THEIR COMPLAINT

A party may amend its pleading with the court's leave, which "[t]he court should freely give . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with

PAGE 11 - PLAINTIFFS' OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO DISMISS

extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation marks omitted). Denying leave to amend is proper only when "it is clear" that any amendment would be futile. *Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1102 (9th Cir. 2018) (quotation marks omitted).

Here, the federal agents refused to assent to Plaintiffs' amending their pleading to include allegations based on the mountain of declarations Plaintiffs put into the record prior to the Court granting Plaintiffs' motion for preliminary injunction. (Acharya Decl. ¶ 2.) A motion to dismiss may only be granted without leave to amend where there is no possibility that the plaintiff could allege facts to state a claim. *Hoang*, 910 F.3d at 1102. Such amendment would cure any purported deficiencies in the SAC because it would make the pleading identical to the claims that this Court and the Ninth Circuit have already upheld. The evidence Plaintiffs have entered into the record was sufficient to convince both this Court and the Ninth Circuit that Plaintiffs are likely to succeed on their First Amendment claims, a much higher bar than to survive a motion to dismiss. *See Index Newspapers LLC v. City of Portland*, 2020 WL 4883017, at *15-21 (D. Or. Aug. 20, 2020); *Index Newspapers*, 2020 WL 5988501, at *5-11. This Court made extensive findings based on this evidence, and Ninth Circuit characterized it as "exceptionally strong evidentiary support." *Index Newspapers*, 2020 WL 5988501, at *7. The "forty-five instances" of retaliatory force the Ninth Circuit counted also support Plaintiffs' claim under the Fourth Amendment. *Id.*; *Morales*, 873 F.3d at 826. Thus, were any claim found to be defective, leave to amend should be granted.

## CONCLUSION

For all these reasons, the federal agents' motion to dismiss, and their motion to stay discovery, should be denied.


Dated: October 19, 2020                    Respectfully Submitted,

                                           By: /s/ Matthew Borden                    

PAGE 12 - PLAINTIFFS' OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO
         DISMISS

Matthew Borden, *pro hac vice*
J. Noah Hagey, *pro hac vice*
Athul K. Acharya, OSB No. 152436
Gunnar K. Martz, *pro hac vice*
BRAUNHAGEY & BORDEN LLP

Kelly K. Simon, OSB No. 154213
ACLU FOUNDATION OF OREGON

*Attorneys for Plaintiffs*