**Matthew Borden**, admitted *pro hac vice*
borden@braunhagey.com
**J. Noah Hagey**, admitted *pro hac vice*
hagey@braunhagey.com
**Ellen V. Leonida**, admitted *pro hac vice*
leonida@braunhagey.com
**Athul K. Acharya**, OSB No. 152436
acharya@braunhagey.com
**Kory J. DeClark**, admitted *pro hac vice*
declark@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, Tenth Floor
San Francisco, CA 94104
Telephone: (415) 599-0210

**Kelly K. Simon**, OSB No. 154213
ksimon@aclu-or.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF OREGON
P.O. Box 40585
Portland, OR 97240
Telephone: (503) 227-6928

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **INDEX NEWSPAPERS LLC**, a Washington limited-liability company, dba **PORTLAND MERCURY**; **DOUG BROWN**; **BRIAN CONLEY**; **MATHIEU LEWIS-ROLLAND**; **KAT MAHONEY**; **SERGIO OLMOS**; **JOHN RUDOFF**; **ALEX MILAN TRACY**; **TUCK WOODSTOCK**; **JUSTIN YAU**; and those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> **CITY OF PORTLAND**, a municipal corporation; **JOHN DOES 1-60**, officers of Portland Police Bureau and other agencies working in concert; **U.S. DEPARTMENT OF HOMELAND SECURITY**; and **U.S. MARSHALS SERVICE**, <br><br> Defendants. | Case No. 3:20-cv-1035-SI <br><br> **PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM FEDERAL AGENTS** <br><br> **ORAL ARGUMENT REQUESTED** |

## LOCAL RULE 7-1 CERTIFICATION

Pursuant to L.R. 7-1(a)(1)(A), counsel for Plaintiffs certify that they conferred in good faith with counsel for the federal agents in an effort to resolve the issues raised by this Motion, but that the parties have been unable to do so.

## MOTION

Pursuant to Federal Rules of Civil Procedure 26 and 37, as well as Local Rule 37, Plaintiffs respectfully move this Court for an order compelling the U.S. Department of Homeland Security ("DHS") and the U.S. Marshals Service ("USMS") (hereinafter, the "federal agents") to produce documents and interrogatory responses that are relevant and responsive to Plaintiffs' discovery requests, but which the federal agents have improperly withheld.

## MEMORANDUM OF LAW

## INTRODUCTION

This Court enjoined the federal agents from violently targeting journalists and legal observers exercising their First Amendment right to document government conduct. The Ninth Circuit upheld this Court's injunction in a published opinion. The issues that remain in this case are whether the federal agents should be permanently enjoined from dispersing journalists and legal observers from protests when they do not interfere with legitimate law enforcement, and whether Defendants must pay damages for intentionally targeting journalists and legal observers.

Instead of acknowledging the legal bases for this Court's and the Ninth Circuit's rulings and the rights of the free press, the government is continuing to try to preserve its ability to use violence to prevent the media from covering protests—even while its own agents record the events—and is further seeking to avoid accountability for the agents who shot, teargassed, hit, and intimidated journalists and legal observers. In furtherance of these efforts, the federal agents have refused to respond to document requests that are plainly relevant to the remaining issues, such as requests for: documents reflecting their preexisting policies for the treatment of journalists and legal observers at protests; any changes in these policies since the preliminary injunction issued; evidence of surveillance of journalists; and the identities of agents involved in specific misconduct. For the reasons below, the Court should compel the federal agents to fully respond to Plaintiffs' First Set of Expedited Requests for Production ("RFPs"), Second Set of RFPs, and Third and Fourth Set of Interrogatories ("ROGs") in ten (10) days and finish their production by no later than two months from the time the Court rules on this Motion.

## BACKGROUND

## I.    PROCEDURAL HISTORY

On August 20, 2020, this Court enjoined the federal agents from assaulting and dispersing journalists and legal observers reporting on and observing the government's conduct at protests. (Dkt. 157 (PI Order).) The Ninth Circuit issued a published decision denying the

federal agents' motion for a stay after full consideration on the merits. *Index Newspapers LLC v. United States Marshals Serv. ("Index II"),* 977 F.3d 817 (9th Cir. 2020).

Then, citing the January 2021 change in administration and the need for new agency officials to familiarize themselves with the case, the federal agents asked to stay their own appeal. (Dkt. 84.)[1] In June 2021, the federal agents sought to extend that stay, this time on the grounds that "proceeding with the appeal could result in a decision based on a record that is no longer representative of the circumstances on the ground." (*Id.* at 5.) Simultaneously, they sought an indicative ruling from this Court that it would dissolve the preliminary injunction. (Dkt. 209.)

## II.    DISCOVERY

On July 23, 2020, the Court authorized expedited discovery in connection with Plaintiffs' motion for a PI. (Dkt. 84 at 21.) Two days later, Plaintiffs served their First Set of Expedited RFPs. (Declaration of Matthew Borden ("Borden Decl.") Exs. 1-2.) Although Plaintiffs sought only the discovery essential to litigating their motion for a PI, the federal agents alleged that they would be unable to respond to Plaintiffs' narrow discovery prior to the hearing. (*Id.* Ex. 3.) Plaintiffs thereafter narrowed their requests to ensure a timely response. (*Id.*) However, the federal agents stymied Plaintiffs' efforts at a good faith compromise, making only a sparse and delayed production, over-asserting privilege, and heavily redacting the few documents they did produce. To date, the federal agents still have not made a full production in the following categories: policies and procedures related to how journalists and legal observers are treated during protests (RFP 8); documents related to a May 17, 2019 memorandum for all DHS employees regarding First Amendment Protected Activities (RFP 9); de-escalation training, techniques, policies, or procedures (RFP 11); policies, or procedures related to differentiating among protesters, rioters, and people present for other reasons (RFPs 12, 14); studies related to whether journalists or legal observers in Portland pose any threat to law enforcement, and any

---

[1] *Index Newspapers LLC, et al v. United States Marshals Serv.*, Case No. 20-35739 (9th Cir. 2020).

incidents in which journalists or legal observers have been allegedly assaulted or harmed (RFPs 15, 16); and documents related to the surveillance of journalists or legal observers (RFP 18).

On August 27, 2021, Plaintiffs served their Second Set of RFPs and Fourth Set of Interrogatories on the federal agents. (*Id.* Exs. 4-7.) The federal agents asserted boilerplate objections, refused to provide any substantive responses to the interrogatories, and largely refused to produce documents. (*Id.* Exs. 8-11.) Plaintiffs conferred with the federal agents regarding this discovery by letter on October 15, 2021, and the parties participated in a meet-and-confer call on October 20, 2021. (*Id.* Ex. 14 & ¶ 19.) The federal agents stood on their boilerplate objections. (*Id.* Ex. 15.) Having been unable to resolve these issues via meet and confer, Plaintiffs file this Motion to Compel.

## ARGUMENT

Parties are entitled to discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense[,]" as long as it is proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). When a party fails to respond or responds incompletely to discovery requests, the party seeking discovery may move to compel responses. Fed. R. Civ. P. 37(a)(3)(B).

## I.    THE DISCOVERY AT ISSUE IS RELEVANT

### A.    Changes in the Federal Agents' Policies

Plaintiffs asked the federal agents to produce any formal or informal changes they made to their policies in response to the PI. (Borden Decl. Ex. 6 (ROG 12) ("Describe any changes to . . . policies or practices you instituted in response to the TRO and/or PI."); & Ex. 4 (RFP 39) (seeking all documents related to interrogatory responses); *see also* Ex. 6 (ROG 13).) The federal agents argue that "compliance with the Court's orders" is a "collateral question" and that the federal agents' "reaction to the Court's past orders" is "irrelevant." (*Id.* Ex. 10 (DHS ROG Set Four Response at 5-6); Ex. 11 (USMS ROG Set Four Response at 4).)

The federal agents are mistaken for several reasons. First, this case challenges the federal agents' blanket dispersal policy. Any changes to the policy are obviously relevant to this claim. Second, the federal agents' compliance with the Court's injunction is relevant because Plaintiffs

seek permanent injunctive relief not only to fix the federal agents' policy but also against them targeting the press. (Dkt. 53 (SAC) at 51.) To obtain it, Plaintiffs must show that without an injunction, they are "likely to suffer irreparable injury that cannot be redressed by an award of damages." *City & Cty. of San Francisco v. Trump*, 897 F.3d 1225, 1243 (9th Cir. 2018). This Court found that the federal agents' failure to comply with the TRO "raises concerns regarding future conduct if there is no injunction in place." (Dkt. 157 (PI Order) at 54.) It follows that compliance with the PI is relevant to whether Plaintiffs are entitled to a permanent injunction.

Second, the federal agents have argued that they "are no longer following Donald Trump's orders[,]" and thus are no longer likely to inflict harm on Plaintiffs. (Dkt. 209 (Motion for Indicative Ruling) at 9-10.) But, even where a party claims voluntary cessation, continued injunctive relief is warranted if "there exists some cognizable danger of recurrent violation[.]" *U.S. v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953). And when a party fails to recognize the wrongful nature of its past conduct, such a danger exists, because its assurances against future violations might be insincere. *Fed. Election Com'n v. Furgatch*, 869 F.2d 1256, 1263 n.5 (9th Cir. 1989). A change in policy (or lack thereof) is probative of the federal agents' sincerity.

Third, Plaintiffs have an outstanding contempt motion. (Dkt. 85.) As this Court pointed out, if the agencies took all reasonable steps to secure compliance—such as changing its policies, disciplining agents, and firing repeat offenders—then the agencies could not be held in contempt, even if individual agents could. (Borden Decl. Ex. 16 (July 31, 2020 Hrg. Tr. at 25:11-26:21)); *see also Stone v. City & Cty. of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992), *as amended on denial of reh'g* (Aug. 25, 1992). Plaintiffs are entitled to documents reflecting any changes in the federal agents' policies given this putative defense afforded to the federal agents.

### B.    Identifying Specific Federal Agents and Officers Who Committed Misconduct During the Protests

Plaintiffs asked the federal agents to identify all agents involved in specific instances of misconduct, such as the agents who maced Plaintiff Kat Mahoney and Bruce Knivila, who shot Haley Nicholson, who kicked a tear-gas canister at Justin Grinnell, and who blocked Rebecca

Ellis from reporting on their activities. (Borden Decl. Ex. 6 (ROG 17); *see also* Ex. 12 (ROG 7) (requesting the identities of the agents involved in all the attacks documented in Plaintiffs' motion for a PI).) The federal agents argue that "Plaintiffs have not stated claims against individual . . . officers, and any discovery into such claims would be irrelevant to their claims against DHS." (Borden Decl. Ex. 10 (DHS ROG Set Four Response at 9); Ex. 11 (USMS ROG Set Four at 7) (same); Ex. 13 (DHS ROG Set Three Response at 5-6) (similar).)

The federal agents are again mistaken. The identities of the officers are relevant because Plaintiffs are entitled to seek enforcement of the Court's TRO and PI with a motion for contempt and sanctions against individual officers. Fed. R. Civ. P. 65(d)(2)(B) (permitting sanctions against "the parties' officers [and] agents"). Indeed, in response to Plaintiffs' motion for contempt (Dkt. 85), the Court suggested that sanctions against individual contemnor officers "might be most appropriate." (Borden Decl. Ex. 16 (July 31, 2020 Hrg. Tr. at 26:11-19).) Thus, discovery into individual agents' misconduct is relevant to Plaintiffs' claims.

Such discovery is also reasonably calculated to lead to the discovery of relevant evidence. Knowing the identities of individual officers who violated the TRO and PI will permit Plaintiffs to ask whether the defendant agencies have investigated those offenses or disciplined those officers. (*Cf.* Borden Decl. Ex. 13 (DHS ROG Set Three Response at 6-8) (declining to answer such interrogatories in part because Plaintiffs could not identify the officers and had to resort to identifying the offending conduct stated in declarations).) That question is relevant to whether the Court should accept the federal agents' assurances of voluntary cessation.

Finally, Plaintiffs are entitled to know the identities of the agents who shot at, beat, targeted, and threatened to arrest them and other observers so that they can amend the Complaint to state claims against those officers. *Index II*, 977 F.3d at 829 (describing the "shocking pattern of misconduct" Plaintiffs documented); (Dkt. 135 (Kerlikowske Decl.) at 9-13.) Excessive force in violation of the Fourth Amendment is at the core of the right of action authorized in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *Index II*, 977 F.3d at 851 n.10 (O'Scannlain, J., dissenting) ("Remarkably, some of the allegations in the

complaint regarding 'retaliation' may well support *Bivens* actions and claims of excessive force against individual officers.").[2] Leave to amend in such circumstances is "freely" given. (Dkt. 192 (Plaintiffs' Opposition to Federal Agents' Motion to Dismiss) at 11-12.)

### C.    Surveillance of Journalists

Plaintiffs asked the federal agents to produce documents "related to the surveillance of any journalists or legal observers, including aerial surveillance and 'stingray' or other cellphone-interception surveillance." (Borden Decl. Ex. 1 (RFP 18).) The federal agents declined to do so, arguing that "Plaintiffs' claims do not relate to the alleged surveillance of any journalists or legal observers[.]" (*Id.* Ex. 8 (DHS RFP Set Two Response at 19-20).) But Plaintiffs do bring a retaliation claim, for which subjective retaliatory animus is a crucial element. *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006). The federal agents may have begun surveilling journalists in Portland in retaliation for their coverage of the federal agents' unlawful conduct.[3] Plaintiffs are entitled to know what surveillance was conducted.

### D.    Line Agents' Text Messages

The federal agents have also flatly refused to provide any text messages in response to Plaintiffs' requests and provided nothing at all from agents on the ground. Such documents can be extremely probative of retaliatory animus. In St. Louis, for instance, discovery into police officers' texts during protests revealed that officers sent the following messages:

---

[2] Plaintiffs' allegations support *Bivens* claims for retaliation in violation of the First Amendment. *Boule v. Egbert*, 998 F.3d 370 (9th Cir. 2021). Notably, the Supreme Court granted certiorari in that case, but declined to take up the third question presented: "Whether the Court should reconsider *Bivens*." *Egbert v. Boule*, No. 21-147, 2021 WL 5148065, at *1 (U.S. Nov. 5, 2021). Petition for Writ of Certiorari, *id.*, (U.S. July 30, 2021), https://www.supremecourt.gov/DocketPDF/21/21-147/185392/20210730091936515_Cert%20Petition%20-%20Egbert%20v.%20Boule.pdf.

[3] *See* Shane Harris, *DHS compiled 'intelligence reports' on journalists who published leaked documents*, Wash. Post (July 30, 2020), https://www.washingtonpost.com/national-security/dhs-compiled-intelligence-reports-on-journalists-who-published-leaked-documents/2020/07/30/5be5ec9e-d25b-11ea-9038-af089b63ac21_story.html (noting that DHS created intelligence reports on journalists who had "published leaked, unclassified documents about DHS operations in Portland").

- "[I]t's gonna be a lot of fun beating the hell out of these (expletives) once the sun goes down and nobody can tell us apart!!!!"
- "We really need these (expletives) to start acting up so we can have some fun"
- "[G]oing rogue does feel good"[4]

The federal government knows perfectly well how important and relevant such discovery can be.

Plaintiffs first sought such discovery in the run-up to the motion for a PI. After much discussion with the federal agents, Plaintiffs offered to limit the text-message discovery to identified commanding officers and line agents, and specific keyword searches. (Borden Decl., Ex. 3 at 2-3.) Counsel for the federal agents repeatedly confirmed that they would search for and produce text messages, and committed to continuing to produce responsive documents after the PI hearing. (*Id.* ¶¶ 5-7.) To date, however, the federal agents have produced no text messages from any custodian and nothing at all from agents on the ground.

The federal agents argue, tautologically, that "collection of text messages is unduly burdensome . . . due to the difficulty of collecting and processing text messages." (Borden Decl. Ex. 8 (DHS RFP Set Two Response at 20).) But motions to compel production of such evidence are regularly granted. *See, e.g.*, *Mcintyre v. Douglas Cty.*, No. 6:17-cv-00798-AA, 2021 WL 4771861, at *4 (D. Or. May 3, 2021); *Paisley Park Enterprises, Inc. v. Boxill*, 330 F.R.D. 226, 231 (D. Minn. 2019). The federal agents also argue that, for some individuals, the text messages are not within their custody, possession, or control. (Borden Decl. Ex. 8 (DHS RFP Set Two Response at 20).) But even if the federal agents allow some employees to use personal devices for work purposes, the leading smartphone manufacturers allow employers access to work-related text messages.[5] Plaintiffs are entitled to obtain these documents.

---

[4] Indictment at 2-4, *United States v. Boone*, No. 4:18-cr-975 (Nov. 29, 2018), *available at* https://www.justice.gov/opa/press-release/file/1115986/download.

[5] *See, e.g.*, *Android Enterprise Management*, Android, https://www.android.com/enterprise/management/ (last visited Nov. 30, 2021); Sarah Perez, *Apple is making corporate 'BYOD' programs less invasive to user privacy*, TechCrunch (June 10, 2019) (corporate data is available to employers whose employees use their devices at work).

### E.    Other Categories of Information That the Federal Agents Have Failed to Produce

The federal agents have also refused to produce any documents in response to certain of

Plaintiffs' expedited RFPs or produced very little without certifying that their production as to

those requests is complete. Each of these requests is relevant. (Borden Decl. Exs. 1-2.)

RFPs 8 and 9 seek the federal agents' policies and procedures for the treatment of

journalists, legal observers, and protestors. These topics are relevant because the federal agents

have long claimed that they need not change their policies because their preexisting policies are

more than sufficient. (Dkt. 138 (Federal Defendants' Opposition to PI) at 20-21.) RFP 11 seeks

the federal agents' policies for de-escalation at protests. This topic is relevant because Plaintiffs

documented dozens of occasions in which federal agents failed to de-escalate—and in fact

unnecessarily escalated—interactions with journalists and legal observers. *Index II*, 977 F.3d at

829. RFPs 12 and 14 seek federal agents' policies and procedures for differentiating amongst

attendees at protests. These topics are relevant because the federal agents' primary argument

against the workability of the injunction is that they cannot distinguish between protesters,

rioters, and people present for other reasons. (Dkt. 138 at 30-32.) RFPs 15 and 16 seek any

investigation the federal agents have conducted related to whether journalists or legal observers

in Portland pose any threat to law enforcement, and regarding incidents where journalists and

legal observers have been harmed. RFP 15 is relevant because the federal agents have sometimes

argued that journalists and legal observers themselves pose a threat to law enforcement or crowd

control. (Dkt. 138 at 32-35.) And RFP 16 is relevant because an investigation is usually a

prerequisite to discipline, and whether the defendant agencies have "disciplined any federal

agent or officer for any conduct" is relevant for the reasons outlined above. (*See* PI Order at 54.)

## II.    PLAINTIFFS' REQUESTS ARE PROPORTIONAL TO THE NEEDS OF THE CASE

Proportionality is determined with regard to "the importance of the issues at stake in the

action, the amount in controversy, the parties' relative access to relevant information, the parties'

resources, the importance of the discovery in resolving the issues, and whether the burden or

expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Each of these factors underscore that Plaintiffs are entitled to the discovery they seek.

**Importance of the issues at stake.** The events underlying this case are of national significance and were reported on by every major national newspaper. This case, too, was the subject of national coverage. As the Court stated in granting the PI, "[t]he free press is the guardian of the public interest, and the independent judiciary is the guardian of the free press." (Dkt. 157 (PI Order) at 2 (citations omitted).) "This lawsuit tests whether these principles are merely hollow words." (*Id*.) The importance of the issues at stake in this action favors discovery.

**The parties' relative access to relevant information.** The information Plaintiffs seek is solely in the hands of the federal agents. Plaintiffs cannot obtain documents reflecting changes in the federal agencies' policies from anywhere but the federal agents. Plaintiffs cannot identify officers who disobeyed the Court's orders from anywhere but the federal agents. Plaintiffs cannot obtain the text messages DHS agents exchanged as they shot and beat journalists from anywhere but the federal agents. On each of these, as on every other category of information Plaintiffs seek, the federal agents' unmatched access to relevant information favors discovery.

**The amount in controversy.** In cases seeking injunctive relief, the amount in controversy is measured by "the value of the object of the litigation" to either party. *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 775 (9th Cir. 2017). The pecuniary value of not being beaten is difficult to estimate, but the City of Portland recently settled a case arising from one officer's brutality during the 2020 protests for $50,000.[6] Plaintiffs identified at least 45 such instances, *Index II*, 977 F.3d at 828, and many more would have taken place without the injunction. At $50,000 a pop, the amount in controversy in this lawsuit is immense. It, too, favors discovery.

---

[6] Jayati Ramakrishnan, *After settling lawsuit, photographer calls for Portland mayor to denounce police protest actions*, The Oregonian (Apr. 6, 2021), https://www.oregonlive.com/portland/2021/04/after-settling-with-city-of-portland-photographer-calls-for-mayor-to-denounce-ppb-protest-actions.html.

PAGE 10 - PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM FEDERAL AGENTS

**The parties' resources.** The federal government's budget for fiscal year 2021 was $6.8 trillion. *Budget*, Congressional Budget Office, https://www.cbo.gov/topics/budget (last visited Nov. 30, 2021). Plaintiffs are represented by counsel pro bono. The difference in the parties' resources favors discovery.

**The importance of the discovery in resolving the issues.** The discovery Plaintiffs seek is crucial to resolving the issues. Many of Plaintiffs requests—such as changes in the federal agents' policies—are the subject of the federal agents' own dispositive motion. Other requests, such as specific agents who engaged in misconduct or line agents' text messages, are highly relevant for reasons explained above. Each of Plaintiffs' requests raised in this Motion is important to resolving the issues in this case—which favors discovery.

**Whether the burden or expense of the proposed discovery outweighs its likely benefit.** The federal agents' discovery responses offer conclusory statements about the burden or expense of discovery. Many of these objections are predicated on the federal agents' incorrect belief that Plaintiffs' requests are irrelevant. (*E.g.*, Borden Decl. Ex. 10 (DHS ROG Set 4 Response at 6) ("[F]ully explaining all actions taken in response to the Court's past orders . . . would provide little or no [relevant] information.")); *id.* at 9 (similar for contemnor agents' identities).) Moreover, Plaintiffs have repeatedly offered to narrow their requests. (*Id.* Ex. 3 at 2-3 (offering six different ways to narrow Plaintiffs' requests).) On key requests, such as the identities of contemnor agents or changes in the federal agents' policies, the federal agents have refused to meet Plaintiffs even halfway. This factor, too, favors discovery.

The discovery Plaintiffs seek is proportional to the needs of the case and vital to proving Plaintiffs' claims. The Court should compel the federal agents to produce it.

## CONCLUSION

For the foregoing reasons, the Court should compel the federal agents to fully respond to Plaintiffs' First Set of Expedited RFPs, Nos. 8, 9, 11, 12, 14, 15, 16, and 18; Second Set of RFPs, No. 39; Third Set of Interrogatories to DHS, No. 7; and Fourth Set of Interrogatories to DHS, Nos. 12, 13, and 17.

Dated: December 14, 2021                    Respectfully Submitted,


                                            By: /s/ Matthew Borden
                                            Matthew Borden, *pro hac vice*
                                            J. Noah Hagey, *pro hac vice*
                                            Ellen V. Leonida, *pro hac vice*
                                            Athul K. Acharya, OSB No. 152436
                                            Kory J. DeClark, *pro hac vice*
                                            BRAUNHAGEY & BORDEN LLP


                                            Kelly K. Simon, OSB No. 154213
                                            ACLU FOUNDATION OF OREGON

                                            *Attorneys for Plaintiffs*