BRIAN M. BOYNTON
Acting Assistant Attorney General
SCOTT ERIK ASPHAUG
Acting United States Attorney
ALEXANDER K. HAAS
Director, Federal Programs Branch
BRIGHAM J. BOWEN
Assistant Director, Federal Programs Branch
JORDAN L. VON BOKERN (DC 1032962)
KERI L. BERMAN
JASON LYNCH
MICHAEL P. CLENDENEN
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20530
Tel.:   (202) 305-7919
Fax:   (202) 616-8460

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| INDEX NEWSPAPERS, LLC, *et al.*,<br><br>    Plaintiffs.<br><br>    v.<br><br>CITY OF PORTLAND, *et al.*,<br><br>    Defendants. | Case No. 3:20-cv-1035-SI<br><br>**FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL** |

OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

## INTRODUCTION

During preliminary injunction proceedings in July and August 2020, this Court ordered the parties to conduct expedited discovery for those proceedings. They did so, this Court entered a preliminary injunction, and Plaintiffs never challenged the adequacy of Federal Defendants' responses. Instead, in the summer of 2021, Plaintiffs propounded several new rounds of written discovery, including repeating many of the requests that Federal Defendants had objected to in the proceedings the previous year. Incredibly, Plaintiffs now move to compel responses to their original expedited discovery, even though they have since begun ordinary, non-expedited discovery and have propounded dozens of requests through that process. They also seek to compel responses to several irrelevant and burdensome requests from their 2021 discovery, without adequately addressing Federal Defendants' detailed objections. This Court should not permit Plaintiffs to put forward irrelevant discovery demands in this moot litigation and attempt to haul the litigation back to the expedited discovery of July 2020.

## ARGUMENT

**A.    The requested discovery seeks irrelevant information and is unduly burdensome to the Federal Defendants.**

Ignoring many of the detailed objections raised by Federal Defendants, Plaintiffs ask this Court to order responses on several irrelevant and burdensome discovery requests that offer no chance of moving this litigation forward—even if it were not already moot. This Court should reject those requests.

   **1.    Plaintiffs have no basis for discovery into compliance with the preliminary injunction.**

Plaintiffs have offered no explanation why discovery into the Federal Government's compliance with the preliminary injunction is "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b). Plaintiffs' claims require them to show that a policy of Federal Defendants directs

OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL - 1

or authorizes violations of Plaintiffs' First Amendment and Fourth Amendment rights. But requiring Federal Defendants to prove their compliance with the preliminary injunction, which mandates that Federal Defendants follow *new* rules giving special privileges for press and legal observers, will not advance Plaintiffs' effort to unearth an alleged secret unconstitutional policy that allegedly existed prior to the entry of the preliminary injunction. Because Federal Defendants have never claimed that their policies already required the special privileges imposed by the preliminary injunction, Plaintiffs are necessarily asking for information only about compliance with the preliminary injunction and not about any of their claims in the case.

Nor is the discovery Plaintiffs demand relevant to mootness. Federal Defendants' mootness argument—already adopted by this Court in *Wolfe v. City of Portland et al.*, No. 3:20-cv-1882-SI, 2021 WL 4713237 at *7–11 (D. Or. Oct. 8, 2021)—does not argue that Federal Defendants have undertaken policy changes (discoverable or otherwise) that have mooted this case. Instead, Federal Defendants have shown that the civil unrest in Portland has dissipated so dramatically that any engagement by Federal Protective Service with group criminal activity is vanishingly rare. *Id.* at *10 ("[R]ecent protests triggering a law enforcement response involving force are sporadic and nearly nonexistent after May 2021."). As shown by the record supporting Federal Defendants' motion to vacate the preliminary injunction as moot, it is the situation in Portland that has changed, not the voluntary actions of Federal Defendants.

Plaintiffs have also not shown any basis for questioning Federal Defendants' compliance with the preliminary injunction, making discovery into the collateral issue of enforcing compliance inappropriate. *See, e.g.*, *California Dept. of Social Services v. Leavitt*, 523 F.3d 1025, 1034 (9th Cir. 2008) (holding that, "in the context of a motion to enforce a judgment," discovery into compliance should be granted only "[i]f significant questions regarding

OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL - 2

noncompliance have been raised"); *Hernandez v. Barr*, 2019 WL 13019923, at *6 (C.D. Cal. Mar. 25, 2019) (discovery into "demonstrating Defendants' noncompliance with the preliminary injunction" is not relevant where plaintiffs have not "raised significant or serious questions of Defendants' noncompliance with the preliminary injunction").

In their motion to compel, Plaintiffs identify only the contempt motion from July 2020 as the basis of their request. But they cannot seriously propose pursuing that contempt motion now after leaving it dormant for eighteen months. Civil contempt against the United States is permitted only "to coerce the defendant into compliance with the court's order." *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 629 (9th Cir. 2016).[1] Plaintiffs have provided no explanation how a handful of alleged incidents from July 2020, immediately after issuance of the temporary restraining order, and during the peak of the unrest surrounding the Hatfield courthouse, could show the need for coercive compliance measures in the quiet of January 2022. And for their contention that they want to prepare for an anticipated counterargument that Federal Defendants took reasonable steps toward compliance, there is no relevant, active dispute over the adequacy of compliance with the preliminary injunction; Plaintiffs cannot show a need to defend against a counterargument to an argument that is not even before the Court.

2.   **The identity of allegedly wrongdoing officers is not relevant.**

None of Plaintiffs' theories shows that the identity of allegedly wrongdoing individual officers is relevant or proportional to their needs in this case, which seeks only prospective

---

[1] Although civil contempt is available for compensatory purposes as well, the United States is immune from money damages, which includes money in compensation for alleged past wrongs. *See Bowen v. Mass.*, 487 U.S. 879, 900 (1988) (the APA's waiver of sovereign immunity does not extend to "money damages," which is "money in compensation for the damage sustained" (emphasis omitted)). For that reason, Plaintiffs would not be able to recover compensatory civil contempt damages from Federal Defendants.

OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL - 3

injunctive relief against federal agencies and limits its retrospective individual-capacity claims to non-federal officers. First, Plaintiffs cannot justify that discovery for purposes of seeking "enforcement of the Court's TRO and PI with a motion for contempt." Mot. at 6. As discussed above, Plaintiffs have presented no argument that the alleged incidents they identify from July 2020 would be relevant to contempt proceedings in 2022, which would necessarily be limited to examining whether prospective coercive action was necessary to ensure compliance with the preliminary injunction.

Second, Plaintiffs cannot link the names of officers to their arguments regarding voluntary cessation. This Court has already ruled in the related *Wolfe* litigation that the circumstances in Portland are not a voluntary cessation on the part of DHS and USMS—*Wolfe*, 2021 WL 471323, at *6 & n.5—and DHS and USMS have repeatedly made clear they are not claiming to have mooted the lawsuit themselves. And Plaintiffs give no plausible explanation how the identities of allegedly wrongdoing officers from July 2020 would help them rebut the undisputed factual evidence showing that the civil unrest in Portland has abated.

Third, as for Plaintiffs' claims they want to amend the Second Amended Complaint to raise *Bivens* claims, they cannot propound discovery for claims they have only considered and have not included in their Complaint. *See, e.g.*, Advisory Committee Note to 2000 Amendment to Fed. R. Civ. P. 26(b)(1) ("The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings."); *Asetek Danmark A/S v. CoolIT Sys. Inc.*, 2021 WL 4699170, at *2 (N.D. Cal. Oct. 8, 2021) ("[D]iscovery cannot be a fishing expedition for new claims, defenses, or surprise facts."). Plaintiffs have raised individual-capacity Doe claims only against non-

federal officers. *See* Fed. Defs.' Opp. to Extension, ECF No. 214 at 10 and n.5 (June 29, 2021) (explaining that the Doe defendants are defined as non-federal officers). And the scope of their request belies their claim that they're seeking officer identities for the purposes of *Bivens* suits. They demanded the identities of all officers "responsible for the attack" in several dozen declarations, some of which allege numerous interactions between law enforcement officers and named or unnamed individuals; only a small number involve the named Plaintiffs, so opposing counsel appears to be implying that they represent all of the other named and unnamed individuals described in the various declarations and intend to amend the complaint to name them as *Bivens* plaintiffs as well. Even if that were true, Plaintiffs are therefore asking this Court to order discovery on behalf of unnamed non-parties so they can bring unraised claims against unnamed non-parties; left unsaid is how that is an appropriate use of discovery in this official-capacity suit against DHS and USMS.

Plaintiffs fail even to address the other objections Federal Defendants raised. For example, Interrogatory No. 7 does not describe the incidents for which it is seeking this information, instead attempting to incorporate the contents of dozens of different declarations by reference—including declarations that don't seem to describe any "attack," such as their attorney declarations and their purported expert declaration. Interrogatory No. 7 is also more properly counted as numerous discrete interrogatories, exceeding Plaintiffs' limit, and would require a burdensome investigation by Federal Defendants in an attempt to identify the incidents described by the declarants and the officers involved. In tort lawsuits stemming from the Portland civil unrest, Federal Defendants and various plaintiffs have had to undertake extensive, laborious discovery to provide Plaintiffs with information relating to which officers might have been involved in individual incidents described by litigants. Doing so here, for dozens of declarations,

OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL - 5

would be unjustifiable and would require this Court's constant participation in discovery disputes.

### 3. Plaintiffs have never made allegations relating to "surveillance."

Plaintiffs have never made an allegation relating to surveillance. Instead, Plaintiffs attempt to repurpose their claims now by arguing in that abstract that a retaliation claim *could* include a claim that they were surveilled and that it was in retaliation for their coverage. But they have pleaded their retaliation claims very differently. *See, e.g.*, Second Amended Complaint, ECF No. 45 ¶ 202 ("Defendants retaliated against Plaintiffs and Plaintiff Class … . Defendants have targeted journalists and legal observers for arrests, threats of arrests, and use of force."). And Plaintiffs offer no factual basis that takes their surveillance request beyond a speculative fishing trip; their only support is a Washington Post article alleging that DHS's Office of Intelligence and Analysis compiled open-source reports on a New York Times reporter and the editor-in-chief of a blog, which has already been the subject of an investigation and report by the DHS Office of the Inspector General. Plaintiffs have never argued they were a subject of that same process or were subjected to surveillance, let alone that they would have standing to challenge such a practice and could state a constitutional claim on that basis.

### 4. Text messages from line officers are not relevant to their claims

Plaintiffs also seek text messages. This, too, is an improper and unjustified demand for discovery. At the outset, Plaintiffs do not identify the Request for Production ("RFP") for which they seek an order to compel line officers' text messages. Instead, they demand an order generally compelling the production of line officers' text messages, apparently in accordance with an unwritten agreement that some unspecified collection of line officers' text messages would be produced in response to unspecified requests. Counsel for Federal Defendants have no record or recollection of this purported unwritten agreement to produce line officers' text

OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL - 6

messages. With Plaintiffs now claiming Federal Defendants had promised they would produce line officers' text messages shortly following the preliminary injunction proceedings, it is curious Plaintiffs apparently never once raised the issue to counsel to Federal Defendants or this Court for more than a year following the issuance of the preliminary injunction and Federal Defendants' supposed breach of that agreement.

Regardless of the RFP for which Plaintiffs might seek line officers' text messages, those messages would not be relevant to any claims or defenses in this case, unlike in Plaintiffs' cited examples. Plaintiffs have given no explanation how such messages will aid them in proving the existence of a DHS or USMS policy that directs or authorizes the constitutional violations at issue in this case. Instead, their theory is that the messages might reveal that individual officers harbored some animus towards media or legal observers. But again, this is not a lawsuit against those individual officers. And even if Plaintiffs were correct that they could seek discovery into the *identities* of federal officers here to name them as Doe defendants, they would not be entitled to discovery into the *merits* of those claims until after this Court resolved any immunity-based motion to dismiss that such officers might raise. Although the Ninth Circuit has blessed discovery into the identity of Doe defendants in particular narrow circumstances, *see Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980), that exception exists only against the backdrop of the rule that generally prohibits discovery relating to the merits of claims against federal law enforcement officers until they've had their immunity to suit determined. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009).[2]

---

[2] Plaintiffs also would have to show that a *Bivens* cause of action even exists for their contemplated claims. *See, e.g.*, *Egbert v. Boule*, 142 S. Ct. 457 (2021) (granting certiorari on the question, "Whether a cause of action exists under *Bivens* for First Amendment retaliation claims"). Federal Defendants do not concede that the *Bivens* cause of action would be available.

OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL - 7

If Plaintiffs believe there is a particular discovery request they have made for line officers' text messages where such production would be relevant to Plaintiffs' injunctive claims against DHS and USMS, they have not identified it, and this Court should not grant a vague motion to compel an unspecified and unbounded category of irrelevant records.

**B.     Plaintiffs are attempting to revive their years-old expedited discovery to circumvent the ongoing discovery process.**

Plaintiffs end their specific requests with a one-paragraph omnibus demand relating to seven separate RFPs served during expedited discovery in July 2020. As with their complaints regarding text messages, Plaintiffs waited over a year before bringing up their complaints regarding these RFPs. Indeed, rather than assert during that time that they were waiting on outstanding discovery, they instead posed many of those same requests during their later discovery in 2021, and Federal Defendants made their responses and objections in the ordinary course. By sitting on their stale complaints for over a year and attempting to raise them now, Plaintiffs would thrust this Court and Federal Defendants back into the extremely expedited discovery that took place under constraining and prejudicial conditions in anticipation of a preliminary injunction. They have effectively raised all these requests again in the course of ordinary discovery and should address the productions and objections made during that process.

For some of these requests, Plaintiffs are moving to compel production of what they have already received or are in the process of receiving. It is unclear why Plaintiffs are complaining about Expedited RFPs 8 and 9, as by Plaintiffs' own admission Federal Defendants have already produced their policies and procedures governing the use of force during expedited discovery in July and August 2020.

For Expedited RFPs 11, 12, and 14, relating variously to policies, procedures, and trainings relating to crowd control, de-escalation, and use of force, and to differentiating among

OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL - 8

participants in mass gatherings, Plaintiffs posed essentially those same requests as part of their August 2021 discovery requests, and Federal Defendants agreed to produce documents in response. *See* Von Bokern Decl., ECF No. 242 at ¶¶ 2–5. Plaintiffs have not yet raised any challenge here to Federal Defendants' response to those requests, which would properly be the subject of further meeting and conferring before bringing that dispute to this Court.

For RFP 15, asking for documents relating to "studies or investigations" regarding whether journalists and legal observers "pose a threat to law enforcement," Plaintiffs repeated that request in August 2021, and Federal Defendants objected on grounds including relevance. Von Bokern Decl. ¶¶ 6–7. Plaintiffs have not shown how studies or investigations into dangers posed by journalists and legal observers would aid Plaintiffs in showing the existence of an alleged policy directing or authorizing constitutional violations. And while Federal Defendants have argued against the preliminary injunction in part by arguing that implementing its special privileges poses risks, Federal Defendants have never argued that a journalist or legal observer can be properly subjected to force on the basis of being a journalist or legal observer, nor that journalists or legal observers pose a threat on the basis of being journalists or legal observers. It is unclear what point such discovery would be trying to prove.

There are numerous deficiencies with Expedited RFP 16, for which Plaintiffs request all documents relating to any investigation relating to "any incidents in which journalists or legal observers have been allegedly assaulted or harmed." It is unlimited in geographic scope, in temporal scope, and in the types of incidents at issue, including whether the alleged perpetrator was even a DHS or USMS officer. And even if the request were limited to investigations of allegations that DHS or USMS officers used excessive force in Portland in July and August 2020, Plaintiffs have not explained how that discovery would help them prove that DHS or

OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL - 9

USMS has a policy directing or authorizing constitutional violations. Their requests appear aimed at litigating discrete past instances of alleged wrongdoing by individual line officers, which is not relevant to Plaintiffs' prospective claims against DHS and USMS. And because Plaintiffs are essentially asking for USMS's and DHS's internal communications and documentation created in response to litigation allegations, the processing of that request and the screening of privileged materials would be extremely burdensome, requiring numerous human resource hours and a great deal of time and energy, and would be unlikely to yield anything of proportional value to Plaintiffs. Plaintiffs posed similar RFPs in their August 2021 discovery requests, and Federal Defendants raised the same burden and relevance objections outlined here. *See* Von Bokern Decl. ¶¶ 8–9. As with all of the requests Plaintiffs identify today to which Federal Defendants have stood on their objections, Plaintiffs have not shown that this request is relevant or proportional to the needs of the case.

**C.      Discovery is especially inappropriate because the case is moot.**

Plaintiffs' motion to compel discovery only highlights that further discovery would be wasteful, in light of the fully briefed motion to dissolve the preliminary injunction on the basis of mootness. *See* Fed. Defs.' Mot. for an Indicative Ruling Dissolving the Prelim. Inj., ECF No. 209 (June 11, 2021). This Court previously examined the record supporting and opposing that motion and ruled in *Wolfe* that the situation in Portland had changed sufficiently to moot requests for injunctive relief arising out of the civil unrest in Portland in the summer of 2020. Continuing discovery in this moot case while that motion is pending will burden the parties, and it is likely to clog this Court's docket with further motions practice, as Plaintiffs have propounded over a hundred discovery requests since Federal Defendants filed their motion. This Court should consider the pending motion to dissolve the preliminary injunction when determining the proper course of discovery in this matter.

OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL - 10

Dated: January 4, 2022                Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

SCOTT ERIK ASPHAUG
Acting United States Attorney

ALEXANDER K. HAAS
Director, Federal Programs Branch

BRIGHAM J. BOWEN
Assistant Director, Federal Programs Branch

*/s/ Jordan L. Von Bokern*
JORDAN L. VON BOKERN (DC 1032962)
KERI L. BERMAN
JASON LYNCH
MICHAEL P. CLENDENEN
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20530
Tel.:      (202) 305-7919
Fax:      (202) 616-8460

*Counsel for Defendants*