**Matthew Borden**, admitted *pro hac vice*
borden@braunhagey.com
**J. Noah Hagey**, admitted *pro hac vice*
hagey@braunhagey.com
**Ellen V. Leonida,** admitted *pro hac vice*
leonida@braunhagey.com
**Sarah Salomon,** admitted pro hac vice
salomon@braunhagey.com
**Athul K. Acharya,** OSB No. 152436
acharya@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, Tenth Floor
San Francisco, CA 94104
Telephone: (415) 599-0210

**Kelly K. Simon,** OSB No. 154213
ksimon@aclu-or.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF OREGON
P.O. Box 40585
Portland, OR 97240
Telephone: (503) 227-6928

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **INDEX NEWSPAPERS LLC**, a Washington limited-liability company, dba **PORTLAND MERCURY**; **DOUG BROWN; BRIAN CONLEY; MATHIEU LEWIS-ROLLAND; KAT MAHONEY; SERGIO OLMOS; JOHN RUDOFF; ALEX MILAN TRACY; TUCK WOODSTOCK; JUSTIN YAU**; and those similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>**CITY OF PORTLAND**, a municipal corporation; **JOHN DOES 1-60**, officers of Portland Police Bureau and other agencies working in concert; **U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. MARSHALS SERVICE; JOHN DOES 60-200**, federal agents,<br><br>        Defendants. | Case No. 3:20-cv-1035-SI<br><br>**PLAINTIFFS' MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT** |

## MOTION

Plaintiffs Index Newspapers LLC ("Portland Mercury"), Doug Brown, Brian Conley, Mathieu Lewis-Rolland, Kat Mahoney, Sergio Olmos, John Rudoff, Alex Milan Tracy, Tuck Woodstock, and Justin Yau, on behalf of themselves and those similarly situated, seek leave to file a third amended complaint. A copy of the Proposed Third Amended Complaint ("Proposed TAC") is attached to this Motion as Exhibit 1, and a copy of the Proposed TAC with changes from the Second Amended Complaint marked in redline is attached as Exhibit 2.

In accordance with Local Rule 7-1(a), Plaintiffs conferred with Defendants about this Motion. The Federal Defendants oppose this Motion, and the City takes no position.

## INTRODUCTION

Plaintiffs respectfully seek leave to amend the operative pleading in this action, the Second Amended Complaint. Leave to amend is freely given, and doing so would be just. Copies of the Proposed Third Amended Complaint, both clean and in redline, are attached hereto as Exhibits 1 and 2.

Plaintiffs are reporters and legal observers who document important events, including protests, in Portland and other cities around the country and the world. During the Black Lives Matter protests in 2020, municipal and federal law enforcement officers attacked Plaintiffs to disperse them at the critical juncture when law enforcement decided to break up the protests. The City's policy enables the police to disperse any reporter who does not embed with the police, giving the police plenary control over who may report on events. The federal police follow a policy that requires them to respect the First Amendment rights of people recording protests, but have interpreted that policy as allowing them to disperse the media, while their own media officers remain to catalog the government's side of the story.

On July 2, 2020, this Court issued a TRO, which ripened into a preliminary injunction, that prohibited law enforcement from attacking or dispersing journalists and legal observers. As a result of the Court's injunction, the free press captured many of the most compelling events from the protests—federal police repeatedly smashing former Navy Captain Christopher David with

PAGE 1 – MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

their batons, federal police teargassing the Wall of Moms, and federal officers shooting Donovan Labella in the head. These events were all captured by Plaintiffs and Plaintiff Class, under the protection of the Court's Injunction.

The operative pleading was filed on July 17, 2020, long before the above events and long before Defendants subjected Plaintiffs and Plaintiff Class to additional violence. Plaintiffs submitted evidence of such conduct to the Court, and now seek to amend their complaint to conform to proof. Plaintiffs also seek to include allegations showing that their claims for injunctive and declarative relief are not moot, and to add claims for damages against individual federal agents under *Bivens v. Six Unknown Federal Agents*.

Defendants have argued that this case, or parts of it are moot, even though an ongoing controversy about what the First Amendment requires still exists, protests still continue (and appear to have increased in light of recent events), and the courthouse itself remains surrounded by fencing—looking more like an ICE detention center than the guardian of our civil liberties. The factors described below—the ongoing conflict over the First Amendment, the absence of any change in City or federal policy, the ongoing possibility of interactions between law enforcement and press, the substantial resources this Court and the Ninth Circuit have spent resolving the dispute to date, and the fact that all these events are capable of repetition yet evading review—all militate against mootness. In any event, such a dispute is not appropriately resolved in response to a motion for leave to amend, and better done on a motion to dismiss. For the reasons below, Plaintiffs respectfully request leave to file their Third Amended Complaint.

## FACTUAL BACKGROUND

Plaintiffs filed their initial complaint in this action on June 28, 2020, and a First Amended Complaint on July 10, 2020. (Dkt. 1, 40.) On July 14, 2020, the Court issued a preliminary injunction against the City of Portland (the "City") preventing it from assaulting and dispersing journalists and legal observers reporting on and observing the government's conduct at protests. (Dkt. 49.) Shortly thereafter, on July 17, 2020, Plaintiffs filed a Second Amended Complaint. (Dkt. 54.)

PAGE 2 – MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

On August 20, 2020, the Court enjoined the Federal Defendants from attacking and dispersing journalists and legal observers. (Dkt. 157.) Yet, as set forth in Plaintiffs' motion for contempt (Dkt. 85) and Plaintiffs' Proposed TAC, the Federal Defendants continued to assault journalists and legal observers in violation of the Court's order. On October 9, 2020, the Ninth Circuit issued a published decision denying the Federal Defendants' motion to stay the preliminary injunction after full consideration on the merits. *Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817 (9th Cir. 2020).

On June 11, 2021, the Federal Defendants sought an indicative ruling from this Court that it would dissolve the preliminary injunction against them. (Dkt. 209.) On January 7, 2022, the Court granted the Federal Defendants' motion for an indicative ruling. (Dkt. 244.) After the Ninth Circuit granted a limited remand, the Court dissolved the preliminary injunction against the Federal Defendants on March 17, 2022. (Dkt. 252.)

## ARGUMENT

Courts should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation marks omitted). A district court may deny leave only on account of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Ni-Q, LLC v. Prolacta Bioscience, Inc.*, 407 F. Supp. 3d 1153, 1160 (D. Or. 2019) (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009)) (alteration omitted). "Courts ordinarily do not consider the validity of a proposed amended pleading in deciding whether to grant leave to amend, and instead defer consideration of challenges to the merits of a proposed amendment until after leave to amend is granted and the amended pleadings are filed." *In re Packaged Seafood Prod. Antitrust Litig.*, 338 F. Supp. 3d 1079, 1106–07 (S.D. Cal. 2018). For the reasons that follow, Plaintiffs' proposed amendment is not futile and no other reason supports denying Plaintiffs leave to amend.

PAGE 3 – MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

I.  **PLAINTIFFS' PROPOSED AMENDMENT IS NOT FUTILE**

An amendment is futile when "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017).[1] Plaintiffs' Proposed TAC states cognizable claims against all defendants. Plaintiffs' claims are not moot, and Plaintiffs have live claims for money damages, including *Bivens* claims against individual federal agents.

A.  **Plaintiffs Have Live Claims for Damages**

In addition to injunctive and declaratory relief, Plaintiffs have stated claims for damages against all defendants except the Federal Agencies. (TAC ¶¶ 358, 371.) "Such claims, if at all plausible, ensure a live controversy." *Mission Prod. Holdings*, 139 S. Ct. at 1660. Plaintiffs' claims for damages are eminently plausible. No party has challenged Plaintiffs' claims for damages against the Municipal Defendants. *See* 42 U.S.C. § 1983; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). And Plaintiffs' damages claims against individual federal agents are cognizable under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1970).

Plaintiffs' claims against individual federal agents do not arise in a new context. *Cf. Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856–57 (2017). Those defendants are ordinary "federal law enforcement officers." *Id.* The availability of *Bivens* claims against them under the Fourth Amendment is a "fixed principle in the law." *Id.* And under governing Ninth Circuit precedent, *Bivens* claims are also available against federal law enforcement officers under the First Amendment. *Boule v. Egbert*, 998 F.3d 370, 389–92 (9th Cir. 2021). Because Plaintiffs' claims against individual federal agents do not arise in a new context, the Court need not analyze whether special factors counsel against granting relief. *Shorter v. United States*, 12 F.4th 366, 372–73 (3d Cir. 2021).

---

[1] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) rejected the "no set of facts" test for motions to dismiss for failure to state a claim. However, even after *Twombly* and *Iqbal*, the Ninth Circuit has continued to apply the "no set of facts" test to motions for leave to amend. *See, e.g., Missouri*, 847 F.3d at 656.

PAGE 4 – MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

In any event, special factors do not counsel against granting relief. Plaintiffs' *Bivens* claims challenge the excessive and retaliatory force used by individual agents on the streets of Portland, not the high-level policies that led to such uses of force. *Cf. Wolfe v. City of Portland*, 2021 WL 4713237, at *12 (D. Or. Oct. 8, 2021). Plaintiffs' claims thus raise no "separation of powers concerns." *Cf. id.* Nor do Plaintiffs' *Bivens* claims invite discovery into "high-ranking and formerly high-ranking government officials." *Cf. id.* Chiefly, the discovery Plaintiffs need for their *Bivens* claims is the identity of the low-ranking officers captured on video violating Plaintiffs' constitutional rights. Nor do Plaintiffs have any alternative remedies. The purpose of *Bivens* is "to deter *the officer*," *F.D.I.C. v. Meyer*, 510 U.S. 471, 485 (1994), and Plaintiffs' claims for injunctive and declaratory relief against the Federal Agencies cannot do that.[2]

Thus, at minimum, Plaintiffs' amendment to add *Bivens* claims against individual federal agents is not futile. For this reason alone, the Court should grant Plaintiffs' motion for leave to amend their complaint.

**B.    Plaintiffs' Claims for Injunctive and Declaratory Relief Are Not Moot**

A party claiming mootness bears a "heavy burden" under a "demanding standard." *Sackett v. E.P.A.*, 8 F.4th 1075, 1082 (9th Cir. 2021), *cert. granted on other grounds*, 142 S. Ct. 896 (2022); *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1660 (2019). The proponent of mootness must show that "it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox v. Serv. Employees Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012)). "The question is not whether the precise relief sought at the time the case was filed is still available, but whether there can be *any* effective relief." *Sackett*, 8 F.4th at 1182–83 (quotation marks omitted) (emphasis added).

The Federal Defendants conflate issues of mootness and standing. (Dkt. 262 at 6–7.) They also argue that the case is moot for the same reasons that the Court dissolved the

---

[2] If the Court holds Plaintiffs' claims for injunctive relief moot, then for Plaintiffs as for Webster Bivens, "it is damages or nothing." *Bivens*, 403 U.S. at 410 (Harlan, J., concurring).

PAGE 5 – MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

preliminary injunction—namely, that circumstances on the ground have changed. (Dk. 262 at 8–13.) But mootness, standing, and changed circumstances are three different doctrines. When the three are correctly disambiguated, Plaintiffs' claims are not moot.

### 1. Mootness Is More Flexible than Standing

Mootness and standing are different doctrines. They allocate different burdens and admit of different exceptions. *Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 1100, 1109 (9th Cir. 2020); *Hartnett v. Pennsylvania State Educ. Ass'n*, 963 F.3d 301, 305 (3d Cir. 2020). A party bringing a claim must show that it has standing "at the time of the commencement of the action." *Index Newspapers LLC v. City of Portland*, 480 F. Supp. 3d 1120, 1139 (D. Or. Aug. 20, 2020). Plaintiffs did so here. *Id.* But once shown, standing need not be "repeatedly litigate[d]." *Id.* n.5. Instead, "the burden shifts" to the party claiming mootness. *Harnett*, 963 F.3d at 305. And, as explained above, it is a heavy burden.

Because the burden shifts, "sometimes a case may not be moot even if the plaintiff would not have standing to bring it today." *Planned Parenthood*, 946 F.3d at 1109. In particular, when a plaintiff seeks injunctive relief, sometimes the prospect that a defendant will engage in (or resume) harmful conduct may be "too speculative to support standing, but not too speculative to overcome mootness." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000).

Mootness is also a more pragmatic doctrine than standing. *Wolfe v. City of Portland*, 2021 WL 4713237, at *6 (D. Or. Oct. 8, 2021). When a case has been litigated for some time, the judicial system incurs "sunk costs" that would make abandoning the case "more wasteful than frugal." *Laidlaw*, 528 U.S. at 191–92 & n.5. To avoid such waste, mootness includes exceptions that standing does not, such as the "even heavier" burden faced by defendants who voluntarily cease their wrongful behavior. *Sackett*, 8 F.4th at 1083; *see Laidlaw*, 528 U.S. at 190. Another exception is for "injuries that are 'capable of repetition, yet evading review.'" *Planned Parenthood*, 946 F.3d at 1109 (quoting *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016)).

PAGE 6 – MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

All of these differences play a role in showing that Plaintiffs' claims are not moot.

### 2. Mootness Is a Higher Burden than Changed Circumstances Sufficient for Dissolution of a Preliminary Injunction

The Federal Defendants claim that the Court's dissolution of the preliminary injunction dictates a finding of mootness with respect to Plaintiffs' claims for permanent injunctive and declaratory relief. (Dkt. 257 3-4.) Not so. A party seeking dissolution of an injunction must show that "a significant change in facts or law warrants revision or dissolution of the injunction." *Karnoski v. Trump*, 926 F.3d 1180, 1198 (9th Cir. 2019). While the burden of showing such changed circumstances lies with the moving party, *id.*, it is not the "heavy" burden that a proponent of mootness must overcome. *Cf. Sackett*, 8 F.4th at 1182. More to the point, even if changed circumstances mean a preliminary injunction is no longer necessary to "preserve the relative positions of the parties until a trial on the merits can be held," *Benisek v. Lamone*, 138 S. Ct. 1942, 1945 (2018) (quotation marks omitted), a plaintiff can still be entitled to a permanent injunction. *See Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 235, n.9 (2d Cir. 1999) ("Although a showing of 'irreparable harm' is required for the imposition of any injunctive relief, preliminary or permanent, … the 'imminent' aspect of the harm is not crucial to granting a permanent injunction."); *see also Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 284 (4th Cir. 2002) (vacating a preliminary injunction in part because "[a] permanent injunction after the trial in January, should the district court conclude an injunction is warranted, would be more than sufficient to protect" the plaintiff's rights).

### 3. Plaintiffs' Claims for a Permanent Injunction and Declaratory Relief Are Not Moot

A plaintiff is entitled to seek prospective injunctive and declaratory relief if "he is realistically threatened by a *repetition* of the violation." *Nordstrom v. Ryan*, 762 F.3d 903, 911 (9th Cir. 2014) (quoting *Armstrong v. Davis*, 275 F.3d 849, 860–61 (9th Cir. 2001)) (alteration omitted). One way to prove that such a threat exists is to show a past injury that is "part of a pattern of officially sanctioned behavior." *Id.* (cleaned up). For example, in *Nordstrom*, the allegation that a prison guard read a letter the plaintiff had written to his lawyer, combined with a

statement from the prison director that staff were "not prohibited" from reading legal mail, was sufficient to allege a realistic threat of repetition. *Id.* at 911–12; *id.* at 912 (Bybee, J., dissenting) (pointing out that only a "single letter" had been read in seventeen years). In other words, one instance of a constitutional violation, combined with official sanction for the violation, suffices to allege a realistic threat of repetition. *See id.* at 911–12; *see also Melendres v. Arpaio*, 695 F.3d 990, 998 (9th Cir. 2012) (although the likelihood of a particular individual plaintiff's suffering a repeated violation was not "high," district court did not err in determining that future injury was "nevertheless 'sufficiently likely' given the Defendants' stated policy and practice").

Here, Plaintiffs have "described in detail dozens of instances" in which the Federal Defendants used force and the threat of force to prevent them from reporting on protests. *Index*, 977 F.3d at 826. Plaintiffs claim—and both this Court and the Ninth Circuit have agreed—that this violates their right of access under the First Amendment. *See id.* at 829–34. But the Federal Defendants have "vigorously defend[ed]" the constitutionality of dispersing press from the scene of protests and have "nowhere suggest[ed]" that if this litigation is resolved in their favor they will refrain from using force to disperse journalists and legal observers. *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007). To the contrary, they have consistently maintained that they have not made "any change in a policy or practice at issue in this lawsuit." (Dkt. 262 at 17.) In other words: dispersing journalists and legal observers from protests had official sanction during the George Floyd protests and it continues to have official sanction. That much, combined with one violation, was sufficient to allege a realistic threat of repetition in *Nordstrom*; that much combined with dozens of violations is more than enough to do the same here.

Nor may the Federal Defendants rely on the supposed end of protests in Portland. As an initial matter, that is simply untrue; Portland has a long history of protests, and Region 10 federal agents respond to dozens of them every year. (Proposed TAC ¶ 307 (FPS responds to "a hundred" protests a year in the region).) More to the point, the Federal Defendants concede, for purposes of their motion to dismiss, that "the Court may accept Plaintiffs' representations that

PAGE 8 – MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

they are reasonably likely to attend future protests, or even to be subject to crowd control measures at such protests." (Dkt. 262 at 18.) Their sole argument is that "the substance of Plaintiffs' claim is that they have been—and will continue to be—targeted for injury *on the basis of* protected speech activities." (Dkt. 262 at 18 (emphasis added).) Such retaliatory animus is the substance of Plaintiffs' retaliation claim. It is irrelevant to Plaintiffs' right-of-access claim. *See Index Newspapers*, 977 F.3d at 829–30 (citing *Press-Ent. Co. v. Superior Court of Cal.*, 478 U.S. 1 (1986)) (articulating the right-of-access test). The Federal Defendants appear to believe that as long as they lack retaliatory animus, they can disperse journalists and legal observers with impunity. (Proposed TAC ¶¶ 5, 299–304.) This Court and the Ninth Circuit have held that they are wrong, and Plaintiffs are entitled to enforcement of those holdings with a court order.

        **4.**        **If the End of Protests Would Make Plaintiffs' Claims Moot, then Plaintiffs' Claims Are Capable of Repetition Yet Evading Review**

If the Court accepts the Federal Defendants' argument that Plaintiffs' claims are moot because protests are less frequent and intense, then Plaintiffs' claims are capable of repetition yet evading review. This exception to mootness has two elements: (1) the complaining party must "reasonably expect to be subject to the same injury again" and (2) the injury must be "of a type inherently shorter than the duration of litigation." *Planned Parenthood*, 946 F.3d at 1109–10. Both elements are easily met here.

First, a "declination to renounce a practice" is enough to satisfy the first element. *Id.* at 1110. The Federal Defendants have repeatedly and consistently declined to renounce the practice of dispersing journalists and legal observers along with protesters. (Dkt. 262 at 17–18; Proposed TAC ¶¶ 299–304.) They even concede that Plaintiffs are "reasonably likely to attend future protests" and to be "subject to crowd control measures at such protests." (Dkt. 262 at 18.) Plaintiff Portland Mercury, in particular, is especially likely to again cover a protest to which federal agents respond. (*See* Proposed TAC ¶¶ 1, 305.) And if the protest gets out of hand, the Federal Defendants have all but promised to disperse the *Mercury*'s reporters—along with other

reporters, legal observers, and everyone else present—with violence, if need be. Plaintiffs can reasonably expect to be subject to the same injury again.[3]

Second, Plaintiffs' injury is inherently shorter than the normal life of litigation. An injury that concludes within two years is short enough to satisfy this element. *Planned Parenthood*, 946 F.3d at 1110 (citing *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016)). The 2020 protests began in late May 2020. If the Court concludes that the protests have now so subsided as to make Plaintiffs' claims moot (absent an exception), then they lasted less than two years. And, as protests go, they were unusually long-lived. Most of the time, a cycle of protests last days or weeks—months at the most. If the end of one cycle of protests makes prospective protest-related claims moot, then plaintiffs will *never* be able to obtain prospective relief preventing the government from engaging in unconstitutional conduct at protests.[4] Because "the same legal issue in this case is likely to recur in future controversies between the same parties in circumstances where the period of [protest activity] is too short to allow full judicial review before [protests are] complete," this Court retains jurisdiction over Plaintiffs' claims. *Kingdomware Techs.*, 579 U.S. at 170; *F.E.C. v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 462–63 (2007).

---

[3] The "classic" example of nonmootness on this ground is the pregnant person, to whom "[p]regnancy often comes more than once." *Roe v. Wade*, 410 U.S. 113, 125 (1973). Plaintiffs, especially the *Portland Mercury*, are at least as likely to cover a protest to which federal agents respond as a pregnant person is to become pregnant again. *Roe* went on to note that "in the general population … [pregnancy] will always be with us." 410 U.S. at 125. So too, surely, with protests in Portland. (*See* Proposed TAC ¶¶ 305–39.)

[4] The Federal Defendants argue that under *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), "[c]laims of misconduct by law-enforcement officers" can never be capable of repetition yet evading review. (Dkt. 262 at 18.) Not so. *Lyons* means only that "standing is not appropriate where a plaintiff can avoid injury by avoiding illegal conduct." *Melendres*, 695 F.3d at 998. Adolph Lyons would have fit within the exception if he had been able to allege that LA police officers routinely or pursuant to policy choked non-resisting individuals. *Lyons*, 461 U.S. at 105–06. That assertion would have been "incredible," *id.*, but here the Federal Defendants freely admit that their policy is to violently disperse press and legal observers when dispersing protesters. The Court need only take them at their word.

PAGE 10 – MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

## II.  NO OTHER REASON SUPPORTS DENYING LEAVE TO AMEND

Plaintiffs have not delayed unduly. Nearly all the allegations added in the Proposed TAC occurred after the SAC was filed. Plaintiffs have offered to amend their complaint to conform to proof since the Federal Defendants' first motion to dismiss in October 2020. (Dkt. 192 at 11-12.) The Federal Defendants cannot claim prejudice when they have been on notice of Plaintiffs' proposed amendments since at least that time. (In truth, the Federal Defendants have been on notice of the substance of Plaintiffs' proposed amendments since the litigation of the preliminary injunction in July 2020, when most of the same facts were attested to in declarations filed in this action.) Furthermore, the parties engaged in prolonged appellate litigation of the injunction, further protracted by the Federal Defendants' suggestion of settlement discussions that ultimately proved fruitless. Thus, there is no reason to deny Plaintiffs' request. And "justice . . . requires" that the Court grant it. Fed. R. Civ. P. 15(a)(2).

## CONCLUSION

For the above reasons, the Court should grant Plaintiffs' motion for leave to amend their complaint.

Dated: May 6, 2022

Respectfully Submitted,

By: /s/ *Matthew Borden*
Matthew Borden, *pro hac vice*
J. Noah Hagey, *pro hac vice*
Ellen V. Leonida, *pro hac vice*
Sarah Salomon, *pro hac vice*
Athul K. Acharya, OSB No. 152436
BRAUNHAGEY & BORDEN LLP

Kelly K. Simon, OSB No. 154213
ACLU FOUNDATION OF OREGON

*Attorneys for Plaintiffs*