**Matthew Borden**, admitted *pro hac vice*
borden@braunhagey.com
**J. Noah Hagey**, admitted *pro hac vice*
hagey@braunhagey.com
**Ellen V. Leonida,** admitted *pro hac vice*
leonida@braunhagey.com
**Sarah Salomon,** admitted pro hac vice
salomon@braunhagey.com
**Athul K. Acharya,** OSB No. 152436
acharya@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, Tenth Floor
San Francisco, CA 94104
Telephone: (415) 599-0210

**Kelly K. Simon,** OSB No. 154213
ksimon@aclu-or.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF OREGON
P.O. Box 40585
Portland, OR 97240
Telephone: (503) 227-6928

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **INDEX NEWSPAPERS LLC**, a Washington limited-liability company, dba **PORTLAND MERCURY**; **DOUG BROWN; BRIAN CONLEY; MATHIEU LEWIS-ROLLAND; KAT MAHONEY; SERGIO OLMOS; JOHN RUDOFF; ALEX MILAN TRACY; TUCK WOODSTOCK; JUSTIN YAU**; and those similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>**CITY OF PORTLAND**, a municipal corporation; **JOHN DOES 1-60**, officers of Portland Police Bureau and other agencies working in concert; **U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. MARSHALS SERVICE; JOHN DOES 60-100**, federal agents,<br><br>        Defendants. | Case No. 3:20-cv-1035-SI<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT** |

# INTRODUCTION

The Court is deeply familiar with this case, and the issue raised in this motion is singular and well-defined. The Court issued an injunction preventing federal agents from dispersing journalists and legal observers when breaking up protests. The Ninth Circuit affirmed the Court's injunction. But when the Black Lives Matter protests in the summer of 2020 abated, the Court dissolved its injunction as no longer necessary. The Federal Defendants now claim that Plaintiffs' challenge to their unconstitutional policy of dispersing journalists who pose no threat to law enforcement is moot because "[t]he once-ubiquitous protests have waned and shifted in focus." (Mot. at 1.) This legal argument is incorrect for several reasons.

First, President Trump may have left office, but the Department of Justice protest policy that he was enforcing remains the same. The Federal Defendants deny wrongdoing and claim that they would not do anything differently in any future protest—a virtual certainty in Portland. When the government inflicts injury under a policy and refuses to change that policy, plaintiffs have an actual, ongoing controversy, and the protections of the Constitution should not vary with vicissitudes of who is in power. Plaintiffs are a newspaper, journalists, and legal observers. They have devoted their careers, and are obligated by the nature of their jobs, to attend protests for the express purpose of documenting them. They will inevitably find themselves, again, in the crosshairs of the Federal Defendants' unlawful policy. As the Supreme Court recently held, where the government does not "suggest[ ] that if this litigation is resolved in its favor it will not reimpose" the same wrongful behavior, and in fact "vigorously defends the legality of [its] approach[,]" a case is not moot. *W. Virginia v. Env't Prot. Agency*, 142 S. Ct. 2587, 2607 (2022) (quotation marks omitted).

Second, protests, by their nature, are short-lived, yet recurring. Were the Federal Defendants correct that the temporary cessation of protests renders their policies unreviewable, they would be free to violently suppress reporting every time a protest occurred. That history should not repeat itself, and the law does not require such a result under the established exception to mootness for claims that are capable of repetition yet evading review.

PAGE 1 – OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

## FACTUAL BACKGROUND

The facts of this case are known to the Court. They are stated in the Court's injunction, reiterated the Ninth Circuit's opinion, *Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817 (9th Cir. 2020), discussed in the fully-briefed and submitted motion for leave to amend (Dkt. 266), and detailed in Plaintiffs' proposed Third Amended Complaint (Dkt. 266-1). All these documents are incorporated by reference, rather than repeated.

## ARGUMENT

As the Court pointed out in its order lifting the stay of briefing, the Federal Defendants' Rule 12(b)(1) motion and opposition to Plaintiffs' motion for leave to amend rise and fall on the same mootness arguments. (Dkt. 272.) A case is not moot if Plaintiffs can establish "a legally cognizable interest in the outcome," which, as discussed further below, Plaintiffs have amply done. *Clark v. City of Lakewood*, 259 F.3d 996, 1011 (9th Cir. 2001), *as amended* (Aug. 15, 2001) (citation omitted). It follows, therefore, that the Federal Defendants cannot establish "futility" with respect to Plaintiffs' motion for leave to file their Third Amended Complaint. *Ni-Q, LLC v. Prolacta Bioscience, Inc.*, 407 F. Supp. 3d 1153, 1160 (D. Or. 2019) (*quoting Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009)) (alteration omitted). The Court should therefore grant Plaintiffs' motion for leave to amend at the same time as it denies the Federal Defendants' Rule 12(b)(1) motion to dismiss. Where relevant, Plaintiffs have included allegations from the Proposed TAC that bolster the facts already in the record.

### I. PLAINTIFFS' CLAIMS FOR A PERMANENT INJUNCTION AND DECLARATORY RELIEF ARE NOT MOOT

The lone issue in this motion is Defendants' argument that the claims have become moot. A party claiming mootness bears a "heavy burden" under a "demanding standard." *Sackett v. E.P.A.*, 8 F.4th 1075, 1082 (9th Cir. 2021), *cert. granted on other grounds*, 142 S. Ct. 896 (2022); *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1660 (2019). The proponent of mootness must show that "it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox v. Serv.*

*Employees Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012)). "The question is not whether the precise relief sought at the time the case was filed is still available, but whether there can be *any* effective relief." *Sackett*, 8 F.4th at 1182–83 (quotation marks omitted) (emphasis added). As Plaintiffs have elsewhere explained, the Federal Defendants conflate the issues of mootness and standing. (Mot. at 6–7.) They also argue that the case is moot for the same reasons that the Court dissolved the preliminary injunction—namely, that circumstances on the ground have changed. (Mot. at 8–13.) But mootness, standing, and changed circumstances are three different doctrines. When the three are correctly disambiguated, Plaintiffs' claims are not moot.

    A.    **The Federal Defendants Misstate the Standard for Mootness**

        1.    **Mootness is more flexible than standing**

Mootness and standing are different doctrines. They allocate different burdens and admit of different exceptions. *Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 1100, 1109 (9th Cir. 2020); *Hartnett v. Pennsylvania State Educ. Ass'n*, 963 F.3d 301, 305 (3d Cir. 2020). A party bringing a claim must show that it has standing "at the time of the commencement of the action." *Index Newspapers LLC v. City of Portland*, 480 F. Supp. 3d 1120, 1139 (D. Or. Aug. 20, 2020). Plaintiffs did so here. *Id.* But once shown, standing need not be "repeatedly litigate[d]." *Id.* n.5. Instead, "the burden shifts" to the party claiming mootness. *Hartnett*, 963 F.3d at 305. And, as explained above, it is a heavy burden.

Because the burden shifts, "sometimes a case may not be moot even if the plaintiff would not have standing to bring it today." *Planned Parenthood*, 946 F.3d at 1109. In particular, when a plaintiff seeks injunctive relief, sometimes the prospect that a defendant will engage in (or resume) harmful conduct may be "too speculative to support standing, but not too speculative to overcome mootness." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000).

Mootness is also a more pragmatic doctrine than standing. *Wolfe v. City of Portland*, 2021 WL 4713237, at *6 (D. Or. Oct. 8, 2021). When a case has been litigated for some time, the judicial system incurs "sunk costs" that would make abandoning the case "more wasteful than

PAGE 3 – OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

frugal." *Laidlaw*, 528 U.S. at 191–92 & n.5. To avoid such waste, mootness includes exceptions that standing does not, such as the "even heavier" burden faced by defendants who voluntarily cease their wrongful behavior. *Sackett*, 8 F.4th at 1083; *see Laidlaw*, 528 U.S. at 190. Another exception is for "injuries that are 'capable of repetition, yet evading review.'" *Planned Parenthood*, 946 F.3d at 1109 (quoting *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016)). All of these differences play a role in showing that Plaintiffs' claims are not moot.

### 2. Mootness is a Higher Burden than Changed Circumstances Sufficient for Dissolution of a Preliminary Injunction

The Federal Defendants suggest that the Court's dissolution of the preliminary injunction dictates a finding of mootness with respect to Plaintiffs' claims for permanent injunctive relief. (Dkt. 262 at 1-2.) Not so. A party seeking dissolution of an injunction must show that "a significant change in facts or law warrants revision or dissolution of the injunction." *Karnoski v. Trump*, 926 F.3d 1180, 1198 (9th Cir. 2019). While the burden of showing such changed circumstances lies with the moving party, *id.*, it is not the "heavy" burden that a proponent of mootness must overcome. *Cf. Sackett*, 8 F.4th at 1182. More to the point, even if changed circumstances mean a preliminary injunction is no longer necessary to "preserve the relative positions of the parties until a trial on the merits can be held," *Benisek v. Lamone*, 138 S. Ct. 1942, 1945 (2018) (quotation marks omitted), a plaintiff can still be entitled to a permanent injunction. *See Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 235, n.9 (2d Cir. 1999) ("Although a showing of 'irreparable harm' is required for the imposition of any injunctive relief, preliminary or permanent, … the 'imminent' aspect of the harm is not crucial to granting a permanent injunction."); *see also Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 284 (4th Cir. 2002) (vacating a preliminary injunction in part because "[a] permanent injunction after the trial in January, should the district court conclude an injunction is warranted, would be more than sufficient to protect" the plaintiff's rights).

PAGE 4 – OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

     **B.     The Federal Defendants' Adherence to an Unconstitutional Policy Creates a Realistic Threat of Repetition of Their Unlawful Use of Force Against Plaintiffs**

     A plaintiff is entitled to seek prospective injunctive and declaratory relief if "he is realistically threatened by a *repetition* of the violation." *Nordstrom v. Ryan*, 762 F.3d 903, 911 (9th Cir. 2014) (quoting *Armstrong v. Davis*, 275 F.3d 849, 860–61 (9th Cir. 2001)) (alteration omitted). One way to prove that such a threat exists is to show a past injury that is "part of a pattern of officially sanctioned behavior." *Id.* (cleaned up). For example, in *Nordstrom*, the allegation that a prison guard read a letter the plaintiff had written to his lawyer, combined with a statement from the prison director that doing so was consistent with prison policy, was sufficient to allege a realistic threat of repetition. *Id.* at 911–12; *id.* at 912 (Bybee, J., dissenting) (pointing out that only a "single letter" had been read in seventeen years). In other words, one instance of a constitutional violation, combined with official sanction for the violation, suffices to allege a realistic threat of repetition. *See id.* at 911–12; *see also Melendres v. Arpaio*, 695 F.3d 990, 998 (9th Cir. 2012) (although the likelihood of a particular individual plaintiff's suffering a repeated violation was not "high," district court did not err in determining that future injury was "nevertheless 'sufficiently likely' given the Defendants' stated policy and practice").

     Here, Plaintiffs have "described in detail dozens of instances" in which the Federal Defendants used force and the threat of force to prevent them from reporting on protests. *Index*, 977 F.3d at 826. Plaintiffs claim—and both this Court and the Ninth Circuit have agreed—that this violates their right of access under the First Amendment. *See id.* at 829–34. But the Federal Defendants have "vigorously defend[ed]" the constitutionality of dispersing press from the scene of protests and have "nowhere suggest[ed]" that if this litigation is resolved in their favor they will refrain from using force to disperse journalists and legal observers. *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 702, 719 (2007). To the contrary, they have consistently maintained that they have not made "any change in a policy or practice at issue in this lawsuit." (Mot. at 17.) In other words: dispersing journalists and legal observers from protests had official sanction during the George Floyd protests and it continues to have official

PAGE 5 – OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

sanction. That much, combined with one violation, was sufficient to allege a realistic threat of repetition in *Nordstrom*; that much combined with dozens of violations is more than enough to do the same here.

In *W. Virginia v. Env't Prot. Agency*, the Supreme Court rejected the same argument the Federal Defendants are now pressing and reached the merits of whether the EPA had the power to promulgate a regulation under the Clean Air Act called the Clean Power Plan. The government argued that the case was mooted by changed circumstances when there had been a change in administration, the Plan was no longer in effect, and "[m]arket forces alone caused the power industry to meet the Plan's nationwide emissions target—through exactly the kinds of generation shifting the Plan contemplated." 142 S. Ct. at 2627-28 (Kagan J., dissenting). "By the time yet another President took office, the Plan had become, as a practical matter, obsolete." *Id.* at 2628. The Court rejected these arguments, explaining that "the Government 'nowhere suggests that if this litigation is resolved in its favor it will not' reimpose emissions limits predicated on generation shifting; indeed, 'it vigorously defends' the legality of such an approach." *Id.* at 2607 (*citing City of Mesquite v. Aladdin's Castle, Inc.*, 455 U. S. 283, 288–289 (1982)). Here too, the Federal Defendants vigorously defend the legality of their First Amendment policy and freely admit that they would respond to future protests (which are sure to occur) by implanting exactly the same policy. In such circumstances, the case is not moot.

        **C.**      **Neither the Purported Decrease in Protests nor the Change in Federal Leadership Dictates a Finding of Mootness**

               **1.**      **The alleged decrease in protests in Portland does not allay the realistic threat that the Federal Defendants will again use unlawful force against Plaintiffs**

The Federal Defendants argue Plaintiffs' claims are moot because "[t]he decline in protest activity and responsive federal law-enforcement activity in Portland since August 2020 has rendered prospective relief unnecessary." (Dkt. 262 at 9.) As an initial matter, that is simply untrue; Portland has a long history of protests, and Region 10 federal agents respond to dozens of them every year. (Proposed TAC ¶ 307 (FPS responds to "a hundred" protests a year in the

PAGE 6 – OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

region).) In fact, the Federal Defendants concede, for purposes of their motion to dismiss, that "the Court may accept Plaintiffs' representations that they are reasonably likely to attend future protests, or even to be subject to crowd control measures at such protests." (Dkt. 262 at 18.) Their sole argument is that there is "no reasonable likelihood" that Plaintiffs will continue to be "targeted for injury *on the basis of* protected speech activities." (*Id.*) However, such retaliatory animus is the substance of Plaintiffs' *retaliation* claim. It is irrelevant to Plaintiffs' right-of-access claim. *See Index Newspapers*, 977 F.3d at 829–30 (citing *Press-Ent. Co. v. Superior Court of Cal.*, 478 U.S. 1 (1986)) (articulating the right-of-access test). The Federal Defendants appear to believe that as long as they lack retaliatory animus, they can disperse journalists and legal observers with impunity. (Proposed TAC ¶¶ 5, 299–304.) That is incorrect: Plaintiffs have a right not to be dispersed for any reason. *See Index Newspapers*, 977 F.3d at 829–30 (citing *Press-Ent. Co. v. Superior Court of Cal.*, 478 U.S. 1 (1986)).[1]

    Moreover, the proposition that the Federal Defendants have "terminated Operation Diligent Valor and has only about a dozen out-of-Region FPS officers deployed to Portland" due to the decrease in protests is untested. (Dkt. 262 at 4.) Plaintiffs have repeatedly sought the identities of specific federal agents who violently dispersed them, and the Federal Defendants have consistently stonewalled discovery. Whether, for instance, the agent who shoved John Rudoff on January 23, 2021 (Proposed TAC ¶ 335) is a Region 10 regular or an ICE agent from out of town is a live question, and one that must be tested by discovery.

    For similar reasons, the Federal Defendants' argument that it is "especially clear that the claims against USMS are moot" fails. (Dkt. 262 at 16.) The Federal Defendants allege that the

---

[1] Defendants also claim that "the change of location for most of the few remaining unlawful gatherings—from the Hatfield Courthouse to an ICE facility elsewhere in the city—also shows that the controversy giving rise to this case has receded." (Dkt. 262 at 11.) This argument is nonsensical—the location of the protests has no bearing on the Federal Defendants' continued implementation of an unconstitutional First Amendment policy to quell protected activities, wherever they arise. The case the Federal Defendants cite in support of this position, *Thomas v. Cnty. of L.A.*, 978 F.2d 504, 509 (9th Cir. 1992), says nothing about mootness, but is instead concerned with the appropriate geographic breadth of a preliminary injunction.

PAGE 7 – OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

claims against USMS are "especially" moot because USMS has not engaged with protestors outside the courthouse in "more than a year" and "has not had out-of-state Deputies" assigned in Portland since November 2020. (*Id.*) Here too, *Nordstrom* is instructive. Nothing in *Nordstrom* hinged on the *guard*: there was just one guard, and one past violation. It was the *policy* that made a repetition of the constitutional violation likely. As the Federal Defendants are at pains to emphasize, they have not changed the underlying policy which they claim permitted them to violently disperse journalists and legal observers during the George Floyd protests. As such, there is nothing to stop them from again calling on USMS to carry out those same unlawful activities.

        **2.**    **The Federal Defendants' claim that a change in leadership moots Plaintiffs' claims is textbook voluntary cessation**

The Federal Defendants next argue that Plaintiffs' claims are moot because "the federal government's approach to protests has changed at the highest levels from summer 2020." (Dkt. 262 at 12.) Defendants cannot have it both ways. They cannot insist both that "[t]he facts that make Plaintiffs' claims moot are not an example of voluntary cessation" (*id.* at 17), and also that they have voluntarily ceased violating journalists' First Amendment rights. The Court should take them at their word: "Federal Defendants have not claimed any change in a policy or practice at issue in this lawsuit[.]" (*Id*. at 17.) That includes their policy of indiscriminately dispersing journalists from the scene of protests at the critical point when law enforcement seeks to break up a protest. Their retaliatory motivation may have changed—for now—but their policy has not.[2]

        **D.**    **None of the Cases Defendants Cite from This District Require a Finding of Mootness**

The Federal Defendants also argue that other decisions issued in this District—which predate the Supreme Court's decision on June 30, 2022 in West Virginia—bind the Court to a

---

[2] Indeed, as widely reported in December 2021, the federal agents set up extensive surveillance operations inside the George Floyd protests, with agents posing as protestors to monitor their activities, following vandalism suspects to guide the local police toward arrests, and secretly videotaping protestors, journalists and legal observers. These surveillance activities continued even after the inauguration of President Biden. (Proposed TAC 296-98.)

finding of mootness here. (Dkt. 262 at 13.) Each of these cases does not apply here. First, the Federal Defendants cite this Court's decision in *Wolfe*, 2021 WL 4713237, at *3, *10. (*Id.*) But *Wolfe* did not consider the repeatable-claims exception to mootness, which Plaintiffs address in Section II below. They next cite this Court's decision dissolving the preliminary injunction. (Dkt. 262 at 10 (citing *Index Newspapers LLC v. City of Portland* ("*Dissolution Op.*"), 2022 WL 72124, at *4, *6 (D. Or. Jan. 7, 2022)).) But that opinion did not address mootness at all, and as detailed in Section I above, mootness involves a different legal standard. *See Dissolution Op.*, 2022 WL 72124, at *6 ("[T]he Court declines to address the Federal Defendants' mootness argument."). Finally, the Federal Defendants cite the Court's opinions in *Wise v. City of Portland* and *Western States Center, Inc. v. DHS*. (Dkt 262 at 14-15.) But the *Wise* plaintiffs were ad hoc protest medics, 539 F. Supp. 3d 1132, 1137 (D. Or. 2021), and the *Western States* plaintiffs were protesting individuals and organizations, 2021 WL 1535376, at *1 (D. Or. Jan. 27, 2021). Such plaintiffs are differently situated from Portland-based newspapers and professional journalists, who must as a matter of institutional mission or as a condition of employment attend and report on protests. They have a vocational obligation to document protests. They have a compelling, and even economic, interest in ensuring that they will not be subjected to violence under the government's unconstitutional policy.[3] Plaintiff Portland Mercury, in particular, is virtually certain to send reporters to protests against the federal government—as certain as a prisoner is to get mail. And the Federal Defendants know this, which is why they conceded that Plaintiffs "are reasonably likely to attend future protests." (Dkt. 262 at 18.) For all of these reasons, these cases do not control the outcome here.

---

[3] In addition, Plaintiffs have invested substantial resources in proving that law enforcement can safely police protests without dispersing journalists and legal observers. Both this Court and the Ninth Circuit have agreed. This factor, too, was not present in the decisions relied on by the Federal Defendants, *Wolfe*, *Wise*, and *Western States*.

PAGE 9 – OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

## II. IF THE END OF PROTESTS WOULD MAKE PLAINTIFFS' CLAIMS MOOT, THEN PLAINTIFFS' CLAIMS ARE CAPABLE OF REPETITION YET EVADING REVIEW

If the Court accepts the Federal Defendants' argument that Plaintiffs' claims are moot because protests are less frequent and intense, then Plaintiffs' claims are capable of repetition yet evading review. This exception to mootness has two elements: (1) the complaining party must "reasonably expect to be subject to the same injury again" and (2) the injury must be "of a type inherently shorter than the duration of litigation." *Planned Parenthood*, 946 F.3d at 1109–10. Both elements are easily met here.

First, a "declination to renounce a practice" is enough to satisfy the first element. *Id.* at 1110. The Federal Defendants have repeatedly and consistently declined to renounce the practice of dispersing journalists and legal observers along with protesters. (Dkt. 262 at 17–18; Proposed TAC ¶¶ 299–304.) They even concede that Plaintiffs are "reasonably likely to attend future protests" and to be "subject to crowd control measures at such protests." (*Id*. at 18.) Plaintiff Portland Mercury, in particular, is especially likely to again cover a protest to which federal agents respond. (*See* Proposed TAC ¶¶ 1, 305.) And if the protest gets out of hand, the Federal Defendants have all but promised to disperse the *Mercury*'s reporters—along with other reporters, legal observers, and everyone else present—with violence, if need be. Plaintiffs can reasonably expect to be subject to the same injury again.[4]

Second, Plaintiffs' injury is inherently shorter than the normal life of litigation. An injury that concludes within two years is short enough to satisfy this element. *Planned Parenthood*, 946 F.3d at 1110 (citing *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016)); *see also Federal Election Com'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 462–63 (2007) (two-

---

[4] The "classic" example of nonmootness on this ground is the pregnant person, to whom "[p]regnancy often comes more than once." *Roe v. Wade*, 410 U.S. 113, 125 (1973), *overruled on other grounds by Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2243 (2022). Plaintiffs, especially the *Portland Mercury*, are at least as likely to cover a protest to which federal agents respond as a pregnant person is to become pregnant again. *Roe* went on to note that "in the general population … [pregnancy] will always be with us." 410 U.S. at 125. So too, surely, with protests in Portland. (*See* Proposed TAC ¶¶ 305–39.)

year election cycle); *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 186 n.9 (1982) (nine-month school year); *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 594 n.6 (1999) (claims were justiciable when plaintiffs were institutionalized several times, for periods lasting multiple years, but apparently never for long enough to obtain merits review). The 2020 protests began in late May 2020. If the Court concludes that the protests have now so subsided as to make Plaintiffs' claims moot (absent an exception), then they lasted less than two years. And, as protests go, they were unusually long-lived. Most of the time, a cycle of protests last days or weeks—months at the most. If the end of one cycle of protests makes prospective protest-related claims moot, then plaintiffs will *never* be able to obtain prospective relief preventing the government from engaging in unconstitutional conduct at protests.[5]

If the injury in *Federal Election Com'n* and *Olmstead* was so short in duration that it was inherently shorter than the duration of litigation, so is Plaintiffs' injury here. Because "the same legal issue in this case is likely to recur in future controversies between the same parties in circumstances where the period of [protest activity] is too short to allow full judicial review before [protests are] complete," this Court retains jurisdiction over Plaintiffs' claims. *Kingdomware Techs.*, 579 U.S. at 170; *Federal Election Com'n*, 551 U.S. at 462–63 (2007).

Plaintiffs' claims thus meet both requirements of the repeatable-claims exception. Plaintiffs have a reasonable expectation of once again being subjected to force at protests by federal agents, and such protests will to a near certainty conclude before protest-related litigation. Plaintiffs' claims are thus capable of repetition yet evading review.

---

[5] Citing *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), the Federal Defendants argue that "[c]laims of misconduct by law-enforcement officers" can never be capable of repetition yet evading review. (Mot. at 18.) However, *Lyons* held only that "standing is not appropriate where a plaintiff can avoid injury by avoiding illegal conduct." *Melendres*, 695 F.3d at 998. Adolph Lyons would have fit within the exception if he had been able to allege that LA police officers routinely or pursuant to policy choked non-resisting individuals. *Lyons*, 461 U.S. at 105–06. That assertion would have been "incredible." *Id*. Here, however, the Federal Defendants freely admit that their unchanged policy is to violently disperse press and legal observers when dispersing protesters. The Court need only take them at their word.

PAGE 11 – OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

### III. THE SUNK COSTS OF THIS LITIGATION SEPARATELY COUNSEL AGAINST A FINDING OF MOOTNESS

Finally, Plaintiffs' damages claims against individual federal agents—which the Federal Agencies do not oppose—counsel against finding Plaintiffs' equitable claims against Federal Agencies moot. The Federal Agencies argue that claims against their agents do not bear on claims against them. (Dkt. 267.) But it is the Federal Agencies who have improperly withheld discovery into the identities of the federal agents.[6] (Dkt. 235.) If the claims against them are dismissed, Plaintiffs will again have to seek that information, this time via subpoena, and the Federal Agencies will again be before this Court resisting enforcement. The resources of both the parties and this Court will be better preserved if Plaintiffs' existing claims against the Federal Agencies are litigated in the ordinary course. So this is a classic case of "sunk costs": "To abandon the case at [this] stage may prove more wasteful than frugal." *Cf. Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 191–92 & n.5 (2000).

### CONCLUSION

For all these reasons, the Court should deny the Federal Defendants' motion to dismiss.

Dated: August 26, 2022                                    Respectfully Submitted,

By: /s/ *Matthew Borden*
Matthew Borden, *pro hac vice*
J. Noah Hagey, *pro hac vice*
Ellen V. Leonida, *pro hac vice*
Sarah Salomon, *pro hac vice*
Athul K. Acharya, OSB No. 152436
BRAUNHAGEY & BORDEN LLP

Kelly K. Simon, OSB No. 154213
ACLU FOUNDATION OF OREGON

*Attorneys for Plaintiffs*

---

[6] In addition, the same lawyers defending the Federal Agencies will also defend the federal agents. Cornelia T.L. Pillard, *Taking Fiction Seriously: The Strange Results of Public Officials' Individual Liability Under* Bivens, 88 Geo. L.J. 65, 78 (1999) (explaining that when individual officers face Bivens claims, "government lawyers (or private lawyers paid by the government) carry out the defense in virtually every case").

PAGE 12 – OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT