IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **INDEX NEWSPAPERS LLC d/b/a PORTLAND MERCURY,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **CITY OF PORTLAND,** *et al.*, <br><br> Defendants. | Case No. 3:20-cv-1035-SI <br><br> **OPINION AND ORDER** |

Matthew Borden, J. Noah Hagey, Ellen V. Leonida, Sarah Saloman, Kory J. DeClark, and Gunnar K. Martz, BRAUNHAGEY & BORDEN LLP, 351 California Street, Tenth Floor, San Francisco, CA 94104; Athul K. Acharya, PUBLIC ACCOUNTABILITY, P.O. Box 14672, Portland, OR 97293; Kelly K. Simon, AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF OREGON, P.O. Box 40585, Portland, OR 97240. Of Attorneys for Plaintiffs.

Denis M. Vannier and Naomi Sheffield, Senior Deputy City Attorneys; and Ryan C. Bailey, Deputy City Attorney, OFFICE OF THE CITY ATTORNEY, 1221 SW Fourth Avenue, Room 430, Portland, OR 97204. Of Attorneys for Defendant City of Portland.

Bryan M. Boynton, Acting Assistant Attorney General, Civil Division; Natalie Wight, United States Attorney for the District of Oregon; Alexander K. Haas, Director, Federal Programs Branch; Brigham J. Bowen, Assistant Director, Federal Programs Branch; Andrew I. Warden, Senior Trial Counsel; Joshua E Gardner, Jason Lynch, and Michael P. Clendenen, Trial Attorneys; U.S. DEPARTMENT OF JUSTICE, CIVIL DIVISION, FEDERAL PROGRAMS BRANCH, 1100 L. Street, NW, Washington, D.C. 20530. Of Attorneys for Defendants U.S. Department of Homeland Security and U.S. Marshals Service.

James L. Buchal, MURPHY & BUCHAL LLP, 3425 SE Yamhill Street, Suite 100, Portland, OR 97214. Of Attorney for *Amicus Curiae* National Police Association.

Christopher J.K. Smith, DAVIS WRIGHT TREMAINE LLP, 1300 SW Fifth Avenue, Suite 2400, Portland, OR 97201; Katie Townsend, Gabe Rottman, and Adam A. Marshall, THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, 1156 15th Street NW, Suite 1020, Washington, D.C. 20005. Of Attorneys for *Amici Curiae* Reporters Committee for Freedom of the Press and 16 News Media Organizations.

**Michael H. Simon, District Judge.**

On August 20, 2020, the Court preliminarily enjoined the U.S. Department of Homeland Security (DHS) and the U.S. Marshals Service (USMS) (collectively, the Federal Defendants) from engaging in particular law enforcement activity with respect to journalists and authorized legal observers while responding to protests in Portland, Oregon. The Court entered the injunction after making specific findings on the use of excessive force against journalists and authorized legal observers by some law enforcement agents of the Federal Defendants while responding to the nightly protests that were then occurring in Portland. The Federal Defendants appealed the preliminary injunction to the Ninth Circuit. On June 11, 2021, the Federal Defendants filed with this Court a motion for indicative ruling on dissolving the preliminary injunction, which the Court construed as containing an underlying motion to dissolve the preliminary injunction. On January 7, 2022, the Court granted the Federal Defendants' motion for an indicative ruling, concluding that the Court would grant the motion to dissolve the preliminary injunction if the Ninth Circuit remanded the case for such purpose. *Index Newspapers LLC v. City of Portland*, 2022 WL 72124, at *10 (D. Or. Jan. 7, 2022) (Indicative Ruling Opinion). On January 27, 2022, the Ninth Circuit remanded the case for the limited purpose of enabling the Court to consider the Federal Defendants' request to dissolve the injunction. On March 17, 2022, the Court dissolved the preliminary injunction, finding that based on significantly changed circumstances, Plaintiffs could no longer show the necessary impending injury to support injunctive relief.

The Federal Defendants originally responded to Plaintiffs' complaint with a motion to dismiss the claims against them for failure to state a claim. The Court had discussed with the parties the efficiency of Plaintiffs amending their complaint to add the facts discovered after the Federal Defendants filed their motion, particularly those facts included Plaintiffs' motion for

preliminary injunction. Given the appeal and other aspects of the case, the litigation focused on the injunction instead of Defendants' motion and Plaintiffs' amendment.

The Federal Defendants filed a new motion to dismiss, arguing that the claims against them are moot. The Federal Defendants rely on the changed circumstances that motivated the Court's dissolution of the preliminary injunction. The Court stayed that motion so Plaintiffs could move to amend the complaint. Plaintiffs moved to amend, adding new factual allegations relating to the Federal Defendants and adding new claims against individual federal officers. The Court then lifted the stay on the Federal Defendants' second motion to dismiss so the Court could consider together Plaintiffs' motion amend and the Federal Defendants' motion to dismiss.

For the reasons that follow, the Court grants the Federal Defendants' motion to dismiss the claims against them as moot and grants in part Plaintiffs' motion amend. The Court allows the amendment to add new alleged facts and claims against individual officers. The Court denies as futile Plaintiffs' request to amend their equitable claims against the Federal Defendants.

## STANDARDS

**A.  Motion to Amend**

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that the "court should freely give leave [to amend a pleading] when justice so requires." A district court should apply Rule 15's "policy of favoring amendments with extreme liberality." *Price v. Kramer*, 200 F.3d 1237, 1250 (9th Cir. 2000) (cleaned up). The purpose of the rule "is 'to facilitate decision on the merits, rather than on the pleadings or technicalities.'" *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015) (quoting *Chudacoff v. Univ. Med. Ctr.*, 649 F.3d 1143, 1152 (9th Cir. 2011)). A district court, however, may, within its discretion, deny a motion to amend "due to 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue

of allowance of the amendment, [and] futility of the amendment.'" *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (alteration in original) (quoting *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008)). "Not all of the factors merit equal weight. As this circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Futility of amendment, however, "can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Generally, however, "[a]bsent prejudice, or a strong showing of any of the remaining [four] factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Capital*, 316 F.3d at 1052 (alterations added, emphasis in original). When weighing the factors, all inferences should be made in favor of granting the motion to amend. *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

Leave to amend may be denied if the proposed amendment is futile or would be subject to immediate dismissal. *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011). An amendment is futile "only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'" *Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018) (quoting *Sweaney v. Ada Cnty*, 119 F.3d 1385, 1393 (9th Cir. 1997)); *see also Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) ("An amendment is futile when 'no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'" (quoting *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988))). If the facts or circumstances possibly could "be a proper subject of relief, [a plaintiff] ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The standard for assessing whether a proposed amendment is futile therefore is the same as the standard imposed under

Rule 12(b)(6) of the Federal Rules of Civil Procedure, *see, e.g.*, *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988), although "viewed through the lens of the requirement that courts freely give leave to amend when justice so requires." *Barber v. Select Rehab., LLC*, 2019 WL 2028519, at *1 (D. Or. May 8, 2019) (quotation marks omitted).

**B. Rule 12(b)(1)**

The U.S. Constitution confers limited authority on the federal courts to hear only active cases or controversies brought by persons who show standing. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1546-47 (2016); *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 89-90 (2013). Standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo*, 136 S. Ct. at 1547. A plaintiff's standing and mootness under Article III of the United States Constitution is a component of subject matter jurisdiction properly challenged under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010); *see also White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Because standing and mootness both pertain to a federal court's subject-matter jurisdiction under Article III, they are properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), not Rule 12(b)(6)."). On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), it is the plaintiff's burden to establish the existence of subject matter jurisdiction. *Chandler*, 598 F.3d at 1122; *see also Kingman Reef Atoll Invs., LLC v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008).

A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction may be either "facial" or "factual." *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack on subject matter jurisdiction is based on the assertion that the allegations in the complaint are insufficient to invoke federal jurisdiction. *Id.* "A jurisdictional challenge is factual where 'the challenger disputes the truth of the allegations that, by

themselves, would otherwise invoke federal jurisdiction.'" *Pride v. Correa*, 719 F.3d 1130, 1133 n.6 (9th Cir. 2013) (quoting *Safe Air for Everyone*, 373 F.3d at 1039). When a defendant factually challenges the plaintiff's assertion of jurisdiction, a court does not presume the truthfulness of the plaintiff's allegations and may consider evidence extrinsic to the complaint. *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012); *Safe Air for Everyone*, 373 F.3d at 1039. A factual challenge "can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency." *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996) (citation and quotation marks omitted).

## C. Mootness

"A case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Clark v. City of Lakewood*, 259 F.3d 996, 1011 (9th Cir. 2001), *as amended* (Aug. 15, 2001) (quotation marks omitted). "The phrase 'legally cognizable interest' is often used to describe Article III's case or controversy requirements when mootness is at issue, while the phrase 'injury in fact' is often used to discuss these requirements when standing is at issue." *Id.* at 1011 n.7. As relevant to the pending motion, in considering the injury requirement and mootness when a plaintiff requests future injunctive relief, courts must consider whether the plaintiff's "future injuries are now too conjectural or hypothetical to satisfy the injury-in-fact requirement allowing [the plaintiff] to pursue injunctive relief." *Id.* at 1012. "A plaintiff may not rely 'on mere conjecture about possible governmental actions' to demonstrate injury, and must instead present 'concrete evidence to substantiate their fears.'" *Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817, 825 (9th Cir. 2020) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 420 (2013).

## BACKGROUND

### A. Procedural History

Plaintiffs filed their original Complaint against the City of Portland (City) on June 28, 2020. On July 14, 2020, Plaintiffs moved for leave to file a Second Amended Complaint (SAC), adding the Federal Defendants to this lawsuit. The Court granted Plaintiffs' motion. On July 17th, Plaintiffs filed their SAC and moved for a temporary restraining order (TRO) against the Federal Defendants, which the City supported soon after. On July 23, 2020, the Court granted Plaintiffs' motion for a TRO against the Federal Defendants. The TRO against the Federal Defendants was set to expire by its own terms on August 6, 2020. On July 28th, Plaintiffs moved for a finding of contempt and imposition of sanctions against the Federal Defendants, alleging several violations of the Court's TRO. On July 30th the Federal Defendants moved for reconsideration of the TRO, requesting that it be dissolved. On July 31st the Court stayed briefing on Plaintiffs' contempt motion. On August 4th, Plaintiffs moved to extend the TRO against the Federal Defendants for another 14 days. On August 6th, after finding good cause, the Court granted Plaintiffs' motion and extended the TRO against the Federal Defendants through August 20, 2020 and denied the Federal Defendants' motion for reconsideration.

On August 20, 2020, the Court granted Plaintiffs' motion for a preliminary injunction against the Federal Defendants and issued a preliminary injunction as follows: (1) preliminarily enjoining the Federal Defendants from "arresting, threatening to arrest, or using physical force directed against any person whom they know or reasonably should know is a Journalist or Legal Observer" absent probable cause the person has committed a crime, and providing that journalists and legal observers could not be subject to arrest for failing to disperse after a dispersal order, but further providing that journalists and legal observers were bound by all other laws and were expressly prohibited from blocking, impeding, or otherwise interfering with the

PAGE 7 – OPINION AND ORDER

lawful activities of the Federal Defendants; (2) preliminary enjoining the Federal Defendants from "seizing any photographic equipment, audio- or video-recording equipment, or press passes from any person whom they know or reasonably should know is a Journalist or Legal Observer," and from "ordering such person to stop photographing, recording, or observing a protest" unless the Federal Defendants were lawfully seizing the person; (3) preliminarily requiring the Federal Defendants to make a list of all property seized when arresting a journalist or legal observer and provide that list to the arrested person, obtain a search warrant if property is needed for evidentiary purposes, and promptly return all property not needed for evidentiary purposes and for which a search warrant was denied; (4) providing a list of indicia to help identify journalists; (5) providing a list of indicia to help identify legal observers; (6) expressly permitting the Federal Defendants to issue lawful crowd dispersal orders and providing that they "shall not be liable for violating this injunction if a Journalist or Legal Observer is incidentally exposed to crowd-control devices after remaining in the area where such devices were deployed after the issuance of an otherwise lawful dispersal order"; and (7) requiring the parties to confer on how the Federal Defendants' officers could most appropriately place on their uniforms unique identifying markers of letters or numbers that could be visible from a distance. *Index Newspapers LLC v. City of Portland*, 480 F. Supp. 3d 1120, 1155-57 (D. Or. Aug. 20, 2020).

On January 7, 2022, upon the motion of the Federal Defendants, the Court issued its Indicative Ruling Opinion that it would dissolve the preliminary injunction if the Ninth Circuit remanded for that purpose. The Court found that significantly changed circumstances altered Plaintiffs' likelihood of success on their claims and rendered their claimed injury too speculative to support prospective equitable relief or irreparable harm. On March 17, 2022, the Court dissolved the preliminary injunction.

**B. New Facts After Plaintiffs' Original Complaint and the Preliminary Injunction**

    **1. Protest Activity and the Federal Defendants' Response**

The Court detailed the changed circumstances from November 1, 2020 to August 11, 2021 in its Indicative Ruling Opinion. *See Index Newspapers*, 2022 WL 72124, at *4-5. The Court will not repeat that discussion, but in sum, the protests have shrunk in number, size, and scope. The protests also generally have moved from a civil rights focus to an anti-government focus, and have changed from centering around the Justice Center and the downtown federal courthouse to the Immigration and Customs Enforcement building in east Portland. From November 1, 2020 to June 11, 2021, there were around two dozen protests in which federal officers responded that were declared unlawful. No protests were declared unlawful from June 11, 2021 to August 11, 2021. By comparison, from May 26, 2020 to October 31, 2020, protests occurred daily that were declared unlawful.

The Federal Protective Services' augmented federal deployment of officers to Portland also had returned to its original deployment state as of August 11, 2021, and the USMS' augmented deployment returned to its original deployment state as of November 9, 2020. USMS stopped responded to protests on July 30, 2020. Other federal law enforcement agencies that were augmenting the federal force in Portland left the city in January and March, 2021. Finally, the executive branch changed its approach. President Joseph R. Biden revoked former President Donald Trump's executive order focused on enforcing laws prohibiting the "desecration of public monuments" and "the vandalism of government property." Exec. Order No. 13933, 85 Fed. Reg. 40,081, 40,083 (June 26, 2020).

The parties supplemented the record with additional declarations and Plaintiffs' proposed Third Amended Complaint. This supplemental information describes the situation from August 2021 to April 2022. The supplemental information more strongly shows that the situation

PAGE 9 – OPINION AND ORDER

has changed. There has been no criminal activity directed at the federal courthouse, the main target of the summer 2020 protests, since March 2021 when its protective fence was temporarily removed and then partially reinstated after two days. *See* Decl. of Acting Marshal Pete Cajigal, ¶ 9 (ECF 258 at 2). Since April 2021 there have been "sporadic" protests requiring the use of force but no protests that have resulted in a declaration of an unlawful assembly on federal property or the arrest of protesters. *See* Decl. of Acting Regional Director of Region 10 Michael D. Nielsel, ¶ 4 (ECF 261 at 1).

### 2. Plaintiffs' Asserted Harm

The Court described Plaintiffs' sporadic asserted harm through May 2021. *See Index Newspapers*, 2022 WL 72124, at *5. Plaintiffs' proposed new allegations show nothing materially different in the last year. Plaintiffs' proposed Third Amended Complaint alleges that "protests have always taken place in Portland. They will continue to occur." ECF 266-1 at 60. Essentially, under Plaintiffs' theory, Portland by its nature as a city engaged in civil activism provides permanent subject matter jurisdiction for equitable relief and the necessary irreparable harm for any claimed harm arising from protests. The Court disagrees.

The mere fact that some protests are likely to occur does not mean that the harm alleged by Plaintiffs' is reasonably likely to occur. Plaintiffs' alleged harm comes from a protest that is declared unlawful and results in the improper dispersing of, or use of excessive force on, journalists or legal observers, particularly if the conduct takes place outside the protection zone of federal property. Portland's history of protests alone cannot demonstrate that type of harm is sufficiently likely to occur.

As for Plaintiffs' specific new allegations, there are none relating to federal officers' alleged conduct in 2022. Plaintiffs' proposed Third Amended Complaint alleges that during a march that occurred on February 20, 2022, a "right-wing gunman" shot and killed one person

PAGE 10 – OPINION AND ORDER

and wounded four others. *Id.* at 61-62. Plaintiffs do not allege any participation by federal law enforcement officers during that during the march.

Similarly, Plaintiffs allege that there was a rally on May 3, 2022 for abortion rights. *Id.* at 61. They do not allege any federal law enforcement presence. The most recent alleged improper conduct by federal officers against journalists or legal observers is from June 3, 2021. Plaintiffs allege that federal officers pepper-sprayed an individual filming protests in her neighborhood. *Id.* at 62.

Although the Federal Defendants dispute many of Plaintiffs' characterizations of the events and the federal officers' conduct described in this Opinion and Order and the Court's Indicative Ruling Opinion, those disputes are not material. Because the Court would grant the Federal Defendants' motion to dismiss even under the facts as described by Plaintiffs and the other declarants, those disputes are not relevant to the Court's decision. The Court need not resolve the disputed facts about the interactions with federal officers on the handful of nights described by Plaintiffs' in their allegations. Plaintiffs' access claims against the federal agencies arise when a protest has been declared an unlawful assembly, which has not occurred in 17 months, providing no conduct to support Plaintiffs' alleged harm or fears of ongoing or future harm. Plaintiffs' retaliation claims arise when they are the target of an improper use of force. Force has only been used sporadically by federal officers in the last 17 months, and no Plaintiff asserts they have been the target of an improper use of force since June 2, 2021.

## DISCUSSION

Plaintiffs move to amend to add new facts and claims against individual federal officers. The Federal Defendants do not oppose this portion of Plaintiffs' motion, and the Court grants this portion of Plaintiffs' motion to amend.

Plaintiffs' proposed Third Amended Complaint continues to allege claims for equitable relief against the current Federal Defendants (the agency defendants) and seeks to add facts specific to those defendants. The Federal Defendants argue that the changed facts about the significantly reduced number, size, and scope of protests in Portland, which have resulted in a lessened federal response involving the use of force, make such an amendment futile because the claims for prospective injunctive relief against them are moot. The Federal Defendants also move to dismiss the claims against them as moot. These arguments are interrelated (futility of amendment is considered under a Rule 12(b)(6) standard), and thus the Court begins with the Federal Defendants' motion to dismiss. Because the Court grants this motion, the Court denies Plaintiffs' motion to amend these claims as futile.

**A. Significantly Changed Circumstances**

The Court first considers whether the Federal Defendants have shown that there are changed circumstances that could have rendered Plaintiffs' claims moot by making Plaintiffs' claimed future injuries too conjectural or hypothetical. *See Clark*, 259 F.3d at 1012. The Court has already found that the circumstances shifted from August 2020 to August 2021. *See Index Newspapers*, 2022 WL 72124, at *6. As discussed above, the supplemental information from August 2021 to April 2022 shows even greater changed circumstances. Plaintiffs do not provide any evidence of alleged excessive use of force or improper dispersing of Plaintiffs by federal officers since June 2021.

After the original complaint and preliminary injunction, the volume, frequency, type, and location of protests in Portland have all changed in significant ways. The number, makeup, and deployment of, as well as response by, federal officers also has changed significantly. Finally, the general attitude of executive and agency officials has changed.

**B. Whether the Circumstances Render Plaintiffs' Claims Moot**

In granting Plaintiffs' motion for a preliminary injunction, the Court described the near-nightly, ongoing, repeated conduct by federal officers that created sufficient potential repeated injury to support preliminary injunctive relief. Those same type of facts would support the necessary injury for continued Article III injury to avoid mootness. Those facts, however, no longer exist.

In dissolving the preliminary injunction, the Court found that the changed circumstances rendered Plaintiffs' claimed injury too speculative to support the necessary injury for prospective injunctive relief and irreparable harm. *See, e.g.*, *Index Newspapers*, 2022 WL 72124, at *8-9. The Court finds the same for mootness purposes.[1]

The current situation in Portland is that there are only intermittent protests and they are of significantly reduced size and scope. Federal officers are not alleged to have declared an unlawful assembly or engaged in excessive force against Plaintiffs in more than 15 months. This absence of potential injury-producing conduct does not show a realistic threat of repeated injury. *See Armstrong v. Davis*, 275 F.3d 849, 860-61 (9th Cir. 2001) (noting that for prospective injunctive relief, a plaintiff "must demonstrate that he is realistically threatened by a *repetition* of the violation" (emphasis in original) (simplified)); *see also Index Newspapers*, 977 F.3d at 825 (noting that for future injunctive relief, the injury must be "certainly impending, or there is a

---

[1] Many of Plaintiffs' arguments focus on standards relating whether the Court can issue any effective remedy. Whether the Court can issue an effective remedy is not the dispositive issue—the issue is whether Plaintiffs can continue to show the requisite injury. Plaintiffs also argue that this case is not moot because it is based on Defendants' voluntary cessation of conduct. The voluntary cessation doctrine does not apply, however, because the changed circumstances are not simply a voluntary cessation of conduct by Defendants in response to the same circumstances. They primarily are changed circumstances outside the control of Defendants, including significantly fewer and more sporadic protests with fewer participants.

PAGE 13 – OPINION AND ORDER

substantial risk the harm will occur" (quoting *In re Zappos.com, Inc.*, 888 F.3d 1020, 1024 (9th Cir. 2018))).

The government has shown that subject matter jurisdiction no longer exists. Plaintiffs no longer allege an injury that is not unduly conjectural or speculative. The injury asserted by Plaintiffs only occurs if there is a protest that is declared an unlawful assembly, that unlawful assembly results in enforcement action by federal officers, that enforcement action results in excessive force or dispersal, and that excessive force or dispersal is directed at or near Plaintiffs. The string of events that must occur is too speculative at this point, when protests are sporadic, of those sporadic protests the ones declared unlawful assemblies are minimal (and nonexistent in the last 17 months), and of those few declared unlawful assemblies in the previous six months there were few that involved alleged excessive force. All these steps must occur despite the currently reduced crowd size and protest circumstances in Portland. This "takes us into the area of speculation and conjecture." *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974). For Plaintiffs' alleged injury to occur requires too speculative of a chain of possibilities. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013); *see also Wolfe v. City of Portland*, 2021 WL 4713237, at *10-11 (D. Or. Oct. 8, 2021) (finding claims for equitable relief against Secretary Mayorkas and Director of USMS Donald Washington, among others, moot based on changed circumstances in Portland).

Plaintiffs rely on the recent Supreme Court decision of *West Virginia v. Environmental Protection Agency*, 142 S. Ct. 2587 (2022), to argue that this case is not moot. In *West Virginia*, the Supreme Court explained the posture of the mootness argument at issue:

> It is the doctrine of *mootness*, not standing, that addresses whether an intervening circumstance has deprived the plaintiff of a personal stake in the outcome of the lawsuit. The distinction matters because the Government, not petitioners, bears the burden to establish that a once-live case has become moot.

PAGE 14 – OPINION AND ORDER

> That burden is heavy where, as here, the only conceivable basis for a finding of mootness in the case is the respondent's voluntary conduct. . . . So the Government's mootness argument boils down to its representation that EPA has no intention of enforcing the Clean Power Plan prior to promulgating a new Section 111(d) rule.
>
> But voluntary cessation does not moot a case unless it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. Here the Government nowhere suggests that if this litigation is resolved in its favor it will not reimpose emissions limits predicated on generation shifting; indeed, it vigorously defends the legality of such an approach. We do not dismiss a case as moot in such circumstances.

*Id.* at 2607 (cleaned up) (emphasis in original) (citations omitted). As discussed above, this case is not about the voluntary cessation doctrine. Additionally, "the only conceivable basis for a finding of mootness" is not the government's voluntary conduct. *Id.*[2] Thus, *West Virginia* does not govern.

Finally, Plaintiffs argue that the exception to mootness for acts that are "capable of repetition, yet evading review" applies here. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). For a controversy to fall within the capable-of-repetition-yet-evading-review exception, two elements must be present: "(1) the duration of the challenged action is too short to be litigated prior to cessation, and (2) there is a 'reasonable expectation' that the same parties will be subjected to the same offending conduct." *Demery v. Arpaio*, 378 F.3d 1020, 1026-27 (9th Cir. 2004) (quoting *Spencer v. Kemna*, 523 U.S. 1, 17-18 (1998)). "The second prong of the 'capable of repetition' exception requires a reasonable expectation or a demonstrated probability that the same controversy will recur involving the

---

[2] There is a component to this case that involves government conduct, including executive conduct and the change in the government's response to protests. The change at the executive level also may well be a component in the reduced number, size, and scope of the protests. Nonetheless, the Court is not relying on the voluntary cessation of conduct, but on the changed circumstances outside the control of the federal government.

same complaining party." *FEC v. Wis. Right to Life*, 551 U.S. 449, 463 (2007) (quotation marks omitted). This exception "applies only in exceptional situations." *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016) (quotation marks omitted).

Plaintiffs contend that because Portland historically has had many protests, and journalists cover protests, it is likely that Plaintiff journalists, particularly *The Portland Mercury*, will encounter the same improper conduct. Plaintiffs acknowledge that the Court previously relied on the unique circumstances of the violent nightly protests and the out-of-state federal officers in concluding Plaintiffs had a likelihood of success on their First Amendment retaliation claim. Plaintiffs, however, argue that there is a reasonable expectation they will be subject to the same conduct giving rise to their First Amendment access claim against the Federal Defendants. The Court disagrees.

Plaintiffs' First Amendment access claims arose because of a unique confluence of circumstances that the Court does not believe has a *reasonable expectation* or *demonstrated probability* of reoccurring. There was a nationwide series of protests in the wake of George Floyd's murder, including in Portland. Portland had sustained nightly protests, for more than 100 days. The then-administration responded to those protests with an unusual show of violence and chose Portland as one of the cities at which to make an example of the federal government's show of force and attitude toward journalists and legal observers. The federal officers moved well beyond federal property and dispersed protesters, journalists, and legal observers from City streets, sidewalks, and parks. The Court does not find it reasonable to conclude that this unique set of circumstance is likely to happen again. The mere fact that a protest might again happen in Portland is not the same thing.

Additionally, the Court does not conclude that any future claims that might arise under similar circumstances as happened in this case would not be subject to judicial review. Plaintiffs

PAGE 16 – OPINION AND ORDER

Case 3:20-cv-01035-SI    Document 275    Filed 09/26/22    Page 17 of 17

were able to obtain both a TRO and a preliminary injunction, which was in place for 19 months. If there were a similar future case, there is no reason why Plaintiffs could not also obtain similar preliminary injunctive relief and more expeditiously seek a trial on the merits to request permanent injunctive relief. The Court does not find these claims to be the those "where the type of injury involved inherently precludes judicial review." *Matter of Bunker Ltd. P'ship*, 820 F.2d 308, 311 (9th Cir. 1987).

## CONCLUSION

The Court GRANTS the Federal Defendants' Motion to Dismiss the Second Amended Complaint as Moot (ECF 262). The Court dismisses as moot Plaintiffs' claims for equitable relief against the Federal Defendants. The Court DENIES AS MOOT the Federal Defendants' earlier Motion to Dismiss (ECF 181). The Court GRANTS IN PART AND DENIES IN PART Plaintiffs' Motion for Leave to File Third Amended Complaint (ECF 266). Plaintiffs may file a Third Amended Complaint alleging claims against individual federal officers but may not include equitable claims against the Federal Defendants because those claims are precluded as futile. Plaintiffs' amended complaint is due within 14 days of this Opinion and Order. The Court DENIES AS MOOT Plaintiffs' Motion to Compel Discovery from the Federal Defendants (ECF 235) and Plaintiffs' Motion for Findings of Contempt and for Sanctions (ECF 85), based on the Court's dismissal of the claims against the Federal Defendants.

**IT IS SO ORDERED**.

DATED this 26th day of September, 2022.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge

PAGE 17 – OPINION AND ORDER