DENIS M. VANNIER, OSB #044406
Senior Deputy City Attorney
Denis.Vannier@portlandoregon.gov
NAOMI SHEFFIELD, OSB #170601
Senior Deputy City Attorney
Naomi.Sheffield@portlandoregon.gov
Portland City Attorney's Office
1221 SW 4th Ave., Rm. 430
Portland, OR  97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089
*Of Attorneys for Defendant City of Portland*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

**INDEX NEWSPAPERS LLC,** a
Washington limited-liability company, dba
**PORTLAND MERCURY; DOUG
BROWN; BRIAN CONLEY; MATHIEU
LEWIS-ROLLAND; KAT MAHONEY;
SERGIO OLMOS; JOHN RUDOFF;
ALEX MILAN TRACY; TUCK
WOODSTOCK; JUSTIN YAU;** and those
similarly situated,

    Plaintiffs,

  v.

**CITY OF PORTLAND,** a municipal
corporation; **JOHN DOES 1-60,** officers of
Portland Police Bureau and other agencies
working in concert; and **JOHN DOES 61-
200,** federal agents,

    Defendants.

Case No. 3:20-cv-1035-SI

**DEFENDANT CITY OF PORTLAND'S
FRCP 12(b)(1) AND 12(b)(6) PARTIAL
MOTION TO DISMISS**

# TABLE OF CONTENTS

L.R. 7-1 CERTIFICATION ................................................................................................ 1

MOTION ........................................................................................................................... 1

MEMORANDUM OF LAW ............................................................................................. 2

I.    Introduction ............................................................................................................ 2

II.   This court should dismiss plaintiffs' requests for prospective relief under
      Federal Rule of Civil Procedure 12(b)(1) because those requests are moot. ...................... 3

      1.    Standards for Justiciability and Mootness in Motions to Dismiss under
            Rule 12(b)(1)...........................................................................................4

      2.    Nightly or near-tightly protest activity in Portland stopped over a year
            and a half ago............................................................................................6

            a.    May 2020 to November 2020 .................................................... 8

            b.    November 2020 to Today .......................................................... 9

      3.    Changes in Oregon law since this case began have materially changed
            the crowd-management tools, methods, and practices available to PPB
            when responding to protests.........................................................................12

      4.    PPB has also materially changed its crowd-management practices since
            the events that gave rise to plaintiffs' claims more than two years ago...............17

      5.    The drastically changed circumstances demonstrate that plaintiffs
            cannot establish any real, non-speculative, threat of future harm.....................20

III.  This Court should dismiss plaintiffs' Third and Fourth Causes of Action
      because they are moot and no longer justiciable. ........................................... 23

IV.   This Court should dismiss plaintiff Index Newspapers, LLC, from this case
      because it has no justiciable claims against the City. ....................................... 25

CONCLUSION................................................................................................................ 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013) ................................................................................................ 4

*Barcik v. Kubiaczyk*,
  895 P.2d 765 (Or. 1995) ................................................................................ 24, 25

*Bayer v. Neiman Marcus Grp., Inc.*,
  861 F.3d 853 (9th Cir. 2017) .................................................................... passim

*Bilbrey by Bilbrey v. Brown*,
  738 F.2d 1462 (9th Cir. 1984) ............................................................................ 5

*Burke v. Barnes*,
  479 U.S. 361 (1987) ............................................................................................ 4

*California Shock Trauma Air Rescue v. State Comp. Ins. Fund*,
  636 F.3d 538 (9th Cir. 2011) ............................................................................ 24

*Chandler v. State Farm Mut. Auto Ins. Co.*,
  598 F.3d 1115 (9th Cir. 2010) ............................................................................ 6

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ............................................................................................ 4

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013*)* ................................................................................... 7, 22

*Cook v. Brown*,
  364 F. Supp. 3d 1184 (D. Or. 2019) .................................................................... 5

*Couey v. Clarno*,
  469 P.3d 790 (Or. App. 2020) .......................................................................... 24

*Eggar v. City of Livingston*,
  40 F.3d 312 (9th Cir. 1994) .............................................................................. 21

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) .............................................................................. 4

*Fiedler v. Clark*,
  714 F.2d 77 (9th Cir.1983) ................................................................................ 24

*Gleason v. Bundage,*
No. 6:17-cv-01415-AA, 2018 WL 2305690 (D. Or. May 18, 2018) ........................................ 5

*Green v. Mansour,*
474 U.S. 64 (1985) ............................................................................................................... 21

*Hunter v. City of Eugene,*
787 P.2d 881 (Or. 1990) ...................................................................................................... 24

*Idaho v. Coeur d'Alene Tribe of Idaho,*
521 U.S. 261 (1997) ............................................................................................................. 22

*Index Newspapers LLC v. City of Portland,*
No. 3:20-CV-1035-SI, 2020 WL 4883017 (D. Or. Aug. 20, 2020) ........................................ 8

*Index Newspapers LLC v. City of Portland,*
No. 3:20-CV-1035-SI, 2022 WL 4466881 (D. Or. Sept. 26, 2022) ................................ passim

*Index Newspapers LLC v. City of Portland,*
No. 3:20-CV-1035-SI, 2022 WL 72124 (D. Or. Jan. 7, 2022) ................................................ 2

*Kingman v. Reef Atoll Invs., LLC v. United States,*
541 F.3d 1189 (9th Cir. 2008) ............................................................................................... 6

*Lewis v. Continental Bank Corp.,*
494 U.S. 472 (1990) ............................................................................................................... 4

*MacNamara v. City of New York,*
275 F.R.D. 125 (S.D.N.Y. 2011) ......................................................................................... 21

*Morongo Band of Mission Indians v. California State Bd. of Equalization,*
858 F.2d 1376 (9th Cir. 1988) ............................................................................................. 24

*Moser v. Frohnmayer,*
845 P.2d 1284 (Or. 1993) .................................................................................................... 24

*Murphy v. Kenops,*
99 F. Supp. 2d 1255 (D. Or. 1999) ...................................................................................... 21

*National Audubon Soc'y, Inc. v. Davis,*
307 F.3d 835 (9th Cir. 2002) ............................................................................................... 21

*Nelsen v. King Cty.,*
895 F.2d 1248 (9th Cir. 1990) .......................................................................................... 4, 5

*O'Shea v. Littleton,*
414 U.S. 488 (1974) ......................................................................................................... 7, 22

*People for the Ethical Treatment of Animals v. Rasmussen*,
 298 F.3d 1198 (10th Cir. 2002) ........................................................................ 21

*S. Cal. Painters & Allied Trades, Dist. Council No. 36 v. Rodin & Co.*,
 558 F.3d 1028 (9th Cir. 2009) ............................................................................. 5

*Safe Air for Everyone v. Meyer*,
 373 F.3d 1035 (9th Cir. 2004) ............................................................................. 6

*Sample v. Johnson*,
 771 F.2d 1335 (9th Cir. 1985) ............................................................................. 5

*Skelly Oil Co. v. Phillips Petroleum Co.*,
 339 U.S. 667 (1950) ............................................................................................ 24

*Spencer v. Kemna*,
 523 U.S. 1 (1998) ................................................................................................. 5

*United States Parole Comm'n v. Geraghty*,
 445 U.S. 388 (1980) ............................................................................................. 4

*Vannatta v. Oregon Gov't Ethics Comm'n*,
 222 P.3d 1077 (Or. 2009) ................................................................................... 24

*White v. Lee*,
 227 F.3d 1214 (9th Cir. 2000) ............................................................................. 6

*Wise v. City of Portland*,
 539 F. Supp. 3d 1132 (D. Or. 2021) ................................................... 6, 11, 12, 23

*Wolfe v. City of Portland*,
 566 F. Supp. 3d 1069 (D. Or. 2021) .......................................................... 6, 8, 22

**Statutory and Constitutional Provisions**

Oregon Constitution, Art. I, §§ 8, 26 ........................................................ 1, 2, 24, 25

ORS 131.675 ........................................................................................... 12, 15

ORS 161.195 to 161.275 ................................................................................. 16

ORS 161.242 ..................................................................................................... 15

ORS 162.247 .............................................................................................. 13, 15

ORS 162.315 ..................................................................................................... 13

ORS 166.015 ..................................................................................................... 14

ORS 181A.355 .................................................................................................................. 13

ORS 181A.708 ......................................................................................................... 8, 15, 16

ORS 181A.708(1)(d) ...................................................................................................... 16

ORS 181A.708(5) ........................................................................................................... 16

ORS 181A.708(6) ........................................................................................................... 16

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ............................................................. 1, 3, 4, 6

Federal Rules of Civil Procedure 12(b)(1) and (6) .......................................................... 1

FRCP 12(b)(1) AND 12(b)(6) ......................................................................................... 1

**Other Authorities**

HB 2928 ....................................................................................................................... 14

HB 4008 .................................................................................................................. 14, 16

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7-1

As required by Local Rule 7-1(a), counsel for defendant City of Portland ("the City") certify that they conferred with plaintiffs' counsel on Friday, November 4, 2022, and made good-faith efforts to resolve the issues presented by this motion but were unable to do so.

## MOTION

The City hereby moves to dismiss plaintiffs' requests for prospective relief against the City—namely, their requests for declaratory and injunctive relief—and the Third and Fourth Causes of Action in plaintiffs' Third Amended Complaint. The City also moves to dismiss plaintiff Index Newspapers, LLC, from this action. Specifically, the City moves this court to:

1. Dismiss plaintiffs' requests for declaratory and injunctive relief, including plaintiffs' Fourth Cause of Action (Declaratory Judgment), under Federal Rule of Civil Procedure 12(b)(1) because those requests are moot, and this court lacks subject-matter jurisdiction over them;

2. Dismiss plaintiffs' Third Cause of Action (Violation of the Oregon Constitution, Art. I, §§ 8, 26) under Federal Rules of Civil Procedure 12(b)(1) and (6) because it fails to state a valid claim for damages against the City, and because any request for prospective declaratory or injunctive relief tied to that claim is moot and no longer justiciable;

3. Dismiss all claims by plaintiff Index Newspapers, LLC, because it seeks only prospective relief in this case, and those requests are moot and no longer justiciable.

The City's motion is based upon the following memorandum of law together with the declarations of Craig Dobson and Michael K. Porter filed herewith, the supporting exhibits, and the other evidence and records on file in this matter.

Page 1 - DEFENDANT CITY OF PORTLAND'S FRCP 12(b)(1) AND 12(b)(6) PARTIAL MOTION TO DISMISS

## MEMORANDUM OF LAW

### I. Introduction

"Plaintiffs filed their original complaint against the City [in this case] on June 28, 2020," at the height of "near nightly protests" in Portland that followed the murder of George Floyd, a Black man, by police in Minneapolis, Minnesota. *Index Newspapers LLC v. City of Portland*, No. 3:20-CV-1035-SI, 2022 WL 72124, at *3, *6 (D. Or. Jan. 7, 2022). Since then, however, "the situation has changed," and any remaining demonstrations in Portland are "sporadic" and "have shrunk in number, size, and scope." *Index Newspapers LLC v. City of Portland*, No. 3:20-CV-1035-SI, 2022 WL 4466881, at *4 (D. Or. Sept. 26, 2022). Indeed, the Portland Police Bureau ("PPB") has not declared any unlawful assembly, civil disturbance, or riot in nearly a year and a half. Furthermore, intervening changes in Oregon law, policy, and other requirements have materially altered how PPB could respond to any future, hypothetical protests. In short, the reality is now far different than it was nearly two and a half years ago when this case was first filed.

Plaintiffs have now submitted a Third Amended Complaint that alleges that the City violated plaintiffs' First and Fourth Amendment rights, as well as their rights under Article I, section 8, of the Oregon Constitution, through PPB's response to the 2020–21 protests in Portland. (*See* Third Am'd Complaint, Dkt. 276, at ¶¶ 358–96). They seek, *inter alia*, prospective relief against the City in the form of "final injunctive relief or corresponding declaratory relief," namely:

- "[A] declaratory judgment that Defendants may not threaten Plaintiffs and Plaintiff Class with arrest, arrest Plaintiffs and Plaintiff Class, or target Plaintiffs and Plaintiff Classes for uses of force, while they are engaged in constitutionally protected acts of speech and expressive conduct during protests, including newsgathering, reporting, and documenting police interaction with protesters."

- "Injunctive relief."

*Id*. at ¶¶ 355, 403. The Fourth Cause of Action in the Third Amended Complaint is, in fact, a

standalone "claim" for "declaratory judgment." *Id*. at ¶¶ 397–403. Plaintiffs' requests for

prospective relief are moot and should be dismissed with prejudice.

## II.    This court should dismiss plaintiffs' requests for prospective relief under Federal Rule of Civil Procedure 12(b)(1) because those requests are moot.

Even if plaintiffs could prove their claims against the City based on the alleged past

actions of the Portland Police Bureau ("PPB")—and they cannot—plaintiffs' requests for

prospective declaratory and injunctive relief are nevertheless moot. Quite simply, there has been

a dramatic change in circumstances since the summer of 2020, when plaintiffs' alleged

constitutional violations occurred and the parties stipulated to a preliminary injunction in this

case. Most notably, mass protests are no longer occurring nightly or even regularly since the

events that initially sparked them first occurred two and a half years ago. On the contrary, what

protests have occurred in the past year and a half have generally been small, sporadic, and

requiring little or no police response—indeed, PPB has not declared *any* protest an unlawful

assembly, civil disturbance, or riot since June 2021. In addition to that dramatic change in protest

activity, intervening changes to Oregon law and other requirements governing uses of force and

the ability to declare a riot or unlawful assembly and disperse crowds, among others, have

resulted in a sea change in how PPB responds to what few protests continue to occur. Given

those changes, there is no "present harm left to enjoin." *Bayer v. Neiman Marcus Grp., Inc.*, 861

F.3d 853, 864 (9th Cir. 2017). This court should therefore dismiss plaintiffs' requests for

prospective relief.

///

**1.      Standards for Justiciability and Mootness in Motions to Dismiss under Rule 12(b)(1)**

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). The Article III "case-or-controversy requirement subsists through all stages of federal judicial proceedings[.]" *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citations and internal quotation marks omitted). Notably, a plaintiff must show justiciability "with respect to each form of relief sought." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011).

Mootness and standing are two sides of the same coin. It is not sufficient "that a dispute was very much alive when suit was filed[.]" *Lewis*, 494 U.S. at 477. Rather, "the interest required of a litigant to attain standing is essentially the same as the interest required to maintain a claim under the mootness doctrine." *Nelsen v. King Cty.*, 895 F.2d 1248, 1250 (9th Cir. 1990); *see also Burke v. Barnes*, 479 U.S. 361, 363 (1987) ("We therefore analyze this case as if respondents had originally sought to litigate the validity of a statute which by its terms had already expired"). In short, "[t]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980).

The requirement of a continued case or controversy is particularly important when plaintiffs seek prospective relief. The analysis for justiciability for both declaratory and injunctive relief is similar: "plaintiffs must demonstrate that a 'credible threat' exists that they

Page 4 - DEFENDANT CITY OF PORTLAND'S FRCP 12(b)(1) AND 12(b)(6) PARTIAL MOTION TO DISMISS

will again be subject to the specific injury for which they seek injunctive or declaratory relief."
*Sample v. Johnson*, 771 F.2d 1335, 1340 (9th Cir. 1985). "In evaluating whether such a credible
threat of future harm exists, 'past exposure to harm is largely irrelevant.'" *Gleason v. Bundage*,
No. 6:17-cv-01415-AA, 2018 WL 2305690, at *3 (D. Or. May 18, 2018) (quoting *Nelsen*, 895
F.2d at 1251 ). And "no matter how important the issue or how likely that a similar action will be
brought, a court is without jurisdiction if there is not a sufficient likelihood of recurrence with
respect to the party now before it." *Nelsen*, 895 F.2d at 1251.

　　　In the context of declaratory relief, "the central question [for mootness] is whether
changes in the circumstances that prevailed at the beginning of litigation have forestalled any
occasion for meaningful relief." *S. Cal. Painters & Allied Trades, Dist. Council No. 36 v. Rodin
& Co.*, 558 F.3d 1028, 1035 (9th Cir. 2009). Declaratory relief remains appropriate only "(1)
when the judgment will serve a useful purpose in clarifying and settling the legal relations in
issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and
controversy giving rise to the proceeding." *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470
(9th Cir. 1984) (citation omitted). Federal courts, "are not in the business of pronouncing that
past actions which have no demonstrable continuing effect were right or wrong." *Spencer v.
Kemna*, 523 U.S. 1, 18 (1998). In short, "[a] declaratory judgment merely adjudicating past
violations of federal law—as opposed to continuing or future violations of federal law—is not an
appropriate exercise of federal jurisdiction." *Bayer*, 861 F.3d at 868; *Cook v. Brown*, 364 F.
Supp. 3d 1184, 1189 (D. Or. 2019) ("The test for mootness in the declaratory judgment context
is whether there is a substantial controversy between parties with adverse legal interests that are
sufficiently immediate to warrant declaratory relief.")

Questions of standing and mootness are "properly raised in a motion to dismiss under Federal rule of Civil Procedure 12(b)(1)[.]" *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Such a motion to dismiss may be "either 'facial' or 'factual.'" *Wolfe v. City of Portland*, 566 F. Supp. 3d 1069, 1078 (D. Or. 2021) (Simon, J.) (citing *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). A facial challenge relies on the allegations in the complaint itself, whereas a factual challenge may rely on "evidence extrinsic to the complaint." *Id.* (citations omitted). When faced with a factual challenge to subject-matter jurisdiction, such as here, this court "does not presume the truthfulness of the plaintiff's allegations"—rather, because justiciability is a constitutional requirement, "[o]n a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), it is the plaintiff's burden to establish the existence of subject matter jurisdiction." *Wolfe*, 566 F. Supp. 3d at 1078 (citing *Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010), and *Kingman v. Reef Atoll Invs., LLC v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008)). Plaintiffs cannot meet that burden here.

2.    *Nightly or near-nightly protest activity in Portland stopped over a year and a half ago.*

As previously recognized by numerous courts—including this one—the absence of large near-nightly protests in Portland for over a year and a half has obviated the need for the kind of ongoing equitable relief that plaintiffs seek against the City in this case. *See Wise v. City of Portland*, 539 F. Supp. 3d 1132, 1147 (D. Or. 2021) ("The frequent protests on which Plaintiffs' equitable claims rely have also abated, further suggesting Plaintiffs' need for equitable relief has waned."); *Wolfe*, 566 F. Supp. 3d at 1085 ("Under the specific facts of this case, considering the significantly reduced number of protests, protest crowd size, police response to protests, and deployment of less lethal munitions and aerosol restraints, the Court finds that Plaintiffs' alleged future injury is now too speculative and conjectural to provide Plaintiffs with the legally

Page 6 - DEFENDANT CITY OF PORTLAND'S FRCP 12(b)(1) AND 12(b)(6) PARTIAL MOTION TO DISMISS

cognizable interest necessary to support ongoing claims for future injunctive relief."); *Index Newspapers LLC*, 2022 WL 4466881, at *6 (dismissing claims against federal defendants as moot because "[t]he current situation in Portland is that there are only intermittent protests and they are of significantly reduced size and scope," no "declared unlawful assemblies" had occurred "in the last 17 months," and any threat of future injury to plaintiffs was therefore "unduly conjectural and speculative.")

As plaintiffs' own Third Amended Complaint shows—and consistently with PPB's observations reflected in the Declaration of Craig Dobson in support of this motion—for a long time now, plaintiffs have not been engaging in any activities of the kind, scale, and frequency that existed in the summer of 2020. Plaintiffs have not been affected by any alleged use of force, arrest, threat of arrest, or, indeed, any action whatsoever from PPB in nearly two years. To the extent that plaintiffs assert that protests of the kind, scale, and frequency that occurred in summer 2020 may (1) happen again sometime in the future, (2) require a crowd-management response from PPB that (3) results in the protests being declared an unlawful assembly, civil disturbance, or riot, that (4) is followed by the use of improper crowd-dispersal methods, and (5) those improper methods are directed at or affect plaintiffs, such assertions are complete speculation, as this court recently noted with respect to the same allegations against federal defendants:

> The injury asserted by Plaintiffs only occurs if there is a protest that is declared an unlawful assembly, that unlawful assembly results in enforcement action by federal officers, that enforcement action results in excessive force or dispersal, and that excessive force or dispersal is directed at or near Plaintiffs. The string of events that must occur is too speculative at this point, when protests are sporadic, of those sporadic protests the ones declared unlawful assemblies are minimal (and nonexistent in the last 17 months), and of those few declared unlawful assemblies in the previous six months there were few that involved alleged excessive force. All these steps must occur despite the currently reduced crowd size and protest circumstances in Portland. This "takes us into the area of speculation and conjecture." *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974). For Plaintiffs' alleged injury to occur requires too speculative of a chain of possibilities. *See Clapper v.*

Page 7 - DEFENDANT CITY OF PORTLAND'S FRCP 12(b)(1) AND 12(b)(6) PARTIAL MOTION TO DISMISS

> *Amnesty Int'l USA*, 568 U.S. 398, 410 (2013*); see also Wolfe v. City of Portland*,
> 2021 WL 4713237, at *10-11 (D. Or. Oct. 8, 2021) (finding claims for equitable
> relief against Secretary Mayorkas and Director of USMS Donald Washington,
> among others, moot based on changed circumstances in Portland).

*Index Newspapers LLC*, 2022 WL 4466881, at *6. The facts bear out that analysis and confirm

the radical change in the kind, scale, and frequency of protests—and PPB's response to them—

over the past year and a half.

a.   <u>May 2020 to November 2020</u>

On May 25, 2020, George Floyd was murdered in Minneapolis, Minnesota by a

Minneapolis police officer. Following George Floyd's death, millions of people across the

country gathered to protest racial injustice and police brutality. Protests in Portland began in late

May 2020. (Declaration of Craig Dobson ("Dobson Dec."), ¶ 4).

From "May 28, 2020, through September 6, 2020, there were nightly protests in

Portland." (Dobson Dec., ¶ 4). Those protests "generally [were] peaceful, particularly during the

day and early evening." *Index Newspapers LLC v. City of Portland*, No. 3:20-CV-1035-SI, 2020

WL 4883017 (D. Or. Aug. 20, 2020) (Simon, J.) "Late at night, however, there [were] incidents

of vandalism, destruction of property, looting, arson, and assault." *Id*. During those times, many

protests resulted in a "crowd-management response" from PPB.[1] (*See id.*, ¶¶4–10, 12 n.1). Those

crowd-management responses included PPB declaring protests unlawful assemblies, civil

disturbances, or riots, followed by the use of force to disperse crowds. *See id*. Between May 28

---

[1] As used in this motion, a crowd-management response is a public security practice in which
police respond to crowds to manage them in order to prevent the outbreak of crowd crushes,
affrays, fights or riots, or in which an assembly, protest, or demonstration is dispersed. (*See*
Dobson Dec. ¶ 12 n. 1) (citing ORS 181A.708).

and June 9, 2020, PPB officers thus deployed tear gas on six nights to disperse protesters.[2] (Dobson Dec. ¶7). And between June 25 and September 28, 2020, PPB similarly "used tear gas on seventeen nights" to disperse crowds. *Id*. at ¶ 8.

The situation gradually changed after early September 2020, however. Nightly protests ended after September 6 and became more sporadic. *See Id*. at ¶¶ 4–5. While "protests continued *almost* every night in Portland" from September 7 through November 15, 2020, those protests were more "varied in the size of crowd" and the type of "police response." *Id*. at ¶ 5 (emphasis added). PPB's final use of "CS gas in connection with a protest" occurred on September 5, 2020. *Id*. at ¶ 9. And "September 28, 2020, was the last time that PPB officers used any tear gas (OC Vapor) in connection with a protest." *Id*. at ¶¶ 9–10. PPB has not used "any type of tear gas, whether CS gas or OC gas," to disperse any protest since that time—more than two years ago today. *Id*. at ¶ 26.

b.    November 2020 to Today

The protest situation in Portland changed even more dramatically around mid-November 2020. "Beginning November 15, 2020, PPB no longer maintained a nightly incident command center because protests had become sporadic." *Id*. at ¶ 6. Indeed, "PPB officers did not engage in any crowd management response to protest activity from November 15, 2020, until December 31, 2020." *Id*. at ¶ 12. Only on "New Year's Eve 2020" did PPB need to respond to a protest and "declare[] an unlawful assembly shortly before midnight in response to projectiles, including mortars, being thrown at the Justice Center." *Id.* at ¶ 13. That situation stood in sharp contrast to

---

[2]  References to tear gas in the present motion refer to hand-tossed or launched canisters containing orthochlorobenzalmalonitrile ("CS") or oleoresin capsicum. (*See* Dobson Dec., ¶ 3). The City does not refer to handheld OC spray as tear gas.

that in summer and fall 2020, where large protests requiring a crowd-management response from PPB occurred on a nightly or near-nightly basis.

From January through March 2021, any remaining protest activity in Portland "was considerably more sporadic and included many fewer participants than during the summer of 2020." *Id*. at ¶ 14. In three months, "PPB had a crowd management response to fewer than ten protests." *Id*. at ¶ 15. While there were "many additional protests" during this time, "the vast majorities [*sic*] of these protests were small and required no police response" at all. *Id*. at ¶ 16.

Similarly, from April through June 2021, and after a slight uptick in April, protest "activity diminished through the remainder of the spring." *Id*. at ¶ 17. During that time, PPB responded to protests approximately 24 times, but in most instances did not declare an unlawful assembly and did not use any force. *See Id*. at ¶ 18 (detailing each of those 24 protests). Indeed, PPB "declared a riot or unlawful assembly" on only eight of those occasions. *Id*. Even then, not every such declaration was followed by forced dispersal. *See e.g., id*. at ¶ 18(g) (stating that, on April 13, 2021, PPB "declared a riot and ordered the area cleared" but "used no force to clear the crowd"); *id*. at ¶ 18(p) (stating that, on April 23, 2021, a "riot was declared at 21:36 hours and the crowd was given direction to proceed North," and that "PPB made two arrests for vandalism, but did not use force.")

Since June 2021, the kind, scale, and frequency of protest activity in Portland has declined even more precipitously. Although "well over one hundred protests" have occurred in Portland during that time, none has required a meaningful police response, and "PPB did not declare any riots, unlawful assemblies, or civil disturbances" at any of them.[3] *Id*. at ¶ 19.

---

[3] On November 19, 2021, following the verdict in the Kyle Rittenhouse trial, a protest occurred at the Justice Center, and the Multnomah County Sheriff declared a riot at approximately 9:00

Page 10 - DEFENDANT CITY OF PORTLAND'S FRCP 12(b)(1) AND 12(b)(6) PARTIAL MOTION TO DISMISS

Between September 2021 through April 2020, any remaining protests involved "smaller crowd sizes, typically below 40 people, with the largest of those events being a peaceful high school student protest of approximately 500 people on September 24, 2021." *Id*. at ¶ 23. "PPB did not engage in any crowd management response to these events." *Id*.

In fact, between July 2021 and today, PPB has deployed a crowd-management response on just one occasion—and this was merely to provide a presence along a marching route. (Dobson Decl., ¶¶ 19, 24). PPB also "has not deployed any type of tear gas, whether CS gas or OC gas at a protest since September 28, 2020." *Id*. at ¶ 26. PPB "has not deployed any kinetic impact projectiles (either FN303 or 40mm) at a protest since June 24, 2021. *Id*. at ¶ 27. PPB "has not deployed any handheld OC spray at a protest since June 24, 2021." *Id*. at ¶ 28. PPB has not deployed any rubber ball distraction devices ("RBDD") at a protest since May 2021" and is "engaged in a process to decommission all remaining inventory of RBDD." *Id*. at ¶ 29. Indeed, "PPB has not declared an unlawful assembly, civil disturbance, or riot in connection with a protest since June 24, 2021"—nearly a year and a half ago. *Id*. at ¶ 30.

Not only has there been a steep decline in protest activity over the past two years, but there is also no evidence of that situation changing in the foreseeable future. As explained above, plaintiffs "must have a reasonably certain basis for needing the prospective relief they seek for such claims to remain live." *Wise*, 539 F. Supp. 3d at 1147 (citation omitted). Because there is no ongoing protest activity in Portland of the kind, scale, and frequency that occurred in summer

---

p.m. after "some protesters and Multnomah County Sheriff's deputies clashed while the deputies tried to secure gate to the building that was malfunctioning." *Id*. at ¶ 23(a). At the request of the Sheriff's Office, "PPB's sound truck was used to announce the riot declaration from the Multnomah County Sheriff's, but PPB officers did not otherwise participate in the response to the declared riot" and "did not use force at this event." *Id*. at ¶¶ 19, 23(a), 30.

Page 11 - DEFENDANT CITY OF PORTLAND'S FRCP 12(b)(1) AND 12(b)(6) PARTIAL MOTION TO DISMISS

2020, and because plaintiffs have not been participating in or covering any such ongoing protest activity in Portland, any concern about a purported risk of future harm is speculative. As this court has noted with respect to federal defendants in this case, "[t]he mere fact that a protest might again happen in Portland" at some time in the future is insufficient to survive a motion to dismiss prospective claims for relief. *Index Newspapers LLC*, 2022 WL 4466881, at *8. Plaintiffs cannot show otherwise.

3.    ***Changes in Oregon law since this case began have materially changed the crowd-management tools, methods, and practices available to PPB when responding to protests.***

In addition to the above, significant changes in Oregon law have materially altered how PPB could respond to future protests of the kind, scale, and frequency that occurred in summer 2020, were such protests to occur. Indeed, taken together, those statutory changes represent a significant reform in the way that police can respond to riots or unlawful assemblies, disperse or arrest persons participating in such assemblies, and use tear gas and other incapacitants for crowd management.

First, effective January 1, 2022, the legislature amended ORS 131.675, the state riot and unlawful-assembly statute, as follows:

> When any five or more persons, ~~whether armed or not~~, are unlawfully ~~or riotously~~ assembled in any county, city, town or village, the sheriff of the county and the deputies of the sheriff, the mayor of the city, town or village, or chief executive officer or officers thereof, ~~and the justice of the peace of the district where the assemblage takes place, or such of them as can forthwith be collected, shall~~ may go among the persons assembled, or as near to them as they can with safety, and command them in the name of the State of Oregon to disperse. If, so commanded, they do not immediately disperse, the officer ~~must~~ may arrest them or cause them to be arrested~~; and they may be punished according to law~~ for any unlawful activity constituting an offense.

*See* 2021 Or. Laws Ch. 250 (new language in blue underline, stricken language in red strikethrough).

Page 12 - DEFENDANT CITY OF PORTLAND'S FRCP 12(b)(1) AND 12(b)(6) PARTIAL MOTION TO DISMISS

Second, the legislature also amended ORS 162.247, which defines the crime of interfering with a police officer, as follows:

(1)    A person commits the crime of interfering with a peace officer or parole and probation officer if the person, knowing that another person is a peace officer or a parole and probation officer as defined in ORS 181A.355.:

   (a)    intentionally or knowingly acts in a manner that prevents, or attempts to prevent, a the peace officer or parole and probation officer from performing the lawful duties of the officer with regards to another person or a criminal investigation.; or

   (b)    Refuses to obey a lawful order by the peace officer or parole and probation officer.

(2)    Interfering with a peace officer or parole and probation officer is a Class A misdemeanor.

(3)    This section does not apply in situations in which the person is engaging in:

   (a)    Activity that would constitute resisting arrest under ORS 162.315; or

   (b)    passive resistance.

(4)    A person may not be arrested or charged under this section if the person is arrested or charged for another offense based on the same conduct.

*See* 2021 Or. Laws Ch. 254 (new language in blue underline, stricken language in red strikethrough). Those amendments became effective on June 11, 2021. *Id*.

In addition, on July 19, 2021, the Governor of Oregon signed into law House Bill ("HB") 2928, which restricted law-enforcement agencies' use of chemical incapacitants, kinetic impact projectiles, and sound devices for crowd control. *See* 2021 Or. Laws Ch. 54. Pertinent provisions included the following:

(2)    (a)    A law enforcement agency may not use a chemical incapacitant for crowd control, except when the following requirements are satisfied:

(A)    The circumstances constitute a riot, as described in ORS 166.015; and

(B)    The officer using the chemical incapacitant reasonably believes, when and to the extent the chemical incapacitant is used, that the use of the chemical incapacitant is necessary to terminate and prevent furtherance of the riotous behavior.

(b)    A law enforcement agency may not use a kinetic impact projectile for crowd control … except against an individual engaged in conduct justifying the use of deadly physical force by a peace officer.

(c)    A law enforcement agency may not use a sound device for crowd control for any purpose other than announcements….

*Id*. at § 2.

Finally, on March 23, 2022, the Governor signed into law HB 4008, which contained an emergency clause and became effective immediately upon passage. *See* 2022 Or. Laws Ch. 40. That bill superseded or amended many of the provisions of HB 2928 quoted above to state the following in pertinent part:

(2)    A law enforcement agency may not use a handheld chemical incapacitant for crowd management.

(3)    A law enforcement agency may not use tear gas for crowd management except when:

(a)    The use is objectively reasonable by law enforcement to:

(A)    Defend against a threat to life or serious bodily injury to any individual, including any peace officer; or

(B)    Bring an objectively dangerous and unlawful situation safely and effectively under control;

(b)    A commanding officer authorizes the use of tear gas;

Page 14 - DEFENDANT CITY OF PORTLAND'S FRCP 12(b)(1) AND 12(b)(6) PARTIAL MOTION TO DISMISS

     (c)    De-escalation techniques or other alternatives to force have been attempted, when reasonable, and failed; and

     (d)    The law enforcement agency has done the following in the following order:

          (A)    Announced the agency's intent to use tear gas;

          (B)    Allowed sufficient time for individuals to evacuate the area; and

          (C)    Announced a second time, immediately before using the tear gas, the agency's intent to use tear gas.

(4)    (a)    A law enforcement agency may not use a kinetic impact projectile for crowd management.

          * * * * *

(5)    This section does not prohibit a law enforcement agency or a peace officer from using a handheld chemical incapacitant or kinetic impact projectile against an individual engaged in conduct otherwise justifying the use of physical force by a peace officer under ORS 161.242.

(6)    A law enforcement agency, when it is safe and reasonable to do so, shall minimize the incidental impact of the agency's use of handheld chemical incapacitants, tear gas and kinetic impact projectiles on bystanders, medical personnel, journalists and other unintended targets.

*Id*. at § 3. The law defines "crowd management" broadly to mean "a public security practice in which crowds are managed to prevent the outbreak of crowd crushes, affrays, fights or riots, or in which an assembly, protest or demonstration is dispersed." *Id*. at § 3(a). Those provisions have since been codified at ORS 181A.708.

Together, those combined changes to Oregon law, which all came into effect between June 2021 and March of this year, have effected a sea change in how police can respond to potential future protests. Notably, the amendments to ORS 131.675 and ORS 162.247 mean that refusing to disperse following a riot or unlawful-assembly declaration *cannot* lead to arrest in

Page 15 - DEFENDANT CITY OF PORTLAND'S FRCP 12(b)(1) AND 12(b)(6) PARTIAL MOTION TO DISMISS

any future protests—unless, that is, the person commits some independent crime other than refusing to disperse. In addition, the provisions of HB 4008 now codified at ORS 181A.708 mean that police *cannot* use any handheld chemical incapacitant or kinetic impact projectile for crowd management,[4] and the use of tear gas is restricted to a narrow set of extreme circumstances. Even then, if those extreme circumstances arise and tear gas is used, any "incidental impact" on "journalists and other unintended targets" must be "minimize[d]." ORS 181A.708(6).

In sum, the above changes in law place significant restrictions on when and how an unlawful assembly can be declared, whom police are allowed to arrest at such declared unlawful assemblies, and which force legally could be used to disperse crowds at any hypothetical future protests. Indeed, the limitations and safeguards created by those changes apply to most of the types of injury complained of by plaintiffs in their Third Amended Complaint and provide plaintiffs with nearly everything they ask this court to declare or enjoin. Put differently, those changes to Oregon law have very nearly eliminated the risk that plaintiffs could be subject to harm similar to that alleged in the Third Amended Complaint, even if hypothetical protests of the kind, scale, and frequency that occurred in summer 2020 were to happen again at some time in the future. Concluding that plaintiffs have sufficiently alleged a likelihood of future injury, therefore, would require an impermissible further stacking of hypothetical upon hypothetical.

---

[4] A "kinetic impact projectile" is defined to include "all nonlethal, less-lethal or semilethal projectiles, including but not limited to rubber and plastic bullets, beanbag rounds, sponge rounds and pellet rounds." ORS 181A.708(1)(d). That prohibition does not bar an officer "from using a handheld chemical incapacitant or kinetic impact projectile against an individual engaged in conduct otherwise justifying the use of physical force under ORS 161.195 to 161.275." ORS 181A.708(5).

Page 16 - DEFENDANT CITY OF PORTLAND'S FRCP 12(b)(1) AND 12(b)(6) PARTIAL MOTION TO DISMISS

4.    ***PPB has also materially changed its crowd-management practices since the events that gave rise to plaintiffs' claims more than two years ago.***

In addition to the above changes in Oregon law and the factual reality surrounding protests in Portland, the City's approach to policing protests has also changed due to retraining, other lawsuits, and institutional changes within PPB. Those fundamental changes make the risk of plaintiffs' experiencing future harm almost nonexistent. Importantly, those changes are not merely a voluntary cessation of PPB's prior practices. Rather, they are driven largely by legal obligations that are, at bottom, beyond the City's control.

First, "PPB has ceased using RBDDs at protest events and is currently undertaking a process to destroy its remaining inventory of these munitions." (Dobson Dec., ¶ 29). PPB also has adjusted how it responds to protests: instead of attempting to manage and respond to a large group of protesters *en masse*, PPB has changed its tactics to focus on identifying and addressing specific individuals at protests who are engaged in crime. *Id*. at ¶¶ 32-33. It now "uses resources to monitor protests and attempt to identify individuals engaged in criminal conduct." *Id*. at ¶ 32(b). When such individuals are identified, PPB "deploys small arrest teams to intervene, respond to, and arrest individuals for whom there is probable cause to believe committed [*sic*] a crime." *Id*. at ¶ 32(c). Together, those new tactics—"including prioritizing targeted arrests of individuals engaged in criminal activity over a crowd management response"—have "limited interaction between PPB officers and protesters and significantly reduced the amount of force deployed." *Id*. at ¶ 33. There can be no dispute that this approach has nearly eliminated the risk of reoccurrence of the harms that plaintiffs complain of in their Third Amended Complaint.

In addition to the above, PPB and the City Attorney's Office conducted "over thirty, 5.5-hour trainings" for PPB personnel in the fall of 2021 to address lessons learned from the 2020 protests. (*See* Declaration of Michael K. Porter ("Porter Dec."), ¶¶ 4–7). Each training "included

Page 17 - DEFENDANT CITY OF PORTLAND'S FRCP 12(b)(1) AND 12(b)(6) PARTIAL MOTION TO DISMISS

a two-hour session where an attorney from the City Attorney's office presented on legal issues related to protest responses both in Portland and elsewhere." *Id*. at ¶ 5. Further training and retraining of PPB officers on responding to protests and other large crowd-management events remains ongoing: "PPB has scheduled an in-service training for all sworn officers for January 2023 related to crowd control." *Id*. at ¶ 10. That training will be conducted over "two days" and include "a two-hour training on legal requirements, including use of force and proper standards for evaluating whether force is reasonable in particular circumstances." *Id*. It also will "include training on the changes in tactical approach to crowd management and the response to protest events." *Id*.

Finally, In connection with legal requirements in *United States v. City of Portland*, No. 3:12-cv-02265-SI, the City will be conducting further review and providing additional training related to crowd-management and crowd-control responses. The City and the United States Department of Justice have agreed to amend the settlement agreement in that case to add additional remedies in response to the United States' notice of noncompliance relating to PPB's response to the 2020 protests, and this court entered an order adopting those amendments on April 29, 2022. *See United States v. City of Portland*, No. 3:12-cv-02265-SI, ECF 276, 290. Most of the amendments amount to legally binding obligations and include:

- Revising Force Data Collection Report and After Action Report forms to capture when and by whom the forms are edited.

- Hiring a qualified outside entity to conduct a critical assessment of the City's response to the 2020 protests and produce a public-facing report. The City will use the report to conduct a training needs assessment. The outside entity is also required to prepare a follow-on review of the City's response to its report.

Page 18 - DEFENDANT CITY OF PORTLAND'S FRCP 12(b)(1) AND 12(b)(6) PARTIAL MOTION TO DISMISS

- Creating a civilian position in PPB to direct all educational aspects of PPB's Training Division.

- Investigating to identify "(a) the PPB Lieutenant(s) and above who trained Rapid Response Team members to believe that they could use force against individuals during crowd control events without meeting the requirements of PPB Directive 1010.00; (b) the PPB incident commander(s) and designee(s) with the rank of Lieutenant or above who directed or authorized any officer to use force in violation of PPB Directive 101000, or who failed to ensure that FDCRs and After Action Reports arising from the crowd control events starting on May 29, 2020, and ending on November 16, 2020, were completed as required by Section 13.1 of PPB Directive 635.10; and (c) the PPB Commanders and above who failed to timely and adequately clarify misunderstandings and misapplications of PPB policy (including this Agreement) governing the use, reporting, and review of force during the crowd control events starting on May 29, 2020 and ending on November 16, 2020." In addition to this investigation, PPB is required to hold accountable members at the rank of Lieutenant and above who are determined to have violated PPB directives.

- Implementing the use of body-worn cameras.

*See id.*, ECF 276-1 at ¶¶ 188–95.

The above requirements, dictated by the legal obligations of the amended settlement agreement, are designed to improve PPB's training around crowd management and ensure greater accountability when officers engage in conduct that violates policy or law. Considering those changes, coupled with the statutory, retraining, and other changes addressed above,

plaintiffs cannot demonstrate a realistic, non-speculative threat of future harm likely to arise from PPB's response to any future, hypothetical protests.

5.    ***The drastically changed circumstances demonstrate that plaintiffs cannot establish any real, non-speculative, threat of future harm.***

"A request for injunctive relief remains live only so long as there is some present harm left to enjoin." *Bayer*, 861 F.3d at 864 (citation omitted). Here, the facts and circumstances that gave rise to plaintiffs' alleged harm have changed so dramatically over the last two years that there is no real, present threat of harm to plaintiffs. On the contrary, those changes make it most unlikely that plaintiffs will ever face a similar threat of harm in the future. Large, regular protests are no longer occurring in Portland. Oregon law has changed, placing significant restrictions on—and in some cases virtually eliminating—PPB's ability to declare unlawful assemblies, disperse crowds, perform arrests, and use force at protests. Those changes in Oregon law, coupled with PPB personnel changes, have required a completely new approach to how PPB engages protesters. Finally, court orders and other binding legal obligations have resulted in a re-evaluation of PPB's response in 2020, retraining of PPB officers to change and improve outcomes going forward, and mandated review and investigation of specific uses of force from 2020.

These efforts have shown results. As plaintiffs' newly filed Third Amended Complaint itself demonstrates on its face, plaintiffs do not—and cannot—allege that they have been subjected by the City or PPB to *any* harm of the type they challenge since April 2021 at the latest. (*See* Third Am'd Complaint, Dkt. 276 at ¶ 168). In other words, plaintiffs do not—and cannot—allege any harm from the City or PPB since the changes discussed above began to come into effect over a year and a half ago.

Plaintiffs' request for prospective relief are therefore moot. While plaintiffs allege that they were subjected in the past to law-enforcement practices they believe were improper in response to exceptional mass protests, they can only speculate as to whether such exceptional protests and law-enforcement practices—many of which are now statutorily restricted—could ever recur. *See Index Newspapers*, 2022 WL 4466881 at *8 ("Plaintiffs' … claims arose because of a unique confluence of circumstances that the Court does not believe has a *reasonable expectation* or *demonstrated probability* of reoccurring. … The mere fact that a protest might again happen in Portland is not the same thing"; emphases in original); *see also, e.g.*, *Eggar v. City of Livingston*, 40 F.3d 312, 317 (9th Cir. 1994); *Murphy v. Kenops*, 99 F. Supp. 2d 1255, 1259-60 (D. Or. 1999); *MacNamara v. City of New York*, 275 F.R.D. 125, 141 (S.D.N.Y. 2011) ("That some Plaintiffs may participate in future demonstrations of unspecified date, duration, or scope does not translate into a real and immediate threat of future injury"; internal quotation marks omitted).

Put differently, plaintiffs cannot "show the conduct complained of in this action presently affects [them] or can reasonably be expected to affect [them] in the future" and, therefore, their claims for prospective relief—including declaratory relief—against the City are not justiciable. *Bayer*, 861 F.3d at 868. Declaratory relief is "retrospective to the extent that it is intertwined with a claim for monetary damages that requires [courts] to declare whether a past constitutional violation occurred. In such a situation, however, declaratory relief is superfluous in light of the damages claim.'" *National Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 847 n.5 (9th Cir. 2002) (quoting *People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1202 n.2 (10th Cir. 2002)). Retrospective declaratory relief is not appropriate when it "would have much the same effect as a full-fledged award of damages." *Green v. Mansour*, 474 U.S. 64, 73 (1985).

Page 21 - DEFENDANT CITY OF PORTLAND'S FRCP 12(b)(1) AND 12(b)(6) PARTIAL MOTION TO DISMISS

*See also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 288 (1997) (stating "[a] federal court cannot award retrospective [declaratory] relief, designed to remedy past violations of federal law") (internal citations omitted).

Plaintiffs' request for injunctive relief in this case has become moot because "subsequent events have made clear the conduct alleged as the basis for the requested relief 'could not reasonably be expected to recur.'" *Bayer*, 861 F.3d at 864. In applying that standard to the potential risk of harm from future protests in Portland in a related case, this court has similarly concluded that such harm is too speculative:

> Plaintiffs desire to attend any social justice protests that might occur in Portland in the future. For their alleged *injury* to occur, however, requires "attempting to anticipate whether and when these" Plaintiffs might attend a social justice protest that is then declared an unlawful assembly. *See O'Shea*[ *v. Littleton*], 414 U.S. [488,] 497[ (1974)]. Then if such a protest is declared an unlawful assembly, it must result in a law enforcement response that includes the alleged excessive force, failure to accommodate, or other misconduct. Finally, the Plaintiffs must be harmed by that alleged misconduct. All of these steps must occur despite the currently reduced crowd size and protest circumstances in Portland. This "takes us into the area of speculation and conjecture." *Id.* For Plaintiffs' alleged injury to occur requires too speculative of a chain of possibilities. *See Clapper*[ *v. Amnesty Int'l*], 568 U.S. [398,] 410 [(2013)].

*Wolfe*, 2021 WL 4713237, at *10.

Here, as discussed above, the relevant circumstances that prompted PPB's response to the 2020 protests no longer exist. Protests in Portland occur sporadically, but rarely result in any police response. Moreover, what police response does still occasionally occur has adapted dramatically to ensure compliance with changes in state law.

This is not to discount the possibility that, sometime in the future, some large protest might occur that involves widespread criminal activity requiring a law-enforcement response. But "[t]he mere fact that some protests are likely to occur does not mean that the harm alleged by

Plaintiffs' is reasonably likely to occur." *Index Newspapers LLC*, 2022 WL 4466881, *5.

Moreover, the proper way to address any hypothetical future harm is through judicial action at

*that* time. *Id*. (noting that plaintiffs' claims being moot does not mean "that any future claims

that might arise under similar circumstances as happened in this case would not be subject to

judicial review.") If such similar harm, though unlikely, were to occur in the future, plaintiffs

could seek retrospective relief or prompt equitable relief, just as was done in this case. *Id*. ("If

there were a similar future case, there is no reason why Plaintiffs could not also obtain similar

preliminary injunctive relief and more expeditiously seek a trial on the merits to request

permanent injunctive relief.") But the mere possibility that some harm might come to these

plaintiffs sometime in the future if a complex concatenation of hypothetical circumstances were

to occur does not justify a sweeping, permanent injunction and indefinite oversight by this court.

In short, "Plaintiffs cannot rely on the general assumption that protests of some kind will

continue to occur in Portland to save their own claims from mootness." *Wise*, 539 F. Supp. 3d at

1148.

 For the above reasons, this court should hold that plaintiffs' requests for prospective

relief—namely, their requests for declaratory and injunctive relief—are moot and dismiss them

with prejudice.

**III.**   **This Court should dismiss plaintiffs' Third and Fourth Causes of Action because they are moot and no longer justiciable.**

 Relatedly, this court should dismiss plaintiffs' Third and Fourth Causes of Action

because they are moot and no longer justiciable. First, as noted previously, plaintiffs' Fourth

Cause of Action purports to be a standalone "claim" for "declaratory judgment." (*See* Third

Am'd Complaint, Dkt. 276 at ¶¶ 397–403). But aside from a declaratory judgment being a form

of relief, not a claim,[5] plaintiffs' requests for prospective relief, including declaratory relief, are moot for the reasons explained previously. This court should therefore dismiss plaintiffs' Fourth Cause of Action with prejudice.

Plaintiffs' Third Cause of Action—a claim for alleged violations of Article I, section 8, of the Oregon Constitution—should be dismissed for similar reasons. This is because, as the Oregon Supreme Court has held, there is no private right of action for damages against a municipality or its employees under Article I, section 8, of the Oregon Constitution. *Hunter v. City of Eugene*, 787 P.2d 881, 884 (Or. 1990) ("We therefore hold that persons whose rights under Article I, section 8, of the Oregon Constitution are violated by a municipality or its employes [*sic*] may not bring an action for damages against the municipality or its employes [*sic*] directly under the constitution"); *Barcik v. Kubiaczyk*, 895 P.2d 765, 775 (Or. 1995) ("a person has no claim at all directly under Article I, section 8, to support any form of damages whatsoever.") Oregon courts have allowed plaintiffs to seek prospective declaratory or injunctive relief for violations of Article I, section 8, of the Oregon Constitution. *See, e.g., Moser v. Frohnmayer*, 845 P.2d 1284, 1285 (Or. 1993) (action seeking declaratory judgment that statute violates Article I, section 8); *Couey v. Clarno*, 469 P.3d 790, 792 (Or. App. 2020) (same); *Vannatta v. Oregon Gov't Ethics Comm'n*, 222 P.3d 1077, 1077 (Or. 2009), *overruled on other grounds by In re Validation Proceeding to Determine the Regularity & Legality of Multnomah*

---

[5] As the Ninth Circuit has explained "[t]he Declaratory Judgment Act does not provide an independent jurisdictional basis for suits in federal court." *Fiedler v. Clark,* 714 F.2d 77, 79 (9th Cir.1983) (citing *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671–74 (1950)); *see also California Shock Trauma Air Rescue v. State Comp. Ins. Fund,* 636 F.3d 538, 543 (9th Cir. 2011). Rather, "[t]he Declaratory Judgment Act merely creates a remedy in cases otherwise within the court's jurisdiction[.]" *Morongo Band of Mission Indians v. California State Bd. of Equalization,* 858 F.2d 1376, 1382–83 (9th Cir. 1988).

*Cnty. Home Rule Charter Section 11.60 & Implementing Ordinance No. 1243 Regulating Campaign Fin. & Disclosure*, 462 P.3d 706 (Or. 2020) (suit for "declaratory and injunctive relief" for alleged violations of Article I, section 8); *Cf. Barcik*, 895 P.2d 765, 774 (1995) (dismissing as moot requests for declaratory and injunctive relief for alleged violations of Article I, section 8, because plaintiffs alleged that their "rights were violated in the past" but claimed no present or continuing injury). Here, however, plaintiffs' requests for prospective declaratory and injunctive relief are moot for the reasons explained previously.

In sum, there is not private right of action for damages under Article I, Section 8, of the Oregon Constitution, and plaintiffs' requests for declaratory and injunctive relief as to any claimed violation of Article I, section 8, are moot. Plaintiffs' Third Cause of Action therefore is no longer justiciable and should be dismissed with prejudice.

**IV.    This Court should dismiss plaintiff Index Newspapers, LLC, from this case because it has no justiciable claims against the City.**

Finally, this court also should dismiss plaintiff Index Newspapers, LLC, ("Index") from this case because it has no remaining justiciable claims against the City. This is because Index does not allege or seek any damages for any past injury to itself in this case. (*See generally* Third Am'd Complaint, Dkt. 276). Rather, Index seeks only prospective relief—a request that, as explained above, is moot. For that reason, this court should dismiss Index as a plaintiff in this case.

## CONCLUSION

For the foregoing reasons, this court should dismiss with prejudice plaintiffs' requests for declaratory and injunctive relief, along with plaintiffs' Third and Fourth Causes of Action, as moot and no longer justiciable. In addition, this court should dismiss plaintiff Index Newspapers,

LLC, as a plaintiff in this action because its requests for prospective relief are moot and no longer justiciable.

DATED: November 8, 2022

Respectfully submitted,

By: */s/ Denis Vannier*
DENIS VANNIER, OSB #044406
Senior Deputy City Attorney
*Of Attorneys for Defendant City of Portland*