DENIS M. VANNIER, OSB #044406
Senior Deputy City Attorney
Denis.Vannier@portlandoregon.gov
NAOMI SHEFFIELD, OSB #170601
Senior Deputy City Attorney
Naomi.Sheffield@portlandoregon.gov
Portland City Attorney's Office
1221 SW 4th Ave., Rm. 430
Portland, OR  97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089
*Of Attorneys for Defendant City of Portland*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **INDEX NEWSPAPERS LLC,** a Washington limited-liability company, dba **PORTLAND MERCURY; DOUG BROWN; BRIAN CONLEY; MATHIEU LEWIS-ROLLAND; KAT MAHONEY; SERGIO OLMOS; JOHN RUDOFF; ALEX MILAN TRACY; TUCK WOODSTOCK; JUSTIN YAU;** and those similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>**CITY OF PORTLAND,** a municipal corporation; **JOHN DOES 1-60,** officers of Portland Police Bureau and other agencies working in concert; and **JOHN DOES 61-200,** federal agents,<br><br>        Defendants. | Case No. 3:20-cv-1035-SI<br><br><br>**DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF FRCP 12(b)(1) AND 12(b)(6) PARTIAL MOTION TO DISMISS** |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 1

I.     Plaintiffs misstate the standards for mootness and the jurisdictional requirements for seeking declaratory and injunctive relief. ............................................................ 1

     1.     Mootness pertains to this court's subject-matter jurisdiction under Article III of the United States Constitution, which must exist with respect to each form of relief sought. .......................................................................................... 2

     2.     To be entitled to injunctive or declaratory relief, a plaintiff must face an actual and imminent threat of injury that is not contingent and has not evaporated or dissipated............................................................................................... 4

     3.     Plaintiffs' arguments in response misconstrue the applicable caselaw. ................. 6

II.     Plaintiffs' factual assertions are largely incorrect and are, in any case, irrelevant to showing any actual risk of future injury warranting prospective relief. ........................... 14

     1.     Plaintiffs' arguments ignore how state law actually works and the City's actual policies regarding large public-order events........................................................ 15

     2.     Plaintiffs' arguments ignore the facts, which show that plaintiffs do not face an actual nonspeculative risk of future injury warranting prospective relief . .......... 20

III.     Plaintiffs' claims do not fall within the "capable of repetition, yet evading review" exception to the mootness doctrine................................................................................... 23

CONCLUSION................................................................................................................ 27

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Adarand Constructors, Inc. v. Slater*,
528 U.S. 216 (2000).................................................................................... 4, 8, 9

*AFMS LLC v. United Parcel Serv. Co*,
105 F. Supp. 3d 1061 (C.D. Cal. 2015) ................................................................. 21

*Alvarez v. Smith*,
558 U.S. 87 (2009)........................................................................................... 23, 24

*Arc of Washington State, Inc. v. Braddock*,
129 F. App'x 348 (9th Cir. 2005) ....................................................................... 7, 8

*Bayer v. Neiman Marcus Grp., Inc.*,
861 F.3d 853 (9th Cir. 2017) ........................................................................... passim

*Biodiversity Legal Found. v. Badgley*,
309 F.3d 1166 (9th Cir. 2002) ............................................................................. 4, 5

*Brach v. Newsom*,
38 F.4th 6 (9th Cir. 2022) .................................................................................. 8, 26

*Burrell v. Burrell*,
415 F.3d 994 (9th Cir. 2005) .................................................................................. 3

*Campbell-Ewald Co. v. Gomez*,
577 U.S. 153 (2016)............................................................................................. 7, 9

*Cantrell v. City of Long Beach*,
241 F.3d 674 (2001)................................................................................................ 23

*Chafin v. Chafin*,
568 U.S. 165 (2013)............................................................................................. 9, 10

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
598 F.3d 1115 (9th Cir. 2010) ................................................................................. 2

*Chicago & Grand Trunk R. Co. v. Wellman*,
143 U.S. 339 (1892)................................................................................................. 3

*City & Cnty. of San Francisco v. Garland*,
42 F.4th 1078 (9th Cir. 2022) ..................................................................... 3, 11, 13

*City News & Novelty, Inc. v. City of Waukesha*,
    531 U.S. 278 (2001) .................................................................................... 8

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) .................................................................................... 1, 4

*Ctr. For Biological Diversity v. Lohn*,
    511 F.3d 960 (9th Cir. 2007) .................................................................... 4

*Culinary Workers Union, Loc. 226 v. Del Papa*,
    200 F.3d 614 (9th Cir. 1999) .................................................................... 1

*Edmo v. Corizon*,
    935 F.3d 757 (9th Cir. 2019) .................................................................... 13

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) .................................................................... 2, 10

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs (TOC), Inc.*,
    528 U.S. 167 (2000) .................................................................................. 4, 8, 9

*Gator.com Corp. v. L.L. bean, Inc.*,
    398 F.3d 1125 (9th Cir. 2005) .................................................................. 5

*Genesis Healthcare Corp. v. Symczyk*,
    569 U.S. 66 (2013) .................................................................................... 26

*Green v. Mansour*,
    474 U.S. 64 (1985) .................................................................................... 6

*Headwaters, Inc. v. Bureau of Land Mgmt.*,
    893 F.2d 1012 (9th Cir.1989) ................................................................... 5

*Jensen v. Quality Loan Serv. Corp.*,
    702 F. Supp. 2d 1183 (E.D. Cal. 2010)................................................... 24

*Karuk Tribe of California v. U.S. Forest Serv.*,
    681 F.3d 1006 (9th Cir. 2012) .................................................................. 7, 10

*Kokkonen v. Guardian Life Ins. Co.*,
    511 U.S. 375 (1994).................................................................................. 2

*Lee v. Schmidt-Wenzel*,
    766 F.2d 1387 (9th Cir. 1985) .................................................................. 23

*Lee v. State of Oregon*,
    107 F.3d 1382 (9th Cir.1997) ................................................................... 1

*Leite v. Crane Co.*,
  749 F.3d 1117 (9th Cir. 2014) ............................................................. 21

*Lewis v. Continental Bank Corp.*,
  494 U.S. 472 (1991) ............................................................................ 1

*Lozano v. AT & T Wireless Servs., Inc.*,
  504 F.3d 718 (9th Cir. 2007) ............................................................. 8, 9

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ............................................................................ 2

*McQuillion v. Schwarzenegger*,
  369 F.3d 1091 (9th Cir. 2004) .......................................................... 5, 6

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007) ........................................................................ 8, 9

*Meland v. Weber*,
  2 F.4th 838 (9th Cir. 2021) .......................................................... 1, 7, 10

*Memphis Light, Gas & Water Div. v. Craft*,
  436 U.S. 1 (1978) ....................................................................... 24, 25

*Monell v. Dep't of Soc. Servs. of City of New York*,
  436 U.S. 658 (1978) ......................................................................... 11

*Morongo Band of Mission Indians v. California State Bd. Of Equalization*,
  858 F.2d 1376 (9th Cir. 1988) ........................................................... 24

*Murphy v. Hunt*,
  455 U.S. 478 (1982) ......................................................................... 26

*Native Vill. of Nuiqsut v. Bureau of Land Mgmt.*,
  9 F.4th 1201 (9th Cir. 2021) .................................................... 8, 23, 26

*Native Village of Noatak v. Blatchford*,
  38 F.3d 1505 (9th Cir. 1994) .............................................................. 2

*Nat'l Audubon Soc'y, Inc. v. Davis*,
  307 F.3d 835 (9th Cir. 2002) ......................................................... 6, 11

*O'Neal v. City of Seattle*,
  66 F.3d 1064 (9th Cir. 1995) .............................................................. 4

*People for the Ethical Treatment of Animals v. Rasmussen*,
  298 F.3d 1198 (10th Cir.2002) ........................................................... 6

*Pitts v. Terrible Herbst, Inc.*,
   653 F.3d 1081 (9th Cir. 2011) ................................................................. 12

*Planned Parenthood v. U.S. Dep't of Health & Hum. Servs.*,
   946 F.3d 1100 (9th 2020) ....................................................................... 9

*Preiser v. Newkirk*,
   422 U.S. 395 (1975) ................................................................................ 6

*Protectmarriage.com-Yes on 8 v. Bowen*,
   752 F.3d 827 (9th Cir. 2014) ................................................................. 25

*Qwest Corp. v. City of Portland*,
   275 Or. App. 874, 365 P.3d 1157 (2015) ............................................... 17

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ................................................................. 3

*Seven Words LLC v. Network Solutions*,
   260 F.3d 1089 (9th Cir. 2001) ............................................................... 13

*Spencer v. Kemna*,
   523 U.S. 1 (1998) .................................................................................... 6

*St. Clair v. City of Chico*,
   880 F.2d 199 (9th Cir. 1989) .............................................................. 3, 4

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ................................................................................ 4

*Super Tire Eng'g Co. v. McCorkle*,
   416 U.S. 115 (1974) ................................................................................ 5

*Taylor v. Resolution Trust Corp.*,
   56 F.3d 1497 (D.C. Cir. 1995) ................................................................. 4

*Thomas v. Anchorage Equal Rts. Comm'n*,
   220 F.3d 1134 (9th Cir. 2000) ............................................................ 1, 2

*Timbisha Shoshone Tribe v. U.S. Dep't of Interior*,
   824 F.3d 807 (9th Cir. 2016) ................................................................... 5

*U.S. Parole Comm'n v. Geraghty*,
   445 U.S. 388 (1980) ................................................................................ 2

*United States v. Washington*,
   142 S. Ct. 1976 (2022) .......................................................................... 10

*Valley Forge Christian College v. Americans United for Separation of Church and State Inc.*,
  454 U.S. 464 (1982)..................................................................................................... 3

*Vegas Diamond Props., LLC v. F.D.I.C.*,
  669 F.3d 933 (9th Cir. 2012) ............................................................................... 23, 24

*W. Virginia v. EPA*,
  142 S. Ct. 2587 (2022)............................................................................................. 3, 4

*West v. Sec'y of Dep't of Transp.*,
  206 F.3d 920 (9th Cir. 2000) ...................................................................................... 7

*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000) .................................................................................... 3

*Wildwest Inst. V. Kurth*,
  855 F.3d 995 (2017)................................................................................................... 23

*Wolfson v. Brammer*,
  616 F.3d 1045 (9th Cir. 2010) .................................................................................... 2

**Statutes**

28 U.S.C. § 2201 ............................................................................................................. 5

ORS 131.635 .................................................................................................................. 18

ORS 131.675 .................................................................................................................. 18

ORS 162.247 .................................................................................................................. 18

ORS 181A.708(3) ........................................................................................................... 19

ORS 181A.708(4) ........................................................................................................... 19

ORS 181A.708(6) ........................................................................................................... 19

**Rules**

Fed. R. Civ. P. 12(b)(1)................................................................................................... 3

# INTRODUCTION

Plaintiffs have filed a response to the City's partial motion to dismiss in this case. (Dkt. 285). But that response largely misstates the standards for mootness and the jurisdictional requirements for seeking injunctive and declaratory relief, and relies on legal and factual assertions that are either incorrect or irrelevant to showing an actual risk of future injury warranting such relief. Plaintiffs admit that the conduct complained of in this action is no longer ongoing, and they do not point to any evidence to show that it is likely to happen again in the future. Plaintiffs' alternative argument—that their claims are "capable of repetition, yet evading review"—fails on both prongs of the relevant test. As explained below and in the City's motion to dismiss, plaintiffs' requests for prospective relief are moot and must be dismissed even if their underlying claims otherwise remain live and justiciable. Plaintiffs cannot show otherwise.

# ARGUMENT

## I.    Plaintiffs misstate the standards for mootness and the jurisdictional requirements for seeking declaratory and injunctive relief.

The existence of subject-matter jurisdiction is a constitutional requirement of Article III of the United States Constitution. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). The Constitution requires "an actual case or controversy" that "subsists through all stages of federal judicial proceedings," and those "justiciability limitations are reflected in the doctrines of standing, mootness, and ripeness." *Id*.; *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1991); *Culinary Workers Union, Loc. 226 v. Del Papa*, 200 F.3d 614, 617 (9th Cir. 1999) (citing *Lee v. State of Oregon*, 107 F.3d 1382, 1387 (9th Cir.1997)). As the Ninth Circuit recently summarized, "[r]ipeness and mootness both consider whether a plaintiff meets [the] standing requirement at all points during the litigation[.]" *Meland v. Weber*, 2 F.4th 838, 848 (9th

Cir. 2021) (citing *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc)); *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)). In particular, "[t]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Gerathy*, 455 U.S. at 397. Indeed, "[b]ecause the power of a federal court to decide the merits of a claim ordinarily evaporates whenever a prerequisite to standing disappears, the doctrine of mootness has been described as 'the doctrine of standing set in a time frame.'" *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 862 (9th Cir. 2017) (quoting *Native Village of Noatak v. Blatchford*, 38 F.3d 1505, 1509 (9th Cir. 1994) (quoting *Geraght*y, 445 U.S. at 397)).

1. ***Mootness pertains to this court's subject-matter jurisdiction under Article III of the United States Constitution, which must exist with respect to each form of relief sought.***

Because subject-matter jurisdiction is a constitutional requirement, "[t]he party asserting federal subject matter jurisdiction bears the burden of proving its existence." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) (*citing Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)); *see also Wolfson v. Brammer*, 616 F.3d 1045, 1053 (9th Cir. 2010) ("We lack jurisdiction to decide moot questions or abstract propositions, because moot questions require no answer" (internal quotation marks and citation omitted)). Moreover, a plaintiff must do so "with respect to each form of relief sought." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). This is because a monetary claim for a past injury may remain justiciable even though related requests for declaratory and injunctive relief have become moot. *See, e.g., Bayer*, 861 F.3d 853 (concluding that ADA claim for nominal damages against former employer remained live, but that requests for declaratory and injunctive relief were moot). This is not uncommon, as

Article III places significant limits on federal courts' ability to issue prospective relief:

> The judicial power of the United States, both provided and limited by Article III of the Constitution, "is not an unconditioned authority to determine the constitutionality of legislative or executive acts." *Valley Forge Christian College v. Americans United for Separation of Church and State Inc.*, 454 U.S. 464, 471 (1982). Rather, "[t]he power to declare the rights of individuals and to measure the authority of governments ... 'is legitimate only in the last resort, and as a necessity in the determination of real, earnest and vital controversy.'"

*Lee*, 107 F.3d at 1387 (quoting *Chicago & Grand Trunk R. Co. v. Wellman*, 143 U.S. 339, 345 (1892); brackets and ellipsis in original). Indeed, as the Ninth Circuit reaffirmed just months ago, because mootness is part of the constitutional analysis for subject-matter jurisdiction, courts have "an independent obligation to consider … mootness *sua sponte*," regardless of the parties' failure to do so. *City & Cnty. of San Francisco v. Garland*, 42 F.4th 1078, 1084 (9th Cir. 2022) (citing *Burrell v. Burrell*, 415 F.3d 994, 997 (9th Cir. 2005) ("Neither party argues that the case is moot. However, this court has an independent obligation to consider mootness *sua sponte*.")).

Because mootness pertains to a court's subject-matter jurisdiction, Rule 12(b)(1) is the appropriate mechanism for a defendant to assert that a requested form of relief is moot. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White*, 227 F.3d at 1242). A facial attack is based on the assertion that the allegations in the complaint are "insufficient on their face to invoke federal jurisdiction." *Id*. "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*.

The moving party in a factual attack under Rule 12(b)(1) bears the burden of producing affidavits or other evidence to dispute the allegations in the complaint. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989); *see also W. Virginia v. EPA*, 142 S. Ct. 2587, 2607 (2022)

Page 3 - DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF FRCP 12(b)(1) AND 12(b)(6) PARTIAL MOTION TO DISMISS

(holding that moving party "bears the burden to establish that a once-live case has become moot") (citing *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs (TOC), Inc.*, 528 U.S. 167, 189 (2000); *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000)). The burden then shifts to the non-moving party to present evidence showing that the court does, in fact, possess subject-matter jurisdiction. *See St. Clair*, 880 F.2d at 201 (holding as much as to factual attack on ripeness); *Bayer*, 861 F.3d at 865, 868 (concluding that requests for injunctive and declaratory relief were moot when plaintiff "produced no evidence to show the conduct complained of in this action presently affects him or can reasonably be expected to affect him in the future").

**2.      To be entitled to injunctive or declaratory relief, a plaintiff must face an actual and imminent threat of injury that is not contingent and has not evaporated or dissipated.**

As the Ninth Circuit recently reiterated, "[a] request for injunctive relief remains live only so long as there is some present harm left to enjoin." *Bayer*, 861 F.3d at 864 (quoting *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1502 (D.C. Cir. 1995)). In other words, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief," and a request for an injunction is moot "if unaccompanied by any continuing, present adverse effects." *Id.* (quoting *O'Neal v. City of Seattle*, 66 F.3d 1064, 1066 (9th Cir. 1995) (quoting *Lyons*, 461 U.S. at 102)). Any threatened future injury must be "actual and imminent, not conjectural or hypothetical[.]" *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

The mootness analysis for declaratory relief is substantially similar. When "both injunctive and declaratory relief are sought but the request for injunctive relief is rendered moot," the request for declaratory relief remains justiciable only "if declaratory relief would nevertheless provide meaningful relief." *Ctr. For Biological Diversity v. Lohn*, 511 F.3d 960,

963–64 (9th Cir. 2007) (citing *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1175 (9th Cir. 2002)). The Ninth Circuit has emphasized the "inexorable command of the United States Constitution that the federal courts confine themselves to deciding actual cases and controversies," and that "[t]he limitations that Article III imposes upon federal court jurisdiction are not relaxed in the declaratory judgment context." *Gator.com Corp. v. L.L. bean, Inc.*, 398 F.3d 1125, 1128–29 (9th Cir. 2005). On the contrary, "the case-or-controversy requirement is incorporated into the language of the very statute that authorizes federal courts to issue declaratory relief."[1] *Id*. at 1129.

For that reason, "where a plaintiff seeks declaratory relief, … the test for mootness is whether the facts alleged"—or, in a factual challenge, the evidence produced by the parties—"under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Timbisha Shoshone Tribe v. U.S. Dep't of Interior*, 824 F.3d 807, 812 (9th Cir. 2016) (quoting *Gator.com*, 398 F.3d at 1129). "A case or controversy exists justifying declaratory relief only when 'the challenged government activity ... is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties." *Headwaters, Inc. v. Bureau of Land Mgmt.*, 893 F.2d 1012, 1015 (9th Cir.1989) (quoting *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122 (1974)). Failing this, a "judicial pronouncement … would be an

---

[1] That statute provides in pertinent part that, "*[i]n a case of actual controversy within its jurisdiction*, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration[.]" *Gator.com*, 398 F.3d at 1129 (quoting 28 U.S.C. § 2201; emphasis in original).

advisory opinion, which the Constitution prohibits." *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1095 (9th Cir. 2004) (citing U.S. Const. art. III; *Preiser v. Newkirk*, 422 U.S. 395 (1975)).

Relatedly, there is no such thing as retrospective declaratory relief. *Bayer*, 861 F.3d at 868 (holding that "a declaratory judgment merely adjudicating past violations of federal law—as opposed to continuing or future violations of federal law—is not an appropriate exercise of federal jurisdiction." (citing *Green v. Mansour*, 474 U.S. 64, 74 (1985)). First, under Article III, a "judicial pronouncement" without an ongoing live controversy "would be an advisory opinion, which the Constitution prohibits." *McQuillion*, 369 F.3d at 1095. Moreover—and independently of that jurisdictional problem—"considered in conjunction with [a] claim for damages, declaratory judgment without the possibility of prospective effect would be superfluous." *Id*. In such a circumstance, "declaratory and injunctive relief are no longer of any use," even though the plaintiff's "claims for damages are not moot[.]" *Id*. at 1095–96 (citations omitted); *see also Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 847 n. 5 (9th Cir. 2002) (declaratory relief is "retrospective to the extent that it is intertwined with a claim for monetary damages that requires [courts] to declare whether a past constitutional violation occurred. In such a situation, however, declaratory relief is superfluous in light of the damages claim." (quoting *People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1202 n. 2 (10th Cir.2002)). In short, federal courts "are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong." *Spencer v. Kemna*, 523 U.S. 1, 18 (1998).

**3.   *Plaintiffs' arguments in response misconstrue the applicable caselaw.***

In an attempt to avoid dismissal of their requests for injunctive and declaratory relief, plaintiffs argue that the City cites cases that "are no longer good law," and that the Ninth Circuit has since adopted a new approach to mootness. (Dkt. 285 at 11). Relying on an 18-year-old

Page 6 - DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF FRCP 12(b)(1) AND 12(b)(6) PARTIAL MOTION TO DISMISS

unpublished memorandum opinion, plaintiffs argue that the standards for mootness are relaxed in the case of so-called "recrudescent injuries," which plaintiff assert are the kind of injuries they face here. *See id*. at 12 (citing *Arc of Washington State, Inc. v. Braddock*, 129 F. App'x 348, 350 (9th Cir. 2005)). In such cases, plaintiffs argue, "[a] case becomes moot … *only* when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Id*. at 13 (quoting *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016); emphasis, brackets, and ellipsis in plaintiffs' response). Moreover, plaintiffs contend that the moving party in such cases bears a "heavy" burden to overcome this court's "'virtually unflagging' obligation to hear and decide the case." *Id*. at 15 (quoting *Karuk Tribe of California v. U.S. Forest Serv.*, 681 F.3d 1006, 1017 (9th Cir. 2012); *West v. Sec'y of Dep't of Transp.*, 206 F.3d 920, 924 (9th Cir. 2000); *Meland*, 2 F.4th at 849 n.7). Finally, plaintiffs assert that this court remains empowered to grant "retrospective declaratory relief" even if their requests for prospective relief are moot. *Id*. at 28-29. Plaintiffs are incorrect and cannot avoid the dismissal of their requests for injunctive and declaratory relief through selective quotations and interpretive sleight-of-hand.

First, contrary to plaintiffs' assertion, the Ninth Circuit has not overruled its prior caselaw on mootness or otherwise held that the Article III standards for justiciability are relaxed in the case of so-called "recrudescent injuries." None of the cases plaintiffs cite support that assertion—quite the opposite.

*Arc of Washington*—which appears to be the only decision plaintiffs cite to use the word "recrudescent," and only to describe problems that were "voluntarily ameliorated for a time" by the defendant—is an unpublished, nonprecedential memorandum opinion that is not binding on this court. *See* 129 Fed. App'x 348, 350. Moreover, the basis for the court's conclusion that the case was not moot even though the defendant had changed its program was that the plaintiff

Page 7 - DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF FRCP 12(b)(1) AND 12(b)(6) PARTIAL MOTION TO DISMISS

"attack[ed] problems that are endemic to the programs, old and new." *Id*. at 350. In other words, "the program differences are not significant as far as the current complaints are concerned." *Id*. Therefore, "the issues were, and remain, ripe" notwithstanding the defendant's replacing its previous program with a new one *with the same problems*. *Id*. In short, even if *Arc of Washington* were binding precedent—and it is not—nothing in that decision undermines the cases discussed previously, let alone demonstrate that they "are no longer good law" or that the Ninth Circuit somehow adopted a new test for so-called "recrudescent injuries," as plaintiffs argue. (Dkt. 285 at 11, 12).

The same is true of the other cases plaintiffs cite: *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007), and *West Virginia v. EPA*, 142 S. Ct. 2587, 2607 (2022), involved voluntary cessation, not so-called "recrudescent injuries." (*See* Dkt 285 at 12) (citing those decisions). So did *Friends of the Earth*, *Adarand*, and *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 733 (9th Cir. 2007). (*See* Dkt. 285 at 12–13) (citing those decisions). Voluntary cessation is an "exception" to the general mootness doctrine, as the Ninth Circuit reiterated just a few months ago in a detailed opinion. *Brach v. Newsom*, 38 F.4th 6, 12–15 (9th Cir. 2022). That exception is based on the proposition "that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering [its own] questionable behavior[.]" *Id*. at 12 (quoting *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001)). In such cases, courts understandably place a "heavy burden" on the moving party "to show that voluntary cessation moots the case." *Native Vill. of Nuiqsut v. Bureau of Land Mgmt.*, 9 F.4th 1201, 1215 (9th Cir. 2021) (citing *Friends of the Earth*, 528 U.S. at 189). But the present matter does not involve voluntary cessation, as plaintiffs themselves concede. (*See* Dkt. 285 at 12) (admitting that plaintiffs' claimed injuries have "paused not due to any party's conduct but

because of external factors."). *MedImmune*, *West Virginia, Friends of the Earth*, *Adarand* , and *Lozano* are therefore largely irrelevant in this case.

Relatedly, plaintiffs cite *Planned Parenthood v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 1100, 1109 (9th 2020), for the proposition that "sometimes a case may not be moot even if the plaintiff might not have standing to bring it today," and that the requirements of a "real and immediate injury" that is "not conjectural or hypothetical" pertain only to standing, not to mootness. (Dkt. 285 at 13). But *Planned Parenthood* dealt with another "justiciability-saving exception[]" to the mootness doctrine—the "capable of repetition, yet evading review" exception. *See id.* at 1109–10. The court held in that case that the plaintiffs' claims "would be moot" but for that exception. *Id*. at 1110. The exception applied, the court concluded, because the defendant had stated its intent "to pursue a substantially similar approach … in the future," plaintiffs could "reasonably expect to be subject to the same injury again," and "the injury is inherently shorter than the normal life of litigation." *Id*. Here, as explained below, plaintiffs' alleged injuries do not fall within the "capable of repetition, yet evading review" exception to mootness. Moreover, contrary to what plaintiffs assert, nothing in *Planned Parenthood* purported to hold that a "real and immediate injury" that is "not conjectural or hypothetical" is not relevant to mootness.

Plaintiffs also argue that "the Supreme Court has stated repeatedly that '[a] case becomes moot … *only* when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" (Dkt. 285 at 13) (quoting *Campbell-Ewald*, 577 U.S. at 161; emphasis, brackets, and ellipsis in plaintiffs' response). But those decisions pertain to the dismissal as moot *of a case as a whole*, not the dismissal of a form of relief only. *See id.* (citing *Campbell-Ewald*, 577 U.S. at 160–66 (holding that case was not rendered moot by unaccepted offer of judgment);

Page 9 - DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF FRCP 12(b)(1) AND 12(b)(6) PARTIAL MOTION TO DISMISS

*Chafin v. Chafin*, 568 U.S. 165, 171–73 (2013) (reversing "dismiss[al of] the suit as moot" because "dispute [was] still very much alive"); *United States v. Washington*, 142 S. Ct. 1976, 1983 (2022) (holding that "this case is not moot" because "[s]ome of these claims are not yet final"); *West*, 206 F.3d at 925 (holding that completion of Stage 1 of challenged construction project was "insufficient to render the case moot" when "Stage 2 has not yet begun")). Here, the City does not argue that plaintiffs' entire case has become moot—on the contrary, the City agrees that plaintiffs' claims and related requests for damages remain live, and this court can still grant plaintiffs "effectual relief" via an award of damages if plaintiffs prevail on their claims. As explained previously, however, justiciability under Article III must exist "with respect to each form of relief sought." *Ellis,* 657 F.3d at 978. Here, plaintiffs are not entitled to injunctive and declaratory relief, even though their underlying claims and related request for damages remain live. Nothing in plaintiffs' citations to cases discussing the standards for dismissing an entire action as moot undermines that reality.

    The same is true of plaintiffs' argument that the City bears a "heavy" burden to overcome this court's "'virtually unflagging' obligation to hear and decide the case." (Dkt. 285 at 15) (quoting *Karuk Tribe*, 681 F.3d at 1017; *West*, 206 F.3d at 924; and *Meland*, 2 F.4th at 849 n. 7). Again, the decisions plaintiffs cite involve exceptions to the mootness doctrine or attempts to dismiss an entire action. *See Karuk Tribe*, 681 F.3d at 1017–19 ("we conclude that the Tribe's claims are justiciable under the 'capable of repetition, yet evading review' exception to the mootness doctrine" because "the Tribe has shown a reasonable expectation that the Forest Service will engage in the challenged conduct again."); *West*, 206 F.3d at 925 (holding that completion of Stage 1 of challenged construction project was "insufficient to render the case moot" when "Stage 2 has not yet begun"); *Meland*, 2 F.4th at 849 n.7 (declining to dismiss live

Page 10 - DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF FRCP 12(b)(1) AND 12(b)(6) PARTIAL MOTION TO DISMISS

case simply because "the case may become moot in the future"). Here, granting the City's motion would not relieve this court from having to "hear and decide the case," as plaintiffs suggest. (Dkt. 285 at 15). Rather, it would ensure that the case is heard and decided consistently with the constitutional requirements for subject-matter jurisdiction. *See City & Cnty. of San Francisco*, 42 F.4th at 1084 (holding that, because mootness is part of the constitutional analysis for subject-matter jurisdiction, courts have "an independent obligation to consider … mootness *sua sponte*").

Finally, plaintiffs' assertion that this court may grant "retrospective declaratory relief" even if their requests for prospective relief are moot is legally incorrect. (Dkt. 285 at 28-29). Plaintiffs contend that "[r]etrospective declaratory relief is barred only when it amounts to an 'end run' around the Eleventh Amendment," but that "[t]he City is not protected by the Eleventh Amendment, … so retrospective declaratory relief is not barred against it." *Id*. at 29 (citing *Nat'l Audubon Soc'y*, 307 F.3d at 848; *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n. 54 (1978)). That argument has no merit.

It is true that, under the Eleventh Amendment, a federal court cannot issue a retrospective declaratory judgment against a state. *See Green*, 474 U.S. at 73 (holding that, where damages or restitution are "prohibited by the Eleventh Amendment," declaratory judgment "is not available when the result would be a partial 'end run' around" that rule). But that does not mean that retrospective declaratory relief is otherwise available—quite the contrary. *See Bayer*, 861 F.3d 853 (holding, in suit between private parties, that "a declaratory judgment merely adjudicating past violations of federal law—as opposed to continuing or future violations of federal law—is not an appropriate exercise of federal jurisdiction.").

Page 11 - DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF FRCP 12(b)(1) AND 12(b)(6) PARTIAL MOTION TO DISMISS

In *Bayer*, the plaintiff appealed from a district-court order granting summary judgment on mootness grounds to his former employer, Neiman Marcus, in a suit alleging interference with his ADA rights. 861 F.3d 853. The plaintiff sought, *inter alia*, nominal damages and "a declaration that Neiman Marcus violated [federal law] by insisting that he choose between his job and the exercise of his ADA rights." *Id*. at 861, 867. On appeal, the court concluded that the plaintiff's request for nominal damages was justiciable, but that his request for declaratory judgment against his former employer was moot. *Id*. at 867–68, 874–75. In reaching that conclusion, the court reiterated that "[t]he doctrine of mootness, which is embedded in Article III's case or controversy requirement, requires that an actual, ongoing controversy exist at all stages of federal court proceedings." *Id*. at 862 (quoting *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1086 (9th Cir. 2011)). The court explained that issuing a retrospective declaratory judgment would violate that constitutional command:

> The value of the judicial pronouncement—what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion—is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff.* Bayer has provided no basis upon which to conclude declaratory relief might affect Neiman Marcus's behavior towards him. At present, … the parties have no relationship beyond this litigation, and there is no evidence to suggest Bayer can reasonably be expected to work for or bring suit against Neiman Marcus in the future. The mere fact that securing a declaratory judgment would permit Bayer to recoup costs associated therewith is insufficient, standing alone, to create an Article III case or controversy where none otherwise exists.

> Bayer argues that even if *he* is no longer subjected to Neiman Marcus's alleged unlawful conduct, his claim for declaratory relief is not moot because the relief sought pertains to an ongoing policy. But to avoid mootness with respect to a claim for declaratory relief on the ground that the relief sought will address an ongoing policy, the plaintiff must show that the policy has adversely affected and continues to affect a present interest. The mere existence of an ongoing policy is insufficient to establish that a plaintiff challenging that policy has standing to attack all its future applications.

> Because Bayer has produced no evidence to show the conduct complained of in
> this action presently affects him or can reasonably be expected to affect him in the
> future, we conclude the circumstances prevailing since he filed this action have
> forestalled any occasion to award him meaningful declaratory relief. We therefore
> conclude his claim for declaratory relief is moot.

*Id*. (emphases in original; internal quotation marks and citations omitted). Under Article III, "[a]

case or controversy exists justifying declaratory relief only when 'the challenged ... activity ... is

not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence,

casts what may well be a substantial adverse effect on the interests of the ... parties.'" *Id*. at 867

(quoting *Seven Words LLC v. Network Solutions*, 260 F.3d 1089, 1098–99 (9th Cir. 2001);

ellipses in original).

In sum, as the Ninth Circuit recently restated and contrary to what plaintiffs argue, the

mootness analysis for injunctive and declaratory relief is similar and requires a live controversy:

> "[W]hat makes [a declaratory judgment] a proper judicial resolution of a 'case or
> controversy' rather than an advisory opinion [is] the settling of some dispute
> which affects the behavior of the defendant towards the plaintiff." *Bayer*, 861
> F.3d at 868 (internal quotation marks and italics omitted). Similarly, requests for
> injunctive relief are only live where "there is some present harm left to enjoin"
> and "[a] plaintiff who can[] reasonably be expected to benefit from prospective
> relief ordered against the defendant." *Id.* at 864.

*City & Cnty. of San Francisco*, 42 F.4th at 1087 (brackets in original). A declaratory judgment

that "would have no further effect" on the defendant's behavior is not "effectual relief" and is not

justiciable. *Id*. (citing *Edmo v. Corizon*, 935 F.3d 757, 782 (9th Cir. 2019)). Mere "speculation"

that the plaintiff "might, someday," be subjected to similar injury does not save a case from

being moot. *Id*. (further stating that "speculative contingencies" and threats of future

"hypothetical injury" are "too speculative for us to adjudicate or redress.").

As the court also reiterated in *Bayer*, "Article III of the United States Constitution limits

the jurisdiction of the federal courts to 'Cases' and 'Controversies.'" 861 F.3d at 861 (citing U.S.

Const. art. III, § 2, cl. 1). The "case or controversy requirement" constitutes the "irreducible constitutional minimum of standing" and "requires that a plaintiff show '(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Id*. at 861–62 (citations omitted). "Because the power of a federal court to decide the merits of a claim ordinarily evaporates whenever a prerequisite to standing disappears, the doctrine of mootness has been described as 'the doctrine of standing set in a time frame.'" *Id*. at 862 (citations omitted).

Here, for the reasons explained in the City's motion, plaintiffs' requests for injunctive and declaratory relief are moot and no longer justiciable. Plaintiffs do not face an actual and imminent threat of injury that is not contingent and has not evaporated or dissipated, and nothing in plaintiffs' response undermines that reality. This court should therefore grant the City's partial motion to dismiss.

## II.    Plaintiffs' factual assertions are largely incorrect and are, in any case, irrelevant to showing any actual risk of future injury warranting prospective relief.

Plaintiffs' argument that they remain subject to an actual and imminent risk of future injury that is not contingent and has not evaporated or dissipated, warranting prospective relief, relies largely on their repeated insistence, contrary fact, that the City had and continues to have an official policy "that once it declares an unlawful assembly it will violently disperse journalists and legal observers along with everyone else." (Dkt. 285 at 11; *see also id.* at 16 (distinguishing PPB from federal defendants because "PPB has a written, public policy, never rescinded, of violently dispersing journalists along with the public.")). To support that argument, plaintiffs

offer a strained reading of a single tweet written on one night during the 2020 protests.[2] (*See* Dkt. 285 at 16) (citing Dkt. 285-2 as "containing PPB's policy"). In addition to misconstruing and misrepresenting that single 2020 tweet as the official, written, and "never rescinded" policy of the City, plaintiffs further assert that intervening changes to state law have been powerless to override that "official" tweet-cum-policy. (Dkt. 285, at 16, 18). None of those assertions—which underpin all of plaintiffs' arguments in response to the City's partial motion to dismiss—is correct.

1.     ***Plaintiffs' arguments ignore how state law actually works and the City's actual policies regarding policing large public-order events.***

Notably absent from plaintiffs' response is PPB's *actual* official, written policy regarding policing large public-order events. That official, written policy is PPB Directive 635.10 ("Directive 635.10"). Directive 635.10 was amended, effective January 18, 2023, and all PPB officers are currently undergoing training on crowd management, which includes training on the updated version of Directive 635.10. (Supplemental Declaration of Michael Porter ("Supp. Porter Decl."), ¶¶ 4, 6).

---

[2] Plaintiffs selectively cite the tweet to suggests that the City's official policy is that journalists who fail to disperse will "face arrest or altercation." (Dkt. 285 at 10). They also claim that, in 2020, the City presented an option of either imbedding with PPB or face violent dispersal. *Id*. The tweet from then-Lieutenant Tina Jones, speaks for itself. (*See* Dkt. 285-3). However, the City notes that the tweet does not present—or even suggest—the Hobson's choice plaintiffs assert. The tweet merely ask that press follow PPB orders to stay safe because "criminal activity is occurring" and "the area is not safe for anyone." (Dkt. 285-3). Additionally, the tweet offers imbedding as an "option" to provide the press with further access to "closed areas." *Id*. At no point does the tweet state that the options were to imbed with the police *or face arrest or altercation*, as plaintiffs suggest. In fact, given the projectiles thrown at the police during this time, imbedding behind the police line could similarly put journalists' safety at risk. (*See* Dkt. 280 at ¶¶ 13, 18).

Page 15 - DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF FRCP 12(b)(1) AND 12(b)(6) PARTIAL MOTION TO DISMISS

The version of Directive 635.10 in effect during the 2020 protests—the events giving rise to plaintiffs' claims—stated in relevant part:

> Media or legal observers will not be arrested solely for their role in observing, capturing, and/or reporting on demonstrations or events. Members will not interfere with media or legal observers performing their respective functions, so long as they are performed in a safe manner and in compliance with police orders. However, such persons must comply with all police orders and maybe subject to arrest for failure to do so.

(Supp. Porter Decl., ¶ 3, Ex. 1 ("Prior 635.10") at p. 7).

The amended, current version of Directive 635.10 provides additional clarification and protection to members of the media and legal observers. First, Directive 635.10 requires:

> When crowd intervention is necessary, members shall strive to distinguish between persons engaged in criminal behavior, persons peacefully and lawfully demonstrating, legal observers and members of the media, and nonparticipants.

(Supp. Porter Decl., ¶ 4, Ex. 2 ("New 635.10") at p. 7). With respect to legal observers and members of the media, New 635.10 goes on to state:

> 11.2.1. Legal observers and members of the media have a constitutional right to observe, document, and report on public order events; however, they may not interfere with police action or impede a lawful objective.
>
> 11.2.2. Members shall consider anyone identifying themselves as a member of the media, journalist, broadcaster, or legal observer, or displaying any indicia of the aforementioned, to be an authorized legal observer or member of the media.
>
> 11.2.3. Members shall not detain or arrest legal observers or members of the media solely for their role in observing, capturing, and/or reporting on events.
>
> 11.2.4. Members shall not interfere with media or legal observers performing their respective functions; however, media and legal observers are not exempt from arrest for their own criminal conduct.

*Id*. at 9. Also relevant to plaintiffs' claims and requested prospective relief, New 635.10 states generally that:

> 11.1 Failure to comply with an order to disperse is not a crime and shall not be the basis for an arrest.

Page 16 - DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF FRCP 12(b)(1) AND 12(b)(6) PARTIAL MOTION TO DISMISS

*Id*.

The changes in New 635.10 reflect the significant changes to Oregon law that were enacted over the last two years and are discussed in the City's motion. (*See* Dkt. 279, at 18-22). Plaintiffs acknowledge those changes in state law in passing, but summarily dismiss their significance and the power of state law generally (*See* Dkt. 285 at 17-18).

First, plaintiffs assert, without explanation, that "these changes [to state law] do not override PPB's policy." (Dkt. 285 at 17). But plaintiffs misrepresent the power of state law. The City and PPB officers acting within the City of Portland and the State of Oregon are *legally bound* by Oregon law. *See Qwest Corp. v. City of Portland*, 275 Or. App. 874, 883, 365 P.3d 1157, 1162 (2015) (holding that state law trumps conflicting municipal regulations). In recognition of the new legal obligations imposed on police officers by state law, New 635.10 specifically refers to the changed state laws that the City identified in its motion to dismiss. (Supp. Porter Decl., ¶ 4, Ex. 2 at p. 1). In case there were any doubt, the requirement that PPB officers comply with state law is further reiterated in a separate PPB Directive. (*See* Supp. Porter Decl., ¶ 5, Ex. 3 at p. 1) ("Members shall not commit any act or fail to perform any act constituting a violation of any applicable laws, rules, and orders, whether stated in these directives or elsewhere."). Plaintiffs' unsupported assertion that intervening changes in state law "do not override" the 2020 tweet is meritless.

Plaintiffs also assert that the new state laws would still allow officers to use pepper balls, flash bangs, targeted canisters of tear gas, and batons to forcibly disperse journalists and legal observers at future, hypothetical protests of the kind, scale, and frequency that occurred in 2020. (*See* Dkt. 285 at 18). But those assertions are largely incorrect—they both misstate the requirements of the new state laws and ignore how they would work in practice.

Page 17 - DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF FRCP 12(b)(1) AND 12(b)(6) PARTIAL MOTION TO DISMISS

First, changes in Oregon law make it exceedingly unlikely that PPB would act to physically disperse a crowd in the future, even if mass protests of the kind, scale, and frequency that occurred in 2020 were to happen again at some point. (*See* Dkt. 279, at 18-19) (discussing changes to ORS 131.635; ORS 162.247 regarding crowd dispersal and the crime of interfering with a peace officer). As explained in the City's motion, substantive amendments to ORS 131.675 and ORS 162.247 mean that persons who do not disperse following a riot or unlawful-assembly declaration can be arrested *only* if they commit a crime *other than refusing to disperse*. *See id*. at 18–19, 21–22. Under state law, a person acting as a journalist or legal observer who did not disperse following a hypothetical declaration of riot or unlawful assembly at hypothetical future protests of the kind, scale, and frequency that occurred in 2020 could not "face arrest or altercation" for that conduct, contrary to what plaintiffs assert. (Dkt. 285 at 10). Plaintiffs' arguments fail for that reason alone.

Moreover, many of plaintiffs' specific "examples" of potential future targeting of particular uses of force at journalists simply are not allowed by law. Plaintiffs thus assert that PPB could still target journalists with canisters of deployed tear gas—indeed, plaintiffs suggest that the new Oregon law permits the use of tear gas with "no restrictions on targeting" journalists. (Dkt. 285 at 18 n. 8). But the conjectural targeting[3] of tear gas canisters at hypothetical future protests is highly unlikely given the very limited circumstances when tear gas

---

[3] Plaintiffs point to one declaration to assert that journalists were targeted with tear-gas canisters in the past. (*See* Dkt. 285 at 18) (citing Dkt. 12). In that declaration, plaintiff Lewis-Rolland states that an officer opened a canister of tear gas and threw it at his feet in May 2020, but there is no indication whether he was targeted or whether he was simply standing with the crowd. (*See* Dkt. 12, ¶¶ 8, 11). Moreover, that declaration is ultimately irrelevant to whether plaintiffs are entitled to prospective relief—that is, whether plaintiffs face an actual and imminent threat of future injury that is not contingent and has not evaporated or dissipated.

Page 18 - DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF FRCP 12(b)(1) AND 12(b)(6) PARTIAL MOTION TO DISMISS

would now be permitted to be deployed under ORS 181A.708(3). (*See* Dkt. 279 at 20–22) (explaining how, under new state laws, "the use of tear gas is restricted to a narrow set of extreme circumstances."). More important, the new law states expressly that "[a] law enforcement agency, when it is safe and possible to do so, shall minimize the incidental impact of the agency's use of handheld chemical incapacitants, tear gas and kinetic impact projectiles on bystanders, medical personnel, journalists and other unintended targets." ORS 181A.708(6). In short, the new law would not permit targeting journalists with canisters of tear gas at hypothetical future protests. On the contrary, it requires law enforcement to minimize the impact of such tools on journalists.

Also contrary to what plaintiffs argue, the new Oregon laws would not allow targeting journalists or legal observers not engaged in unlawful or violent behavior with flash-bang grenades,[4] pepper balls, or paint markers. (*See* Dkt. 285 at 18) (making that argument). In fact, the new law generally *prohibits* the use of such munitions for crowd management, ORS 181A.708(4), and expressly requires that any use of such munitions minimize incidental impact on journalists, bystanders and unintended targets. ORS 181A.708(6).

In sum, state law has changed materially since plaintiffs filed this action in June 2020, and PPB policy has also changed materially to reflect those new state-law requirements. Plaintiffs ignore all those changes and, instead, base their entire argument on a two-year-old tweet by a City employee that allegedly was "never rescinded." (*See* Dkt. 285 at 16). But aside

---

[4] Plaintiffs commonly refer to flash-bang grenades or use other similar terms in their response. But the only munition that PPB used in the past that resembles what plaintiffs describe are rubber ball distraction devices ("RBBDs"). Moreover, "PPB has ceased using RBDDs at protest events and is currently undertaking a process to destroy its remaining inventory of these munitions." (Dkt. 280 at ¶¶ 29, 32).

Page 19 - DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF FRCP 12(b)(1) AND 12(b)(6) PARTIAL MOTION TO DISMISS

from not explaining how, exactly, the City should "rescind" a tweet by an employee, plaintiffs cannot escape that the City's official, written policy is contained in PPB directives and requires compliance with the new state laws. As explained in the City's motion, those legal changes have virtually eliminated the risk that plaintiffs could be subject to harm similar to that alleged in their complaint—even assuming, *arguendo*, that hypothetical protests of the kind, scale, and frequency that occurred in summer 2020 were to happen again at some time in the future. (*See* Dkt. 279 at 22). Nothing in plaintiffs' arguments undermines that reality, let alone shows that plaintiffs remain subject to an actual and imminent risk of future injury that is not contingent and has not evaporated or dissipated, warranting prospective relief.

2.      ***Plaintiffs' arguments ignore the facts, which show that plaintiffs do not face an actual, nonspeculative risk of future injury warranting prospective relief.***

        Significantly, PPB's practice over the last two years has been consistent with the aforementioned changes in state law. Plaintiffs themselves do not dispute that any practice they allege occurred in 2020 has not continued since that time. (*See* Dkt. 285 at 12) (conceding that plaintiffs' injuries have been "paused" as a result of "external factors."). On the contrary, the last allegation of wrongdoing at the hands of PPB by any plaintiff dates from August 2020—nearly two and a half years ago.[5] (*See* Dkt. 276 at ¶ 82) (Third Am'd Complaint). And the declarations cited to and attached to plaintiffs' response to the City's motion further confirm that plaintiffs face no actual ongoing or imminent risk of harm warranting prospective relief.

---

[5] Plaintiffs' complaint does include allegations related to interactions between PPB and *non-plaintiff* journalists or legal observers on later dates in August and September 2020 and April 2021. (*See* Dkt. 276 at ¶¶ 164–70 ). Even then, those allegations are nearly two years old or more, predate the changes in state law discussed previously, and do not show that plaintiffs face any actual, nonspeculative risk of future injury warranting prospective relief.

Page 20 - DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF FRCP 12(b)(1) AND 12(b)(6) PARTIAL MOTION TO DISMISS

Indeed, instead of citing recent facts or alleged incidents that would evidence ongoing

harm or an actual, nonspeculative risk of future injury, plaintiffs look *even farther backwards*. In

their response, plaintiffs point to "new" incidents that allegedly occurred three to seven years

ago.[6] (*See* Dkt. 285, at 19-20). Furthermore, most of those alleged, old incidents occurred on

unidentified dates, often in unidentified months, and sometimes without identification of any

specific year. (*See, e.g.*, Dkt. 285 at 20) (asserting that PPB "attacked Plaintiff Rudoff in 2015,

2016 *or* 2017" (emphasis added), and similarly alleging that other incidents occurred generally in

2017, 2018, and 2019 without specific dates). In short, plaintiffs' newly offered old accusations

are so vague as to when and where they allegedly occurred that responding to them is simply

impossible—even if they were relevant to proving an actual ongoing or imminent risk of harm

warranting prospective relief, which they are not.

In addition to providing only vague descriptions of old events, many of the referenced

events also are third-hand accounts of alleged wrongdoing against non-plaintiffs: Donovan

Farley, Ric Peavyhouse, Michelle Fawcett, and Melissa Lewis are not plaintiffs in this case. (*See*

Dkt. 285 at 19–20) (referring to these individuals). Moreover, the accounts of the incidents

---

[6] Plaintiffs also cite to an admittedly grossly inappropriate slide from a PPB training in 2018. (Dkt. 285 at 19). That information should be disregarded and struck by this court, as plaintiffs introduce it as inadmissible hearsay. *See AFMS LLC v. United Parcel Serv. Co*, 105 F. Supp. 3d 1061, 1070 (C.D. Cal. 2015) ("It is axiomatic to state that newspaper articles are by their very nature hearsay evidence and are thus inadmissible if offered to prove the truth of the matter asserted" (citation omitted)); *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (holding that, on a factual challenge to subject-matter jurisdiction, "the plaintiff must support her jurisdictional allegations with competent proof … under the same evidentiary standard that governs in the summary judgment context."). In addition to that evidentiary deficiency, the offensive nature of the slide, as quoted by plaintiffs, has nothing to do with the treatment of journalists or legal observers and is therefore irrelevant to plaintiffs' requests for prospective relief.

Page 21 - DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF FRCP 12(b)(1) AND 12(b)(6) PARTIAL MOTION TO DISMISS

experienced by these persons are all third-hand accounts, some of which appear to be hearsay or lack sufficient information to confirm whether there was any basis for PPB officers to have identified the non-plaintiffs as journalists.[7] Put bluntly, this stale, vague, hearsay by non-parties is not and cannot be used as evidence of an actual ongoing or imminent risk of harm to plaintiffs.

As plaintiffs themselves note, "if an injury is imminent or ongoing, a grant of injunctive relief can prevent harm or at least mitigate it." (Dkt. 285 at 12). But plaintiffs' own evidence demonstrates that they face no "imminent or ongoing" injury. On the contrary, regular nightly protests of the kind, scale, and frequency that led to plaintiffs' claims in this case have long ended. The state laws governing declarations of riot and unlawful assemblies, orders to disperse, the power to arrest persons for refusing to disperse, and uses of force in crowd-management responses, have all materially changed. The PPB directives relating to those subjects have also materially changed. And no plaintiff can identify any injury at the hands of PPB for well over two years now. On the contrary, plaintiffs implicitly confirm that they face no actual ongoing or imminent risk of harm by pointing to no current City policy or actions, but by relying instead on a two-and-a-half-year-old tweet by a City employee and on incidents that allegedly occurred long before even the summer of 2020. Plaintiffs' requests for prospective relief are therefore moot and should be dismissed. *See Bayer*, 861 F.3d at 865, 868 (holding that requests for injunctive and declaratory relief were moot when plaintiff "produced no evidence to show the conduct complained of in this action presently affects him or can reasonably be expected to affect him in the future").

---

[7] For example, plaintiffs cite to an unauthenticated YouTube link of non-plaintiff Melissa Lewis, that fails to identify Ms. Lewis as either journalist or legal observer in the video of the alleged wrongdoing. (*See* Dkt. 285 at 20 n. 14).

Page 22 - DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF FRCP 12(b)(1) AND 12(b)(6) PARTIAL MOTION TO DISMISS

III.    **Plaintiffs' claims do not fall within the "capable of repetition, yet evading review" exception to the mootness doctrine.**

In apparent recognition of the above defects, plaintiffs argue that, even if "seemingly moot," their "claims are capable of repetition yet evading review." (Dkt. 285 at 23). Plaintiffs are incorrect, and their arguments are based on misunderstandings of the "capable of repetition, yet evading review" exception to the mootness doctrine.

As the Ninth Circuit recently reiterated, a case may avoid being dismissed as moot if the "challenged action" is "'capable of repetition, yet evading review,' an *exception* to mootness" as to which "the *plaintiffs* have the burden" of proof:

> Plaintiffs implicitly acknowledge that the case is moot by arguing that the issues are "capable of repetition, yet evading review," an *exception* to mootness. *Wildwest Inst. V. Kurth*, 855 F.3d 995, 1002 (2017) (internal quotation marks omitted). This exception has two requirements: "(1) the duration of the challenged action is too short to allow full litigation before it ceases or expires, and (2) there is a reasonable expectation that the plaintiffs will be subjected to the challenged action again." *Id.* at 1002–03 (internal quotation marks omitted). Unlike the initial mootness question, where the *defendants* have the burden, *see Cantrell v. City of Long Beach*, 241 F.3d 674, 678 (2001), "[u]nder the 'capable of repetition' prong of the exception to the mootness doctrine, the *plaintiffs* have the burden of showing that there is a reasonable
>
> expectation that they will once again be subjected to the challenged activity," *Lee v. Schmidt-Wenzel*, 766 F.2d 1387, 1390 (9th Cir. 1985) (emphasis added).

*Native Vill. of Nuiqsut*, 9 F.4th at 1209 (emphases in original).

Significantly, the "capable of repetition, yet evading review" exception "applies only in exceptional situations"—and it pertains to the challenged conduct, not specific forms of relief. *See Vegas Diamond Props., LLC v. F.D.I.C.*, 669 F.3d 933, 936–37 (9th Cir. 2012) (holding, "since Vegas Diamond and Johnson Investments are allowed to bring damages actions for the alleged unlawful conduct associated with the foreclosures, this conduct does not 'evade

Page 23 - DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF FRCP 12(b)(1) AND 12(b)(6) PARTIAL MOTION TO DISMISS

review.'"); *Alvarez v. Smith*, 558 U.S. 87, 94 (2009) (holding that, when plaintiffs could "bring damages actions, the practices do not 'evade review.'"). Injunctive and declaratory relief are merely forms of relief, and they are not plaintiffs' sole available remedy here. *See Morongo Band of Mission Indians v. California State Bd. Of Equalization*, 858 F.2d 1376, 1382–83 (9th Cir. 1988) ("The Declaratory Judgment Act merely creates a remedy in cases otherwise within the court's jurisdiction; it does not constitute an independent basis for jurisdiction."); *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("An injunction is a remedy, not a separate claim or cause of action."). Because plaintiffs can—and do—bring damages actions for the challenged conduct in this case, that conduct does not "evade review."

Several cases illustrate how that rule works in practice. In *Vegas Diamond Properties*, the plaintiffs challenged the dissolution of a temporary restraining order that had barred the defendant from proceeding with a foreclosure sale of real property. 669 F.3d at 934. Although the property was sold pending appeal, the plaintiffs argued that their injuries were "capable of repetition, yet evading review." *Id*. at 934, 936–37. But the Ninth Circuit rejected that argument, holding in relevant part that, because the plaintiffs "are allowed to bring damages actions for the alleged unlawful conduct associated with the foreclosures, this conduct does not 'evade review.'" *Id*. at 937 (citing *Alvarez*, 558 U.S at 93–94).

Similarly, in *Alvarez*, the plaintiffs challenged the lawfulness of Illinois' forfeiture procedures for seized vehicles, seeking "only declaratory and injunctive relief, not damages." 558 U.S. at 89, 92. By the time of oral argument, however, the state had "returned all the cars that it seized" and offered compensation to the owners. *Id*. The plaintiffs argued that their injuries were capable of repetition yet evading review, but the Supreme Court rejected that argument. *Id*. at 93. In particular, the Court held that, because "those who are directly affected by

Page 24 - DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF FRCP 12(b)(1) AND 12(b)(6) PARTIAL MOTION TO DISMISS

the forfeiture practices might bring damages actions, the practices do not 'evade review.'" *Id*. at 93–94 (citing *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 8–9 (1978)). That plaintiffs chose not to seek damages did not save their requests for declaratory and injunctive relief—and therefore their case—from being moot. *Id*. at 94.

As the Ninth Circuit has explained, "the 'capable of repetition, yet evading review' exception is concerned not with particular lawsuits, but with classes of cases that, absent an exception, would *always* evade judicial review." *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 836 (9th Cir. 2014) (emphasis in original; citations omitted). Those "classes of cases" are rare and tend to involve matters like pregnancy or elections:

> Notably, regardless of any injunction that might issue, a woman can only obtain an abortion so long as she remains pregnant. We can only invalidate a temporary injunction so long as that injunction remains in effect. And where a purportedly invalid law inhibits a political candidate or party's ability to win an election, we can only remedy that impediment before the election occurs.

*Id*. (internal citations omitted). Such matters "will only ever present a live action until a particular date, after which the alleged injury will either cease or no longer be redressible." *Id*.

Here, by contrast, plaintiffs cannot satisfy either element of the "capable of repetition yet evading review" exception. First, they cannot show that the challenged conduct "evades review"—quite the contrary. Plaintiffs' Third Amended Complaint alleges that the City violated plaintiffs' First and Fourth Amendment rights through PPB's response to the 2020–21 protests in Portland.[8] (*See* Dkt. 276 at ¶¶ 358–96). Those claims will remain live and can be fully litigated regardless of whether this court dismisses plaintiffs' related requests for prospective relief. If

---

[8] Plaintiff also alleged that the City violated their rights under Article I, section 8, of the Oregon Constitution, but they have now stipulated that this claim should be dismissed. (Dkt. 285 at 29).

plaintiffs prevail on either of those claims, they will be entitled to appropriate damages and any allowable costs or fees. In sum, plaintiffs alleged injuries remain redressible regardless of how this court rules on the City's motion. By its very nature, "a claim for damages cannot evade review; it remains live until it is settled, judicially resolved, or barred by a statute of limitations." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 77 (2013). Plaintiffs cannot show otherwise.

In addition, even if the challenged conduct evaded review—and it does not—plaintiffs have not met their burden of proving "that there is a reasonable expectation that they will once again be subjected to the challenged activity" in the future. *Native Vill. of Nuiqsut*, 9 F.4th at 1209 (quoting *Lee*, 766 F.2d at 1390). On the contrary, as explained previously, no plaintiff has been able to identify any injury at the hands of PPB for well over two years now. Moreover, intervening changes in the law make it unlikely that plaintiffs could ever be subjected to harm similar to that alleged in their complaint in the future—even assuming, *arguendo*, that hypothetical protests of the kind, scale, and frequency that occurred in summer 2020 were to happen again someday. Plaintiffs cannot point to anything to the contrary.

In sum, plaintiffs' causes of action stemming from the alleged violation of their constitutional rights at the 2020–21 protests remain justiciable and do not "evade review." And even if they did, plaintiffs have not met their burden of proving a "reasonable expectation" of similar future harm. *See Brach*, 38 F.4th at 14 ("Reasonable expectation means something more than 'a mere physical or theoretical possibility'" (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)). This court should therefore reject plaintiffs' contention that their "claims are capable of repetition yet evading review." (Dkt. 285 at 23).

//

Page 26 - DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF FRCP 12(b)(1) AND 12(b)(6) PARTIAL MOTION TO DISMISS

**CONCLUSION**

For the above reasons, as well as for the reasons stated in the City's partial motion to dismiss, plaintiffs' requests for injunctive and declaratory relief are moot and do not fall within the "capable of repetition, yet evading review" exception to the mootness doctrine. Plaintiffs also concede that their claim under Article I, section 8, of the Oregon Constitution should be dismissed. This court should therefore dismiss with prejudice plaintiffs' requests for declaratory injunctive relief and their Third and Fourth Causes of Action. In addition, this court should dismiss plaintiff Index Newspapers, LLC, as a plaintiff in this action because it does not allege or seek any damages for any past injury to itself in this case, but seeks only prospective relief—a request that is moot and no longer justiciable.

DATED: January 31, 2023

Respectfully submitted,

By: */s/ Denis M. Vannier*
DENIS M. VANNIER, OSB #044406
Senior Deputy City Attorney
NAOMI SHEFFIELD, OSB #170601
Senior Deputy City Attorney
*Of Attorneys for Defendant City of Portland*