IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| INDEX NEWSPAPERS LLC d/b/a PORTLAND MERCURY, *et al*., | Case No. 3:20-cv-1035-SI |
| Plaintiffs, | OPINION AND ORDER |
| v. | |
| CITY OF PORTLAND, *et al*. | |
| Defendants. | |

Matthew Borden, J. Noah Hagey, Ellen V. Leonida, Sarah Saloman, Kory J. DeClark, and Gunnar K. Martz, BRAUNHAGEY & BORDEN LLP, 351 California Street, Tenth Floor, San Francisco, CA 94104; Athul K. Acharya, PUBLIC ACCOUNTABILITY, P.O. Box 14672, Portland, OR 97293; Kelly K. Simon, AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF OREGON, P.O. Box 40585, Portland, OR 97240. Of Attorneys for Plaintiffs.

Denis M. Vannier and Naomi Sheffield, Senior Deputy City Attorneys; and Ryan C. Bailey, Deputy City Attorney, OFFICE OF THE CITY ATTORNEY, 1221 SW Fourth Avenue, Room 430, Portland, OR 97204. Of Attorneys for Defendant City of Portland.

James L. Buchal, MURPHY & BUCHAL LLP, 3425 SE Yamhill Street, Suite 100, Portland, OR 97214. Of Attorney for *Amicus Curiae* National Police Association.

Christopher J.K. Smith, DAVIS WRIGHT TREMAINE LLP, 1300 SW Fifth Avenue, Suite 2400, Portland, OR 97201; Katie Townsend, Gabe Rottman, and Adam A. Marshall, THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, 1156 15th Street NW, Suite 1020, Washington, D.C. 20005. Of Attorneys for *Amici Curiae* Reporters Committee for Freedom of the Press and 16 News Media Organizations.

PAGE 1 – OPINION AND ORDER

**Michael H. Simon, District Judge.**

On September 23, 2020, the Court signed a stipulated preliminary injunction between Plaintiffs and Defendant City of Portland (City). The stipulated preliminary injunction enjoined the City from engaging in particular law enforcement activity with respect to journalists and authorized legal observers while responding to protests in Portland, Oregon. The parties stipulated that the injunction would remain in effect until the Court issued a final decision on the underlying legal issues or until either party requested that the injunction be rescinded.

The City moves for partial dismissal of Plaintiffs' Third Amended Complaint as moot. First, the City moves to dismiss as moot Plaintiffs' claims for declaratory and injunctive relief under 42 U.S.C. § 1983, as described in their First and Second Causes of Action. Next, the City moves to dismiss Plaintiffs' Third Cause of Action under the Oregon Constitution, Article I, Sections 8 and 26. The City also moves to dismiss Plaintiffs' Fourth Cause of Action for declaratory judgment. Finally, the City moves to dismiss all claims by Plaintiff Index Newspapers, LLC (Index Newspapers). In their response, Plaintiffs stipulate to the dismissal of their claims brought under the Oregon Constitution but oppose dismissal of their remaining claims, although they do not specifically respond to the challenge to the claims of Index Newspapers. For the reasons that follow, the Court grants the City's partial motion to dismiss.

## STANDARDS

### A.  Rule 12(b)(1)

The United States Constitution confers limited authority on the federal courts to hear only active cases or controversies brought by persons who show standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 337-38 (2016); *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 89-90 (2013). Standing "limits the category of litigants empowered to maintain a lawsuit in federal court to

seek redress for a legal wrong." *Spokeo*, 578 U.S. at 338. Standing and mootness are components of subject matter jurisdiction under Article III of the U.S. Constitution and are properly challenged under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010); *see also White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Because standing and mootness both pertain to a federal court's subject-matter jurisdiction under Article III, they are properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), not Rule 12(b)(6).").

A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction may be either "facial" or "factual." *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack on subject matter jurisdiction is based on the assertion that the allegations in the complaint are insufficient to invoke federal jurisdiction. *Id.* Where, as here, "[a] jurisdictional challenge is factual[,] . . . 'the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.'" *Pride v. Correa*, 719 F.3d 1130, 1133 n.6 (9th Cir. 2013) (quoting *Safe Air for Everyone*, 373 F.3d at 1039). When a defendant factually challenges the plaintiff's assertion of jurisdiction, a court does not presume the truthfulness of the plaintiff's allegations and may consider evidence extrinsic to the complaint. *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012); *Safe Air for Everyone*, 373 F.3d at 1039. A factual challenge "can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency." *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996).

## B.  Mootness

"A case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Clark v. City of Lakewood*, 259 F.3d 996, 1011 (9th Cir. 2001), *as amended* (Aug. 15, 2001) (quotation marks omitted). "The phrase 'legally

cognizable interest' is often used to describe Article III's case or controversy requirements when mootness is at issue, while the phrase 'injury in fact' is often used to discuss these requirements when standing is at issue." *Id.* at 1011 n.7. In considering the "legally cognizable interest" requirement when a plaintiff requests future injunctive relief, courts must consider whether the plaintiff's "future injuries are now too conjectural or hypothetical to satisfy the injury-in-fact requirement allowing [the plaintiff] to pursue injunctive relief." *Id.* at 1012. "[T]he test for mootness applied to a claim for declaratory relief 'is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 867 (9th Cir. 2017) (quoting *MedImmune, Inc. v. Genentech Inc.*, 549 U.S. 118, 127 (2007)). The party asserting mootness "bears the burden to establish that a once-live case has become moot." *West Virginia v. Env't Prot. Agency*, 142 S. Ct. 2587, 2607 (2022).

## BACKGROUND

### A.  Procedural History

Plaintiffs filed their original Complaint against the City, officers of the Portland Police Bureau (PPB), and officers of other law enforcement agencies on June 28, 2020. On July 2, 2020, the Court issued a Temporary Restraining Order enjoining PPB from dispersing individuals who PPB should have reasonably known were journalists or legal observers when responding to protests in Portland. The Court also enjoined PPB from arresting journalists or legal observers for not dispersing following an order to disperse.

On July 16, 2020, Plaintiffs and the City agreed to a stipulated preliminary injunction enjoining PPB from arresting, threatening to arrest, or using physical force directed against any person whom they knew or reasonably should have known was a journalist or legal observer.

PAGE 4 – OPINION AND ORDER

Again, the stipulated preliminary injunction enjoined PPB from arresting a journalist or legal observer for not following an order to disperse. The stipulated preliminary injunction was set to expire on October 30, 2020.

On July 17, 2020, the Court granted Plaintiffs motion for leave to file a Second Amended Complaint, adding the U.S. Department of Homeland Security and the U.S. Marshals Service (collectively, the Federal Defendants) to this lawsuit. On August 20, 2020, the Court issued a preliminary injunction, similar to that issued against the City, against the Federal Defendants. *Index Newspapers LLC v. City of Portland*, 480 F. Supp. 3d 1120, 1155-57 (D. Or. 2020).

On September 9, 2020, Plaintiffs and the City agreed to a revised stipulated preliminary injunction. On September 23, 2020, Plaintiffs and the City again revised the stipulated agreement. This revision extended the duration of the stipulated preliminary injunction until the Court issued a final decision on the underlying legal issues.

On March 17, 2022, the Court dissolved the preliminary injunction against the Federal Defendants. The Court found that significantly changed circumstances altered Plaintiffs' likelihood of success on their claims and rendered their claimed injury too speculative to support prospective equitable relief or irreparable harm. And on September 26, 2022, the Court dismissed as moot Plaintiffs' claims against the Federal Defendants. The Court also granted in part Plaintiffs' motion to file their Third Amended Complaint, allowing Plaintiffs to allege claims against individual federal officers but precluding Plaintiffs from including equitable claims against the Federal Defendants, as such claims would be futile.

**B.  New Facts After Plaintiffs' Original Complaint**

The Court previously described the changed circumstances from November 1, 2020 to August 11, 2021. *See Index Newspapers v. City of Portland*, 2022 WL 72124, at *4-5 (D. Or. Jan. 7, 2022). The Court has also detailed the changed circumstances from August 2021 to April

2022. *Index Newspapers v. City of Portland*, 2022 WL 4466881, at *4 (D. Or. Sept. 26, 2022). "[I]n sum, the protests have shrunk in number, size, and scope." *Id.*

The parties supplemented the record with additional declarations and Plaintiffs' Third Amended Complaint. This supplemental information describes the situation from November 2020 to November 2022. The supplemental information also shows that the circumstances have markedly changed since the summer of 2020. From November 15, 2020, to November 1, 2022, there were approximately three dozen protests in which PPB had a crowd management response. Dobson Decl. ¶ 11-19; *see also* Porter Supp. Decl., Ex. 1 at 9 (ECF 287-1) (defining crowd management during the relevant period as "[e]ncompass[ing] law enforcement management, intervention, and control strategies when responding to all forms of public assemblies and gatherings"). On approximately 12 of those occasions, PPB declared a riot or an unlawful assembly. Dobson Decl. ¶ 11-18. "By comparison, from May 26, 2020, to October 31, 2020, protests occurred daily that were declared unlawful." *Index Newspapers*, 2022 WL 4466881, at *4. Further, PPB has deployed no type of tear gas at a protest since September 28, 2020, and PPB has deployed no kinetic impact projectiles at a protest since June 24, 2021. Dobson Decl. ¶ 26-27. Finally, between July 1, 2021, and November 1, 2022, PPB has not responded to any protests with force. *Id.* ¶ 19.

There have also been several changes to state law that have consequently led to significant changes in PPB's internal directives for responding to public order events. For example, the Oregon State Legislature amended Oregon Revised Statute (ORS) § 162.247(1), which defines the crime of interfering with a police officer, so that refusing to obey a lawful order no longer constitutes a crime. 2021 Or. Laws Ch. 254, 1. Correspondingly, PPB has revised PPB Directive 635.10, which establishes how PPB responds to public order events, so

that "[f]ailure to comply with an order to disperse *is not a crime and shall not be the basis for an arrest*." Porter Supp. Decl., Ex. 2 at 9 (ECF 287-2) (emphasis added). Moreover, Directive 635.10 requires that

> [w]hen crowd intervention is necessary, [PPB] members shall strive to distinguish between persons engaged in criminal behavior, persons peacefully and lawfully demonstrating, legal observers and members of the media, and nonparticipants.

*Id*. at 7.

Finally, the Legislature revised Oregon's law relating to police use of chemical incapacitants and kinetic impact projectiles. The previous version of ORS § 181A.708 allowed the use of tear gas for crowd control purposes when there was a riot and an officer reasonably believed that use of tear gas was necessary to terminate or prevent furtherance of the riotous behavior. ORS 181A.708(2) (2021); *see also* ORS § 166.015 (defining a riot as five or more people "engag[ing] in tumultuous and violent conduct . . . [that] intentionally or recklessly creates a grave risk of causing public alarm"). The revised statute only allows for the use of tear gas to control crowds when it is needed to defend against threat to life or serious bodily injury, or when it is needed to bring a dangerous and unlawful situation under control. 2022 Or. Laws Ch. 40, 2-3. Additionally, tear gas may be used only when other de-escalation techniques have already been attempted, use of tear gas has been authorized by a commanding officer, and the agency has announced its intent to use tear gas, allowed individuals sufficient time to evacuate the area, and then announced again its intent to use tear gas. *Id*. at 3. Finally, the new law states expressly that "[a] law enforcement agency, when it is safe and possible to do so, shall minimize the incidental impact of the agency's use of handheld chemical incapacitants, tear gas and kinetic impact projectiles on bystanders, medical personnel, journalists and other unintended targets."

*Id.* Here again, PPB has revised Directive 635.10 to comply with the revised law. *See* Porter Supp. Decl., Ex. 2 at 9 (ECF 287-2).

## DISCUSSION

The City's motion to dismiss Plaintiffs' claims for declaratory and injunctive relief in their First, Second, and Fourth Causes of Action is based on mootness.[1] The Court first considers whether the City has shown that there are changed circumstances that could have rendered Plaintiffs' claims moot by making Plaintiffs' claimed future injuries too conjectural or hypothetical. *See Clark*, 259 F.3d at 1012. The Court then considers whether Plaintiffs' claims are moot. Finally, the Court addresses the City's motion against all remaining claims of Index Newspapers.

### A.  Significantly Changed Circumstances

The Court has already found that the circumstances significantly shifted from May 2020 to August 2021, *see Index Newspapers*, 2022 WL 72124, at *4, and that they changed to an even greater degree from April 2021 to August 2022, *see Index Newspapers* 2022 WL 4466881, at *6. Plaintiffs' new allegations show nothing that departs materially from these findings.

Currently, in Portland, there are only intermittent protests, and they are of significantly reduced size and scope. Plaintiffs allege that PPB has declared only one unlawful assembly since July 1, 2021. Plaintiffs do not allege any excessive force by PPB members against Plaintiffs in the last 24 months. And although Plaintiffs allege that several protests occurred in Portland during 2022, they allege no improper conduct by PPB against journalists or legal observers. Nor do Plaintiffs allege their attendance at these events.

---

[1] Because Plaintiffs stipulate to dismissing their Third Cause of Action based on the Oregon Constitution, the Court grants that portion of the City's motion without further discussion.

The supplemental information provided by the parties shows that the current circumstances remain markedly different from the nationwide series of protests in the wake of George Floyd's murder during the summer and fall of 2020. During that time, Portland sustained nightly protests for more than 100 days; now, protests are sporadic. Additionally, relevant Oregon laws, and the PPB's directives derived from those laws, have changed. Finally, Plaintiffs do not provide any evidence of PPB's alleged excessive use of force or improper dispersal of Plaintiffs since March 11th or 12th, 2021. In sum, the City has shown that there are changed circumstances that could render Plaintiffs' claims moot.

## B.  Whether the Circumstances Render Plaintiffs' Claims Moot

### 1.  Mootness

The Court has noted that "the near-nightly, ongoing, repeated conduct by federal officers that created sufficient potential repeated injury to support preliminary injunctive relief . . . would support the necessary injury for continued Article III injury to avoid mootness." *Index Newspapers*, 2022 WL 4466881, at *6. Such conduct by PPB no longer exists. In dismissing as moot Plaintiffs' claims against the Federal Defendants, the Court found that changed circumstances rendered Plaintiffs' claimed injury too speculative for injunctive and declaratory relief. *Id*. The Court finds the same with respect to Plaintiffs' claims for injunctive and declaratory relief against the City.

Plaintiffs acknowledge that the Court has already dismissed Plaintiffs' claims against the Federal Defendants on mootness grounds. Plaintiffs, however, argue that the City is distinguishable from the Federal Defendants. Therefore, Plaintiffs argue, although Plaintiffs' claims against the Federal Defendants were moot, Plaintiffs' claims against the City are not moot. First, Plaintiffs argue that unlike the Federal Defendants the City has a written policy of violently dispersing journalists and legal observers. Second, Plaintiffs argue that PPB has a long

history of following that policy. Third, Plaintiffs note that the Court considered the change in the Presidential administrations when dismissing Plaintiffs' claims against the Federal Defendants; Plaintiffs then argue that because no such change has been made with respect to PPB, Plaintiffs' claims against the City are not moot. The Court finds these arguments unpersuasive.

In support of their assertion that the City has a written policy of violently dispersing journalists, Plaintiffs provide a Tweet posted from PPB's verified Twitter account on June 14, 2020. The Tweet provides that "[PPB] continue[s] to work with our media partners about the importance of following the lawful orders given by the sound truck, officers and social media, so they can stay safe *and avoid arrest or altercation*." Borden Decl. Ex. 1 (ECF 285-2) (emphasis added). Plaintiffs argue that this Tweet constitutes a written policy that PPB will arrest, or engage in physical force with, any journalists or legal observers that do not follow a PPB order to disperse an unlawful assembly. Plaintiffs also argue that PPB has not rescinded this policy. Assuming this Tweet established a PPB-wide policy, PPB has, in fact, rescinded it. As discussed, the Oregon Legislature amended ORS § 162.247(1), so that refusing to obey a lawful order no longer constitutes a crime. 2021 Or. Laws Ch. 254, 1. As a result, PPB revised Directive 635.10, which establishes how PPB responds to public order events, so that "[f]ailure to comply with an order to disperse *is not a crime and shall not be the basis for an arrest*." Porter Decl., Ex. 2 at 9 (ECF 287-2) (emphasis added). "Where intervening legislation has settled a controversy involving only injunctive or declaratory relief, the controversy has become moot." *Matter of Bunker Ltd. P'ship*, 820 F.2d 308, 311 (9th Cir. 1987). The Oregon State Legislature has effectively settled this controversy.

Plaintiffs' second distinction also fails. The state legislature has changed the law that allowed for arresting journalists and legal observers who refused to disperse from an unlawful

assembly. Thus, whether PPB has a history of violently dispersing journalists and legal observers is irrelevant. *See id*. Finally, Plaintiffs' last distinction, that there was no "change in administration" with respect to PPB, is irrelevant for the same reason. Although there was no change in the Portland mayoral administration, the state legislature significantly revised the relevant laws, effecting a change in PPB's response to public order events.

Plaintiffs also argue that because "protests have always taken place in Portland[,] [t]hey will continue to occur," asserting that consequently their claims against the City are not moot. ECF 276 at 61; *see also* Rudoff Decl. ¶ 3-5 (ECF 285-6) (detailing declarant's interactions with police at protests in 2015, 2016 or 2017, 2018, and 2020, but detailing no such interactions in 2021 or 2022). "Essentially, under Plaintiffs' theory, Portland by its nature as a city engaged in civil activism provides permanent subject matter jurisdiction for equitable relief . . . for any claimed harm arising from protests." *Index Newspapers*, 2022 WL 4466881, at *4. The Court found that argument unconvincing as to Plaintiff's claims against the Federal Defendants. *Id*. The Court finds it unconvincing here as well. As the Court noted,

> The mere fact that some protests are likely to occur does not mean that the harm alleged by [Plaintiffs] is reasonably likely to occur. Plaintiffs' alleged harm comes from a protest that is declared unlawful and results in the improper dispersing of, or use of excessive force on, journalists or legal observers . . . . Portland's history of protests alone cannot demonstrate that type of harm is sufficiently likely to occur.

*Id*. at *5.

The City has shown that subject matter jurisdiction no longer exists. Plaintiffs' alleged injury is too conjectural, contingent, and speculative. As this Court has noted,

> [t]he injury asserted by Plaintiffs only occurs if there is a protest that is declared an unlawful assembly, that unlawful assembly results in enforcement action by [PPB], that enforcement action results in excessive force or dispersal, and that excessive force or dispersal is directed at or near Plaintiffs.

PAGE 11 – OPINION AND ORDER

*Id*. at *6. All these steps must occur despite the currently reduced crowd size and protest frequency in Portland. Given the current circumstances, this string of events is too speculative. Protests are sporadic. Of those sporadic protests, PPB has declared few unlawful assemblies. And Plaintiffs do not allege that PPB has used force against any Plaintiff in response to an unlawful assembly in more than two years. Furthermore, the Oregon Legislature has changed the law, so that refusing to obey a lawful order by a PPB member is no longer a crime. The legislature has also limited PPB's ability to use tear gas for crowd control purposes. These changes to the law "take[] us [further] into the area of speculation and conjecture." *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974). For Plaintiffs' alleged injury to arise requires too speculative a chain of possibilities to occur. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013); *see also Wolfe v. City of Portland*, 566 F. Supp. 3d 1069, 1086-87 (D. Or. 2021) (finding claims for equitable relief relating to the protests in Portland moot based on changed circumstances).

The absence of potential injury-producing conduct does not show a realistic threat of repeated injury. *See Armstrong v. Davis*, 275 F.3d 849, 860-61 (9th Cir. 2001) (noting that for prospective injunctive relief, a plaintiff "must demonstrate that he is realistically threatened by a *repetition* of the violation" (emphasis in original) (cleaned up)); *see also Index Newspaper LLC v. United States Marshals Service*, 977 F.3d 817, 825 (9th Cir. 2020) (noting that for future injunctive relief, the injury must be "certainly impending, or there is a substantial risk the harm will occur" (quoting *In re Zappos.com, Inc.*, 888 F.3d 1020, 1024 (9th Cir. 2018))); *Bayer*, 861 F.3d at 867 ("A case or controversy exists justifying declaratory relief only when the challenged activity is not contingent, has not evaporated or disappeared, and, by its *continuing and brooding presence*, casts what may well be a substantial adverse effect on the interests of the parties." (emphasis added) (quotation marks omitted) (quoting *Seven Words LLC v. Network Sols.*, 260

F.3d 1089, 1098-99 (9th Cir. 2001))). In sum, "changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful [declaratory] relief." *Bayer*, 861 F.3d at 867. And Plaintiffs are not "reasonably likely to be subjected once again to the conduct alleged as the basis for [their] claim," nor have they "shown that [they] can reasonably be expected to benefit from the injunctive relief [they] seek[]." *Id*. at 865.

### 2.  Capable of Repetition, Yet Evading Review

There is an exception to mootness for acts that are "capable of repetition, yet evading review." *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). For a controversy to fall within this exception, two elements must be present: "(1) the duration of the challenged action is too short to be litigated prior to cessation, and (2) there is a 'reasonable expectation' that the same parties will be subjected to the same offending conduct." *Demery v. Arpaio*, 378 F.3d 1020, 1026-27 (9th Cir. 2004) (quoting *Spencer v. Kemna*, 523 U.S. 1, 17-18 (1998)). "The second prong of the 'capable of repetition' exception requires a reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining party." *FEC v. Wisconsin Right to Life*, 551 U.S. 449, 463 (2007) (quotation marks omitted).

Plaintiffs do not meet the second prong, as there is not a reasonable expectation or demonstrated probability that the same controversy will recur involving the same complaining party. Plaintiffs contend that because PPB has a history of violently dispersing journalists and legal observers in response to protests, Plaintiffs will likely encounter the same improper conduct. Yet the circumstances on the ground, and the laws that enabled PPB's response to those circumstances, have dramatically shifted. The Court does not find it reasonable to conclude that this set of circumstance is likely to happen again. "The mere fact that a protest might again happen in Portland is not the same thing." *Index Newspapers*, 2022 WL 4466881, at *8.

Regarding the first prong, the Court *does not* conclude that any future claims that might arise under circumstances like those presented at the outset of this case would not be subject to judicial review. Plaintiffs were able to obtain a TRO and agree to a stipulated preliminary injunction, which was in place for more than two years. If there were a similar future case, there is no reason why Plaintiffs could not also obtain similar preliminary relief and more expeditiously seek a trial on the merits to request permanent injunctive relief. The Court does not find these claims to be those "where the type of injury involved inherently precludes judicial review." *Matter of Bunker Ltd. P'ship*, 820 F.2d at 311.

## C.  Plaintiff Index Newspapers

Finally, the City moves to dismiss Plaintiff Index Newspapers. The City argues that because Plaintiffs' claims for prospective relief are moot, and Plaintiff Index Newspapers does not allege, or seek, any damages for any past injury to itself, Index Newspapers has no remaining justiciable claims against the City. Plaintiffs offer no response to this argument and thus concede that Index Newspapers has no remaining justiciable claims. A plaintiff who "makes a claim" in a complaint "but fails to raise the issue in response to a defendant's motion to dismiss" that claim, "has effectively abandoned [that] claim." *Walsh v. Nevada Dep't of Hum. Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006); *see also Maldonado v. City of Ripon*, 2021 WL 2682163, at *8 (E.D. Cal. June 30, 2021) ("Plaintiff does not address Defendants' arguments regarding punitive damages in his opposition to the motion to dismiss and therefore concedes the arguments."); *Kerrigan v. Allstate Ins. Co.*, 543 F. Supp. 3d 843, 845-46 (C.D. Cal. June 10, 2021) ("Plaintiff also did not oppose and, thus, concedes, Defendants' argument that because Allstate Insurance was not a party to the insurance policy at issue in this action it was improperly named and should be dismissed."). Accordingly, the Court dismisses the claims of Plaintiff Index Newspapers.

**CONCLUSION**

The Court GRANTS the City's Partial Motion to Dismiss Plaintiffs' Third Amended

Complaint as Moot (ECF 279). The Court dismisses as moot Plaintiffs' claims for equitable

relief against the City, as described in their First, Second, and Fourth Causes of Action. As

stipulated by the parties, the Court also dismisses Plaintiff's claims under Oregon's Constitution,

described in their Third Cause of Action. Finally, the Court dismisses the claims of Plaintiff

Index Newspapers, LLC.

**IT IS SO ORDERED**.

DATED this 28th day of March, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge